COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
BARNSTABLE, SS.

Filed    NOV 0 5 2015

_Scott W. Nickerson_ Clerk

BARNSTABLE, SS.

|  |  |
|---|---|
| SUNLINK CORPORATION<br>    Plaintiff, | SUPERIOR COURT CIVIL ACTION<br>No. 1472 CV 005TT |
| vs. | |
| AMERICAN CAPITAL ENERGY, INC.;<br>ARCH INSURANCE COMPANY;<br>BERKLEY REGIONAL INSURANCE<br>COMPANY And BERKLEY INSURANCE<br>COMPANY | **DEFENDANT<br>AMERICAN CAPITAL ENERGY INC.<br>APPLICATION TO VACATE<br>ARBITRATION AWARD** |
|     Defendants | |

## INTRODUCTION

Pursuant to M.G.L. c. 251 § 12  and the Federal Arbitration Act (FAA) 9 U.S.C.S. § 10(a)(3), the Defendant American Capital Energy Inc. (ACE) moves this Court to vacate the arbitration award dated October 6, 2015 (the "Award") made in ACE's contract dispute with Plaintiff Sunlink Corporation (Sunlink).

ACE was prejudiced by actions of the Arbitrator who failed to recuse himself from considering the case despite the appearance of conflicts and who failed to grant a brief continuance, despite good cause having been shown, both of which require Court action, under specific statutory mandates, to vacate the Award entered on October 6, 2015.

Both the Federal Arbitration Act and Massachusetts' Arbitration Statute call for Judges to vacate Awards entered under conditions found in this case.

## BACKGROUND

The parties' dispute concerned the engineering services, delivery of and payment for construction materials for solar arrays installed on landfills on Cape Cod, with ACE as general contractor and Sunlink as subcontractor and engineering contractor.  The parties entered into a Consulting Engineering Agreement and nine separate, project-specific supply contracts each of which contained an arbitration provision. (Ex 1)

EXHIBIT

1

On January 20, 2015 the parties entered into a stipulated scheduling order with the arbitrator, envisioning arbitral evidentiary hearings beginning on May 11, 2015. (Ex 4) Documents demanded by the parties from each other, were voluminous and extensive. Documents requested by complainant Sunlink, consisted of 162 categories of documents for ACE to produce. This plethora of categories led to extensive e-discovery disputes and rulings by the arbitrator. The disputes continued until a final ruling of the arbitrator on April 21, 2015, (Ex 4) less than three weeks before the evidentiary hearing on May 13, 2015. The document production order of April 21, 2014 (Ex 4) consisted of the additional production of 10,660 emails in excess of 20,000 pages of documents submitted less than three weeks before the hearings, as well as correction of the production and additional production of 2898 documents and withdrawal of over 700 unrelated documents.

So extensive was the document production that the arbitrator characterized the process as "document intensive arbitration". (Ex 11 at 6) The arbitrator found that the Sunlink legal work, required two senior attorneys who spent approximately 1,400 of the legal hours Sunlink charged, (Ex 11 at 5) with additional hours for associates and paralegals, to review over 50,000 documents all of which the arbitrator ruled justified a fee award, for a seven day hearing, of $1,287,629.60. (Ex 11 pages 5, 8)

## HEALTH CRISIS, COUNSEL CONFLICT AND COST – MOTION FOR CONTINUANCE

Sunlink commenced this action by filing and serving the case in Barnstable Superior Court against ACE, and three companies who provided payment and performance bonds, Arch Insurance Company (Arch), Berkley Regional Insurance Company and Berkley Insurance Company (Berkley). Originally appearing as counsel for ACE and the bonding defendants, was Reimer & Braunstein ("Reimer"). ACE intended to perform pre-hearing discovery and document production affordably through its outside general counsel Attorney Robert K. Dowd PC (Ex 2 at 1), who traveled from Dallas at the end of February 2015 to accomplish this task, while evidence at the arbitration hearing was to be presented by trial counsel Reimer.

On March 5, 2015 however, Attorney Dowd fell on ice in New England and suffered a quad tendon rupture requiring his return to Dallas for surgical reconstruction which was performed

on March 17, 2015. (Ex 2, C) Attorney Dowd filed a motion to continue based on his incapacity which is detailed *infra*.

## COLLATERAL LITIGATION

The solar projects generated numerous lawsuits. Reimer attorneys had brought suit for ACE as plaintiff in Barnstable Superior Court Civil Action 15-0369 (Ex 6 at 3, 4) against the owner and developer of the solar project, and sought Trustee Process on claims (including those of Sunlink as subcontractor). The owner and developer defendants bonded off the trustee process claims. However, at an April 2015 mediation, in said case Reimer attorneys discovered that the provider of the owner/developer's debt financing for the solar array projects were also Reimer clients. (Ex 6 at 4). Accordingly, a conflict arose and ACE had to replace Reimer & Braunstein from all pending cases.

Sunlink sued Berkley and Arch as named Defendants in the present Superior Court action, like all sureties, these sureties' bonds, are backed up by agreements by entities to indemnify in the event of payouts. These bonding companies were also initially represented by Reimer. Upon Reimer's withdrawal from representation of all parties Dowd entered his appearance for ACE. When attorneys tried to enter appearances to intervene and for moved to continue, for the bonding companies in the Arbitration, the motion was also denied by the Arbitrator.

Other Superior Court cases arising out of the same projects included suits by Sunlink's subcontractor Old Castle Precast, Inc. "Old Castle" who asserted claims against ACE and Sunlink in four Barnstable Superior Court Cases (Docket Numbers BACV 2- 2014-00482, BACV 2014-00487, BACV 2014-00489, BACV 2014-0093) as well as one in Dukes County. ACE settled claims of Old Castle and sought offset in the Arbitration (see Ex 13). See Settlement and notification of offsets in the arbitration. (Ex 13)

Facing extensive unresolved, disputed discovery, Attorney Dowd was unable to do the discovery due to his injury and the magnitude of the last minute discovery. Facing early post-surgical recovery, Attorney Dowd entered his appearance as counsel for ACE in the arbitration and ACE and requested on April 14, 2015, a brief continuance of the hearing date for two reasons. Attorney Dowd was not able due to his health condition, by himself, to perform the review of the

voluminous documentation which now could not be done in conjunction with the Reimer & Braunstein firm withdrawal thereby preventing adequate preparation for an orderly hearing. (Ex 2)

## CONTINUANCE MOTION REJECTED

Attached to the motion requesting the brief continuance was the treating physician's report stating that Attorney Dowd would be expected to be well enough to travel in mid-June or early July. (Ex 3)  Attorney Dowd asked for "a brief period to recover from his injuries before commencing the arbitration".  Sunlink, claimant in the Arbitration, opposed this request for a short extension and the Arbitrator denied it. (Ex 4)

The Arbitrator's ruling noted that Attorney Dowd had the "unenviable task" task of handling the hearings within ACE's budget.  The injury sustained by Attorney Dowd as noted by the arbitrator in his ruling, "has limited and will limit his ability to travel and conduct the Arbitration".(Ex 4)

When it came time for the Arbitrator to meet his 30 day ruling requirement, he had no problem requesting a continuance to issue the finding. (Ex 5 p 1576)

For four weeks after his March 17, 2015 surgery, Attorney Dowd was unable to bend his knee or ambulate to his law office, as was noted in his Affidavit. (Ex 6 at 5)

In shaping the delivery of evidence at the hearings, the Arbitrator wrote on April 21 that ACE was to produce the remainder of its internal emails by April 23, 2015.  (Ex 4 at 1) Which added an additional 20,000 documents to review weeks before trial.

## DISCOVERY UNDONE AS HEARING DATE LOOMED

Attorney Dowd learned in April 2015 that the law firm withdrawing from ACE representation "had conducted no discovery, no production of documents and no review of documents provided by the Claimant" for the Arbitration hearings then set for early May 2015. (Ex 6 at 6)  Attorney Dowd's affidavit states that he "could spend only several hours a day reviewing exhibits and preparing for the arbitration prior to the arbitration". (Affidavit at 9)

Despite his incapacity and arduous post-operative physical therapy in Dallas, days after the Arbitrator denied the Motion for a brief Continuance, Attorney Dowd moved on April 30, 2015 for an Order to Compel Documents bates stamped documents omitted by Claimant and documents from the Claimant's lending institution related to the projects. (Ex 7 at 3, 5). In April 2015, Sunlink had produced in 19,679 sequentially numbered documents, but missing 2,809 of the numbered pages and Sunlink had produced 733 documents from an entirely unrelated case. Sunlink did produce the numbered pages omitted earlier pursuant to the Arbitrator's ruling (Ex 4) by dropping thousands of pages of additional documents on ACE less than two and on-half weeks before the hearing of evidence.

Further, the Arbitrator denied Dowd's Motion to Compel Sunlink to produce Bridge Bank documents, which would have assisted ACE in refuting the Bridge Bank evidence cited by the Arbitrator. (Ex 10 p 20), to support his findings and award.

Documents were provided in a giant dump, weeks before trial, to ACE's counsel who was incapacitated and not capable to perform a thorough review to prepare for trial.

Further, the Arbitrator excluded evidence of offsets at the Arbitration hearing (Ex 4 final paragraph) which included the payments by ACE to Old Castle; in essence ACE paid Sunlink's subcontractor Old Castle which, under the Arbitrator's award, ACE has to pay Sunlink a second time because offset evidence was excluded.

**SURETIES MOVE TO INTERVENE, ARBITRATOR DISCLOSES REPRESENTATION**

On May 11, 2015 Berkley Insurance Company, a defendant in this Superior Court case and surety on Payment Bonds provided in four of the nine projects, moved to intervene in the Arbitration on the condition that the hearing date be continued. When Reimer withdrew as counsel for ACE it also withdrew as counsel for Berkley and Arch the bonding defendants. (Ex 8). The motions to intervene were denied. Berkley's bonds were issued based on the credit of indemnitors including ESB and NGS. The arbitrator disclosed on May 11, 2015 that his law firm, Murphy and King represent on unrelated matters, Eversource, the parent corporation of EBS and NGS. (Ex 8)

On May 12, 2015 ACE objected to the Arbitrator's continuing service based on the fact that the parties had just become aware that a client of the Arbitrator has a financial interest in the outcome of the Arbitration. (Ex 9) In Moving to Recuse, ACE argued that the appearance of

impropriety, at least, should prevent the Arbitrator's ongoing service on this particular claim. The lawsuit's original defendant Berkley Insurance Company bonded ES Boulos (ESB), then known as "Eversource", a client of the Arbitrator. (Ex 8, 9)  ACE had only 24 hours to prepare its objection to the Arbitrator's continuing to serve as neutral. The main issue was that the Arbitrator could not make specific findings on the nine separate contracts and nine separate solar arrays because it would have had to make findings against its client Eversource.

**CONFLICT RECUSAL MOTION DENIED – HEARINGS ENSUE**

The Arbitrator stated that he did not think this "indirect relationship constitute[ed] grounds for disqualification or brought into question [his] ability to be impartial or to independently adjudicate the matter". (Ex 8)  Five days of hearings ensued from May 13-20, 2015.

Parties submitted post hearing briefs to synthesize the evidence for the Arbitrator and ACE asserted for the first time that Sunlink's Engineering Services Agreement created a fiduciary relationship between the parties.

**AWARD ENTERS**

As predicted by Respondent in its motion to recuse, the arbitrator did not make individual findings against its client by properly awarding on each of the separate contracts and separate solar arrays of each town but rather lumped the projects all together in the finding solely against ACE. The Arbitrator issued a Partial Final Award on August 18, 2015; it awarded to Sunlink a total amount of $7,856,649.60 for invoices Sunlink issued to ACE for the account balance on the seven CVEC BGMS Projects excluding Nunnepog with a credit for Katama, including interest on unpaid invoices through April 30, 2015 (Ex 10).

In the Partial Award, the Arbitrator rejected ACE's "post hearing argument that Sunlink assumed the heightened duties of a fiduciary because it provided …services under a Consulting Services Agreement".  (Ex 10 26).  As a basis for this finding the Arbitrator ruled that the proposition "was never raised as a defense until it appeared in ACE's Post-Hearing Memorandum". (Ex 10 at 26) If a continuance had been granted it would have been raised in the pleadings as a counterclaim as it was not discovered until the trial.

The Partial award noted that ACE had filed no counterclaim and although ACE requested that it be allowed to recover, "presumably by way of an offset" and the arbitrator ruled there would be a bifurcated trial, the request was denied. (Ex 10 at 28).  In its April 21, 2015 scheduling order the Arbitrator stated the hearings would not include "the quantification of what ACE has called its offsets". (Ex 4 final paragraph)

ACE paid Old Castle to resolve the claims by it against ACE in the five open Superior Court Cases on July 23, 2015 before the arbitrator's Final Award entered.  (Ex 13) ACE produced the settlement documents to the Arbitrator (Ex 13) but the final award included no recognition that the Sunlink subcontractor had been paid.

The Arbitrator gave the award as a lump sum, made up from Sunlink figures from invoices. (Ex 10 at 20, 23) The arbitrator did not attribute his award to specific projects despite ACE's motion for clarification. (Ex 14) The four projects subject to bonding indemnity by the Arbitrator's client's subsidiary, included invoices plus late fees plus changes totaling $5,551,531.67.

Berkley Insurance, whose indemnitor's parent is represented by the Arbitrator's law firm, paid Sunlink $4,516,517.767 in settlement, after entry of the award to resolve claims on four of the nine projects, Barnstable, Brewster, Chatham and Dennis. (Ex 12) The settlement included a release to ACE on these four projects. The difference between the invoice-based award and the settlement figure cannot be gleaned from the award because the arbitrator did not set forth specifics for each of the nine projects – despite ACE request in its brief and request for clarification. (Ex 14)

**TWO EXPLICIT STATUTORY BASES MANDATE VACATUR**

ACE asserts that two grounds compel Court action to vacate the Arbitrator's award – the failure to grant a short continuance denied ACE a fair hearing, and the Arbitrator's firm's entanglement with guarantor of the obligation the Arbitrator ruled on, should have led to recusal.

ACE suffered demonstrable prejudice in not having time enough to prepare for the expedited hearing. Had it been afforded the reasonable extension due to Attorney Dowd's health emergency, ACE would have been better prepared to assert arguments the Arbitrator dismissed as having been raised in briefings after the live testimony closed.

Under the FAA, grounds for vacatur are extraordinarily narrow and stringently applied *Rain CII Carbon, LLC v Conoco Phillips Co.* 674 F3d 469, 471-472(5th Cir 2012) but ACE here seeks only the enforcement of standards recognized by both State and Federal law. ACE seeks application of the following two statutory grounds

> **Partiality -** There was evident partiality by an arbitrator appointed as a neutral … prejudicing the rights of any party MGL c251 § 12(a)(4)
>
> Where there was evident partiality …in the arbitrators 9 USC §10 (2)
>
> **Postponement -** failure to postpone a hearing upon sufficient cause being shown or so conducted the hearing, so as to prejudice substantially the rights of a party MGL c251 § 12(a)(4)
>
> where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, … by which the rights of any party have been prejudiced;  (9 U.S.C.S. § 10(a)(3));

Another aspect of the Arbitration provision in this case, presents issues of constitutional magnitude in that it attempts to exclude Judicial oversight, in any respect, of the arbitral process. The provision states that "there shall be no appeal on any ground, including for greater certainty, any appeal on a question of law, a question of fact, or a question of mixed fact and law". (Ex 1) ACE asserts that, as a matter of State and Federal Constitutional law, the Judiciary may not be stripped of authority to oversee the justice of procedures that the Legislature mandates they monitor.

## ARBITRATOR CONFLICT REQUIRED RECUSAL

Rule 18 of the American Arbitration Association Commercial Arbitration Rules (which applied in this case) requires that "Any arbitrator shall be impartial and independent".   Rule 17 mandates that "any person appointed …as an arbitrator, as well as the parties and their representatives, shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives".   The Arbitrator correctly recognized that its representation of a party with an economic interest in the outcome, mandated disclosure.

Mass Rules of Professional Conduct state at Rule 1.12(a) that Lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as an arbitrator unless all parties to the proceeding consent after consultation. Presumably, a corollary would be that an Arbitrator may not rule over a dispute in which the Arbitrator, as lawyer, or his firm, participated in personally and substantially. ACE did not consent, and instead objected to the arbitrator's continuing to serve as decision maker where its client's economic fortunes were impacted by any decision to issue.

Under the FAA, an arbitral award may be vacated on grounds of "evident partiality" of the arbitrators. 9 U.S.C. § 10(a)(2). *JCI Communications V. International Broth.*, 324 F. 3d 42 - Court of Appeals, 1st Circuit (2003) Evident partiality is more than just the appearance of possible bias. Rather, evident partiality means a situation in which "a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 626 (6th Cir.2002) (internal quotations omitted); accord *ANR Coal Co. v. Cogentrix of N. C., Inc.*, 173 F.3d 493, 500-501 (4th Cir.1999); *Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2d Cir.1984); see also *Al Harbi v. Citibank, N.A.*, 85 F.3d 680, 683 (D.C.Cir.1996) ("[T]he claimant must establish specific facts that indicate improper motives on the part of an arbitrator."). See generally *Montez v. Prudential Secs., Inc.,* 260 F.3d 980, 983 (8th Cir.2001) (collecting cases on "evident partiality" standard).

"The alleged partiality must be `direct, definite, and capable of demonstration rather than remote, uncertain or speculative.'" *Gambino v. Alfonso*, Dist. Court, D. Massachusetts (2012) Civil No. 10-10860-PBS, *Kiewit/Atkinson/Kenny v. Int'l Bhd. of Elec. Workers,* 76 F. Supp. 2d 77, 79-80 (D. Mass. 1999) (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir. 1993)); see also *United Steel Workers of Am., Local 12003 v. Keyspan Energy Delivery*, No. 08-11928-GAO, 2009 U.S. Dist. LEXIS 68427 (D. Mass. Aug. 3, 2009); *Nationwide Mut. Ins. Co.*, 213 F. Supp. 2d at 17. However, proof of actual bias is not required. *Morelite Constr. Corp. v. NYC Dist. Council Carpenters*, 748 F. 2d 79 at 84- Court of Appeals, 2nd Circuit (1984)

A leading case on evident partiality is *Commonwealth Coatings Corp. v Cont'l Cas. Co. 393 US 145 (1968)* where the failure to disclose a close relationship between an arbitrator and a party, and led to vacation of the award. Justice White's concurrence stated that Courts should be "scrupulous to safeguard the impartiality of arbitrators" who have "completely free rein to decide… and are not subject to appellate review". In *Thomas Kinkade Company v. White*, No. 10-

1634 (6th Cir. April 2, 2013). The Sixth Circuit Court of Appeals affirmed the vacation of arbitration award on grounds of arbitrator's evident partiality.

In *Schmitz v Zilveti* 20 F3rd 1048 (9th Cir 1995) an arbitrator's failure to disclose that his law firm represented the parent company of one of the parties to the arbitration was sufficient to vacate the arbitration award on the basis of partiality. Several courts have held, *Schlossberg v. State Bar Grievance Bd.*, 388 Mich. 389, 200 N.W.2d 219 (1972) as did the Court in *Schmitz*, that "representation of a parent corporation is likely to affect impartiality or may create an appearance of partiality in the lawyer's representation of or dealings with a subsidiary".

The arbitrator in this case disclosed the conflict, ACE objected, the proceedings continued before the same arbitrator, who then ruled entirely against ACE.


## FAILURE TO ACCOMMODATE DISABILTY BY CONTINUANCE DENIED ACE A FUNDAMENTALLY FAIR HEARING AND MANDATES VATATUR

The refusal to grant ACE a brief continuance worked substantial prejudice and mandates vacatur of the Award.  The arbitrator rushed the case forward despite well documented justification for delay and to the obvious prejudice to ACE. As ACE's conflicted trial counsel withdrew and the substituting counsel, having just undergone major surgery out of State, and still recuperating, requested a brief continuance.  The denial of that motion denied ACE the opportunity to properly prepare and present its evidence at the hearing.

Superior Court Judges are instructed by statute to rectify procedurally impaired findings under these conditions:

> the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or … otherwise so conducted the hearing…, as to prejudice substantially the rights of a party;

In *Coastal Gen. Constr. Servs. Corp. . VI Hous. Auth.* 98 F.App'x 156, 159 (3rd Cir. 2004) an award was vacated based on the refusal to grant a continuance after a party committed a document dump of discovery on the opposing party on the eve or trial.  Courts examine the circumstances to determine whether the denial of the request for postponement was arbitrary or unreasonable. Misconduct under 9 U.S.C. § 10(a)(3), is defined as conduct "which so affects the rights of a party that it may be said that he was deprived of a fair hearing. *Newark Stereotypers' Union v. Newark*

*Morning Ledger Co.,* 397 F.2d594, 599 (3d Cir. 1968), 393 U.S. 954 (1968). The hearing provided to ACE, was unreasonable, the short continuance was reasonable and necessary.

The standard for evaluating the decision not to postpone the arbitration hearing is an abuse of discretion. See *Schmidt v. Finberg,* 942 F.2d 1571, 1573 (11th Cir. 1991). To meet this standard, a party objecting to the denial must prove by clear and convincing evidence that the arbitrators had no reasonable basis for their decision not to grant a postponement. See *In Re Time Constr. Inc.,* 43 F.3d 1041, 1045 (6th Cir. 1995) An example of reversible error in refusing to grant a postponement is where a sudden, completely unforeseen medical emergency prevents the attendance of an important witness. *Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16, 20 (2d Cir. 1997) *Mse Distributing, Inc. V. Southwest Reinsure, Inc.*, Dist. Court, D. New Mexico (2011) The severe injury and brief but arduous surgical repair recuperation by trial counsel mandated continuance; its denial was just the kind of arbitral ruling that Courts are statutorily empowered to enforce. *Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16, 21 (2d Cir. 1997) (vacating an award where the arbitrator refused to continue the hearing to permit testimony by company official); *Ebasco Constructors, Inc. v. Ahtna, Inc.,* 932 P.2d 1312, 1316 (Alaska 1997) (explaining that the court would review arbitrator's decision not to allow for postponement of hearing because of withdrawal of party's counsel twenty-five days prior to arbitration with deference, reversing only for gross error).

A party seeking vacatur based on a failure to postpone the proceedings must explain "why a postponement was necessary to assure a fair proceeding." *Local Union No. 251 v. Narragansett Improv. Co.,* 503 F.2d 309, 312 (1st Cir.1974). *ALS & Associates, Inc. v. AGM Marine Constructors,* 557 F. Supp. 2d 180 - Dist. Court, D. Massachusetts (2008) In keeping with the profound deference accorded to arbitral decisions, the threshold for vacatur based on a failure to postpone is high. "Courts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for it exists*." El Dorado Sch. Dist. #15 v. Cont'l Cas. Co.,* 247 F.3d 843, 848 (8th Cir.2001) Denial of the requested continuance led to demonstrable prejudice to ACE whose counsel had to respond to and review an avalanche of discovery while in a partially incapacitated state.

Had the continuance been properly granted ACE would have been able to coordinate claims asserted by Sunlink and other subcontractors – including Old Castle, to credit payments already

made thereby resulting in Old Castle debt of Sunlink being paid by ACE and an award requiring ACE to pay Sunlink again.

If the Continuance were allowed ACE would have been informed and prepared to show *how the Sunlink banking relationship supported the fraudulent inducement claims of ACE in stark* contrast to the arbitrator's use of that bank's records to support its decision adverse to ACE.

Finally, the arbitrator's decision chides ACE for raising the issue of Sunlink's fiduciary responsibilities only in the post hearing brief. (Ex at p 26) Had there not been a push to have the evidence presented by a still-recuperating attorney, ACE could have highlighted the arbitrator's April ruling that the hearings would not include "quantification of what ACE called its offsets". (Ex 2) against the Award's statements that "although it filed no counterclaim, ACE also request that it be allowed to recover, presumably by way of offset" (Ex 10 p28 fn. 17) which the arbitrator denied, declaring he found no contractual breach, misrepresentation or other actionable conduct.

The award, because of the arbitrator's failure to recuse himself results in an award undiscernible between the arbitrator's client Eversource and Arch bonding company.

**SUMMARY**

Based on the enumerated State and Federal statutory grounds, ACE was prejudiced by a fundamentally unfair hearing process in the denial of the motion for continuance despite reasonable grounds with onerous discovery imposed on a recuperating attorney weeks before the expedited hearing, and by the refusal of the arbitrator to recuse himself despite an apparent conflict and failure to distinguish in his award, the projects associated with his client, as would make job specific allocations possible.

ACE urges the Court to **VACATE** the Award entered and instead to refer the matter back to the American Arbitration Association for proceedings in keeping with the parties' agreement and with the requisites of law.

Respectfully Submitted,

ROBERT K. DOWD, P.c.

Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
4814 Bengal Street Unit #1
Dallas TX 75235

(978) 221-2000
robtdowd@sbcglobal.net

## CERTIFICATE OF SERVICE

I Robert K Dowd, counsel for the Defendants American Capital Energy, Inc., hereby certify that on this date was served the foregoing

**APPLICATION OF DEFENDANT AMERICAN CAPITAL ENERGY, INC.**
**TO VACATE ARBITRATION AWARD**

By email and by first-class mail, postage prepaid to all counsel who have entered an appearance in this case.

Paul J. Murphy, BBO #363490
David G Thomas BBO #640854
GREENBERG TRAURIG, LLP
One International Place
Boston MA 02110
(617) 310-6063
murphyp@gtlaw.com
thomasda@gtlaw.com

John P. Connelly,  BBO #546970
Jonathan T. Elder BBO #654411
Hinckley Allen
28 State Street
Boston, MA 02109-1775

617.345.9000
jconnelly@hinckleyallen.com
jelder@hinckleyallen.com

Timothy Norton
Kelly Remmel & Zimmerman
53 Exchange Street  P O Box 97
Portland ME 04112-0597
(207) 775-1020
tnorton@krz.com

Signed under the pains and penalties of perjury this __th day of November, 2015.

ROBERT K. DOWD, P.c.

Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
4814 Bengal Street Unit #1
Dallas TX 75235

(978) 221-2000
robtdowd@sbcglobal.net