## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SUNLINK CORPORATION,

          Plaintiff,

v.

AMERICAN CAPITAL ENERGY, INC.

          Defendant.

Civil Action No. 1:15-cv-13606

### PLAINTIFF SUNLINK CORPORATION'S OPPOSITION TO DEFENDANT AMERICAN CAPITAL ENERGY, INC.'S MOTION TO DISMISS OR ABSTAIN [D.E. 7]

### INTRODUCTION

Defendant American Capital Energy, Inc. ("**ACE**") "Motion to Dismiss or Abstain" (the "**ACE Motion**") should be denied because it is based on an inherently false and misleading premise.  Contrary to what ACE has represented to this Court – either expressly or impliedly:

1.  the Barnstable County lawsuit was <u>not</u> filed <u>before</u> plaintiff SunLink Corporation ("**SunLink**") commenced arbitration and the arbitration did not arise from the Barnstable County lawsuit;

2.  the Barnstable County lawsuit does <u>not</u> deal with identical claims and disputes as this federal lawsuit (indeed, the Barnstable County lawsuit only brings actions against various payment bonds issued by certain sureties, who were not parties to the arbitration);

3.  ACE did <u>not</u> have to replace its counsel a month before the arbitration proceeding based on a conflict interest – at least that is not what ACE represented to the arbitrator when ACE changed counsel and requested to postpone the hearings during the arbitration (and ACE's current counsel's physical injury was well known to ACE at the time); and

4.  The arbitrator did <u>not</u> represent "a guarantor of the liability of ACE" (rather, the arbitrator and his firm represented a *non-party* public utility, which – at some point – acquired a *non-party* entity that apparently guaranteed bonds issued by a *non-party* surety).

1

ACE clearly is attempting to mislead this Court by asserting otherwise.  Stripped away of its false or misleading premise and rhetoric, ACE does not present any reasoned basis for this Court to dismiss SunLink's Verified Petition to Confirm Arbitration Award, or otherwise abstain from adjudicating the merits of that pleading under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-18 (1976).  Finally, ACE failed to comply with this Court's Local Rules when filing the ACE Motion or when submitting, without leave of court, ACE's "Supplemental Memorandum of Law" on November 20, 2015.  *See* [D.E. 10].  This Court may rightfully deny the ACE Motion for those grounds alone.

<u>**RELEVANT PROCEDURE/FACTS**</u>

**A.      SunLink's Demand for Arbitration and Two (2) Separate Superior Court Lawsuits to Perfect Statutory and Common Law Rights Under Surety Bonds.**

On October 20, 2014, SunLink filed a Demand for Arbitration against ACE ("Arbitration").  *See* SunLink Demand for Arbitration attached hereto as <u>Exhibit A</u>.[1]  *See also* SunLink's Verified Petition to Confirm Arbitration Award ("**Verified Petition**") [D.E. 1], ¶ 6 ("**Arbitration**").  The Arbitration arose out of nine (9) solar projects situated on Cape Cod and Martha's Vineyard, Massachusetts for which SunLink supplied various materials to ACE in connection with ACE's construction of those projects.  *See id.*  Those projects were located in the Towns of Harwich, Dennis, Barnstable, Brewster, Chatham, Eastham, Katama, Nunnepog, and Tisbury.  In the Arbitration, SunLink asserted the following causes of action against ACE:

1.      **Breach of Contract** (Count I),

2.      **Quantum Meruit** (Count II),

3.      **Intentional Misrepresentation** (Count III),

4.      **Negligent Misrepresentation** (Count IV), and

---

[1] Submitted herewith is the Affidavit of Counsel verifying certain exhibits referred to in this Opposition. Hereinafter, exhibit references shall be simply "Exhibit __ attached hereto."

> 5.  **Violation of G.L. c. 93A §§ 2 and 11** (Count V).

*See id.*  Those causes of action arose from ACE's unlawful, unfair and deceptive failure to pay for solar panel mounting systems supplied to ACE by SunLink for each of the nine projects.  *See id.*  ACE was the only party-defendant in the Arbitration.

The following day, *after* commencing the Arbitration, SunLink filed two separate lawsuits in Massachusetts Superior Court, one in Barnstable County and one in Dukes County.  *See* Exhibit B attached hereto (a copy of SunLink's Barnstable County verified complaint, without exhibits); Exhibit C attached hereto (a copy of SunLink's Dukes County verified complaint, without exhibits).  SunLink filed each lawsuit for the exclusive purpose of being able to enforce surety bonds issued by Arch Insurance Company ("**Arch**") and/or Berkley Regional Insurance Company/Berkley Insurance Company ("**Berkley**").  *See* Exhibit B, p. 1; Exhibit C, p. 1.  ACE was named as a party-defendant only because it is listed as the "Principal" on the bonds and is thus jointly and severally liable for liability *arising under the bonds*.  The only causes of action asserted by SunLink in these state-court lawsuits were against the payment bonds associated with each of the nine (9) solar projects.  *See generally, id.*  In other words, should Arch and Berkley be required to make payment under the bonds (based on ACE's default), SunLink needed to preserve and perfect its rights to seek that payment by filing state-court lawsuits against the bonds/sureties pursuant to Massachusetts General Laws Chapter 149, Section 29 ("**Section 29**"), and according to the terms of the bonds, themselves.  Specifically, according to Section 29:

> In order to obtain the benefit of such bond for any amount claimed due and
> unpaid at any time, any claimant having a contractual relationship with the
> contractor principal furnishing the bond, who has not been paid in full for any
> amount claimed due for the labor, materials, equipment, appliances or
> transportation included in the paragraph (1) coverage within sixty-five days after
> the due date for same, shall have the right to enforce any such claim (a) by filing a

petition in equity within one year after the day on which such claimant last performed the labor or furnished the labor, materials, equipment, appliances or transportation included in the claim and (b) by prosecuting the claim thereafter by trial in the superior court to final adjudication and execution for the sums justly due the claimant as provided in this section.

MASS. GEN. LAWS ch. 149, § 29.  The payment bonds themselves each contain the following provision:

§ 12.  No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety …, or (2) on which the last labor or service was performed by anyone or the lost materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs.

*See* Exhibit D attached hereto (copy of AIA Document A312-2010 Payment Bond - Harwich Solar).

SunLink expressly notified the Barnstable County and Dukes County Superior Courts that SunLink filed both lawsuits as a "provisional remedy under" Massachusetts law, including Section 29.  *See* Exhibit B, p. 1; Exhibit C, p. 1.  Unlike the Arbitration, SunLink did not bring any causes of action directly against ACE in the state-court proceedings; but rather, merely alleged ACE to be jointly and severally liable with the surety companies as the listed "Principal" on the bonds.  *See generally, id.*  On January 5, 2015, the parties stayed the state-court lawsuits. In contrast, the Arbitration arose directly out of purchase and sale contracts executed by SunLink and ACE on each of the solar projects at issue, not out of the payment bonds or the filing of the state-court lawsuits.  *See generally, id.*

### B.    Arbitration Award for SunLink Versus the Amounts in Controversy under the Bonds in the Barnstable County Lawsuit.

On August 18, 2015, SunLink obtained a Partial Final Award granting SunLink (i) $7,856,649.60 in damages, plus late fees and interest, (ii) $1,041,407.94 in Chapter 93A

damages, and (iii) attorneys' fees and costs to be submitted by SunLink in a fee application.  *See* Verified Petition, <u>Exhibit E</u>.  On October 6, 2015, SunLink obtained a Final Award granting SunLink $1,287,629.60 in attorneys' fees and costs, among other things (collectively, the "Award").  *See* Verified Petition, <u>Exhibit E</u>.  Without even considering continuing interest and late fees, SunLink obtained an Award against ACE for **$10,185,687.14** in the Arbitration.  The Barnstable County lawsuit, however, does <u>not</u> deal with all of the nine (9) projects that were the subject of the Arbitration, or any of the various claims under which SunLink prevailed in the Arbitration.  Rather, the Barnstable County lawsuit exclusively addresses payments under the relevant bonds (at issue in Barnstable County) strictly for materials supplied on discrete projects in the amount of **$5,283,429.35.**[2]  The Barnstable County lawsuit does not address payments under the relevant bonds at issue in Dukes County, recovery of any amounts owed under Chapter 93A, or recovery of any amounts not strictly falling within the ambit of coverage afforded by the bonds, or any amounts otherwise owed to SunLink over and above bond limits.

### C.      SunLink Chooses Federal Court to Seek Confirmation of the Award *Before* ACE files an "Emergency" Application to Vacate in Barnstable Superior Court.

After the Award entered, *both* SunLink and ACE had their choice of forums to seek to confirm or vacate the Award, respectively.  Specifically, as the parties are jurisdictionally diverse and the amount in controversy exceeds the threshold amount for federal diversity jurisdiction, the parties could have filed an action in this Court or in Suffolk Superior Court as they deemed fit.  *See* 28 U.S.C. § 1332(a); MASS. GEN. LAWS ch. 251, § 17.  Contrary to ACE's assertion, the Barnstable County and Dukes County lawsuits were provisional filings to perfect rights under the surety bonds at issue in these actions, and expressly did not waive SunLink's right to choose

---

[2] Interest and late fees continued to accrue after the awards were issued and SunLink has already settled its dispute under the Berkley-issued bonds in the Barnstable County lawsuit.

a federal forum to initiate confirmation proceedings, if SunLink so desired. *See Weststar Assocs., Inc. v. Tin Metals Co.*, 752 F.2d 5, 7 (1st Cir. 1985) (holding that federal district court for district of Massachusetts had jurisdiction under Federal Arbitration Act to enforce arbitration award made in Boston in favor of Massachusetts corporation against Rhode Island corporation where diversity jurisdiction existed).   On October 20, 2015, SunLink made that choice and filed the Verified Petition in this Court to confirm the Award. *See generally,* Verified Petition.  ACE certainly could have initiated an action to vacate the Award and filed it in *Suffolk* Superior Court (as required by statute – see below) or in this Court before October 20, 2015; however, ACE chose not to do so.  That ACE filed a status report in Barnstable Superior Court indicating that ACE intended to file a motion to vacate the Award did not prevent SunLink from filing its Verified Petition in this Court.  *Cf.* MASS. GEN. LAWS ch. 251, §§ 11, 15 (directing that confirmation of award shall be made by motion).   Nonetheless, despite SunLink's Verified Petition having been filed and served on ACE, ACE filed an "Application to Vacate Arbitration Award" in *Barnstable* Superior Court on November 5, 2015, more than two full weeks after SunLink commenced this action.

### D.   SunLink's Emergency Motion to Strike ACE's Application and SunLink's Substantive Opposition to ACE's Application.

On November 12, 2105, in light of (i) the pendency of this federal proceeding, (ii) ACE's failure to seek relief from *Suffolk* Superior Court (the appropriate venue for a state-court action to vacate the Award), and (iii) ACE's failure to comply with Superior Court 9A,[3] SunLink filed in Barnstable Superior Court an Emergency Motion to Strike ACE's Application.  *See* Exhibit F attached hereto (a copy of the motion without exhibits).  In response, the Court issued a short

---

[3] ACE did not serve its Application pursuant to Superior Court Rule 9A before filing; but rather, ACE apparently handwrote in the word "Emergency" on the Application when physically filing the Application in Barnstable Superior Court.

order of notice and SunLink's Emergency Motion to Strike will be heard on <u>December 1, 2015</u>. *See* <u>Exhibit G</u> attached hereto.  Although not scheduled for oral argument, and so as not to waive any of the (many) substantive grounds on which ACE's Application should be denied, on November 20, 2015, SunLink also filed in the Barnstable Superior Court a substantive opposition to ACE's Application to Vacate.  *See* <u>Exhibit H</u> attached hereto (a copy of SunLink's Opposition to ACE's Application to Vacate Arbitration Award, without exhibits).  As set forth in SunLink's Opposition – much like ACE's Motion before this Court – ACE's Application is procedurally and substantially flawed and wholly lacking in substance, including ACE's protestations about the arbitrator.[4]

<u>**ARGUMENT**</u>

## I.    **THE *COLORADO RIVER DOCTRINE* DOES NOT APPLY OR SUPPORT DISMISSAL OR ABSTENSION.**

Primarily, ACE seeks relief under the abstention doctrine emanating from *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-18 (1976), and its progeny. *See* ACE Mot. ¶ 5.  According to the *Colorado River Doctrine*, in limited circumstances a federal court may abstain from litigating parallel litigation that is being carried out simultaneously in federal and state court to determine the rights of the parties with respect to the same questions of law.  *See id.* at 817-18.  In assessing whether to abstain, a federal court should consider the following non-exclusive factors:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the

---

[4] As ACE does not develop any arguments to support vacatur in the ACE Motion, SunLink will not repeat the substance of SunLink's opposition here.  However, SunLink refers this Court to its opposition to ACE's arguments about having to replace its counsel because of a conflict and the arbitrator representing "a guarantor of the liability" of ACE, which are baseless.  *See* <u>Exhibit G</u>.

parties' interests; (7) the vexatious or contrived nature of the federal claim; and
(8) respect for the principles underlying removal jurisdiction.

*Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27-28 (1st Cir. 2010).   These factors not only weigh

heavily in favor of denying the ACE Motion; but also, the *Colorado River Doctrine* itself is not

even implicated by the existing Barnstable County lawsuit in the first instance.

Specifically, among other things and as described in detail above, the proceeding before

this Court is <u>not</u> a "parallel" litigation being carried out by the same parties to determine the

same rights of the parties with respect to the same questions of law.   Rather, the proceeding

before this Court deals with (1) the four common-law claims and (2) the Chapter 93A, § 11 claim

brought against ACE by SunLink that the parties adjudicated through the Arbitration.   The

Barnstable County lawsuit deals with statutory and suretyship claims brought against certain

surety bonds issued by sureties that were <u>not</u> parties to the Arbitration.   None of the bond-claims

(to the extent they are ever adjudicated) will address the *substance* of the common-law and

Chapter 93A claims against ACE from the Arbitration through which SunLink obtained the

Award, and which Award is the subject of the proceeding before this Court.   Put simply, the

*Colorado River Doctrine* does not apply to the circumstances presented to this Court by

SunLink's Verified Complaint and ACE's <u>subsequent</u> filing in the Barnstable Superior Court.

Even if the *Colorado River Doctrine* did apply, however, the factors plainly do not

support the relief requested by ACE in any meaningful way.   Rather, they support denial of the

ACE Motion as follows:

1.      **Whether either court has assumed jurisdiction over a res.**

This factor **supports denial** of the ACE Motion.   Contrary to ACE's assertions, the

Barnstable Superior Court has <u>not</u> assumed jurisdiction "over a res."   First, property is not

involved in this case—this is not a proceeding in rem.   Second, to the extent the Arbitration

Award itself can be deemed "a res" for purposes of the *Colorado River Doctrine*, the Barnstable Superior Court has not assumed jurisdiction over the Award.  The Arbitration dealt with all nine (9) projects.  The lawsuit filed by SunLink in Barnstable Superior Court addresses only six (6) of those projects (and more particularly, only six (6) of the bonds insuring those projects).  The other three projects, and the claims for recovery under bonds insuring those projects, are the subject of the lawsuit filed in Dukes County Superior Court.  The claims in the two state court, bond proceedings deal with the obligations of the sureties under the payment bonds they issued; they do not address the causes of action SunLink brought against ACE in the Arbitration, the Award under Chapter 93A, or any other payments awarded SunLink not covered by the bonds.

Certainly, the Barnstable Superior Court has jurisdiction over SunLink's bond claims (at least for those projects that were situated within Barnstable County); however, ACE cannot extrapolate that to jurisdiction over the Arbitration Award itself.  It is not as if SunLink filed all of its common-law claims against ACE and was compelled by the Barnstable County Superior Court – who had assumed jurisdiction over those claims – to arbitrate the dispute.  None of that happened.  Rather, SunLink initiated the Arbitration (which, pursuant to the parties' agreement the AAA had jurisdiction over), and then filed the state-court lawsuits exclusively for the purpose of protecting and perfecting its rights under bonds issued by surety companies that were not parties to the Arbitration.

ACE's implied assertion that SunLink conferred jurisdiction over the Arbitration Award by "submitt[ing] the Partial and the Final Award to the Barnstable County Superior Court" (D.E. 7, at ¶ 1) in a court-ordered status report is, respectfully, absurd.   The Massachusetts Uniform Arbitration Act could not be clearer as to the *proper* venue for filing an application to confirm an award (assuming a party sought confirmation in state court):

> An initial application shall be made to the superior court for the county in which the agreement provides the arbitration hearing shall be held or, if the hearing has been held, **in the county in which it was held**.

*See* Mass. Gen. Laws ch. 251, § 17 (emphasis added); *see also,* Mass. Gen. Laws ch. 251, § 11 ("Upon application of a party, the court shall confirm an award . . . ."). The Arbitration hearings were held – as required by the parties' agreement – in Boston, which is in *Suffolk* County. As a result, if SunLink had sought to confirm the Arbitration Award in state court, SunLink would have had to file an application in *Suffolk* Superior Court, not in *Barnstable*. The same is true for ACE when seeking to vacate. Merely attaching the Arbitration Award to a status report filed in another county court assuredly is not an application to confirm an arbitration award under Section 17. Rather, as set forth above, SunLink lawfully "beat" ACE to the courthouse and SunLink chose its forum to confirm the Award – federal court, not the improper statutory state-court venue ACE chose – after the fact.

### 2. The [geographical] inconvenience of the federal forum.

This factor *supports denial* of the ACE Motion as ACE's Application to Vacate. If ACE had filed it timely and in the correct venue (which ACE did not), it would have been pending in Suffolk County Superior Court, which is in Boston, where this Court sits. In fact, the state and federal courthouses are within a handful of city blocks of each other as this Court knows. ACE does not credibly argue otherwise in the ACE Motion.

### 3. The desirability of avoiding piecemeal litigation.

This factor *supports denial* of the ACE Motion. Allowing the Barnstable Superior Court to adjudicate whether to confirm or vacate the Award actually will *cause* piecemeal litigation. As described above, the merits of the parties' arbitrated dispute are not even before the Barnstable Superior Court. Rather, the claims contained in SunLink's Barnstable County

complaint relate solely to bonds issued by Berkley and Arch, and only as to six (6) of the nine (9) bonds issued on the projects at issue.  The bonds that are the subject of the Dukes County lawsuit are not before the Barnstable Superior Court.  Nor are the claims under Chapter 93A or any amounts owed by ACE above and over the payment bonds issued.  <u>In comparison, all of the claims underlying the Arbitration are before this Court in the federal proceeding</u>.  As a result, the parties should adjudicate the merits of SunLink's claim to confirm and ACE's claim to vacate the Award here (while staying any proceedings against the bonds in the Barnstable County and Dukes County lawsuits until the appropriate time, i.e., keeping the agreed-to *status quo* in the state courts).

### 4. The order in which the forums obtained jurisdiction.

This factor **supports denial** of the ACE Motion.  As described above – and contrary to ACE's description of the underlying events – SunLink's federal lawsuit was and is the first filed lawsuit seeking either to confirm or vacate the Award.  ACE's arguments otherwise are, again respectfully, absurd and frankly disingenuous.

### 5. Whether state or federal law controls.

This factor **supports denial** of the ACE Motion.  As ACE admits in the ACE Motion, federal and state law concerning either confirming or vacating arbitration awards are, for all present intents and purposes, substantively "indistinguishable."  *See* ACE Mot., p. 3. Furthermore, ACE asserts that the arbitration provision implicates questions of federal constitutional law.  *See* ACE Mot., p. 4.  Also, according to the First Circuit, "the presence of federal-law issues must always be a major consideration weighing against surrender . . . [and] only in rare circumstances will the presence of state-law issues weigh in favor of that surrender." *Rojas-Hernandez v. Puerto Rico Elec. Power Auth.*, 925 F.2d 492, 496 (1st Cir. 1991) (original

brackets and internal quotation marks omitted).  ACE has not even attempted to demonstrate that any such rare circumstances exist here.

Furthermore, ACE's sundry other half-developed or undeveloped arguments are wholly unpersuasive.  First, although the parties' contracts contain a Massachusetts choice of law provision (*see* ACE Motion, p. 3), abstention is "appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River,* 424 U.S. at 815.  The mere fact that Massachusetts law governs the contracts does not arise to the level of an appropriate exercise of abstention contemplated by *Colorado River*.  Second, any suggestion by ACE that state courts are the preferred forum to interpret state law in diversity cases is belied by the First Circuit's familiar mandate – well known to this Court – that "[a] federal court sitting in diversity jurisdiction and called upon in that role to apply state law is absolutely bound by a current interpretation of that law formulated by the state's highest tribunal." *Daigle v. Maine Med. Cent.,* 14 F.3d 684, 689 (1st Cir. 1994).

**6.     The adequacy of the state forum to protect the parties' interests.**

This factor **supports denial** of the ACE Motion.  A state forum operates against a federal court's "surrender of jurisdiction" where the state forum "may not be adequate to adjudicate the claims." *Rojas-Hernandez*, 925 F.2d at 496.  Here, statutorily, Barnstable County is not the appropriate venue to hear arguments seeking to confirm or vacate the Arbitration Award.  Nor is it an appropriate forum substantively as Barnstable County only has before it bond claims concerning six (6) out the nine (9) projects at issue in the Arbitration, none of the claims brought against ACE in the Arbitration above, and none of the amounts beyond what the sureties may owe under payment bonds.  ACE does not credibly argue otherwise in the ACE Motion.

7.      **The vexatious or contrived nature of the federal claim.**

This factor *supports denial* of the ACE Motion.  There is nothing vexatious or contrived about SunLink's Verified Petition.  ACE does not credibly argue otherwise in the ACE Motion.

8.      **Respect for the principles underlying removal jurisdiction.**

This factor *supports denial* of the ACE Motion.  If ACE had filed an Application to Vacate in Suffolk Superior Court, SunLink absolutely would have removed the action to federal court based on diversity jurisdiction.  There exists strong public policy favoring removal as SunLink is a foreign corporation without a principal place of business in Massachusetts and ACE is domiciled in Massachusetts.  *See Weststar Assocs., Inc.*, 752 F.2d at 7 (stating where diversity of citizenship exists between the parties, section 9 of Federal Arbitration Act "was precisely meant to enable the district court for the district within which the award was made to exercise personal jurisdiction over the parties to the award").  ACE does not credibly argue otherwise in the ACE Motion.

## II.    THERE IS NO CLAIMS SPLITTING WARRANTING DISMISSAL OR ABSTENTION.

Seemingly, although ACE does nothing meaningful to develop the argument in the ACE Motion, ACE contends that this Court should dismiss or abstain because the federal action implicates some form of "claim splitting."  The only claim splitting here, however, is urged and perpetrated by ACE.  Again, as set forth above, this federal proceeding deals with all claims between SunLink and ACE that were arbitrated by the parties on the nine (9) projects at issue and all amounts awarded by the arbitrator under those claims, including under Chapter 93A.  The Barnstable County lawsuit deals with separate bond claims against sureties for six (6) of the nine (9) projects and not the full amount of the awards from the Arbitration.  SunLink's claims against the sureties in the Barnstable County lawsuit (and the Dukes County lawsuit) arise out of

and under payment bonds, whereas SunLink's claims against ACE in the Arbitration arose out of and under purchase and sale contracts. The parties to the Arbitration are not identical to the parties to the state-court actions, nor are the claims or defenses, no matter what level of abstraction or obfuscation ACE applies to these circumstances.

## III.   THE MASSACHUSETTS APPEALS COURT'S *CYBULSKI V. VAIANAI* DECISION DOES NOT CONTROL.

ACE's reliance on *Cybulski v. Vaianai*, 75 Mass. App. Ct. 382 (2009) – as asserted forth in ACE's Supplemental Memorandum of Law – does not lend any support to the ACE Motion because *Cybulski* is not analogous on its facts. In particular, the Appeals Court was presented with the following in *Cybulski*:

- The plaintiff filed an action for negligence in Middlesex Superior Court.

- After preliminary motion practice, the parties agreed to arbitrate the claims at issue in the action and the Middlesex Superior Court granted a continuance to allow the arbitration to proceed.

- The arbitration hearing took place in Bristol County and the arbitrator entered an award in favor of the defendant.

- The defendant then sought to confirm the award in Middlesex Superior Court.

- The plaintiff filed an opposition there *and* an application to vacate the award in Bristol Superior Court.

*See Cybulski*, 75 Mass. App. Ct. at 383. Upon review, the Appeals Court concluded that because the parties had begun a civil action in Middlesex Superior Court, *then suspended that proceeding* and agreed to arbitrate the merits of that, the parties must file their application to confirm or vacate the award in Middlesex Superior Court. *See id.* at 382. In doing so, the Appeals Court instructed lower courts – when faced with (1) an action between the same parties in a first court, (2) if an action that was filed before *the arbitration that actually generated the reference to arbitration* remains open after the arbitration, a second court should "weigh the advantages of

efficiency and continuity anchoring the dispute in the original court" and "often transfer the parties' application" to the first court. *Id.* at 386.

The facts underlying the *Cybulski* decision plainly are not present here.  Rather, the Barnstable County lawsuit does not predate the Arbitration and certainly the parties did not agree to arbitrate their dispute as a result of that lawsuit.  In fact, the claims in the Barnstable County lawsuit are not within the claims subject to arbitration clauses in the parties' underlying agreements.  Rather, as set forth above, they are statutory bond claims against non-parties to the Arbitration.  The parties in the Barnstable County lawsuit did <u>not</u> agree to arbitrate any bond claims.  ACE is a named defendant in those state-court proceedings because it is jointly and severally liable *under the bonds* as the named "Principal."  Accordingly, any concerns voiced by the Appeals Court in *Cybulski* (such as unnecessary work on the second court, duplicative litigation, forum shopping, and the risk of inconsistent results) simply do not exist here.  Moreover, any redundant work ACE has had to do is brought upon ACE by its own conduct—filing its application to vacate in the wrong Superior Court *after* SunLink triggered jurisdiction in this Court by filing a Verified Petition to Confirm.

## IV.    ACE DID NOT FOLLOW THIS COURT'S LOCAL RULES WHEN FILING THE ACE MOTION OR ACE'S "SUPPLEMENTAL MEMORANDUM OF LAW."

This Court's Local Rules are clear:  "**No motion shall be filed** unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."  *See* Loc.R. 7.1(a)(2) (emphasis added).  ACE, however, filed the ACE Motion and ACE's Supplemental Memorandum of Law without providing a Rule 7.1(a)(2) Certificate.  That is because ACE did not confer and attempt in good faith to narrow the issues prior to filing each document or obtain leave of this Court to submit a supplemental memorandum.  Assuredly, ACE was aware of the Local Rules as it provided a Corporate Disclosure Statement pursuant to Local Rule 7.3(A) with

the ACE Motion.  In turn, failure to follow the Local Rules may warrant dismissal as well as other sanctions.  *See* Loc.R. 1.3.  This Court may rightfully deny the relief requested in the ACE Motion on ACE's failure to follow the Local Rules.

### REQUEST FOR ORAL ARGUMENT

Pursuant to LR 7.1(d), SunLink respectfully requests the opportunity to present oral argument with respect to its Opposition to ACE's Motion to Dismiss or Abstain.

### CONCLUSION

For the foregoing reasons, this Court should deny ACE's Motion to Dismiss or Abstain, award SunLink its attorneys' fees and costs in having to oppose it, and grant such further relief that this Court deems appropriate.

Respectfully Submitted,

SUNLINK CORPORATION,
Claimant,

By its attorneys,


/s/ Paul J. Murphy
Paul J. Murphy (BBO # 363490)
David G. Thomas (BBO # 640854)
Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Tel: 617-310-6000
Fax:  617-310-6001
Dated:  November 24, 2015
murphyp@gtlaw.com
thomasda@gtlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent all those non-registered participants on November 24, 2015.

/s/ Paul J. Murphy
Paul J. Murphy, Esq.