**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

---

SUNLINK CORPORATION,

       Plaintiff,

v.

AMERICAN CAPITAL ENERGY, INC.

       Defendant.

Case No.:  1:15-cv-13606-ADB

---

### PLAINTIFF SUNLINK CORPORATION'S OPPOSITION TO DEFENDANT AMERICAN CAPITAL ENERGY, INC.'S "MOTION FOR FINDING THAT APPLICATION TO VACATE FILED AND SERVED IS RESPONSIVE TO PETITION TO CONFIRM ARBITRATION AWARD AS DEFINED IN 9 USC § 12"

#### PRELIMINARY STATEMENT

American Capital Energy, Inc. ("**ACE**") intentionally has created a quagmire of duplicitous and unnecessary filings in this Court and Barnstable Superior Court that appear designed to delay confirmation of SunLink Corporation's ("**SunLink**") arbitration awards, which issued on August 18 and October 6, 2015.  That ACE attempts to blame SunLink for the circumstance in which ACE now finds itself is absurd.  Unquestionably, SunLink was first to seek confirmation of its arbitration awards by filing a petition in this Court.  Instead of *simply* filing an application to vacate the awards in this Court within 30 days, as required by the Massachusetts Uniform Arbitration Act ("**MUAA**"), ACE decided to ignore SunLink's petition and the MUAA's venue provision (requiring any application to be filed in Suffolk Superior Court) by filing an application in Barnstable Superior Court.  Concomitantly, ACE moved to dismiss SunLink's petition by urging this Court to "decline jurisdiction."  In addition, to support its collateral attack of SunLink's first-filed petition, and in an effort to make the facts of this case

appear analogous to *Cybulski v. Vaiani*, 75 Mass. App. Ct. 382 (2009), ACE blatantly misrepresented to this Court and the Barnstable Superior Court that (i) SunLink had sought the Barnstable Superior Court's "ruling to compel arbitration" and (ii) the Barnstable Superior Court had established jurisdiction over the arbitration since 2014.   None of those then fundamental assertions were true.

The Barnstable Superior Court was not mislead by the artifice ACE had constructed and, based on SunLink's motion, appropriately struck ACE's application.   ACE was well aware of the import of its actions and the fact that ACE had *not* filed an application to vacate in this Court as ACE's counsel informed the Honorable Gary A. Nickerson (in open court) that if he struck ACE's Application, "**the case is over.  It can't be refiled or something from there**."   After ACE's application was struck, ACE even attempted to get Judge Nickerson to transfer the then struck application to this Court.   Judge Nickerson did not enter ACE's proposed "Order for Transfer."   Nor is there any known procedural mechanism for transferring a single motion from state to federal court (especially one that has been struck).

ACE's delay tactics and contrived arguments continue in this Court.   Among other things, and despite this Court's Notice of Scheduling Conference, ACE refused to join SunLink in submitting a Joint Scheduling Report in advance of this Court's Scheduling Conference. Rather, ACE moved to continue the conference, which this Court appropriately refused to do. This Court, however, gave ACE one last chance: after hearing from the parties' counsel at the Scheduling Conference, this Court entered an order allowing ACE to submit a "motion for leave" to file an application to vacate with this Court.   Remarkably, ACE chose not to do that. Rather, despite having moved to dismiss this proceeding and admitting to Judge Nickerson that ACE had *not* filed an application in this Court, ACE filed a bizarre motion stating that ACE had

already filed an application in this Court, pursuant to the Federal Arbitration Act ("**FAA**"), on November 13, 2015.  Make no mistake, ACE is now actually arguing that an exhibit to ACE's motion to dismiss that bears a case caption of an entirely different proceeding with additional parties is "a responsive pleading" filed in this Court.

Ultimately, no matter how this Court views ACE's aberrant conduct and illogical arguments, the end result will be the same – the arbitration awards will be confirmed.  <u>First</u>, this Court should not deem an exhibit attached to ACE's motion to dismiss to be a "responsive pleading" or a filed application to vacate as ACE coyly urges.  This is not a substance over form argument as ACE parsimoniously suggests.  ACE sought to dismiss this action and convince this Court to decline jurisdiction over SunLink's first-filed petition to confirm.  ACE cannot now turn an exhibit to that motion to dismiss into a previously *filed* application to vacate in this Court under the circumstances.  One cannot ask a court *not to hear* a particular issue and then ask the court *to hear* the same issue using the same document in support of both *mutually exclusive* arguments.  That type of dizzying "kettle logic"[1] should not find any support in this Court, or any other.

<u>Second</u>, even if this Court deems an exhibit attached to ACE's now-denied motion to dismiss as a previously filed application to vacate, ACE's "filing" was *untimely*.  As ACE admits in its memorandum, the parties' arbitration is governed by the substantive law of Massachusetts.  Accordingly, the MUAA's – not the FAA's – timing requirements control when ACE had to file its application to vacate with this Court.  The MUAA requires such a filing within 30 days of the arbitration award being issued.  Here, ACE's filing was due on November 5, 2015.  ACE's exhibit to its motion to dismiss was submitted on November 13, 2015 – *eight days too late*.  In

---

[1] *The Interpretation of Dreams*, in Standard Edition of the Complete Psychological Works of Sigmund Freud, (trans. A. A. Brill), 4:119-20.

turn, the MUAA and relevant case law are clear on what a court *must* do in the absence of a timely filed application to vacate – a court *must* confirm the award.  There are no options.  This is the situation presented here *and it was created solely by ACE*.  Considering that and ACE's misrepresentations in two judicial proceedings, ACE deserves no equitable considerations from this Court under the circumstances.

Third, to consider an exhibit to ACE's denied motion to dismiss a *timely* filed application to vacate, this Court will have to find, among other things, that (i) the exhibit actually was ACE's attempt to file an application to vacate as opposed to what it was – a document supporting ACE's motion to dismiss this matter – and despite ACE's admission that it had not filed an application here, and (ii) the FAA, not the MUAA, applies despite parties' choice of law and ACE's admission that the substantive law of Massachusetts governs.  SunLink prays that this Court not engage in the mental and legal gymnastics it would take to reach such a result.  Rather, as ACE's quandary is of ACE's own making and as ACE's decisions, collateral attacks, and conduct have only delayed the ultimate result in this matter, this Court should deny ACE's motion and enter an order confirming SunLink's arbitration awards.  That result should not be delayed further.[2]

## RELEVANT PROCEDURE AND FACTS

### A.    The Parties Dispute; the Arbitration Awards.

1.    The Parties' Contracts and ACE's Failure to Pay SunLink.  In 2013, ACE and SunLink executed various Sales Contracts through which ACE agreed to purchase solar ground mount racking systems to be used in nine solar construction projects on Cape Cod and the

---

[2] If the Court does find ACE's exhibit to be a timely filing, however, SunLink requests an expedited hearing on ACE's "application to vacate" as the grounds on which it is premised are entirely baseless, as set forth in SunLink's Opposition to ACE's Application to Vacate, as previously filed with Barnstable Superior Court, which SunLink files as an exhibit to this Opposition.

Islands.  Each Sales Contract contained an arbitration clause and the following clause concerning the parties' choice of law that would govern any disputes arising out of the Sales Contracts:

> **GOVERNING LAW.**   This Sales Contract, including the accompanying Proposal, all attached Appendices, schedules and exhibits and all Purchase Orders shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to its conflicts of law provisions. The United Nations Convention on the International Sale of Goods will specifically not apply to transactions taking place pursuant to this Sales Contract.

*See* Exhibit 1 (exemplar contract).[3]   Payments for SunLink's products were secured by payment bonds issued by Arch Insurance Company ("**Arch**") or Berkley Regional Insurance Company/Berkley Insurance Company ("**Berkley**") ("**Payment Bonds**").   *See* Exhibit 2 (exemplar bond).  Unlike the Sales Contracts, the Payment Bonds did *not* contain an arbitration clause.  *See id.*  The Payments Bonds, however, contained a one-year limitations period for filing claims under the bonds.  *See id.* § 12.  Despite SunLink's delivery of the solar racking systems to the nine projects, ACE failed to pay SunLink.  *See* Exhibit 3, at pp. 23-34.  As of April 30, 2015, the total amount ACE owed to SunLink was $7,856,649.60.  *See id.*

        2.     SunLink's Demand for Arbitration; Payment Bond Actions.   On October 20, 2014, SunLink demanded arbitration ("**Arbitration**").   *See* Exhibit 4.  On October 21, 2014, after initiating the Arbitration, SunLink filed complaints against Arch, Berkley, and ACE (*only* asserting claims under the Payment Bonds themselves and not asserting any claims against ACE brought in the Arbitration) in Barnstable County and Dukes County Superior Courts.   *See* Exhibit 5 ("**Bond Actions**").  *See id.* at p. 1.  On December 23, 2014, Arch, Berkley, SunLink, and ACE agreed to stay the Bond Actions.

---

[3]All exhibits referenced herein are attached to the Declaration of David G. Thomas, dated April 1, 2016 ("**Thomas Declaration**"), as filed contemporaneously herewith.

3.     The Arbitration Awards.  On August 18, 2015, the Arbitrator issued a Partial Final Award granting SunLink (i) $7,856,649.60 in damages, plus late fees and interest, (ii) $1,041,407.94 in Chapter 93A damages, and (iii) attorneys' fees and costs to be submitted by SunLink in a fee application.  *See* Exhibit 3.  On October 6, 2015, the Arbitrator issued a Final Award granting SunLink an additional $1,287,629.60 in attorneys' fees and costs, among other things.  *See* Exhibit 6.

**B.     SunLink's Verified Petition.**

4.     After the Final Award issued, both ACE and SunLink had a choice of two forums in which to either confirm or vacate the Partial Final and Final Awards.  Specifically, the MUAA lays venue for confirmation or vacatur in the county in which the underlying arbitration agreement provides or in the county in which the arbitration hearing was held if the agreement does not so provide.  *See* MASS. GEN. LAWS c. 251, § 17.  Here, that would have been Suffolk County.  Alternatively, if there exists diversity jurisdiction, a party may seek confirmation or vacatur in this Court.  *See* 28 U.S.C. § 1332.

5.     On October 20, 2015, SunLink filed its Verified Petition to Confirm Arbitration Award with this Court as diversity jurisdiction existed.  *See* Document 1.  At the time, ACE had *not* filed an Application to Vacate the Award in any court.  SunLink served its Verified Petition on ACE on October 27, 2015 (after ACE's counsel failed to accept service).  Therefore, as of the end of October, this Court unquestionably had jurisdiction over SunLink's Verified Petition and SunLink was the first to file an action pursuant to the MUAA.

**C.     ACE's Failed Collateral Attack on SunLink's Verified Petition.**

6.     ACE's "Emergency" Application to Vacate.  Instead of filing an Application to Vacate in this Court in response to the Verified Petition or within thirty days of the issuance of

the Final Award (whichever came earlier),[4] on November 5, 2015, ACE filed an Emergency

Application to Vacate Arbitration Award ("**ACE's Application**") in Barnstable Superior Court.

*See* Exhibit 7.   ACE did not file a similar application in Dukes County Superior Court (the

Barnstable Action did not deal with all of the projects at issue).   Also, at the time, the Barnstable

proceeding was still stayed.   Nowhere in ACE's Application did ACE explain what emergent

circumstances supported its emergency application or why ACE believed it was appropriate to

file the application in Barnstable Superior Court considering (i) the express venue provision in

MASS. GEN. LAWS c. 251, § 17 (requiring a filing in Suffolk Superior Court) and (ii) the

pendency of SunLink's earlier filed Verified Petition in this Court.   Indeed, notably absent from

ACE's Application was any discussion about (let alone citation to) *Cybulski v. Vaiani*, 75 Mass.

App. Ct. 382 (2009).  *See id.*

       7.     SunLink's Emergency Motion to Strike ACE's Application.   On November 12,

2015, SunLink filed an Emergency Motion to Strike ACE's Application ("**Motion to Strike**").

*See* Exhibit 8.   Put simply, SunLink argued that ACE was unlawfully forum shopping and

ignoring the jurisdiction conferred on this Court by the filing and service of SunLink's Verified

Petition.  *See id.*, p. 3.   ACE was also ignoring MASS. GEN. LAWS c. 251, § 17 (requiring a filing

in Suffolk Superior Court).   Moreover, SunLink made clear that the Barnstable Superior Court

action was merely a statutory bond action, which dealt only with whether or not Arch and

Berkley would pay under the payment bonds they issued; it did not address the underlying

dispute that was the subject of the Arbitration.  *See id.*, p. 1.

       8.     ACE's Motion to Dismiss.   On November 13, 2015, ACE filed a "Motion to

Dismiss or Abstain" and Memorandum in Support with this Court.   *See* Document 7.   In its

---

[4] Alternatively, before SunLink had filed its Verified Petition, ACE could have filed an Application to Vacate in
Suffolk Superior Court.  *See* MASS. GEN. LAWS C. 251, § 17.   ACE did not.   Regardless, if ACE had done so,
SunLink would have removed that application to this Court.

Motion and Memorandum, ACE asserted that (i) the Barnstable Superior Court action concerned "the identical claim and dispute" in which SunLink has submitted to this Court in the Verified Petition, (ii) SunLink's Verified Petition was the filing of a "second action" which constituted "impermissible claim splitting," and (iii) the Barnstable Superior Court had established jurisdiction over "this matter since 2014." *See id.*, Motion, p. 1; Memorandum, p. 5. Those assertions, however, were demonstrably false and/or misleading. Unquestionably, the bond claims at issue in Barnstable are not identical to claims against ACE in the Arbitration. Nor was the Verified Petition a "second action" concerning the Arbitration Awards. The Bond Actions do not address the merits of the Arbitration Awards – they just deal with payment under the bonds. Neither party had sought to compel arbitration or to confirm or vacate the Awards prior to SunLink's filing of the Verified Petition. Nor had the Barnstable Superior Court established jurisdiction over the Arbitration since 2014 (or ever). The only jurisdiction established by the Barnstable Superior Court was over the provisional bond filings SunLink made, which the parties immediately agreed to stay. Nevertheless, on the basis of those false and/or misleading statements, ACE requested this Court to dismiss the Verified Petition and to "decline jurisdiction." *See id.* Notably absent from ACE's Motion to Dismiss and Memorandum was any discussion about (let alone citation to) *Cybulski v. Vaiani*, 75 Mass. App. Ct. 382 (2009). *See id.*

9.    ACE's "Supplemental Memorandum of Law". On November 20, 2015, without leave of this Court or even conferring with SunLink's counsel, ACE filed a Supplemental Memorandum of Law. *See* Document 10. The purported purpose of the supplemental memorandum was to inform this Court of *Cybulski v. Vaiani*, 75 Mass. App. Ct. 382 (2009), which ACE referred to as "applicable precedent." *See id. Cybulski*, however, addressed a venue question under the MUAA in a case where the parties did *not* have a pre-existing arbitration

agreement and were in active litigation in Superior Court.  *See Cybulski*, 77 Mass. App. Ct. at

383.  During that litigation, however, the parties decided – in the context of the pending litigation

– *to resolve the claims involved in the litigation* through binding arbitration.  *See id.*   In that

specific instance, the Appeals Court concluded the Superior Court in which the existing litigation

was pending (before the parties agreed to arbitration) would be the appropriate venue to confirm

or vacate the resulting award regardless of MASS. GEN. LAWS c. 251, § 17.  *See id.* at 386.  That

result makes sense considering principles of judicial efficiency.  Those circumstances, however,

are not analogous to the SunLink/ACE Arbitration because:

> (i).    an arbitration agreement existed prior to any litigation,
>
> (ii).    SunLink had commenced arbitration outside of any pending litigation,
>
> (iii).    the parties were not litigating the merits of their dispute in Barnstable Superior Court at any time, and
>
> (iv).    the parties in the Barnstable action had not agreed at any time to arbitrate any claims under the payment bonds at issue in that case.

In what could only have been an effort to mislead this Court into believing the circumstances

before it were more like those in *Cybulski*, however, ACE brazenly asserted that SunLink sought

the Barnstable Superior Court's "ruling to compel arbitration."  *See* Document 10, Supplemental

Memorandum, at p. 3.[5]  That assertion, which went to a fundamental issue before this Court, was

and is plainly and demonstrably false.

10.    ACE's Opposition to SunLink's Motion to Strike.  On November 23, 2015, ACE

filed its Opposition to SunLink's Motion to Strike.  *See* Exhibit 9.  Much like it did in its Motion

to Dismiss, ACE asserted in its Opposition that SunLink sought the Barnstable Superior Court's

"ruling to compel arbitration."  *See id.*, Memorandum, at p. 1.  In addition, ACE represented to

the Barnstable Superior Court that ACE, when it submitted a status report, "advised the Court, in

---

[5] ACE submitted two documents entitled Supplemental Memorandum in the same filing.

compliance with precedent, that ACE would be filing a Motion to Vacate the award in this Court [Barnstable Superior Court], as required by *Cybulski*." *See id.*, Opposition, at p. 1, ¶ 2. ACE's statements, much like many of ACE's other statements to this Court and the Barnstable Superior Court, were misleading. As stated above, at no point did SunLink seek to compel the Arbitration in Barnstable Superior Court (or any other court for that matter). Nor did ACE even mention *Cybulski* in its status report. *See* Exhibit 10. Furthermore, ACE did not even specify which Superior Court it intended to file is Application. *See id.* Nor would the submission of a status report with ACE's vague prognostication abrogate MASS. GEN. LAWS c. 251, § 17 and 28 U.S.C. § 1332 or deprive SunLink of its right to file the Verified Petition in this Court or remove any Application to Vacate if one actually had been filed properly in Suffolk Superior Court.

11.    Hearing on SunLink's Motion to Strike. On January 26, 2016, the Honorable Gary A. Nickerson heard oral argument on SunLink's Motion to Strike. *See* Exhibit 11. During oral argument, apart from attempting to lay blame on the Clerk of Court for ACE's errant filing, ACE relied primarily on *Cybulski* as for the reason why ACE filed ACE's Application in Barnstable Superior Court – despite not mentioning *Cybulski* in its status report, Application to Vacate, or in its initial Motion to Dismiss filed with this Court. *See id.* pp. 15-19. ACE's purported reliance is dubious. If ACE were aware of *Cybulski* prior to November 5, 2015, ACE would have referenced *Cybulski* in ACE's Application or in ACE's initial moving papers filed with this Court. ACE did not. Rather, ACE first mentioned *Cybulski* in its Supplemental Memorandum filed with this Court on November 20, 2015. The more likely scenario is that ACE discovered *Cybulski* in conducting research in response to SunLink's Emergency Motion to Strike. It could not have played any part in ACE's decision to file ACE's Application in Barnstable Superior Court. Nevertheless, ACE recognized the consequence of ACE's decision

to file an application only in Barnstable Superior Court when its counsel informed Judge Nickerson – in open court – that if he struck ACE's Application, "**the case is over.  It can't be refiled or something from there.**"  *See id*. p. 18 (emphasis added).  ACE's counsel also urged Judge Nickerson to "refer" ACE's Application to this Court.  *See id.*  Clearly, based on those statements and arguments, ACE undeniably did not believe it had previously filed an Application to Vacate in this Court.

12.     Order on SunLink's Motion to Strike; ACE's Attempt to Obtain an "Order of Transfer".   On February 18, 2016, the Barnstable Superior Court issued an order allowing SunLink's Motion to Strike.  *See* Exhibit 12.   In doing so, Judge Nickerson stated that "ACE's efforts to Vacate the Arbitration Award belong in Judicial Court where SunLink has already sought to confirm the award."  *See id.*  On February 25, 2016, ACE filed an Emergency Motion to Clarify Ruling, wherein ACE urged the Barnstable Superior Court to transfer ACE's now struck Application to Vacate to this Court.    *See* Exhibit 13.   ACE even included a proposed "Order for Transfer" with its moving papers.  *See id.*  This, of course, is another admission that ACE had *not* already filed its Application to Vacate with this Court (e.g., if ACE had already filed an application with this Court, there would be no need to ask Judge Nickerson to transfer anything).   The very next day, SunLink submitted its Opposition to ACE's then latest "emergency" motion.  *See* Exhibit 14.

13.     On February 25, 2016, ACE also filed an Emergency Motion to Continue Scheduling Conference in this Court.  *See* Document 15.  In that motion, ACE asserted to this Court:

> **It is ACE's position that the Barnstable Superior Court is transferring it's [sic] Cause of Action to this Federal Court.**

*See id.* ¶ 3 (emphasis added).  Assuredly, as of February 25, 2016, ACE did not believe that it had previously filed its Application to Vacate in this Court.  Otherwise, there would be no need to transfer anything to this Court.  SunLink opposed ACE's attempt to continue the Scheduling Conference, *see* Document 17, which this Court ultimately did not continue.

14.    On March 1, 2016, Judge Nickerson clarified his earlier order by endorsement to replace the words "Judicial Court" with "Federal Court."  *See* <u>Exhibit 15</u>.  In doing so, Judge Nickerson explained:

> Alas, my poor penmanship has caused great confusion!  My order of 2.17.16 was for "Federal Court," not "Judicial Court".  Someone in the Clerk's Office was, understandably, unable to read my scrawl.

*See id.*  Most significantly, Judge Nickerson did *not* enter ACE's "Order of Transfer" or otherwise alter his previous order striking ACE's Application to Vacate.  *See id.*

**D.    This Court's Scheduling Conference.**

15.    On February 25, 2016, SunLink submitted a Report pursuant to this Court's Notice of Scheduling Conference.  *See* Document 16.  Despite this Court's Notice (*see* Document 14), ACE opted not to join the filing.  *See* Document 16.  On March 3, 2016, this Court denied ACE's Motion to Dismiss, but afforded ACE the opportunity to "file a Motion for Leave to File a motion to vacate or modify the arbitration award" by no later than March 18, 2016.  *See* Document 20.

<u>**ARGUMENT**</u>

**I.    THE MASSACHUSETTS ARBITRATION ACT APPLIES TO THIS PROCEEDING.**

The FAA does not preempt state law that sets time limits on motions to vacate.  *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 476 (1989) (enforcing parties' selection by contract of California arbitration law where

there was no interference with FAA policy).   Rather, a choice-of-law analysis determines whether a state or federal time frame will govern a party's request for modification.   *See Nationwide Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 57 F.Supp.3d 112, 117 n.8 (D. Mass. 2014) (Saris, J.).

In a contract dispute, Massachusetts applies a "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." *See Adelson v. Hananel,* 2009 WL 5905389, *6 (D. Mass. Feb. 24, 2009) (Saris, J.) (quoting *Bushkin Associates, Inc. v. Raytheon Co.,* 393 Mass. 622, 631 (1985)); *see also Millipore Corp. v. Travelers Indem. Co.,* 115 F.3d 21, 30 (1st Cir.1997) (citing *Bushkin*).   This functional approach is guided by the Restatement (Second) of Conflict of Laws.  *See Adelson,* 2009 WL 5905389 at  *6 (citing *Clarendon Nat. Ins. Co. v. Arbella Mut. Ins. Co.,* 60 Mass. App. Ct. 492, 495 (2004)).   The general Restatement factors specific to contracts concern the places of negotiation, contracting, and performance as well as the domicile of the parties and determination of the jurisdiction with the "most significant relationship to the transaction and the parties."  *See Adelson,* 2009 WL 5905389 at *6; Restatement (Second) of Conflict of Laws*,* § 188 (1971).  Those factors weigh heavily in favor of applying Massachusetts law because:

(i).    ACE is based in Massachusetts,

(ii).    ACE negotiated the contracts in Massachusetts,

(iii).    the Sales Contracts were performed in Massachusetts,

(iv).    the projects underlying the Sales Contracts all took place in Massachusetts,

(v).    ACE breached the Sales Contracts in Massachusetts, and

(vi).    the parties agreed to have any arbitration in Massachusetts (which is where the Arbitration was held).

13

Furthermore, the parties expressly and knowingly agreed that the Sales Contracts and any dispute thereunder would be governed by Massachusetts law.  In such an instance, a federal court should follow the MUAA – not the FAA – when dealing with confirmation or vacatur of an arbitration award.  *See Volt Information Sciences, Inc.*, 489 U.S. at 479 (stating "[w]here, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA"); *see Restaurant Consulting Services, Inc. v. Montzuris*, 253 F. Supp. 2d 45, 51 (D. Mass. 2003) (Young, J.) (court may accept such an agreement without independent inquiry); *NPS LLC v. Ambac Assur. Corp.*, 706 F. Supp. 2d 162, 168 (D. Mass. 2010) (Woodlock, J.) ("In Massachusetts, a contract's choice of law provision is generally honored, provided that it does not conflict with public policy. . . .  Such provisions govern the rights and duties of the parties under the agreement."); *see also Rhodes v. Consumers' Buyline, Inc.*, 868 F. Supp. 368, 373 (D. Mass. 1993) (Keeton, J.).  Even ACE admits that "*Massachusetts substantive law would govern.*"  *See* Document 22, p. 6 (emphasis added); *see also* Document 7, p. 7 ("*Since the agreement is governed by Massachusetts Law, the interpretation of that law would best be determined initially by the State Courts.*") (emphasis added).  As such, this Court must look to the MUAA to assess the parties' rights and responsibilities in connection with confirming and vacating the Arbitration Awards.

## II.  AN EXHIBIT TO ACE'S MOTION TO DISMISS CANNOT BE DEEMED THE FILING OF AN APPLICATION TO VACATE IN THIS COURT UNDER THE CIRCUMSTANCES.

Despite moving to dismiss SunLink's Verified Petition (and instead of filing a motion for leave to file an application to vacate as requested by this Court), ACE now urges this Court to find that ACE "did not contest the Federal Court's Jurisdiction but filed a *responsive pleading*, including the Application to Vacate the Award in this Court."  *See* Document 22, p. 3 (emphasis

added).  ACE's argument is nonsensical.  An exhibit to a *motion to dismiss* is not a responsive pleading no more than a motion to dismiss is a responsive pleading.[6]  *Compare* FED. R. CIV. P. 7(a) (which defines a "pleading" as a complaint, answer, counterclaim, and reply to an answer); FED. R. CIV. P. 8(b) (which requires parties responding to a pleading to state defenses to each claim and admit or deny the allegations asserted) and FED. R. CIV. P. 12(a)(1) (setting the time for serving a responsive pleading – e.g., an answer or reply to an answer – at 21 days) *with* FED. R. CIV. P. 7(b) (dealing with motions and other papers) and FED. R. CIV. P. 12(b) (dealing with motion asserting certain defenses which must be filed before a responsive pleading is filed).  Nor can ACE rationally assert that an exhibit bearing the caption of another proceeding somehow was a motion filed previously with this Court seeking any relief.  Rather, ACE submitted the exhibit to support ACE's request that this Court "decline jurisdiction" and to let another court grant ACE relief.  *See* Document 7, p. 8.  Similarly, in submitting the exhibit in support of ACE's Motion to Dismiss, the only relief ACE requested was that SunLink's Verified Petition be "DISMISSED."  *See* Document 7, p. 2 (ALLCAPS in original).

Furthermore, if ACE actually had filed its Application to Vacate with this Court on November 13, 2016 – as ACE now argues – there would have been no reason for ACE to plead with Judge Nickerson at oral argument (and later in ACE's motion to clarify) to *transfer* that application *from* Barnstable Superior Court to this Court.  Nor would ACE have felt compelled to inform (i) Judge Nickerson that the application could not be "**refiled**" if struck or (ii) this Court (in ACE's motion to continue conference) that ACE believed Judge Nickerson was "**transferring**" the application to this Court. ACE's latest argument to the contrary is mere folly under the circumstances.  Of course, ACE would not have wanted to file (and did not file) an

---

[6] Section 6 of the FAA provides that any application to a court under the FAA shall be made in the manner provided by law for the "*making and hearing of motions….*"  *See* 9 USC § 6 (emphasis added).

application to vacate with this Court in November of 2015 *because ACE was collaterally attacking SunLink's Verified Petition in Barnstable Superior Court and moving to dismiss that petition in this Court as a result.* ACE cannot now recreate history by relying on an exhibit (bearing the caption of another proceeding with additional parties) attached to a motion that sought to dismiss this proceeding.

Finally, allowing ACE to resurrect its failed attempt to subvert this Court's jurisdiction by adopting the argument ACE presents would not do justice to the policies underlying the MUAA, which call for speedy confirmation of arbitration awards. Based on ACE's miscalculated decisions, these proceedings have been multiplied and delayed needlessly. Furthermore, in ACE's attempt to secure what ACE apparently believed would be a more favorable forum, ACE made false and/or misleading statements to the Barnstable Superior Court and this Court, including ACE's assertions that:

(i).   SunLink had sought the Barnstable Superior Court's "ruling to compel arbitration" (when SunLink had not);

(ii).   the Barnstable Superior Court had established jurisdiction over the Arbitration since 2014 (when the Barnstable Superior Court had not);

(iii).   ACE advised the Barnstable Superior Court, in compliance with precedent, that ACE would be filing a Motion to Vacate the award in the *Barnstable* Superior Court as required by *Cybulski* (when ACE had not);[7] and

(iv).   ACE filed a responsive pleading to SunLink's petition in this Court (when ACE had not).

ACE should not be provided any equitable considerations by this Court as a result.

---

[7] As described above, it appears more likely than not that ACE was not at all guided at all by *Cybulski* prior to November 5, 2015. That ACE has wholly abandoned *Cybulski* in its current motion is more than telling.

**III.   EVEN IF ACE'S EXHIBIT TO ITS MOTION TO DISMISS IS SOMEHOW DEEMED AN APPLICATION TO VACATE FILED WITH THIS COURT ON NOVEMBER 13, 2015, IT IS *UNTIMELY* UNDER THE MUAA AND, AS A RESULT, THIS COURT MUST CONFIRM THE ARBITRATION AWARDS.**

The MUAA sets a thirty-day time period for filing an application to vacate an arbitration award.   *See* MASS. GEN. LAWS c. 251, § 12(b).   The Final Award issued on October 6, 2015. Accordingly, ACE had to file an application to vacate in this Court by November 5, 2015.   ACE did not.   Rather, as described in greater detail above, ACE filed an application in the wrong Superior Court, which application was struck.   ACE does not even argue that its now struck state court filing somehow acts as a placeholder for ACE to get a second bite at the apple in this Court.   Rather, ACE relies wholly on an exhibit to ACE's Motion to Dismiss filed on November 13, 2015.   That exhibit, however, was filed eight days too late.

In turn, the MUAA and relevant case law are clear on what a court must do under in light of an untimely filing:

> Upon application of a party, the court *shall* confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections twelve and thirteen.

*See* MASS. GEN. LAWS c. 251, § 11 (emphasis added); *Local 589, Amalgamated Transit Union v. MBTA*, 397 Mass. 426, 431 (1986) ("all challenges to an arbitrator's award must be brought within the time frame specified by the statute"); *Lumbersmans Mut. Cas. Co. v. Malacaria*, 40 Mass. App. Ct. 184, 192 (1996) ("thirty-day limit during which action must be commenced to vacate or modify an award has been strictly construed"); *Bernstein v. Gramercy Mills, Inc.*, 16 Mass. App. Ct. 403, 408 (1983) ("commencement of an action to confirm an award does not postpone or extend the time for making an application to vacate the award").   Again, although ACE does not even make the argument, choosing to file an application in another court does not

act as a panacea. *See Taylor v. Nelson*, 788 F. 2d at 220, 225-26 (4th Cir. 1986) (declined to give the benefit of any due diligence or tolling exceptions to filing rule where nothing prevented plaintiff to file a timely motion); *see also Katz, Nannis & Solomon PC v. Levine*, SJC 11902 (March 9, 2016) (attached as Exhibit 16) (the MUAA must be strictly construed).  Consequently, this Court *must* confirm the Awards even if it accepts ACE's exhibit to its Motion to Dismiss as an actual filing of an Application to Vacate with this Court.

## IV.     EVEN IF THIS COURT CONSIDERS ACE'S EXHIBIT TO ITS MOTION TO DISMISS AS A *TIMELY* FILED APPLICATION TO VACATE, THE GROUNDS ON WHICH ACE SEEKS TO VACATE ARE NOT MERITORIOUS.

Although this Court need not reach the substantive issues raised in ACE's now struck Application to Vacate or in the exhibit attached to ACE's motion to dismiss, if this Court is so inclined, ACE's substantive arguments are as misinformed as ACE's procedural arguments underling the quagmire of duplicitous proceedings ACE has created.  *See* Exhibit 17 (containing SunLink's Opposition to ACE's Motion to Vacate and Exhibits, all as previously filed in the Barnstable Superior Court).

## V.     SUNLINK IS ENTITLED TO RECOVER ALL OF ITS POST-ARBITRATION FEES AND COSTS UNDER MASSACHUSETTS GENERAL LAWS CHAPTER 93A.

A court may award fees and costs associated with upholding an arbitration award under MASS. GEN. LAWS c. 93A.   *See Janney Montgomery Scott LLC v. Tobin,* 571 F.3d 162, 165 (1st Cir. 2009) (allowing a district court to award fees after upholding an arbitration award involving Chapter 93A); *see also Drywall Sys., Inc. v. ZVI Constr. Co., Inc.*, 435 Mass. 664, 674 (2002) (allowing successful party confirming arbitration award to obtain award of attorneys' fees and costs arising from confirmation proceedings).   Indeed, an award of such fees is the usual practice.  *See York Mgmt. v. Castro*, 406 Mass. 17, 19 (1989) (explaining that Chapter 93A's

provision for reasonable attorneys' fees "would ring hollow of it did not necessarily include a fee for the appeal."); *Tobin*, 571 F.3d at 166 ("an award of fees to a party that successfully fends off a petition to vacate a chapter 93A arbitration would be the usual practice").  Consequently, SunLink should be awarded its fees and costs in having to deal with ACE's post-arbitration filings in Barnstable Superior Court and this Court.

<u>C<small>ONCLUSION</small></u>

For the foregoing reasons, this Court should enter an order:

1.  denying ACE's Motion,

2.  confirming the Arbitration Awards,

3.  awarding SunLink its post-arbitration attorneys' fees and costs (to be submitted by SunLink in a fee and cost application within seven days of this Court's order), and

4.  granting further relief as this Court deems just and equitable.

Respectfully submitted,

SUNLINK CORPORATION,
Claimant,

By its attorneys,


/s/ David G. Thomas_____
Paul J. Murphy (BBO # 363490)
David G. Thomas (BBO # 640854)
Mian R. Wang (BBO # 683656)
Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Tel: 617-310-6000
Fax:  617-310-6001

Dated:  April 1, 2016

## REQUEST FOR ORAL ARGUMENT

SunLink Corporation believes that oral argument may assist the Court and hereby

requests an oral argument on ACE's Motion.

## CERTIFICATE OF SERVICE

I, David G. Thomas, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, if any, on April 1, 2016.

/s/ David G. Thomas
David G. Thomas