# EXHIBIT 6

AMERICAN ARBITRATION ASSOCIATION

----------------------------------------------------------x

SUNLINK CORPORATION,

        Claimant,

  -and-

AMERICAN CAPITAL ENERGY, INC.,

        Respondent.

----------------------------------------------------------x

                                         Case No. 01-14-0001-7516

## FINAL AWARD

I, the undersigned Arbitrator, having been designated in accordance with the arbitration agreements entered into by the above-named parties dated October 15, 2013, and having been duly sworn, and having heard the proofs and allegations of the parties, and having entered a Partial Final Award in this proceeding on August 18, 2015, do hereby issue this FINAL AWARD as follows:

The Partial Final Award fully and finally determined the claims of the parties, with the exception of the amount of attorneys' fees and costs to be awarded to SunLink[1] pursuant to G.L. c. 93A, §§ 2, 11, and the assessment of the fees, compensation and expenses of the arbitration under AAA Commercial Rule R-47(c). In the Partial Final Award, I ordered SunLink to file and serve an application in support of its request for attorneys' fees and costs, including: (a) an itemization of its attorneys' fees, including the date, person, time spent, billing rates, and description of the activities (redacted, as necessary, for privileged material); (b) an itemization of allowable costs, with supporting documentation, as necessary; and (c) an affidavit of counsel verifying the foregoing information as true and accurate and within the scope of a G.L. c. 93A, §§ 2, 11 award.

---

[1] Defined terms and abbreviations are those used in the Partial Final Award.

On August 31, 2015, SunLink filed an Application for an Award of Attorneys' Fees and Costs ("Application"), comprising a memorandum of law, and an Affidavit of its counsel (Paul J. Murphy, Esq.) verifying 53 pages of time records and 40 pages of expense items (including expert witness invoices).

On September 15, 2015, ACE filed an Opposition to SunLink's Application, including an Affidavit of its trial counsel.

On September 23, 2015, SunLink filed a Reply, and, on September 25, 2015, ACE filed a Final Response.[2]

I have carefully reviewed the submissions of the parties on the issue of the reasonable attorneys' fees and costs incurred by SunLink, and set forth below the amount to be awarded based on those filings and the claims and conduct described in the Partial Final Award.

## RULINGS ON CHAPTER 93A ATTORNEYS' FEES AND COSTS

G.L. c. 93A, § 11 (¶ 6) provides:

> If there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action.

Attorneys' fees under Chapter 93A are determined through the "lodestar" method, by multiplying the number of hours reasonably spent litigating the case by a reasonable hourly rate for similar cases in the local market. *See Fontaine v. Ebtec Corp.,* 415 Mass. 309, 325 (1992); *Siegel v. Berkshire Life Ins. Co.,* 64 Mass. App. Ct. 698, 704-6 (2005); *Ross v. Cont'l Res., Inc.,* 73 Mass. App. Ct. 497, 515 (2009).

---

[2] I will not address the various documents and arguments submitted by ACE after the close of hearings and unrelated to the two issues for which I reserved jurisdiction in the Partial Final Award.

2

In awarding attorneys' fees under Chapter 93A, it is appropriate to consider a number of factors, including: "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." *Linthicum v. Archambault*, 379 Mass. 381, 388-9 (1979). "No one factor is determinative and a factor-by-factor analysis … is not required." *Berman v. Linnane*, 434 Mass. 301, 303 (2001). Ultimately, the fees to be awarded to the prevailing party should reflect what the "services were objectively worth," *Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 16 (1st Cir. 1996), and the amount is largely within the Court's (Arbitrator's) discretion. *NASCO, Inc. v. Public Storage, Inc.*, 127 F.3d 148, 154 (1st Cir. 1997).

Where "a single chain of events gives rise to both a common law and a Chapter 93A claim, apportionment of legal effort between the two claims is not necessary." *Hanover Ins. Co. v. Sutton*, 46 Mass. App. Ct. 153, 177 (1999). *See Haddad Motor Group, Inc. v. Karp, Ackerman, Skabowski & Hogan*, 603 F.3d 110 (1st Cir. 2010); *DiMarzo v. Am. Mut. Ins. Co.*, 389 Mass. 85, 106 (1983); *Columbia Chiropractic Group, Inc. v. Trust Ins. Co.*, 430 Mass. 63-4 (1999); *Castricone v. Mical*, 74 Mass. App. Ct. 591, 604 (2009).

Here, ACE argues for a reduction in attorneys' fees on the grounds that SunLink's claims for the contract balances on the CVEC Projects were "unrelated to" and "clearly distinguishable from" the conduct of ACE deemed to be unfair and deceptive under Chapter 93A in the Partial Final Award – namely, ACE's interactions with SunLink concerning the change orders. In response, SunLink maintains that all of the claims were necessarily interwoven because, in order to prevail on its Chapter 93A claim, SunLink also had to demonstrate, *inter alia*, that: (i) it supplied

3

goods that were conforming, accepted and incorporated into the CVEC Projects; (ii) because there was no shipment or delivery schedule in the Agreements, SunLink performed within a "reasonable time" under the UCC given the nature, purpose, and circumstances of the nine CVEC Projects; (iii) there was no contractual novation, or nullification of the Agreements, in recognition of the alleged "pre-panelization" agreement identified at the hearings; (iv) ACE did not execute the change orders under economic duress; (v) ACE was not fraudulently induced to execute the Agreements through misrepresentations by SunLink as to delivery expectations or the sourcing of A-frames in China; and (vi) ACE breached the Agreements (and SunLink did not), thereby entitling SunLink to full payment and negating any right of offset.

As found in the Partial Final Award, the pertinent change orders were amendments to the Agreements insofar as they altered the payment terms and established delivery parameters for designated portions of SunLink's products (a percentage of the A-frames and ballasts).[3] Throughout this proceeding, SunLink had the burden of proving that it satisfied its obligations under the Agreements and change orders and rebutting ACE's myriad defenses to payment. While ACE's Opposition to the Application characterizes the undertaking as a "straightforward contract claim for goods sold and delivered," this ignores the complexity and breadth of proof necessary to establish, amongst other elements, a "reasonable" course of performance across nine discrete PV projects totaling more than 22 MW. It is also inconsistent with ACE's obdurate position that SunLink breached the Agreements by flouting performance, sourcing or delivery requirements, the grand

---

[3] The change orders were not, however, a separate legally binding contract for "pre-panelization" or a commitment by SunLink to deliver other, non-change order components (rails) under a definitive schedule. *See* ACE Opp. at p. 4 ("pre-panelization change order evidence presented a whole new deal with new parameters for assembly and delivery which was breached by SunLink").

4

finale of which was the "pre-panelization" argument. All of SunLink's claims in this case were plainly interrelated and arose from a single collection of activities concerning the supply of an enormous quantity of balance of system products to the CVEC Projects.

As proof of its legal work, SunLink submitted a verified itemization of the time spent by its attorneys and the fees incurred, totaling $1,155,846.50.[4] For the most part, SunLink was represented by attorneys Paul J. Murphy and David G. Thomas, shareholders in Greenberg Traurig, LLP's Boston office. Messrs. Murphy and Thomas's time accounts for nearly 80% of the legal fees incurred (approximately 1,400/1,750). Due to the fairly compressed schedule (stipulated to by the parties), the thousands of paper and electronic documents and the overall scope of the case, Greenberg Traurig reasonably assigned two experienced attorneys to conduct the arbitration so the case could be prosecuted on multiple simultaneous tracks.

According to his Affidavit, Mr. Murphy has been trying construction and other civil litigation matters in the state and federal courts of the Commonwealth of Massachusetts, and in other jurisdictions, for the past thirty-three years. Following his admission to the bar in 1982, Mr. Murphy practiced at various Boston firms until he joined Greenberg Traurig as a shareholder eight years ago. In 2014, Mr. Murphy's standard hourly rate was $680. As of January 1, 2015, Mr. Murphy's standard hourly rate was increased to $720.

Mr. Thomas has maintained a trial practice for the past seventeen years, and is a certified e-Discovery Specialist. Mr. Thomas joined Greenberg Traurig's Boston office in 1999. In 2009, Mr.

---

[4] SunLink's Application includes hundreds of detailed "contemporaneous time entries" by its law firm. ACE's Opposition cited two specific entries, focusing instead on the hourly rate, the gross volume of hours ("overkill") and the statistical anomaly of an entry for ".5" appearing more frequently than an auditing tool might expect.

Thomas was promoted to a shareholder at Greenberg Traurig. Mr. Thomas's standard hourly rate is $720.

Most critically, based on my observations during the case, from initiation of the claim through (often disputed) discovery, seven days of hearings, and, finally, post-hearing briefings, I find that SunLink's counsel, principally (but not exclusively) Messrs. Murphy and Thomas, were professional, effective and zealous advocates.[5] Their hourly rates are attested to be consistent with the Boston marketplace for large law firms in matters such as this arbitration. Greenberg Traurig was required to process this document intensive arbitration on an expedited basis given SunLink's anemic financial condition (caused or exacerbated by ACE's non-payment on the CVEC Projects). The legal fees incurred by SunLink, while substantial, would ordinarily be spread over a period of years (in court), not months, and represent approximately 12% of the amount awarded.

Accordingly, I reject ACE's argument that Greenberg Traurig was disproportionately exuberant in this engagement,[6] and conclude that the time spent was reasonable given the stakes, issues and outcome, with one exception. My examination of the time records revealed a number of entries

---

[5] This "firsthand knowledge" provides a basis for me to assess the objective value of the legal services rendered. *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 630-1 (1978); *Fontaine*, 415 Mass. at 324; *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 431 (2005); *Berman*, 434 Mass. at 302-3. Furthermore, having served in over 350 cases as an arbitrator, many of which have involved claims for attorneys' fees, I am quite familiar with law firm billing practices and rates.

[6] I reject as without foundation, or commonsense, ACE's argument that SunLink's counsel might have "freely charged time to the matter unreasonably ... acting under the expectation that ACE, not [SunLink], would end up paying." No sensible company would countenance a law firm deliberately running up a bill on the gambit that it might eventually prevail and collect on a punitive damages/fee shifting claim. I also do not accept the proposition that the substantially lesser amount ACE paid its able counsel proves that SunLink's attorneys' fees are inherently unreasonable. There are always disparities in workloads, relationships and overhead at law firms which might enable a client to negotiate a lower rate structure at a particular firm. Moreover, SunLink had the burden of proof across a broad spectrum of issues, so it is to be expected that more legal work would be required of its counsel.

6

respecting SunLink's prosecution of two Superior Court cases against ACE and its sureties to preserve and perfect claims under the payment bonds. While I understand the rationale for filing the cases (which were stayed pending arbitration), I do not believe the activity is proximately related to the Chapter 93A claim, or, more generally, the arbitration. *See Drywall Sys., Inc. v. ZVI Const. Co.*, 435 Mass. 664, 673 (2002) (Chapter 93A authorizes the award of attorneys' fees incurred in connection with the G.L. c. 93A action, "but not for other actions"). My computation (unaided by ACE) of the professional time spent on those cases is $54,687, which amount shall be deducted from the Application.

SunLink also alleges that it incurred costs in the amount of $186,470.10. SunLink's costs are comprised of two separate components. The first category are typical out-of-pocket costs associated with a case of this magnitude, including printing and exhibit production costs, e-discovery vendor processing costs, and court reporting and delivery charges, all of which have been itemized and verified by Mr. Murphy.  The second, larger component of costs is for SunLink's engagement of Steven Collins, an expert witness on construction projects.  As discussed in the Partial Final Award, Mr. Collins's testimony was helpful in distilling the various delivery schedules, summarizing voluminous shipment data and demonstrating the commercially reasonable nature of SunLink's performance, as required by the UCC (and vigorously contested by ACE). Mr. Collins's invoices total $106,837.50. I find that the costs incurred by SunLink are reasonable, and, in any event, they have not been directly challenged by ACE.

## FINAL AWARD

Based on the foregoing, and in respect of the two issues for which I reserved jurisdiction in the Partial Final Award, I hereby FIND and AWARD as follows:

7

1. I find in favor of SunLink on its claim for attorneys' fees and costs under G.L. c. 93A, §§ 2, 11, and award it the sum of $1,287,629.60, without interest until the entry of any judgment confirming this Final Award, at which point the statutory interest rate applicable to judgments in the Commonwealth of Massachusetts shall apply.

2. The administrative fees of the American Arbitration Association, totaling $15,700, and the compensation and expenses of the Arbitrator, totaling $82,755, shall be borne equally by the parties. Therefore, ACE shall pay SunLink $7,850, representing that portion of the administrative fee previously advanced by SunLink.

3. This Final Award is in full settlement and satisfaction of the two issues for which I reserved jurisdiction in the Partial Final Award dated August 18, 2015.

Dated:  October 6, 2015

David L. Evans, Arbitrator

I, David L. Evans, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

Dated:  October 6, 2015

David L. Evans, Arbitrator

8

# EXHIBIT 7

COMMONWEALTH OF MASSACHUSETTS

```
┌─────────────────────────────┐
│     SUPERIOR COURT          │
│     BARNSTABLE, SS          │
│ Filed │  NOV 0 5 2015 │     │
│                             │
│            Clerk            │
└─────────────────────────────┘
```

BARNSTABLE, SS.

---

SUNLINK CORPORATION
    Plaintiff,

vs.

AMERICAN CAPITAL ENERGY, INC.;
ARCH INSURANCE COMPANY;
BERKLEY REGIONAL INSURANCE
COMPANY And BERKLEY INSURANCE
COMPANY

    Defendants

---

: SUPERIOR COURT CIVIL ACTION
: No. 1472 CV 00511
:
:
:
:
:
:             **DEFENDANT**
:    **AMERICAN CAPITAL ENERGY INC.**
:    **APPLICATION TO VACATE**
:         **ARBITRATION AWARD**
:
:
:
:
:

## INTRODUCTION

    Pursuant to M.G.L. c. 251 § 12  and the Federal Arbitration Act (FAA) 9 U.S.C.S. § 10(a)(3), the Defendant American Capital Energy Inc. (ACE) moves this Court to vacate the arbitration award dated October 6, 2015 (the "Award") made in ACE's contract dispute with Plaintiff Sunlink Corporation (Sunlink).

    ACE was prejudiced by actions of the Arbitrator who failed to recuse himself from considering the case despite the appearance of conflicts and who failed to grant a brief continuance, despite good cause having been shown, both of which require Court action, under specific statutory mandates, to vacate the Award entered on October 6, 2015.

    Both the Federal Arbitration Act and Massachusetts' Arbitration Statute call for Judges to vacate Awards entered under conditions found in this case.

## BACKGROUND

    The parties' dispute concerned the engineering services, delivery of and payment for construction materials for solar arrays installed on landfills on Cape Cod, with ACE as general contractor and Sunlink as subcontractor and engineering contractor.  The parties entered into a Consulting Engineering Agreement and nine separate, project-specific supply contracts each of which contained an arbitration provision. (Ex 1)

```
┌──────────────────┐
│ EXHIBIT          │
│       1          │
└──────────────────┘
```

On January 20, 2015 the parties entered into a stipulated scheduling order with the arbitrator, envisioning arbitral evidentiary hearings beginning on May 11, 2015. (Ex 4) Documents demanded by the parties from each other, were voluminous and extensive. Documents requested by complainant Sunlink, consisted of 162 categories of documents for ACE to produce. This plethora of categories led to extensive e-discovery disputes and rulings by the arbitrator. The disputes continued until a final ruling of the arbitrator on April 21, 2015, (Ex 4) less than three weeks before the evidentiary hearing on May 13, 2015. The document production order of April 21, 2014 (Ex 4) consisted of the additional production of 10,660 emails in excess of 20,000 pages of documents submitted less than three weeks before the hearings, as well as correction of the production and additional production of 2898 documents and withdrawal of over 700 unrelated documents.

So extensive was the document production that the arbitrator characterized the process as "document intensive arbitration". (Ex 11 at 6) The arbitrator found that the Sunlink legal work, required two senior attorneys who spent approximately 1,400 of the legal hours Sunlink charged, (Ex 11 at 5) with additional hours for associates and paralegals, to review over 50,000 documents all of which the arbitrator ruled justified a fee award, for a seven day hearing, of $1,287,629.60. (Ex 11 pages 5, 8)

## HEALTH CRISIS, COUNSEL CONFLICT AND COST – MOTION FOR CONTINUANCE

Sunlink commenced this action by filing and serving the case in Barnstable Superior Court against ACE, and three companies who provided payment and performance bonds, Arch Insurance Company (Arch), Berkley Regional Insurance Company and Berkley Insurance Company (Berkley). Originally appearing as counsel for ACE and the bonding defendants, was Reimer & Braunstein ("Reimer"). ACE intended to perform pre-hearing discovery and document production affordably through its outside general counsel Attorney Robert K. Dowd PC (Ex. 2 at 1), who traveled from Dallas at the end of February 2015 to accomplish this task, while evidence at the arbitration hearing was to be presented by trial counsel Reimer.

On March 5, 2015 however, Attorney Dowd fell on ice in New England and suffered a quad tendon rupture requiring his return to Dallas for surgical reconstruction which was performed.

2

on March 17, 2015. (Ex 2, C) Attorney Dowd filed a motion to continue based on his incapacity which is detailed *infra*.


## COLLATERAL LITIGATION

The solar projects generated numerous lawsuits. Reimer attorneys had brought suit for ACE as plaintiff in Barnstable Superior Court Civil Action 15-0369 (Ex 6 at 3, 4) against the owner and developer of the solar project, and sought Trustee Process on claims (including those of Sunlink as subcontractor). The owner and developer defendants bonded off the trustee process claims. However, at an April 2015 mediation, in said case Reimer attorneys discovered that the provider of the owner/developer's debt financing for the solar array projects were also Reimer clients. (Ex 6 at 4). Accordingly, a conflict arose and ACE had to replace Reimer & Braunstein from all pending cases.

Sunlink sued Berkley and Arch as named Defendants in the present Superior Court action, like all sureties, these sureties' bonds, are backed up by agreements by entities to indemnify in the event of payouts. These bonding companies were also initially represented by Reimer. Upon Reimer's withdrawal from representation of all parties Dowd entered his appearance for ACE. When attorneys tried to enter appearances to intervene and for moved to continue, for the bonding companies in the Arbitration, the motion was also denied by the Arbitrator.

Other Superior Court cases arising out of the same projects included suits by Sunlink's subcontractor Old Castle Precast, Inc. "Old Castle" who asserted claims against ACE and Sunlink in four Barnstable Superior Court Cases (Docket Numbers BACV 2- 2014-00482, BACV 2014-00487, BACV 2014-00489, BACV 2014-0093) as well as one in Dukes County. ACE settled claims of Old Castle and sought offset in the Arbitration (see Ex 13). See Settlement and notification of offsets in the arbitration. (Ex 13)

Facing extensive unresolved, disputed discovery, Attorney Dowd was unable to do the discovery due to his injury and the magnitude of the last minute discovery. Facing early post-surgical recovery, Attorney Dowd entered his appearance as counsel for ACE in the arbitration and ACE and requested on April 14, 2015, a brief continuance of the hearing date for two reasons. Attorney Dowd was not able due to his health condition, by himself, to perform the review of the

3

voluminous documentation which now could not be done in conjunction with the Reimer & Braunstein firm withdrawal thereby preventing adequate preparation for an orderly hearing. (Ex 2)

## CONTINUANCE MOTION REJECTED

Attached to the motion requesting the brief continuance was the treating physician's report stating that Attorney Dowd would be expected to be well enough to travel in mid-June or early July. (Ex 3) Attorney Dowd asked for "a brief period to recover from his injuries before commencing the arbitration". Sunlink, claimant in the Arbitration, opposed this request for a short extension and the Arbitrator denied it. (Ex 4)

The Arbitrator's ruling noted that Attorney Dowd had the "unenviable task" task of handling the hearings within ACE's budget. The injury sustained by Attorney Dowd as noted by the arbitrator in his ruling, "has limited and will limit his ability to travel and conduct the Arbitration".(Ex 4)

When it came time for the Arbitrator to meet his 30 day ruling requirement, he had no problem requesting a continuance to issue the finding. (Ex 5 p 1576)

For four weeks after his March 17, 2015 surgery, Attorney Dowd was unable to bend his knee or ambulate to his law office, as was noted in his Affidavit. (Ex 6 at 5)

In shaping the delivery of evidence at the hearings, the Arbitrator wrote on April 21 that ACE was to produce the remainder of its internal emails by April 23, 2015. (Ex 4 at 1) Which added an additional 20,000 documents to review weeks before trial.

## DISCOVERY UNDONE AS HEARING DATE LOOMED

Attorney Dowd learned in April 2015 that the law firm withdrawing from ACE representation "had conducted no discovery, no production of documents and no review of documents provided by the Claimant" for the Arbitration hearings then set for early May 2015. (Ex 6 at 6) Attorney Dowd's affidavit states that he "could spend only several hours a day reviewing exhibits and preparing for the arbitration prior to the arbitration". (Affidavit at 9)

Despite his incapacity and arduous post-operative physical therapy in Dallas, days after the Arbitrator denied the Motion for a brief Continuance, Attorney Dowd moved on April 30, 2015 for an Order to Compel Documents bates stamped documents omitted by Claimant and documents from the Claimant's lending institution related to the projects. (Ex 7 at 3, 5). In April 2015, Sunlink had produced in 19,679 sequentially numbered documents, but missing 2,809 of the numbered pages and Sunlink had produced 733 documents from an entirely unrelated case. Sunlink did produce the numbered pages omitted earlier pursuant to the Arbitrator's ruling (Ex 4) by dropping thousands of pages of additional documents on ACE less than two and on-half weeks before the hearing of evidence.

Further, the Arbitrator denied Dowd's Motion to Compel Sunlink to produce Bridge Bank documents, which would have assisted ACE in refuting the Bridge Bank evidence cited by by the Arbitrator. (Ex 10 p 20), to support his findings and award.

Documents were provided in a giant dump, weeks before trial, to ACE's counsel who was incapacitated and not capable to perform a thorough review to prepare for trial.

Further, the Arbitrator excluded evidence of offsets at the Arbitration hearing (Ex 4 final paragraph) which included the payments by ACE to Old Castle; in essence ACE paid Sunlink's subcontractor Old Castle which, under the Arbitrator's award, ACE has to pay Sunlink a second time because offset evidence was excluded.


## SURETIES MOVE TO INTERVENE, ARBITRATOR DISCLOSES REPRESENTATION

On May 11, 2015 Berkley Insurance Company, a defendant in this Superior Court case and surety on Payment Bonds provided in four of the nine projects, moved to intervene in the Arbitration on the condition that the hearing date be continued. When Reimer withdrew as counsel for ACE it also withdrew as counsel for Berkley and Arch the bonding defendants. (Ex 8). The motions to intervene were denied. Berkley's bonds were issued based on the credit of indemnitors including ESB and NGS. The arbitrator disclosed on May 11, 2015 that his law firm, Murphy and King represent on unrelated matters, Eversource, the parent corporation of EBS and NGS. (Ex 8)

On May 12, 2015 ACE objected to the Arbitrator's continuing service based on the fact that the parties had just become aware that a client of the Arbitrator has a financial interest in the outcome of the Arbitration. (Ex 9) In Moving to Recuse, ACE argued that the appearance of

impropriety, at least, should prevent the Arbitrator's ongoing service on this particular claim. The lawsuit's original defendant Berkley Insurance Company bonded ES Boulos (ESB), then known as "Eversource", a client of the Arbitrator. (Ex 8, 9)  ACE had only 24 hours to prepare its objection to the Arbitrator's continuing to serve as neutral. The main issue was that the Arbitrator could not make specific findings on the nine separate contracts and nine separate solar arrays because it would have had to make findings against its client Eversource.


## CONFLICT RECUSAL MOTION DENIED – HEARINGS ENSUE

The Arbitrator stated that he did not think this "indirect relationship constitute[ed] grounds for disqualification or brought into question [his] ability to be impartial or to independently adjudicate the matter". (Ex 8)  Five days of hearings ensued from May 13-20, 2015.

Parties submitted post hearing briefs to synthesize the evidence for the Arbitrator and ACE asserted for the first time that Sunlink's Engineering Services Agreement created a fiduciary relationship between the parties.


## AWARD ENTERS

As predicted by Respondent in its motion to recuse, the arbitrator did not make individual findings against its client by properly awarding on each of the separate contracts and separate solar arrays of each town but rather lumped the projects all together in the finding solely against ACE. The Arbitrator issued a Partial Final Award on August 18, 2015; it awarded to Sunlink a total amount of $7,856,649.60 for invoices Sunlink issued to ACE for the account balance on the seven CVEC BGMS Projects excluding Nunnepog with a credit for Katama, including interest on unpaid invoices through April 30, 2015 (Ex 10).

In the Partial Award, the Arbitrator rejected ACE's "post hearing argument that Sunlink assumed the heightened duties of a fiduciary because it provided …services under a Consulting Services Agreement". (Ex 10 26).  As a basis for this finding the Arbitrator ruled that the proposition "was never raised as a defense until it appeared in ACE's Post-Hearing Memorandum". (Ex 10 at 26) If a continuance had been granted it would have been raised in the pleadings as a counterclaim as it was not discovered until the trial.

The Partial award noted that ACE had filed no counterclaim and although ACE requested that it be allowed to recover, "presumably by way of an offset" and the arbitrator ruled there would be a bifurcated trial, the request was denied. (Ex 10 at 28). In its April 21, 2015 scheduling order the Arbitrator stated the hearings would not include "the quantification of what ACE has called its offsets". (Ex 4 final paragraph)

ACE paid Old Castle to resolve the claims by it against ACE in the five open Superior Court Cases on July 23, 2015 before the arbitrator's Final Award entered. (Ex 13) ACE produced the settlement documents to the Arbitrator (Ex 13) but the final award included no recognition that the Sunlink subcontractor had been paid.

The Arbitrator gave the award as a lump sum, made up from Sunlink figures from invoices. (Ex 10 at 20, 23) The arbitrator did not attribute his award to specific projects despite ACE's motion for clarification. (Ex 14) The four projects subject to bonding indemnity by the Arbitrator's client's subsidiary, included invoices plus late fees plus changes totaling $5,551,531.67.

Berkley Insurance, whose indemnitor's parent is represented by the Arbitrator's law firm, paid Sunlink $4,516,517.767 in settlement, after entry of the award to resolve claims on four of the nine projects, Barnstable, Brewster, Chatham and Dennis. (Ex 12) The settlement included a release to ACE on these four projects. The difference between the invoice-based award and the settlement figure cannot be gleaned from the award because the arbitrator did not set forth specifics for each of the nine projects — despite ACE request in its brief and request for clarification. (Ex 14)

## TWO EXPLICIT STATUTORY BASES MANDATE VACATUR

ACE asserts that two grounds compel Court action to vacate the Arbitrator's award — the failure to grant a short continuance denied ACE a fair hearing, and the Arbitrator's firm's entanglement with guarantor of the obligation the Arbitrator ruled on, should have led to recusal.

ACE suffered demonstrable prejudice in not having time enough to prepare for the expedited hearing. Had it been afforded the reasonable extension due to Attorney Dowd's health emergency, ACE would have been better prepared to assert arguments the Arbitrator dismissed as having been raised in briefings after the live testimony closed.

Under the FAA, grounds for vacatur are extraordinarily narrow and stringently applied *Rain CII Carbon, LLC v Conoco Phillips Co.* 674 F3d 469, 471-472(5th Cir 2012) but ACE here seeks only the enforcement of standards recognized by both State and Federal law. ACE seeks application of the following two statutory grounds

**Partiality -** There was evident partiality by an arbitrator appointed as a neutral ... prejudicing the rights of any party MGL c251 § 12(a)(4)

Where there was evident partiality ...in the arbitrators 9 USC §10 (2)

**Postponement -** failure to postpone a hearing upon sufficient cause being shown or so conducted the hearing, so as to prejudice substantially the rights of a party MGL c251 § 12(a)(4)

where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, ... by which the rights of any party have been prejudiced; (9 U.S.C.S. § 10(a)(3));

Another aspect of the Arbitration provision in this case, presents issues of constitutional magnitude in that it attempts to exclude Judicial oversight, in any respect, of the arbitral process. The provision states that "there shall be no appeal on any ground, including for greater certainty, any appeal on a question of law, a question of fact, or a question of mixed fact and law". (Ex 1) ACE asserts that, as a matter of State and Federal Constitutional law, the Judiciary may not be stripped of authority to oversee the justice of procedures that the Legislature mandates they monitor.

## ARBITRATOR CONFLICT REQUIRED RECUSAL

Rule 18 of the American Arbitration Association Commercial Arbitration Rules (which applied in this case) requires that "Any arbitrator shall be impartial and independent". Rule 17 mandates that "any person appointed ...as an arbitrator, as well as the parties and their representatives, shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives". The Arbitrator correctly recognized that its representation of a party with an economic interest in the outcome, mandated disclosure.

Mass Rules of Professional Conduct state at Rule 1.12(a) that Lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as an arbitrator unless all parties to the proceeding consent after consultation. Presumably, a corollary would be that an Arbitrator may not rule over a dispute in which the Arbitrator, as lawyer, or his firm, participated in personally and substantially. ACE did not consent, and instead objected to the arbitrator's continuing to serve as decision maker where its client's economic fortunes were impacted by any decision to issue.

Under the FAA, an arbitral award may be vacated on grounds of "evident partiality" of the arbitrators. 9 U.S.C. § 10(a)(2). *JCI Communications V. International Broth.*, 324 F. 3d 42 - Court of Appeals, 1st Circuit (2003) Evident partiality is more than just the appearance of possible bias. Rather, evident partiality means a situation in which "a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration," *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 626 (6th Cir.2002) (internal quotations omitted); accord *ANR Coal Co. v. Cogentrix of N. C., Inc.*, 173 F.3d 493, 500-501 (4th Cir.1999); *Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir.1984); see also *Al Harbi v. Citibank, N.A.*, 85 F.3d 680, 683 (D.C.Cir.1996) ("[T]he claimant must establish specific facts that indicate improper motives on the part of an arbitrator."). See generally *Montez v. Prudential Secs., Inc.*, 260 F.3d 980, 983 (8th Cir.2001) (collecting cases on "evident partiality" standard).

"The alleged partiality must be 'direct, definite, and capable of demonstration rather than remote, uncertain or speculative,'" *Gambino v. Alfonso*, Dist. Court, D. Massachusetts (2012) Civil No. 10-10860-PBS, *Kiewit/Atkinson/Kenny v. Int'l Bhd. of Elec. Workers*, 76 F. Supp. 2d 77, 79-80 (D. Mass. 1999) (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir. 1993)); see also *United Steel Workers of Am., Local 12003 v. Keyspan Energy Delivery*, No. 08-11928-GAO, 2009 U.S. Dist. LEXIS 68427 (D. Mass. Aug. 3, 2009); *Nationwide Mut. Ins. Co.*, 213 F. Supp. 2d at 17. However, proof of actual bias is not required. *Morelite Constr. Corp. v. NYC Dist. Council Carpenters*, 748 F. 2d 79 at 84- Court of Appeals, 2nd Circuit (1984)

A leading case on evident partiality is *Commonwealth Coatings Corp. v. Cont'l Cas. Co.* 393 US 145 (1968) where the failure to disclose a close relationship between an arbitrator and a party, and led to vacation of the award. Justice White's concurrence stated that Courts should be "scrupulous to safeguard the impartiality of arbitrators" who have "completely free rein to decide... and are not subject to appellate review". In *Thomas Kinkade Company v. White*, No. 10-

1634 (6th Cir. April 2, 2013). The Sixth Circuit Court of Appeals affirmed the vacation of arbitration award on grounds of arbitrator's evident partiality.

In *Schmitz v Zilveti* 20 F3rd 1048 (9th Cir 1995) an arbitrator's failure to disclose that his law firm represented the parent company of one of the parties to the arbitration was sufficient to vacate the arbitration award on the basis of partiality. Several courts have held, *Schlossberg v. State Bar Grievance Bd.*, 388 Mich. 389, 200 N.W.2d 219 (1972) as did the Court in *Schmitz*, that "representation of a parent corporation is likely to affect impartiality or may create an appearance of partiality in the lawyer's representation of or dealings with a subsidiary".

The arbitrator in this case disclosed the conflict, ACE objected, the proceedings continued before the same arbitrator, who then ruled entirely against ACE.

## FAILURE TO ACCOMMODATE DISABILTY BY CONTINUANCE DENIED ACE A FUNDAMENTALLY FAIR HEARING AND MANDATES VATATUR

The refusal to grant ACE a brief continuance worked substantial prejudice and mandates vacatur of the Award. The arbitrator rushed the case forward despite well documented justification for delay and to the obvious prejudice to ACE. As ACE's conflicted trial counsel withdrew and the substituting counsel, having just undergone major surgery out of State, and still recuperating, requested a brief continuance. The denial of that motion denied ACE the opportunity to properly prepare and present its evidence at the hearing.

Superior Court Judges are instructed by statute to rectify procedurally impaired findings under these conditions:

> the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or ... otherwise so conducted the hearing..., as to prejudice substantially the rights of a party;

In *Coastal Gen. Constr. Servs. Corp. . VI Hous. Auth.* 98 F.App'x 156, 159 (3rd Cir. 2004) an award was vacated based on the refusal to grant a continuance after a party committed a document dump of discovery on the opposing party on the eve or trial. Courts examine the circumstances to determine whether the denial of the request for postponement was arbitrary or unreasonable. Misconduct under 9 U.S.C. § 10(a)(3), is defined as conduct "which so affects the rights of a party that it may be said that he was deprived of a fair hearing. *Newark Stereotypers' Union v. Newark*

*Morning Ledger Co.*, 397 F.2d594, 599 (3d Cir. 1968), 393 U.S. 954 (1968). The hearing provided to ACE, was unreasonable, the short continuance was reasonable and necessary.

The standard for evaluating the decision not to postpone the arbitration hearing is an abuse of discretion. See *Schmidt v. Finberg*, 942 F.2d 1571, 1573 (11th Cir. 1991). To meet this standard, a party objecting to the denial must prove by clear and convincing evidence that the arbitrators had no reasonable basis for their decision not to grant a postponement. See *In Re Time Constr. Inc.*, 43 F.3d 1041, 1045 (6th Cir. 1995) An example of reversible error in refusing to grant a postponement is where a sudden, completely unforeseen medical emergency prevents the attendance of an important witness. *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) *Mse Distributing, Inc. V. Southwest Reinsure, Inc.*, Dist. Court, D. New Mexico (2011) The severe injury and brief but arduous surgical repair recuperation by trial counsel mandated continuance; its denial was just the kind of arbitral ruling that Courts are statutorily empowered to enforce. *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2d Cir. 1997) (vacating an award where the arbitrator refused to continue the hearing to permit testimony by company official); *Ebasco Constructors, Inc. v. Ahtna, Inc.*, 932 P.2d 1312, 1316 (Alaska 1997) (explaining that the court would review arbitrator's decision not to allow for postponement of hearing because of withdrawal of party's counsel twenty-five days prior to arbitration with deference, reversing only for gross error).

A party seeking vacatur based on a failure to postpone the proceedings must explain "why a postponement was necessary to assure a fair proceeding." *Local Union No. 251 v. Narragansett Improv. Co.*, 503 F.2d 309, 312 (1st Cir.1974). *ALS & Associates, Inc. v. AGM Marine Constructors*, 557 F. Supp. 2d 180 - Dist. Court, D. Massachusetts (2008) In keeping with the profound deference accorded to arbitral decisions, the threshold for vacatur based on a failure to postpone is high. "Courts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for it exists." *El Dorado Sch. Dist. #15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir.2001) Denial of the requested continuance led to demonstrable prejudice to ACE whose counsel had to respond to and review an avalanche of discovery while in a partially incapacitated state.

Had the continuance been properly granted ACE would have been able to coordinate claims asserted by Sunlink and other subcontractors. — including Old Castle, to credit payments already

11

made thereby resulting in Old Castle debt of Sunlink being paid by ACE and an award requiring ACE to pay Sunlink again.

If the Continuance were allowed ACE would have been informed and prepared to show how the Sunlink banking relationship supported the fraudulent inducement claims of ACE in stark contrast to the arbitrator's use of that bank's records to support its decision adverse to ACE.

Finally, the arbitrator's decision chides ACE for raising the issue of Sunlink's fiduciary responsibilities only in the post hearing brief.  (Ex at p 26) Had there not been a push to have the evidence presented by a still-recuperating attorney, ACE could have highlighted the arbitrator's April ruling that the hearings would not include "quantification of what ACE called its offsets". (Ex. 2) against the Award's statements that "although it filed no counterclaim, ACE also request that it be allowed to recover, presumably by way of offset" (Ex 10 p28 fn. 17) which the arbitrator denied, declaring he found no contractual breach, misrepresentation or other actionable conduct.

The award, because of the arbitrator's failure to recuse himself results in an award undiscernible between the arbitrator's client Eversource and Arch bonding company.


## SUMMARY

Based on the enumerated State and Federal statutory grounds, ACE was prejudiced by a fundamentally unfair hearing process in the denial of the motion for continuance despite reasonable grounds with onerous discovery imposed on a recuperating attorney weeks before the expedited hearing, and by the refusal of the arbitrator to recuse himself despite an apparent conflict and failure to distinguish in his award, the projects associated with his client, as would make job specific allocations possible.


ACE urges the Court to **VACATE** the Award entered and instead to refer the matter back to the American Arbitration Association for proceedings in keeping with the parties' agreement and with the requisites of law.


Respectfully Submitted,

ROBERT K. DOWD, P.c.

Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
4814 Bengal Street Unit #1
Dallas TX 75235

(978) 221-2000
robtdowd@sbcglobal.net

## CERTIFICATE OF SERVICE

I Robert K. Dowd, counsel for the Defendants American Capital Energy, Inc., hereby certify that on this date was served the foregoing

### APPLICATION OF DEFENDANT AMERICAN CAPITAL ENERGY, INC. TO VACATE ARBITRATION AWARD

By email and by first-class mail, postage prepaid to all counsel who have entered an appearance in this case.

Paul J. Murphy, BBO #363490
David G Thomas BBO #640854
GREENBERG TRAURIG, LLP
One International Place
Boston MA 02110
(617) 310-6063
murphyp@gtlaw.com
thomasda@gtlaw.com

John P. Connelly,  BBO #546970
Jonathan T. Elder BBO #654411
Hinckley Allen
28 State Street
Boston, MA 02109-1775

617.345.9000
jconnelly@hinckleyallen.com
jelder@hinckleyallen.com

Timothy Norton
Kelly Remmel & Zimmerman
53 Exchange Street  P O Box 97
Portland ME 04112-0597
(207) 775-1020
tnorton@krz.com

Signed under the pains and penalties of perjury this __th day of November, 2015.

ROBERT K. DOWD, P.c.

Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
4814 Bengal Street Unit #1
Dallas TX 75235

(978) 221-2000
robtdowd@sbcglobal.net