# EXHIBIT 13

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.

```
┌─────────────────────────────┐
│         SUPERIOR COURT       │
│         BARNSTABLE, SS       │
│  FILED  FEB 2 5 2016         │
│         Scott W. Nickerson   │
│                       Clerk  │
└─────────────────────────────┘
```

**SUNLINK CORPORATION**
    Plaintiff,

    vs.

**AMERICAN CAPITAL ENERGY, INC.**
**ARCH INSURANCE COMPANY,**
**BERKLEY REGIONAL INSURANCE**
**COMPANY; and BERKLEY INSURANCE**
**COMPANY**

    Defendants

: SUPERIOR COURT CIVIL ACTION
: No. 1472 CV 00511
:
:
:
:
:
:
:
:
:
:
:

**DEFENDANT**
**AMERICAN CAPITAL ENERGY INC.**
**EMERGENCY MOTION**
**TO CLARIFY RULING**

The Defendant American Capital Energy, Inc. (ACE), moves pursuant to Superior Court Rule 9A(e)(1) and 9A(b)(4) for clarification of the February 18, 2016 ruling of the Court.

1. The February 18, 2016 endorsement on Plaintiff Sunlink's Emergency Motion to Strike read "Allowed ACE's efforts to Vacate the Arbitration Award belong in Judicial Court where Sunlink has already sought to confirm the award". (Exhibit 1)

2. The Application to Vacate the Arbitration Award was timely filed in State Court pursuant to the order of Superior Court. and pursuant to the authority of *Cybulski v Vaiani* 75 Mass. App. Ct. 382 (2009) (Exhibit 3), in in the same court where Sunlink commenced above entitled case initially.

3. Sunlink is now arguing in Federal Court that the Application may not be considered (Exhibit 2) because the State court has stricken the Application to Vacate and has not ordered the Application transferred to the Federal Court.

4. ACE urges the Court clarify its ruling that the Application timely filed in State Court, is being transferred to the Federal Court.

5. For other such reasons as may be advanced at a hearing on this motion.



EXHIBIT
**A**

Respectfully Submitted
Attorneys for American Capital Energy, Inc.,

ROBERT K. DOWD, P.C.                    CHARLES W. COBB

*Robert K Dowd by cuc*                   *Charles W Cobb*
Robert K. Dowd                           Charles W. Cobb
BBO # 132 800                            BBO # 541 826
Robert K. Dowd P.C.                      Silver Lake Legal
4814 Bengal Street Unit #1               303 Wyman Street Suite 300
Dallas TX 75235                          Waltham MA 02451
Telephone 214-922-9330                   Telephone 978-979-1223
robtdowd@sbcglobal.net                   ccobb@silverlakelegal.com

Dated February 25, 2015

2

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.

|  |  |
|---|---|
| **SUNLINK CORPORATION**<br>Plaintiff, | : SUPERIOR COURT CIVIL ACTION<br>: No. 1472 CV 00511 |
| vs. | : |
| **AMERICAN CAPITAL ENERGY, INC.**<br>**ARCH INSURANCE COMPANY,**<br>**BERKLEY REGIONAL INSURANCE**<br>**COMPANY; and BERKLEY INSURANCE**<br>**COMPANY** | : **MEMORANDUM OF DEFENDANT**<br>: **AMERICAN CAPITAL ENERGY INC.**<br>: **IN SUPPORT OF EMERGENCY**<br>: **MOTION TO CLARIFY RULING** |
| Defendants | : |

The Defendant American Capital Energy, Inc. (ACE) urges the Court to clarify that its ruling

issued February 18, 2016 results in the Application to Vacate as transferred.

**FACTS**

ACE filed an Application to Vacate an Arbitration Award in the above entitled case

pursuant to the authority of *Cybulski v Vaiani* 75 Mass. App. Ct. 382 (2009), (Exhibit 3) in which

the court ruled "we conclude that the parties must file their application for confirmation, vacation,

or modification of the arbitral award in the original Superior Court litigation and may not

commence a separate action for those purposes".

ACE received the challenged arbitral award on October 6, 2015 and filed its Application

with the Barnstable Superior Court Clerk's office on November 5, 2015 in keeping with The

Massachusetts Arbitration act GL c 251 §12.

1

Sunlink filed a Petition to Confirm Arbitration Award in the United States District Court for the District of Massachusetts on October 20, 2015 Civil Action No. 15-cv-13606-ADB.

## ARGUMENT

This Court's Ruling on the Motion to Strike the Application to Vacate instructs ACE to pursue its remedy in the Federal venue.  Sunlink has argued in the Federal suit between the two parties that ACE has waived its Application to Vacate. (Exhibit 2)

*Cybulski v Vaiani* 75 Mass. App. Ct. 382 (2009), (Exhibit 3) indicates under the heading of "Practical Considerations"

> if valid reasons cause parties to propose judicial review of the arbitral result by a different court and action, they may address that proposal in the first instance to the original court. That route will bring the progress of the case to the neutral management of a judge, rather than leave it to the adversary strategies of the parties. The judge will be well positioned to assess the merits of a transfer of the case to an alternate court and to serve the goals of fairness and expedition.

The defendant ACE seeks a ruling by the Court for reasons of judicial economy in its discretion to fulfill the endorsement on the motion, and in keeping with the instruction of the Cybulski case to  transfer the Application to Vacate

ACE has provided a proposed form of Order Attached to this Motion.

## CONCLUSION

Accordingly the Defendant ACE urges the Court to Transfer the Motion to Vacate to the United States Dist. Court for the District of MA CA # 15-cv 13606-ADB

Respectfully Submitted
Attorneys for American Capital Energy, Inc

ROBERT K. DOWD, P.C.                          CHARLES W. COBB

Robert K. Dowd                                Charles W. Cobb
BBO # 132 800                                 BBO # 541 826
Robert K. Dowd P.C.                           Silver Lake Legal
4814 Bengal Street Unit #1                     303 Wyman Street Suite 300
Dallas TX 75235                               Waltham MA 02451
Telephone 214-922-9330                        Telephone 978-979-1223
robtdowd@sbcglobal.net                        ccobb@silverlakelegal.com

Dated  February 25, 2016

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.

|  |  |
|---|---|
| **SUNLINK CORPORATION** <br> Plaintiff, | : SUPERIOR COURT CIVIL ACTION <br> : No. 1472 CV 00511 <br> : <br> : |
| vs. | : <br> : <br> : |
| **AMERICAN CAPITAL ENERGY, INC.** <br> **ARCH INSURANCE COMPANY,** <br> **BERKLEY REGIONAL INSURANCE** <br> **COMPANY; and BERKLEY INSURANCE** <br> **COMPANY** | : <br> : **ORDER FOR TRANSFER** <br> : <br> : <br> : |
| Defendants | : <br> : |

The Court finds that the Application to Vacate Arbitration Award having been timely filed in Barnstable Superior Court should be TRANSFERRED for consideration to the Federal District Court in Civil Action No. 15-cv-13606-ADB between Sunlink Corporation and American Capital Energy Inc.

## CERTIFICATE OF SERVICE

I Charles W. Cobb co-counsel for the Defendants American Capital Energy, Inc., hereby certify that on this date was served the foregoing

### DEFENDANT AMERICAN CAPITAL ENERGY INC.
### EMERGENCY MOTION TO CLARIFY RULING

By email and by first-class mail, postage prepaid to all counsel who have entered an appearance in this case.

Paul J. Murphy, BBO #363490
David G Thomas BBO #640854
GREENBERG TRAURIG, LLP
One International Place
Boston MA 02110
(617) 310-6063
murphyp@gtlaw.com
thomasda@gtlaw.com

John P. Connelly,  BBO #546970
Jonathan T. Elder BBO #654411
Hinckley Allen
28 State Street
Boston, MA 02109-1775

617.345.9000
jconnelly@hinckleyallen.com
jelder@hinckleyallen.com

Timothy Norton
Kelly Remmel & Zimmerman
53 Exchange Street  P O Box 97
Portland MA 04112-0597

Signed under the pains and penalties of perjury this 25th day of February, 2015.

ROBERT K. DOWD, P.C.

CHARLES W. COBB

Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
4814 Bengal Street Unit #1
Dallas TX 75235
Telephone 214-922-9330
robtdowd@sbcglobal.net

Charles W. Cobb
BBO # 541 826
Silver Lake Legal
303 Wyman Street Suite 300
Waltham MA 02451
Telephone 978-979-1223
ccobb@silverlakelegal.com

| CLERK'S NOTICE | DOCKET NUMBER<br>1472CV00511 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>SunLink Corporation vs. American Capital Energy, Inc. et al | Scott W. Nickerson, Clerk of Court<br>Barnstable County |
|---|---|

| TO:<br>Charles W Cobb, Esq.<br>Silver Lake Legal<br>303 Wyman Street<br>Suite 300<br>Waltham, MA 02451 | COURT NAME & ADDRESS<br>Barnstable County Superior Court<br>3195 Main Street<br>Barnstable, MA 02630 |
|---|---|

You are hereby notified that on 02/18/2016 the following entry was made on the above referenced docket:

Endorsement on Motion to After Hearing (#21.0): ALLOWED
ACE's efforts to Vacate the Arbitration Award belong in Judicial Court where Sunlink has already sought to confirm the award.



EXHIBIT
1

| DATE ISSUED<br>02/18/2016 | ASSOCIATE JUSTICE/ ASSISTANT CLERK<br>Hon. Gary A Nickerson | SESSION PHONE#<br>(508)375-6684 |
|---|---|---|

Date/Time Printed 02-18-2016 10-11-24

SCV016_X11 06/2014

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

SUNLINK CORPORATION,

      Plaintiff,

v.

AMERICAN CAPITAL ENERGY, INC.,

      Defendant.

**Civil Action No. 15-cv-13606-ADB**

## JOINT REPORT PURSUANT TO NOTICE OF SCHEDULING CONFERENCE [DOCUMENT 14]

### I.    INTRODUCTION

Plaintiff SunLink Corporation ("**SunLink**") and defendant American Capital Energy, Inc. ("**ACE**") submit this Joint Report pursuant to the Court's Notice of Scheduling Conference, dated February 4, 2016 [Document 14]. Attached to this Joint Report are the parties' respective Loc. R. 16.1(d)(3) Certifications.

### II.    STATEMENT OF THE CASE

**A.    Plaintiff's Summary.**

    1.    The Arbitration Award and SunLink's Petition to Confirm.

On August 18, 2015, the American Arbitration Association, through Arbitrator David Evans, Esq, issued a Partial Final Award granting SunLink (i) $7,856,649.60 in damages, plus late fees and interest, (ii) $1,041,407.94 in Massachusetts General Laws Chapter 93A damages, and (iii) attorneys' fees and costs to be submitted by SunLink in a fee application. On October 6, 2015, Mr. Evans issued a Final Award granting SunLink $1,287,629.60 in attorneys' fees and costs, among other things (together with the Partial Final Award, the "**Arbitration Award**"). On October 20, 2015, SunLink commenced this proceeding seeking to confirm the Arbitration Award.



EXHIBIT
2

2.     ACE's "Gamble" and Failed Attempt to Vacate Award in the Wrong Court and to Dismiss this Federal Proceeding.

Despite the pendency of this federal proceeding, on November 5, 2015, ACE filed an "Application to Vacate" the Arbitration Award in *Barnstable* Superior Court and then moved to dismiss this federal proceeding on November 13, 2015, on dubious grounds that the Barnstable Superior Court   action was a prior filed action in which SunLink sought to confirm the Arbitration Award.  *See* Document No. 11 (SunLink's Opposition to ACE's Motion to Dismiss, explaining the dubious nature of ACE's argument).   On November 12, 2015, SunLink filed an emergency motion to strike ACE's "Application", which the Barnstable Superior Court summarily granted on February 18, 2016.  ACE's motion to dismiss this federal proceeding was rendered moot as there is no Application to Vacate pending in the Barnstable Superior Court – it has been appropriately struck.

3.     ACE May Not Now Raise Any Grounds to Vacate the Arbitration Award and SunLink is Entitled to Judgment as a Matter of Law.

Regardless of whether the Massachusetts Arbitration Act or Federal Arbitration Act applies, ACE has waived the ability to ask this Court to vacate the Arbitration Award because ACE did not timely file a motion to vacate in this federal proceeding.   Specifically, as the Arbitration Award was provided to ACE on October 6, 2015, ACE had until November 5, 2015 and January 4, 2016 to file a motion to vacate in this Court under the Massachusetts Arbitration Act and Federal Arbitration Act, respectively.  *See* MASS. GEN. LAWS ch. 251, § 12; 9 U.S.C. § 12.  To date, ACE has not filed a motion to vacate in this Court and the inappropriate filing ACE made in Barnstable Superior Court has been struck.  As a result, this Court must enter judgment for SunLink.  *See* MASS. GEN. LAWS ch. 251, § 11 (court must confirm award unless award is vacated); 9 U.S.C. § 9 (same).

ACE's wrongful filing of an application to vacate in the Barnstable Superior Court is no panacea.  The timing requirements under the state and federal statutes are strictly construed. *See Lumbersmans Mut. Cas. Co. v. Malacaria*, 40 Mass. App. Ct. 184, 192 (1996); *see also*,

-2-

*Domnarski v. UBS Financial Srvs., Inc.*, 919 F. Supp. 2d 183, 186 (D. Mass.) (Neiman, J.) (refusing to extend limitations period by three days). If a motion to vacate is not filed in the appropriate court within the appropriate time period, all arguments to vacate an arbitration award are time barred. *See e.g., Fradella v. Petricca*, 183 F.3d 17, 18-20 (1st Cir. 1999); *Domnarski* 919 F. Supp. 2d at 186; *Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Shopmen's Local Union 501 v. Burtman Iron Works, Inc.* (**"Int'l Ass'n"**), 928 F. Supp. 83, 89 (D. Mass. 1996) (Tauro, J); *Local 589, Amalgamated Transit Union v. MBTA*, 397 Mass. 426, 431 (1986); *Bernstein v. Gramercy Mills, Inc.*, 16 Mass. App. Ct. 403, 408 (1983); *see also*, *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986) ("once the three-month period has expired, an attempt to vacate an arbitration award could not be made even in opposition to a later motion to confirm"); *Franco v. Prudential Bache Securities, Inc.*, 719 F. Supp. 63, 64 (D.P.R. 1989) ("As many courts have noted, "[a] party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award.").

For example, in *Bernstein v. Gramercy Mills, Inc.*, an arbitration award issued on June 3, 1981 (in favor of *Bernstein*) and was served on the parties on June 8, 1981. *See* 16 Mass. App. Ct. at 404. As *Gramercy Mills* did not comply with the award, *Bernstein* brought an action in Suffolk Superior Court to confirm the award on July 17, 1981, which action *Gramercy Mills* answered on August 6, 1981, and asserted a counterclaim to vacate the award. *See id.* The trial judge confirmed the award. *See id.* at 404. On appeal, however, the Appeals Court reversed the trial judge and concluded that the effort to vacate the award was time barred. *See Bernstein*, 16 Mass. App. Ct. at 408. In doing so, the Appeals Court quoted MASS. GEN. LAWS ch. 251, § 11 and explained:

> "Upon application of a party, the court shall confirm an award, unless *within the time limits hereinafter imposed* grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections twelve [vacation of awards] and thirteen [correction or modification] (emphasis supplied). <u>Under this language, it is plain enough that commencement of an</u>

> action to confirm an award does not postpone or extent the time for making an application to vacate the award.

*See id.* (citations omitted) (emphasis added in second instance); *see also*, *Int'l Ass'n*, 928 F. Supp. at 85, 89 (finding counterclaim seeking to vacate award untimely as counterclaimant failed to file motion to vacate within statutory period).

Here, much like the parties seeking to vacate the awards in *Bertnstein* and *Int'l Ass'n*, ACE plainly failed to file a timely motion to vacate in this Court within the requisite statutory periods under the Massachusetts Arbitration Act and Federal Arbitration Act.  Consequently, ACE may not now file such a motion or otherwise seek to vacate the Arbitration Award on any grounds.  Therefore, pursuant to the express language of the Massachusetts Arbitration Act and Federal Arbitration Act, the Court must enter judgment for SunLink confirming the award.

If ACE argues that a common-law "due diligence doctrine" should toll the limitations period, ACE argument will be misplaced and unavailing.  To the extent such a doctrine even applies, the statutory limitations period may be tolled only if "extraordinary circumstances beyond the claimant's control prevented timely filing, or the claimant was materially mislead into missing the deadline." *See Fradella*, 1983 F.3d at 21; *Domnarski*, 919 F. Supp. 2d at 186-87 (citing and relying on *Fradella*).  A party's decision to petition *another* court for relief (and not to file a timely motion to vacate as a result) does not satisfy the due diligence exception.  *See Taylor*, 788 F. 2d at 225-26.

For example, in *Taylor*, the appellee (Donald Taylor) chose *not* to file a motion to vacate an arbitration award in prior federal court proceeding while the parties dealt with a related state court filing by the appellant (Willie Nelson).  *See id.* at 225.  After the state court chose to defer jurisdiction to a prior federal court filing, Taylor sought to vacate the arbitration award in the

federal court proceeding. *See id.* When overturning the trial court's vacatur of the award, the

Fourth Circuit Court of Appeals explained:

> We also conclude, however, that the district court erred in holding that Taylor's failure to make a motion to vacate within three months of the filing of the award was excused by due diligence or tolling. The existence of such exceptions to § 12 is questionable, for they are not explicit in the language of the statute, and cannot be described as common-law exceptions because there was no common-law analogue to enforcement of an arbitration award. [Regardless,] we conclude that Taylor did not, in any event, act with due diligence, and was not prevented by the pendency of the New York proceeding from making a timely motion to vacate in the district court. Nelson represented before this court that the confirmation was pursued in New York because the contract between the parties made New York, as the place where the award was made, a permissible forum for confirmation. <u>Nevertheless, the state court chose to defer to the prior jurisdiction of the federal court in Virginia. During the pendency of the New York proceeding, however, nothing prevented Taylor from making a timely motion in the district court. Instead, Taylor awaited the state court's jurisdictional ruling, a choice that caused him to wait longer than three months before he made a motion to vacate, and a decision that has proven fatal to his attempt to overturn the arbitration award.</u> Taylor remained free at all times to pursue the statutory remedy of § 12 within the time limits set out by that statute, and he is not entitled to the benefit of any due diligence or tolling exceptions to the three-month rule, even if such exceptions exist.

*See id.* at 225-26 (emphasis added).

Here, much like Taylor in *Nelson*, ACE is not entitled to any due diligence or tolling

exceptions under the circumstances. Nothing prevented ACE from filing a motion to vacate in

this Court within 30 or 90 days after the Arbitration Award issued. Clearly, ACE was able to file

a motion in state Court and assuredly could have made the same filing here to comply with the

statutory deadlines. ACE chose not to do so; but rather, chose to move to dismiss this

proceeding and to rely solely on the Barnstable Superior Court assuming jurisdiction over the

Arbitration Award, despite the earlier filing by SunLink of this federal proceeding. Indeed, ACE

is less entitled to any due diligence or tolling than Taylor as ACE knowingly filed a motion to

vacate *in the wrong court* and chose not to petition this Court to vacate the award within the

-5-

statutory time frame. *See* Document No. 11 (SunLink's Opposition to Motion to dismiss, explaining that ACE had two choices in which to file a motion to vacate – either Suffolk Superior Court or this Court). ACE's forum-shopping gamble, however, did not pay off – the Barnstable Superior Court appropriately struck ACE's motion upon SunLink's request. ACE simply may not "double down" now and bring the same arguments to vacate the award in this Court.

**B.** **Defendant's Summary.**

    **TO BE ADDED**

### III.   PROPOSED SCHEDULE

**A.    Plaintiff's Proposed Schedule.**

A petition to confirm an arbitration award is a truncated, perfunctory proceeding.  Here, Defendant has waived its ability to challenge the arbitration award by failing to file a motion to vacate the award within the requisite statutory time period.  No discovery is needed or warranted. *See Bennington Iron Works, Inc. v. J.P. Constr. Co., Inc.*, 1996 WL 208494, * 1 (citing *Taylor, supra*) ("The confirmation of an arbitration award is generally a summary proceeding that makes what is already a final arbitration award a judgment of the Court.  Confirmation can be denied only if an award is corrected, vacated, or modified in accordance with the Federal Arbitration Act.").  As such, SunLink intends to file a motion for summary judgment and proposes the following briefing schedule:

| | |
|---|---|
| Motion for summary judgment filed by SunLink | **March 18, 2016** |
| Opposition to motion for summary judgment filed by ACE | **April 8, 2016** |
| Reply brief filed by SunLink | **April 22, 2016** |

**B.    Defendant's Proposed Schedule.**

**TO BE ADDED**

### IV.   OTHER MATTERS

The parties do not consent at this time to a trial by magistrate judge.

## V.   AGENDA OF ITEMS TO BE DISCUSSED AT SCHEDULING CONFERENCE

The parties propose that the following items be discussed at the upcoming Scheduling Conference:

1.   The parties' respective views of the proposed schedules set forth above.

2.   Any other item the Court deems appropriate.

Respectfully submitted,                      Respectfully submitted,

SUNLINK CORPORATION                  AMERICAN CAPITAL ENERGY, INC.

By its attorneys,                             By its attorneys,


/s/ Paul J. Murphy_____              _____
Paul J. Murphy, BBO #363490             Robert K. Dowd, BBO #132800
David G. Thomas, BBO #640854            Robert K. Dowd, P.C.
GREENBERG TRAURIG, LLP                  4814 Bengal Street, Unit 1
One International Place                  Dallas, TX  75234
Boston, MA 02110                        Tel:  214-922-9330
Tel:  (617) 310-6063                    robtdowd@sbcglobal.net
Fax:  (617) 310-6001
murphyp@gtlaw.com
thomasda@gtlaw.com

Dated: February 26, 2016

LA 132486145v1

## PLAINTIFF'S LOCAL RULE 16.1(d)(3) CERTIFICATION

The undersigned and their counsel hereby certify that they have conferred: (a) with a view to establishing a budget for the costs of conducting the full course, and various alternative courses, of the litigation; and (b) to consider the resolution of the litigation through the use of alternative dispute resolution programs such as those outlined in Local Rule 16.4.

SUNLINK CORPORATION.

By: /s/ _____

Its: _____

and

By its attorneys,


/s/ Paul J. Murphy _____
Paul J. Murphy, BBO #363490
David G. Thomas, BBO #640854
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
Tel:  (617) 310-6063
Fax:  (617) 310-6001
murphyp@gtlaw.com
thomasda@gtlaw.com


Dated:  February 26, 2016

LA 132486145v1

## DEFENDANT'S LOCAL RULE 16.1(D)(3) CERTIFICATION

Pursuant to L.R. 16.1(d)(3), we certify that we have considered the budget for the costs of conducting the full course—and various alternative courses—of this litigation, and that we have considered the resolution of alternative dispute resolution programs such as those outlined in L.R. 16.4.

DATED: February 26, 2016

Respectfully submitted,

AMERICAN CAPITAL ENERGY, INC.

By: /s/ _____

Its: _____

and

By its attorneys,

/s/ _____
Robert K. Dowd, BBO #132800
Robert K. Dowd, P.C.
4814 Bengal Street, Unit 1
Dallas, TX 75234
Tel: 214-922-9330
robtdowd@sbcglobal.net

### Certificate of Service

I, Paul J. Murphy, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, if any, on February 26, 2016.

/s/ Paul J. Murphy
Paul J. Murphy

<u>JOSEPH CYBULSKI v. ANDREA VAIANI.</u>

**75 Mass. App. Ct. 382 (2009)**

No. 08-P-1030.
Appeals Court of Massachusetts, Middlesex.
June 3, 2009. October 13, 2009.

Present: MILLS, GREEN, & SIKORA, JJ.
Sean L. Cannon for the plaintiff.
James C. Crowley, Jr., for the defendant.

SIKORA, J.

This appeal presents a procedural issue located between the lines of the Massachusetts Uniform Arbitration Act, G. L. c. 251, §§ 1 et seq. (Arbitration Act). If parties begin a civil action in the Superior Court, then suspend that litigation and make an agreement to arbitrate their dispute, does the suspended action serve as the mandatory site for judicial review of the arbitral decision? For the following reasons, we conclude that the parties must file their application for confirmation, vacation, or modification of the arbitral award in the original Superior Court litigation and may not commence a separate action for those purposes.

383

*383 Background. In May of 2005, the plaintiff, Joseph Cybulski, and the defendant, Andrea Vaiani, were involved in a minor rear-end automobile collision. Vaiani's car struck Cybulski's at low speed while he was stopped at a traffic light. Cybulski claimed neck, back, and shoulder injuries. Vaiani (through her insurer) did not dispute fault, but denied causation of the claimed injuries in light of Cybulski's long history of similar pre-existing injuries and his questionable credibility.

In May of 2007, Cybulski filed an action for negligence in Superior Court in Middlesex County. After completion of pleadings and some preliminary motions practice, the parties drafted and executed an arbitration agreement "to fully settle all claims."[1] Under the agreement, they would continue to conduct discovery in accordance with the rules of civil procedure applicable in the Superior Court, in apparent preparation for the arbitration hearing. Cybulski covenanted to dismiss the Superior Court action, but never did so.

The parties agreed upon an arbitrator, set a hearing date of no later than February 13, 2008, and submitted to the Superior Court a joint motion to continue any pending activity until February 22, 2008. On January 16, 2008, a Superior Court judge allowed the continuance.

The arbitrator conducted a hearing at his office in Bristol County on February 7, 2008, and by a detailed decision of February 20 found no causal connection between the parties' accident and Cybulski's claimed injuries. He entered a defendant's award for Vaiani. Under the Superior Court's Rule 9A for motion practice, Vaiani served



EXHIBIT
3

Cybulski with a motion to confirm the award.[2] In response, Cybulski filed simultaneously both an opposition to confirmation in Superior Court in Middlesex County and an application to vacate the award in Superior Court in Bristol County.

384

*384 A judge in the original Middlesex action promptly allowed the application (motion) for confirmation, denied the opposition, and entered a conforming final judgment in favor of Vaiani. No reported action has occurred in Superior Court in Bristol County upon Cybulski's application to vacate. He has brought a timely appeal from the Middlesex judgment.

Discussion. In his opposition to confirmation and now on appeal, Cybulski has contended that his application to vacate filed in Bristol County precluded any action upon Vaiani's application to confirm in Middlesex County because the venue provision of the Arbitration Act, G. L. c. 251, § 17, directs an "initial application ... to the superior court for the county" in which the arbitration hearing occurred and "[a]ll subsequent applications... to the court hearing the initial application unless the court otherwise directs."[3] The Middlesex judge implicitly rejected that argument by his summary confirmation of the arbitral decision. With the same record as the judge, we review the decision to confirm de novo. See Feeney v. Dell Inc., 454 Mass. 192, 199 (2009), and cases cited. For multiple reasons of statutory interpretation and practical policy, the judge's decision was sound as a matter of law and as an exercise of discretion.

1. Statutory construction. No provision of the Arbitration Act specifically addresses the situation in which parties without a prior arbitration agreement (a) begin a lawsuit, (b) make an arbitration agreement during its progress, (c) leave the lawsuit open as they arbitrate, and (d) then dispute the propriety of judicial review of the arbitral award by the original court instead of a subsequent one. The specific silence of the Arbitration Act does not pose an insuperable problem. Substantial guidance is available from the premises of the Arbitration Act generally and from the suggestive purposes of certain provisions of the Act particularly.

The purpose of the Uniform Arbitration Act, adopted by the Legislature in 1960 as G. L. c. 251,[4] is "to further the speedy,

385

*385 efficient, and uncomplicated resolution of ... disputes with very limited judicial intervention or participation." Marino v. Tagaris, 395 Mass. 397, 400 (1985), quoting from Floors, Inc. v. B.G. Danis of New England, Inc., 380 Mass. 91, 96 (1980). The Arbitration Act "express[es] a strong public policy favoring arbitration as an expeditious alternative to litigation for settling... disputes." Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc., 403 Mass. 772, 774 (1989), quoting from Danvers v. Wexler Constr. Co., 12 Mass. App. Ct. 160, 163 (1981). Consequently, once undertaken by the parties, the arbitration process contemplated by c. 251 should "be speedy and not subject to delay and obstruction in the courts." Quirk v. Data Terminal Sys., Inc., 379 Mass. 762, 767 (1980). See Lawrence v. Falzarano, 380 Mass. 18, 28 (1980).[5] To solve specific questions of legislative purpose or preference, a court will examine a statutory scheme in all its parts as an integrated unit. See Boston

Police Patrolmen's Assn., Inc. v. Police Dept. of Boston, 446 Mass. 46, 50 (2006); Boston v. Rochalska, 72 Mass. App. Ct. 236, 243 (2008).

The provision of the Arbitration Act most closely approaching the present situation is G. L. c. 251, § 2(c):

"If an issue referable to arbitration under [a pre-existing arbitration agreement] is involved in an action or proceeding pending in a court having jurisdiction to hear applications under paragraph (a) [directing applications to the Superior Court], the application [to compel arbitration] shall be made therein ..."

The language presumes a pre-existing arbitration agreement between parties and a claim for arbitration by one or more of them. It assigns the determination of arbitrability to the Superior Court hosting the existing litigation. At least two factors support that directive. First, the parties are already engaged in that court and should not have to undertake an additional action. Second, that court's familiarity with the existing action should assist its decision of arbitrability.

386

*386 The same factors support the return of the arbitration outcome to the same Superior Court action after arbitration. The parties are already engaged in the still-open case. Their dispute will have created a record accessible and informative, and perhaps already familiar, to judges in the session. The mandatory retention of judicial review of the arbitral decision in the existing lawsuit would extend the policy of G. L. c. 21, § 2(c), to the present less common scenario in which the parties do not have a pre-existing arbitration agreement but rather make one in the course of the litigation.

The venue provision of the Arbitration Act, G. L. c. 251, § 17, lends support to this conclusion. As recounted above, it directs an "initial application" for judicial review of the arbitral result to the Superior Court of the county in which the arbitration occurred or in the county of the residence or the business location of the adverse party, and assigns "all subsequent applications" to the same court "unless the court otherwise directs" (emphasis supplied). This reservation of discretion to the Superior Court upon the matter of the venue of judicial review permits the judges to assign a postarbitration application to an appropriate court for such reasons as the convenience of the parties, the efficiency of the courts, prior judicial familiarity with the merits, and a possible connection of the arbitral outcome to other pending litigation. In the situation of an action between the parties in a first court, predating the arbitration, generating the reference to arbitration, and remaining open after the arbitration, a second court would typically weigh the advantages of efficiency and continuity anchoring the dispute in the original court, and often transfer the parties' application there, as authorized by the final phrase of § 17.

2. Practical considerations. Independently of the inferences available from the text of the Arbitration Act, mandatory return to the originating Superior Court action serves the paramount practical purposes of arbitration: speed, efficiency, simplicity, and limited judicial involvement. As the procedural history of this

dispute demonstrates, the party losing the arbitration sought to open a second litigation front in a Superior Court session in another county. That development will typically require some response by the opposing party in both the new action and the original one.[6] At the very least, the second action imposes

387

*387 redundant work on the opposing party and unnecessary work on the second court. If the parallel actions continue, they extend those burdens and create the risk of differing outcomes. Retention by the original court reduces forum shopping, duplicative litigation, and the risk of inconsistent results. The statutory objective is to minimize litigation, not to multiply it.[7]

Finally, if valid reasons cause parties to propose judicial review of the arbitral result by a different court and action, they may address that proposal in the first instance to the original court. That route will bring the progress of the case to the neutral management of a judge, rather than leave it to the adversary strategies of the parties. The judge will be well positioned to assess the merits of a transfer of the case to an alternate court and to serve the goals of fairness and expedition.[8]

Conclusion. For these reasons the Superior Court in Middlesex County correctly retained judicial review of the arbitral result and confirmed[9] the award in favor of the defendant.

Judgment affirmed.

388

*388 GREEN, J. (concurring).

I agree with the result reached by the majority opinion, affirming the judgment of the Superior Court confirming the arbitral award. Under the reasoning of Abraham-Copley Square Ltd. Partnership v. Badaoui, 72 Mass. App. Ct. 339 (2008), it is clear that (contrary to the plaintiff's argument) venue was proper in the Middlesex County Superior Court.

I decline, however, to join the broader rule imposed by the majority opinion: that a motion to confirm an arbitral award in the circumstances of this case may only be brought in the Middlesex County Superior Court.

As the majority correctly observe, no statute or common law confers exclusive jurisdiction or venue on the Superior Court of the county in which the action underlying a matter submitted to arbitration is pending, unless the agreement to arbitrate preceded commencement of the action. The majority further observe that, in confirming the award, the motion judge implicitly rejected the plaintiff's contention that venue was improper in Middlesex County. Having concluded that venue was at least permissible in Middlesex County, and that the

motion judge accordingly acted properly in confirming the arbitral award, we need go no further to affirm the judgment.

Were the law clear that venue is vested exclusively in the county in which the underlying action commenced, I would have little hesitancy in including, as dictum, a statement to that effect. However, the majority opinion elects to impose a rigid rule of exclusive venue, based on a series of factors it considers persuasive. I am not persuaded that a rule restricting venue to a particular county of the Superior Court is necessary or advisable. What is offensive about the plaintiff's attempt in the present case is his effort to derail the defendant's properly initiated motion to confirm the award. Had the defendant instead sought to confirm the award in the Superior Court in Bristol County, I am not persuaded that any troublesome burden on judicial resources would have resulted. Moreover, I consider the majority's reliance on the presumed familiarity of Superior Court judges in Middlesex County with the underlying litigation to be overstated. First, by reason of the rotation system employed by the Superior Court department, there is no assurance that any judge assigned to that session at the time of the motion for confirmation would had any prior

389

*389 involvement with the underlying action.[1] Second, the matter had not progressed to any significant degree before the parties elected to pursue arbitration.[2] More significantly, the scope of the court's review of an arbitral award, on a motion to confirm, requires little prior familiarity with the underlying litigation.

In my view, there seems no compelling reason for a rule restricting venue for motions to confirm an arbitral award to the county in which the underlying action was initially commenced; I would instead tend to prefer a presumptive rule of flexibility for parties seeking confirmation of an arbitral award. Whatever prudential considerations might weigh in the direction of the rule advocated by the majority are, in my view, better left to the Legislature. Failing action by the Legislature, we may have occasion in some future case, where the issue is necessary to decision, to consider an appropriate rule. In any event, we need not reach the question in the present case, and I accordingly decline to do so.

---

[1] Counsel for the parties signed, but did not date, the arbitration agreement. From events listed in the Superior Court docket sheet, we infer that the parties formed the agreement in late 2007.

[2] Under Superior Court Rule 9A(b), a party submitting a motion must first serve the motion and related materials upon its opponent, allow effectively thirteen days for receipt of responsive material, and then file the combined materials with the court. The Arbitration Act, G. L. c. 251, § 17, provides that any "application" to a court functions as a "motion" under the usual rules of the court.

[3] The thrust of Vaiani's appellate argument is that Cybulski originally chose Superior Court in Middlesex County as the venue for his suit, left that action open during arbitration, and should now face barriers of waiver and estoppel against the commencement of a second action upon the same dispute in a different county.

[4] By St. 1960, c. 374, § 1.

[5] For commentary elaborating upon these benefits of arbitration, see Finn & McCarthy, Mediation and Arbitration § 9.5 (2008); Herzog, Commercial Arbitration: A Tool for the Lawyer, 4 Boston Bar J. No. 1, 7, 10 (1960); Asher, Commercial Arbitration in Massachusetts, 10 Boston Bar J. No. 9, 15, 17 (1966).

[6] Even a successful motion to dismiss the second action will consume the time and effort invested in the preparation of court papers, the conduct of a hearing, and the rendition of a reasoned decision — all often unnecessary.

[7] In a common scenario, as trial approaches in the Superior Court, all counsel may report their spontaneous agreement to submit the case to binding arbitration but will not request the judge to dismiss the action. The open action then serves as the natural forum for postarbitration applications.

[8] Ideally, as the concurring opinion proposes, the Legislature might prescribe a solution. However, legislative attention to a procedural detail of a general statutory scheme is unpredictable. Meanwhile a question of the present kind — the propriety of two open actions upon one dispute — might continue indefinitely. Plugging the procedural gaps in broadly worded statutes employs the core competence and responsibility of the judiciary. In the absence of legislative directions, it should know best how to arrange the pathways to and through its court rooms. See, as only several examples, Kennedy v. Justice of the Dist. Ct. of Dukes County, 356 Mass. 367, 377-378 (1969) (furnishing a procedural code for the conduct of statutory inquests); Nei v. Burley, 388 Mass. 307, 315 (1983) (concluding, amid legislative silence, that G. L. c. 93A claims are not entitled to trial by jury); and Commonwealth v. Ciampa, 51 Mass. App. Ct. 459, 463-464 (2001) (itemizing the elements of a record necessary to establish a judge's statutorily required warning of the immigration consequences of a guilty plea). By that process, the appellate courts furnish trial judges with guidance as well as hindsight.

[9] The plaintiff has pressed this appeal entirely upon arguments of venue and not upon any merits-related grounds authorized for vacation or modification by G. L. c. 251, § 12(a) and § 13(a), respectively.

[1] The docket of the Superior Court action, for example, reveals that the judge who confirmed the arbitral award had no prior involvement with the case, other than to allow a joint motion to continue a minor discovery motion.

[2] The parties agreed to arbitrate after the entry of default against the defendant, and the defendant's unsuccessful motion to remove the default (based on improper service).

# EXHIBIT 14



COPY

## COMMONWEATH OF MASSACHUSETTS

BARNSTABLE, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. **1472CV00511**

SUNLINK CORPORATION,

      Plaintiff,

v.

AMERICAN CAPITAL ENERGY, INC.;
ARCH INSURANCE COMPANY;
BERKLEY REGIONAL INSURANCE
COMPANY; and BERKLEY INSURANCE
COMPANY,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

SUPERIOR COURT
BARNSTABLE, SS

FILED FEB 2 6 2016

*Scott L. Nickerson* Clerk

### PLAINTIFF SUNLINK CORPORATION'S OPPOSITION TO DEFENDANT AMERICAN CAPITAL ENERGY, INC.'S EMERGENCY MOTION TO CLARIFY RULING

Defendant American Capital Energy, Inc. ("**ACE**") "Emergency Motion to Clarify Ruling " ("**ACE Motion**") should be summarily denied because it has no basis in law or fact. In support of this opposition, Plaintiff SunLink Corporation ("**SunLink**") states as follows:

### THE COURT'S ORDER IS CLEAR

1.      On October 20, 2015, SunLink commenced this proceeding seeking to confirm an Arbitration Award ("**Award**") in federal court. Despite the pendency of that proceeding, on November 5, 2015, ACE later filed an "Emergency Application to Vacate" the Award in this Court on the dubious grounds that this statutory bond action was a prior filed action in which SunLink sought to confirm the Award. Regardless of ACE's assertions to this Court, SunLink never sought to compel arbitration here.

1

2.      On November 12, 2015, SunLink filed an emergency motion to strike ACE's "Application" in this Court.  On February 18, 2016, this Court **ALLOWED** SunLink's motion to strike (thereby striking ACE's Application) and, in doing so, noted that ACE's efforts to vacate belong in federal court.

3.      ACE has now asserted to the federal court – expressly and impliedly – that this Court's order allowing SunLink's motion to strike did not in fact strike ACE's Application, but rather, transferred the application to the federal court.  See Exhibit A (a copy of ACE's motion to continue scheduling conference filed in the federal court).[1]  Respectfully, ACE's assertion that this Court's allowance of SunLink's motion to strike the Application actually is a *sua sponte* "transfer" of that application by this Court to the federal court is absurd.  There is nothing unclear about this Court allowing SunLink's motion to strike.  There is nothing to clarify.

4.      Furthermore, jurisdiction of a state court is transferred to a federal court only upon removal of the action from the state court to the federal court.  *See Nelson v. Sorrentino*, No. 0604347, 2007 WL 4711518, at *2 (Mass. Super. Dec. 20, 2007) ("There is no basis for this court to allow [the plaintiff]'s motion to transfer this case to the federal court. Under 28 U.S.C. § 1441(a), a 'civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants ..."); *see also, Brae Asset Fund, L.P. v. Dion,* 929 F. Supp. 29, 30 (D.Mass.1996) ("[i]n the ordinary removal setting it is only a defendant that can remove ...").  Here, ACE did not remove anything from this Court: nor did ACE even request this Court to transfer anything to the federal court.  Rather, ACE simply prayed for this Court to deny SunLink's motion to strike.  *See* Exhibit C, p. 2 (a copy of ACE's opposition to SunLink's motion to strike).  This Court did not grant ACE's prayer.

---

[1] The federal court (Burroughs, J.) today denied ACE's Motion to continue scheduling conference. *See* Exhibit B (copy of the Court's denial of ACE's Motion).

Asserting now that the "allowance" of a motion to strike really is a *sua sponte* transfer of a motion between state and federal court borders on being disingenuous.

## ACE BASES ITS REQUEST FOR CLARIFICATION ON THE SAME FAILED ARGUMENTS ON WHICH ACE OPPOSED SUNLINK'S MOTION TO STRIKE

5.      What perhaps is even more remarkable is that ACE now bases its motion to clarify on the same arguments ACE raised in opposition to SunLink's motion to strike, i.e., that ACE had to file the Application in this Court (and, although unstated by ACE, that ACE somehow was precluded from filing the Application in the prior filed federal proceeding). The Massachusetts Uniform Arbitration Act, however, could not be clearer as to the proper venue for filing an application to vacate an arbitration award (and that venue was *not* Barnstable Superior Court):

> An initial application shall be made to the superior court **for the county in which the agreement provides the arbitration hearing shall be held** or, if the hearing has been held, **in the county in which it was held**.

MASS. GEN. LAWS c. 251, § 17 (emphasis added). As the arbitration hearing was held in Boston, the appropriate statutory venue for any application to vacate would have been in Suffolk Superior Court or in federal court as the parties are diverse.  As such, when the Award issued, ACE had two options:  (i) pay the Award or (ii) move to vacate the award either in Suffolk Superior Court or in federal court. At the same time, SunLink had the option to seek to confirm the award in Suffolk Superior Court or in federal court. SunLink – lawfully beating ACE to the courthouse – chose to seek confirmation in federal court and did so before ACE's 30-day time limit to move to vacate had expired.  ACE should have – and certainly could have – filed a motion to vacate in the federal court to preserve ACE's rights.  ACE *chose* not to do so, but rather, to file the Application in the wrong state-court venue. ACE did so at its own peril.

6.      Also, contrary to ACE's assertions, *Cybulski v. Vaiani*, 75 Mass. App. Ct. 383 (2009), does not control or divest SunLink of its chosen federal forum to confirm the Award. Nor did it require ACE to file its Application in this Court and divest SunLink of its rights to exercise federal diversity jurisdiction merely because SunLink filed a statutory bond action to perfect rights under certain payments bonds.  Again, these are the very same arguments ACE made to this Court, which were found unpersuasive and did not prevent this Court from striking ACE's Application to Vacate.

7.      Indeed, one critical distinguishing factor in *Cybulski* is that the parties there agreed – in the context of their own lawsuit – to arbitrate the very claims that were being contested in the lawsuit. There was no pre-existing arbitration agreement or proceeding between the parties at all. Here, there was an existing arbitration agreement and SunLink followed that agreement by demanding arbitration before the American Arbitration Association. Also, because certain non-party sureties provided payment bonds, SunLink – after initiating the arbitration proceedings – filed two "bond actions" in Superior Court (Barnstable and Dukes) merely to perfect rights under those bonds, as required by MASS. GEN. LAWS c. 149, § 29 and the terms of the bonds themselves. Unlike *Cybulski*, those two state-court proceedings were filed *after* SunLink initiated its demand for arbitration and wherein SunLink only asserted claims under the relevant payment bonds – not any of the substantive claims that SunLink brought against ACE in the arbitration proceeding. *Cybulski* in wholly inapposite.

8.      Also, it its motion to continue conference (filed in federal court), ACE's falsely asserts that this Court's "Ruling" on SunLink's motion to strike was still pending (ACE motion, ¶ 4) and, as such, the parties could not finalize their 26(f) report. This Court granted SunLink's motion to strike – nothing was pending at all.  That ACE has sought clarification – based on the

4

same arguments this Court rejected in the first instance – does not reopen the issue of whether this Court allowed SunLink's motion and struck ACE's Application.  ACE merely is engaged in the same type of misguided gamesmanship that caused ACE to be in the position that ACE currently is in, which SunLink respectfully suggests should not be countenanced by this Court.

## ACE CERTAINLY MAY RAISE ARGUMENTS TO VACATE IN THE FEDERAL PROCEEDING, REGARDLESS OF THE FUTILITY OF THOSE ARGUMENTS

9.      Ultimately, this Court was correct in striking ACE's Application and noting that ACE's "efforts to vacate" belong in federal court.  They do.  That is where ACE should have submitted its application and that is were the parties would have found themselves even if ACE submitted it in the proper state-court venue (Suffolk) as SunLink would have removed it to federal court.  That ACE has handed SunLink a waiver argument – based on ACE's own actions and in actions – should not cause this Court to assist ACE fix a problem of ACE's own making by reversing its decision to allow SunLink's motion to strike or somehow transferring ACE's Application to federal court (ACE, of course, cites no statute or case law supporting such a piecemeal transfer of a single motion filing in state court to federal court, and SunLink is not aware of any).

10.     ACE has sought to "clarify" a patently clear court order approving a motion to strike because ACE realizes the import of its decision to attempt to avoid the parties' dispute in federal court.  Specifically, regardless of whether the Massachusetts Arbitration Act or Federal Arbitration Act applies, ACE has waived the ability to vacate the Award because ACE did not timely file a motion to vacate in the federal proceeding.  *See* MASS. GEN. LAWS ch. 251, § 12; 9 U.S.C. § 12.[2]  Despite the federal proceeding being commenced with time left for ACE to submit

---

[2] SunLink asserts that the Massachusetts Uniform Arbitration Act, and not the Federal Arbitration Act, applies as the parties' Sales Contracts expressly provide for the application of Massachusetts law.  *See New England Utilities v. Hydro-Quebec*, 10 F. Supp. 53 (D. Mass. 1998).

an application to vacate in federal court, ACE chose not to do so.  As a result, the federal court must enter judgment for SunLink.  *See* MASS. GEN. LAWS ch. 251, § 11 (court must confirm award unless award is vacated); 9 U.S.C. § 9 (same).

11.    ACE's wrongful filing of an application to vacate in this Court is no panacea as a matter of law.  The timing requirements under the state and federal statutes are strictly construed. *See Lumbersmans Mut. Cas. Co. v. Malacaria*, 40 Mass. App. Ct. 184, 192 (1996); *see also*, Domnarski *v. UBS Financial Srvs., Inc.*, 919 F. Supp. 2d 183, 186 (D. Mass.) (Neiman, J.) (refusing to extend limitations period by three days).  If a motion to vacate is not filed in the appropriate court within the appropriate time period, all arguments to vacate an arbitration award are time barred.  *See e.g., E. Seaboard Const. Co. v. Gray Const., Inc.*, 553 F.3d 1, 6 (1st Cir. 2008); *Fradella v. Petricca*, 183 F.3d 17, 18-20 (1st Cir. 1999); *Domnarski* 919 F. Supp. 2d at 186; *Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Shopmen's Local Union 501 v. Burtman Iron Works, Inc.* ("**Int'l Ass'n**"), 928 F. Supp. 83, 89 (D. Mass. 1996) (Tauro, J); *Local 589, Amalgamated Transit Union v. MBTA*, 397 Mass. 426, 431 (1986); *Bernstein v. Gramercy Mills, Inc.*, 16 Mass. App. Ct. 403, 408 (1983); *see also, Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986) ("once the three-month period has expired, an attempt to vacate an arbitration award could not be made even in opposition to a later motion to confirm"); *Franco v. Prudential Bache Securities, Inc.*, 719 F. Supp. 63, 64 (D.P.R. 1989) ("As many courts have noted, "[a] party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award.").

12.    For example, in *Bernstein v. Gramercy Mills, Inc.*, an arbitration award issued on June 3, 1981 (in favor of *Bernstein*) and was served on the parties on June 8, 1981.  *See* 16 Mass. App. Ct. at 404.  As *Gramercy Mills* did not comply with the award, *Bernstein* brought an action

in Suffolk Superior Court to confirm the award on July 17, 1981, which action *Gramercy Mills* answered on August 6, 1981, and asserted a counterclaim to vacate the award. *See id.* The trial judge confirmed the award. *See id.* at 404. On appeal, however, the Appeals Court reversed the trial judge and concluded that the effort to vacate the award was time barred. *See Bernstein*, 16 Mass. App. Ct. at 408. In doing so, the Appeals Court quoted MASS. GEN. LAWS ch. 251, § 11 and explained:

> "Upon application of a party, the court shall confirm an award, unless *within the time limits hereinafter imposed* grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections twelve [vacation of awards] and thirteen [correction or modification] (emphasis supplied). <u>Under this language, it is plain enough that commencement of an action to confirm an award does not postpone or extent the time for making an application to vacate the award.</u>

(citations omitted) (emphasis added in second instance); *see also, Int'l Ass'n*, 928 F. Supp. at 85, 89 (finding counterclaim seeking to vacate award untimely as counterclaimant failed to file motion to vacate within statutory period).

13.    Here, much like the parties seeking to vacate the awards in *Bertnstein* and *Int'l Ass'n*, ACE plainly failed to file a timely motion to vacate in the appropriate court within the requisite statutory periods under the Massachusetts Arbitration Act. Consequently, ACE may not now vacate the Award on any grounds. Therefore, pursuant to the express language of the Massachusetts Arbitration Act and Federal Arbitration Act, the federal court must enter judgment for SunLink confirming the Award.

14.    If ACE argues that a common-law "due diligence doctrine" should toll the limitations period, ACE's argument will be misplaced and unavailing. To the extent such a doctrine even applies, the statutory limitations period may be tolled only if "extraordinary circumstances beyond the claimant's control prevented timely filing, or the claimant was

7

materially mislead into missing the deadline." *See Fradella*, 1983 F.3d at 21; *Domnarski*, 919 F.

Supp. 2d at 186-87 (citing and relying on *Fradella*). A party's decision to petition *another* court

for relief (and not to file a timely motion to vacate as a result) does not satisfy the due diligence

exception. *See Taylor*, 788 F. 2d at 225-26.

15.     For example, in *Taylor*, the appellee (Donald Taylor) chose *not* to file a motion to

vacate an arbitration award in prior federal court proceeding while the parties dealt with a related

state court filing by the appellant (Willie Nelson). *See id.* at 225. After the state court chose to

defer jurisdiction to a prior federal court filing, Taylor sought to vacate the arbitration award in

the federal court proceeding. *See id.* When overturning the trial court's vacatur of the award, the

Fourth Circuit Court of Appeals explained:

> We also conclude, however, that the district court erred in holding that Taylor's
> failure to make a motion to vacate within three months of the filing of the award
> was excused by due diligence or tolling. The existence of such exceptions to § 12
> is questionable, for they are not explicit in the language of the statute, and cannot
> be described as common-law exceptions because there was no common-law
> analogue to enforcement of an arbitration award. [Regardless,] we conclude that
> Taylor did not, in any event, act with due diligence, and was not prevented by the
> pendency of the New York proceeding from making a timely motion to vacate in
> the district court. Nelson represented before this court that the confirmation was
> pursued in New York because the contract between the parties made New York,
> as the place where the award was made, a permissible forum for confirmation.
> Nevertheless, the state court chose to defer to the prior jurisdiction of the federal
> court in Virginia. During the pendency of the New York proceeding, however,
> nothing prevented Taylor from making a timely motion in the district court.
> Instead, Taylor awaited the state court's jurisdictional ruling, a choice that caused
> him to wait longer than three months before he made a motion to vacate, and a
> decision that has proven fatal to his attempt to overturn the arbitration award.
> Taylor remained free at all times to pursue the statutory remedy of § 12 within the
> time limits set out by that statute, and he is not entitled to the benefit of any due
> diligence or tolling exceptions to the three-month rule, even if such exceptions
> exist.

*See id.* at 225-26 (emphasis added).

16.     Here, much like Taylor in *Nelson*, ACE is not entitled to any due diligence or tolling exceptions under the circumstances. <u>Nothing prevented ACE from filing a motion to vacate in the federal court within the appropriate time frame.</u>  Clearly, ACE was able to file a motion in this Court and assuredly could have made the same filing in the federal court to comply with the statutory deadlines. <u>ACE chose not to do so; but rather, ACE chose to rely solely on this Court assuming jurisdiction over the Award, despite the earlier filing by SunLink to confirm the Award in the federal proceeding.</u>  Indeed, ACE is less entitled to any due diligence or tolling than Taylor as ACE knowingly filed a motion to vacate *in the wrong court* and chose *not* to petition the federal court to vacate the award within the statutory time frame. ACE's forum-shopping gamble, however, did not pay off – this Court appropriately struck ACE's motion upon SunLink's request.  ACE simply may not "double down" now and bring the same arguments to vacate the award in the federal court or otherwise clarify this Court's order based on the same failed arguments with which ACE sought to oppose SunLink's motion to strike.

17.     Again, SunLink respectfully requests this Court not to assist ACE to fix a problem of ACE's own making.  Rather, this Court should let the federal court deal with ACE's arguments about vacatur, due diligence, *Cybulski*, or any other arguments ACE intends to raise in defense of SunLink's petition to confirm the Award – that is where jurisdiction lays over the parties' dispute.

## CONCLUSION

For the foregoing reasons, this Court should deny ACE's Motion to Clarify, award SunLink its attorneys' fees and costs in having to oppose it, and grant such further relief that this Court deems appropriate.

Respectfully Submitted,

SUNLINK CORPORATION,
Claimant,

By its attorneys,

_____
Paul J. Murphy (BBO # 363490)
David G. Thomas (BBO # 640854)
Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Tel: 617-310-6000
Fax:  617-310-6001
murphyp@gtlaw.com
thomasda@gtlaw.com

Date:  February 26, 2016

CERTIFICATE OF SERVICE
I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD
FOR EACH OTHER PARTY BY MAIL
(BY HAND) ON 2/26/16    via electronic and regular mail

10

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACUSETTS

| | | |
|---|---|---|
| SUNLINK CORPORATION, | § | |
| Plaintiff | § | Civil Action No. 1:15-CV-13606-ADB |
| v. | § | |
| AMERICAN CAPITAL ENERGY, INC. | § | |
| Defendant | § | DEFENDANT'S MOTION TO |
| | § | CONTINUE SCHEDULING CONFERENCE |

## MOTION TO CONTINUE SCHEDULING CONFERENCE

Defendant American Capital Energy, Inc. ("ACE")  hereby moves this Court to continue the Scheduling Conference in this matter, scheduled for March 3, 2016, until the Barnstable Superior Court, Barnstable, Massachusetts, under Cause 1472-CV-00511, which involves issues pertinent to the scheduling conference, rules on an Emergency Motion to Clarify. Attached Exhibit A.

1.     On Monday, February 22, 2016,  the undersigned received the Order from the Barnstable Superior Court, dated February 18, 2016, which states,

> "ACE's efforts to Vacate the Award belong in the Judicial Court
> where Sunlink has already sought to confirm the award."

2.     Sunlink Corporation ("Sunlink") has taken the position that ACE is now prohibited from litigating the Application to Vacate the Arbitrator's Award.

3.     It is ACE's position that the Barnstable Superior Court is transferring it's Cause of Action to this Federal Court. ACE has filed  the attached Emergency Motion to Clarify in the Barnstable Superior Court.

4.     The Counsel for Sunlink and ACE conducted a Rule 26(f) conference,

however, the status of Barnstable Superior Court Ruling was still pending rendering final Rule 26 (f) Conference impossible.

5.      Until the Barnstable Superior Court clarifies its ruling, it is impossible for Defendant to comply with Rule 26 (f) as it is unknown as to issues, discover etc. and unknown to answer the questions required of a Joint Report.

6.      The undersigned contacted Counsel for Sunlink and forwarded this Motion to them, said Counsel disagrees with this Motion.

Accordingly, Defendant American Capital Energy, Inc. requests that the Scheduling Conference, scheduled for March 3, 2016, be postponed and the Rule 26 Joint Report be extended until the Barnstable Superior Court rules on ACE's Motion for Clarify.

Respectfully Submitted
Attorney for American Capital Energy, Inc.,

ROBERT K. DOWD, P.C.

/s/ Robert K Dowd
Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
4814 Bengal Street Unit #1
Dallas TX 75235
Tele: (214) 922-9330
robtdowd@sbcglobal.net

February 25, 2016

## CERTIFICATE OF SERVICE

I, Robert K Dowd, counsel for the Defendants American Capital Energy, Inc., hereby certify that on this date was served the foregoing

Defendant American Capital Energy, Inc.
motion to Continue Scheduling Conference

By email and by CM/ECF to all counsel who have entered an appearance in this case.

Paul J. Murphy, BBO #363490
David G Thomas BBO #640854
GREENBERG TRAURIG, LLP
One International Place
Boston MA 02110
(617) 310-6063
murphyp@gtlaw.com
thomasda@gtlaw.com

Signed under the pains and penalties of perjury this 25th day of February, 2016.

ROBERT K. DOWD, P.C.

/s/ Robert K Dowd
Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
4814 Bengal Street Unit #1
Dallas TX 75235
Tele: (214) 922-9330
robtdowd@sbcglobal.net

# EXHIBIT B

**Curley, Penny R. (Secy-Bos-LT)**

| | |
|---|---|
| **From:** | ECFnotice@mad.uscourts.gov |
| **Sent:** | Friday, February 26, 2016 11:25 AM |
| **To:** | CourtCopy@mad.uscourts.gov |
| **Subject:** | Activity in Case 1:15-cv-13606-ADB SunLink Corporation v. American Capital Energy Inc. Order on Motion to Continue |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT
RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy
permits attorneys of record and parties in a case (including pro se litigants) to receive one free
electronic copy of all documents filed electronically, if receipt is required by law or directed by the
filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each
document during this first viewing. However, if the referenced document is a transcript, the free
copy and 30 page limit do not apply.

## United States District Court

### District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered on 2/26/2016 at 11:24 AM EST and filed on 2/26/2016
**Case Name:**       SunLink Corporation v. American Capital Energy Inc.
**Case Number:**     1:15-cv-13606-ADB
**Filer:**
**Document Number:** 18(No document attached)

**Docket Text:**
**Judge Allison D. Burroughs: ELECTRONIC ORDER entered denying [15] Motion to
Continue scheduling conference. Parties shall come to the conference prepared to
argue the pending motion to dismiss. (Folan, Karen)**


**1:15-cv-13606-ADB Notice has been electronically mailed to:**

Paul J. Murphy     murphyp@gtlaw.com, curleyp@gtlaw.com

Robert K. Dowd     robtdowd@sbcglobal.net

David G. Thomas    thomasda@gtlaw.com, curleyp@gtlaw.com

**1:15-cv-13606-ADB Notice will not be electronically mailed to:**

# EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.

|  |  |
|---|---|
| SUNLINK CORPORATION<br>    Plaintiff,<br><br>          vs.<br><br>AMERICAN CAPITAL ENERGY, INC.<br>ARCH INSURANCE COMPANY,<br>BERKLEY REGIONAL INSURANCE<br>COMPANY; and BERKLEY INSURANCE<br>COMPANY<br><br>          Defendants | : SUPERIOR COURT CIVIL ACTION<br>: No. 1472 CV 00511<br>:<br>:<br>:<br>:<br>: OPPOSITION OF DEFENDANT<br>: AMERICAN CAPITAL ENERGY INC.<br>: TO PLAINTIFF'S EMERGENCY<br>: MOTION<br>:<br>:<br>:<br>: |

The Defendant American Capital Energy, Inc. (ACE), opposes the Emergency Motion of the Plaintiff Sunlink Corporation (Sunlink).

1. Sunlink chose the Barnstable Superior Court to commence its claims against the four Parties. The case was stayed by agreement of the Parties pending arbitration.

2. In Status reports to this Court, Sunlink filed the arbitration award and requested a stay of any action until November 6, 2015. In ACE's status report, ACE advised the Court, in compliance with precedent, that ACE would be filing a Motion to Vacate the award in this Court, as required by the authority of *Cybulski v Vaiani* Mass App Ct 382 (2009).

3. Sunlink then forum shopped part of the case against ACE in a new action in Massachusetts Federal District Court.

4. ACE, per status report, filed it's Application to Vacate the Award in Barnstable Superior Court and ACE also moved for an order of dismissal of the Federal District Court action citing in part a Massachusetts Court of Appeals case which mandated that any confirmation, vacation or modification of the Arbitral Award must be filed in the original Superior Court litigation.

5.  Sunlink's effort to break off a part of this case for special adjudication in a different

    forum runs directly counter to established Massachusetts Appellate precedent and should

    not be countenanced.

Wherefore ACE urges that the Emergency Motion be DENIED.


Respectfully Submitted
Attorneys for American Capital Energy, Inc.,

ROBERT K. DOWD, P.C.                    CHARLES W. COBB




Robert K. Dowd                          Charles W. Cobb
BBO # 132 800                           BBO # 541 826
Robert K. Dowd P.C.                     Silver Lake Legal
4814 Bengal Street Unit #1              303 Wyman Street Suite 300
Dallas TX 75235                         Waltham MA 02451
Telephone 214-922-9330                  Telephone 978-979-1223
robtdowd@sbcglobal.net                  ccobb@silverlakelegal.com

Dated November 23, 2015

2

# EXHIBIT 15

| **CLERK'S NOTICE** | DOCKET NUMBER<br><br>**1472CV00511** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>SunLink Corporation vs. American Capital Energy, Inc. et al | Scott W. Nickerson, Clerk of Court<br>Barnstable County |
|---|---|

| TO:<br>Paul Joseph Murphy, Esq.<br>Greenberg Traurig LLP<br>One International Place<br>20 Floor<br>Boston, MA 02109 | COURT NAME & ADDRESS<br>Barnstable County Superior Court<br>3195 Main Street<br>Barnstable, MA 02630 |
|---|---|

You are hereby notified that on 03/02/2016 the following entry was made on the above referenced docket:

Endorsement on Motion to clarify ruling dated 2/17/16 (#35.0): Other action taken
Alas, my poor penmanship has caused great confusion! My Order of 2/17/16 was for "Federal Court", not "Judicial Court". Someone in the Clerk's Office was, understandably, unable to read my scrawl.

| DATE ISSUED<br><br>03/03/2016 | ASSOCIATE JUSTICE/ ASSISTANT CLERK<br><br>**Hon. Gary A Nickerson** | SESSION PHONE#<br><br>**(508)375-6684** |
|---|---|---|

| **CLERK'S NOTICE** | DOCKET NUMBER<br><br>**1472CV00511** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>SunLink Corporation vs. American Capital Energy, Inc. et al | Scott W. Nickerson, Clerk of Court<br>Barnstable County |
|---|---|

| TO:<br>Paul Joseph Murphy, Esq.<br>Greenberg Traurig LLP<br>One International Place<br>20 Floor<br>Boston, MA 02109 | COURT NAME & ADDRESS<br>Barnstable County Superior Court<br>3195 Main Street<br>Barnstable, MA 02630 |
|---|---|

You are hereby notified that on 02/18/2016 the following entry was made on the above referenced docket:

Endorsement on Motion to After Hearing (#21.0): ALLOWED
ACE's efforts to Vacate the Arbitration Award belong in Federal Court where Sunlink has already sought to confirm the award.
copies sent; CC,RD,JC,KO,PM

| DATE ISSUED<br><br>03/01/2016 | ASSOCIATE JUSTICE/ ASSISTANT CLERK<br><br>**Hon. Gary A Nickerson** | SESSION PHONE#<br><br>**(508)375-6684** |
|---|---|---|

# EXHIBIT 16

NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11902

KATZ, NANNIS & SOLOMON, P.C., & others[1]  vs.
BRUCE C. LEVINE & another.[2]


Norfolk.      December 10, 2015. - March 9, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.


Massachusetts Arbitration Act.  Arbitration, Judicial review,
    Scope of arbitration, Confirmation of award, Authority of
    arbitrator, Damages, Attorney's fees.  Contract,
    Arbitration.  Practice, Civil, Attorney's fees, Costs.
    Damages, Attorney's fees.


    Civil action commenced in the Superior Court Department on
February 27, 2013.

    A motion to confirm an arbitration award was heard by
Patrick F. Brady, J.; a motion for attorney's fees and costs was
heard by him; and entry of separate and final judgments was
ordered by him.

    The Supreme Judicial Court granted an application for
direct appellate review.

_____

    [1] Allen G. Katz, Lawrence S. Nannis, and Jeffrey D. Solomon.

    [2] Levine, Caufield, Martin & Goldberg, P.C. (LCMG).

<u>Thomas J. Carey, Jr</u>. (<u>Daniel J. Cloherty & Victoria L. Steinberg</u> with him) for Bruce C. Levine.

<u>Warren D. Hutchison</u> (<u>Nancy M. Reimer</u> with him) for the plaintiffs.

<u>Joseph S.U. Bodoff</u>, for Levine, Caufield, Martin & Goldberg, P.C., was present but did not argue.

BOTSFORD, J.  The central question presented in this appeal is whether parties to a commercial arbitration agreement may alter by contract the scope or grounds of judicial review of an arbitration award that are set out in the Massachusetts Uniform Arbitration Act for Commercial Disputes (MAA), G. L. c. 251.  We decide that the grounds of judicial review are limited to those delineated in G. L. c. 251, §§ 12 and 13.

<u>Background</u>.  The defendant Bruce C. Levine and the plaintiffs Allen G. Katz, Lawrence S. Nannis, and Jeffery D. Solomon were members of an accounting firm known as Levine, Katz, Nannis & Solomon, P.C. (LKNS or firm).  They were each a shareholder in the firm, and a party to a stockholder agreement dated October 1, 1998 (agreement), that governed their professional association and relationship.[3]  In 2011, Katz, Nannis, and Solomon, purporting to act pursuant to the agreement, voted to require the withdrawal of Levine as a director and stockholder in LKNS; Levine disagreed that the termination of his stockholder interest and position was in

---

[3] At all times relevant to this case, Levine, Katz, Nannis, and Solomon were the sole stockholders of the former accounting firm Levine, Katz, Nannis & Solomon, P.C. (LKNS or firm).

accordance with the agreement's terms, and the arbitration at issue in this case concerned that dispute.  We summarize the relevant provisions of the agreement, the parties' dispute leading to arbitration, and the arbitration award, followed by a summary of the proceedings in the Superior Court that led to this appeal.

The agreement.  The agreement provides that a stockholder may withdraw voluntarily or be required to withdraw involuntarily.  Two provisions in the agreement relate to involuntary withdrawal:

> "4(e)  Involuntary Withdrawal.  A Stockholder may be required to withdraw from the Corporation, for any reason, upon the affirmative vote of the holders of at least 75% of the issued and outstanding Shares, excluding the Shares of the subject Stockholder.

> "4(f)  For Cause Withdrawal.  A Stockholder may be required to withdraw from the Corporation for 'Cause.'  'Cause' shall be deemed to exist upon the occurrence of any of the following:

>> "(i)  Commission of an act of fraud, dishonesty or the like involving the Corporation or any of its clients."[4]

Under section 5(a)(i) of the agreement a voluntarily withdrawing stockholder is entitled to the redemption of his shares at "an amount equal to the accrual basis book value of the [firm]"

---

[4] Section 4(f) of the agreement delineates three other "occurrence[s]" that fit within the definition of "[c]ause": conviction of a crime involving fraud, dishonesty or moral turpitude; loss of license to practice public accountancy; and sexual harassment of any employee.  None of these has relevance to this case.

4

multiplied by the percentage of shares issued and outstanding held by the withdrawing stockholder.  Section 5(a)(i) also provides that a stockholder subject to an involuntary withdrawal, but not "for cause," is also generally entitled to redemption.  However, section 5(a)(iii) provides:

> "If the withdrawal is for Cause (as defined in Section 4[f]) or as described in Section 8(a)(iii) [i.e., where there is involuntary withdrawal and stockholder competes with the firm], the subject Stockholder shall forfeit his Shares . . . and the Redemption Price shall be $zero."

In addition to the redemption of shares, under section 8(a)(i), in certain circumstances, a withdrawing stockholder is entitled to the payment of deferred compensation.  However, under section 8(a)(v), a stockholder whose withdrawal is for cause receives no deferred compensation.  In addition, under section 8(a)(iii), if a stockholder's withdrawal is an "involuntary withdrawal pursuant to Section 4(e)" and the stockholder competes with the firm within three years after his withdrawal, he receives no deferred compensation and must compensate the firm pursuant to a stipulated formula.  A stockholder who withdraws and within three months employs an employee of the firm also must pay liquidated damages to the firm, under section 8(a)(vii).

Section 13(i) provides that the agreement is to "be subject to and governed by the laws of the Commonwealth of Massachusetts pertaining to agreements executed in and to be performed in the

Commonwealth of Massachusetts."  Section 13(j) contains an

arbitration clause that provides in relevant part:

> "<u>Binding Arbitration</u>.  In the event of any dispute
> concerning any aspect of this Agreement, the parties agree
> to submit the matter to binding arbitration before a single
> arbitrator appointed by the American Arbitration
> Association . . . .  The decision of the arbitrator shall
> be final; <u>provided, however</u>, solely in the event of a
> material, gross and flagrant error by the arbitrator, such
> decision shall be subject to review in court. . . .  [T]he
> party against which final, adverse judgment is entered
> [shall be] responsible for (in addition to its own) the
> other party's(ies') costs and expenses, including
> reasonable attorneys' fees."

<u>The dispute</u>.  The arbitration at issue here arose out of a

dispute between Levine and the other three shareholders of LKNS,

relating to work Levine had performed for a firm client,

Levine's cousin Linda Sallop and her company (collectively,

Sallop).  Sallop sustained tax losses in the amount of $750,000

when the Internal Revenue Service (IRS) refused to grant capital

gains treatment for an employee stock ownership plan in 2002

because the IRS did not receive the necessary documentation.  In

2004, Levine knew that these events created "problems with

Sallop's [2002] tax return."  In April, 2007, Sallop threatened

to sue Levine and LKNS.  Five months later, Levine submitted a

professional liability insurance renewal application on behalf

of the firm that did not mention the lawsuit threatened by

Sallop.  Sallop sued Levine and LKNS in September, 2008, and

Levine retained counsel to represent himself and LKNS in

defending against the suit and the threatened attachment of
LKNS's assets.  Levine did not inform Katz, Nannis, or Solomon
of the lawsuit, of Levine's retention of legal counsel on behalf
of the firm, or of Sallop's motion to attach LKNS's assets at
the time that the lawsuit and motion were filed.  Instead, he
did so for the first time during a stockholder meeting in
February, 2009, just before his deposition in the case.  In
March, 2010, Levine informed the three that LKNS's insurance
coverage was rescinded because Levine had failed to disclose
Sallop's threatened lawsuit in a renewal application.

At a special meeting held August 10, 2011, Katz, Nannis,
and Solomon voted to terminate Levine's employment and to remove
him as an officer and director of the firm, which then changed
its name to Katz, Nannis & Solomon, P.C. (KNS).  Soon after his
termination, Levine opened his own accounting firm, Levine,
Caufield, Martin & Goldberg, P.C. (LCMG), and a number of
employees of LKNS left that firm and joined Levine at LCMG.  The
nature and terms of Levine's withdrawal from the firm and his
subsequent competition with KNS were the bases of the dispute
between Levine and the other LKNS stockholders, and became the
subject of the arbitration proceeding at issue here.

The arbitration and award.  Pursuant to the terms of the
agreement's arbitration clause, the dispute was submitted to
binding arbitration before a single arbitrator appointed by the

American Arbitration Association.  The arbitrator heard from eleven witnesses over nine days.  On December 19, 2012, the arbitrator issued a partial final award in which he concluded that Levine had been validly terminated or "withdraw[n]" involuntarily as a stockholder in accordance with the agreement, that there was sufficient evidence to require Levine's withdrawal "for cause," and that he had been terminated for cause.  The arbitrator concluded, however, that it did not make any difference whether Levine's involuntary withdrawal or termination was "for cause" pursuant to section 4(f) of the agreement or "for any reason" pursuant to section 4(e), because, following his termination, Levine competed with KNS.  The arbitrator further found that because Levine was terminated for cause, he forfeited his shares and was not entitled to receive deferred compensation.  With respect to damages, the arbitrator determined that Levine would be liable to KNS for, among other things, amounts paid by former clients of LKNS to Levine after his termination for work performed before his termination, liquidated damages for competing with KNS following his termination, as well as liquidated damages on account of employees who left KNS to join Levine.  The arbitrator denied both parties' requests for attorney's fees.  After a hearing on

damages, the arbitrator issued the final award, ruling that KNS
was to receive $1,749,293.20,[5] plus statutory interest.

Confirmation of the arbitration award. On February, 2013,
KNS filed the present action in the Superior Court seeking
confirmation of the arbitration award and also asserting claims
to ensure payment of the arbitration award and prevent Levine
from diverting money to LCMG.[6]  Levine filed an answer, an
opposition to KNS's motion to confirm the award, and a cross
motion to vacate or modify the arbitration award.  A Superior
Court judge (motion judge) allowed KNS's motion to confirm the
award and denied Levine's cross motion to vacate or modify it.
KNS moved for an award of attorney's fees, and the judge allowed
the motion.  With a stipulation by the parties in place that
secured any judgment that would enter against Levine, KNS moved
to dismiss the remaining claims against Levine and all claims

---

[5] The arbitrator stated that the final award consisted of
$480,412 for Levine's competing with Katz, Nannis & Solomon,
P.C. (KNS), $200,477.52 as liquidated damages for the employees
of the firm (LKNS) hired by his new firm, and $1,068,403.70 for
amounts owed on account of the accounts receivable and work in
progress related to work that Levine had performed for clients
of LKNS before he was terminated but for which he had received
payment at his new firm.

[6] The complaint included counts against Levine to enjoin his
encumbering or transferring assets, and to secure a judgment
directing Levine to satisfy the award; and counts against
Levine, Caufield, Martin & Goldberg, P.C. (LCMG), for injunctive
relief preventing it from encumbering or transferring assets as
well as for conversion, money had and received, and creation of
a constructive trust.

against LCMG.  In February, 2014, judgment entered confirming the arbitration award, dismissing the remaining claims, and granting KNS attorney's fees and costs.  Levine thereafter filed a motion for a new trial, to amend or alter the judgment, or for relief from judgment, which the motion judge denied.  Levine filed a timely appeal from both the judgment and the denial of his postjudgment motion.  We granted the defendants' application for direct appellate review.

Discussion.  1.  Scope of judicial review of arbitrator's decision.  The parties' agreement to arbitrate is governed by the MAA, G. L. c. 251.  See G. L. c. 251, § 1.[7]  The role of courts with respect to confirming, vacating, and modifying an arbitration award is outlined in §§ 11 through 13 of the MAA. Section 11 provides that "[u]pon application of a party, the court shall confirm" an arbitration award unless "grounds are urged for vacating or modifying or correcting the award" as provided in §§ 12 and 13.  G. L. c. 251, § 11.  Section 12 sets

---

[7] Massachusetts adopted the Massachusetts Uniform Arbitration Act for Commercial Disputes (MAA) in 1960.  See St. 1960, c. 374.  The MAA superseded a 1925 statute that was modeled after the New York arbitration statute.  See Report of the Commission on Uniform State Laws, 1960 House Doc. No. 84, at 7.  New York's arbitration statute also served as a model for the Uniform Arbitration Act (UAA) promulgated in 1955.  P.A. Finn, B.J. Mone, & J.S. Kelly, Mediation and Arbitration 121 (2015-2016).

forth the available grounds for vacating an arbitration award.[8]
As is relevant here, under § 12, the court shall vacate an award
if it "was procured by corruption, fraud or other undue means,"
or "the arbitrators exceeded their powers."  G. L. c. 251,
§ 12 (a) (1), (3).[9]  Otherwise, a court is "strictly bound by an
arbitrator's findings and legal conclusions, even if they appear
erroneous, inconsistent, or unsupported by the record at the
arbitration hearing."  Lynn v. Thompson, 435 Mass. 54, 61

---

[8] Section 12 of the MAA provides in relevant part:

"(a)  Upon application of a party, the court shall vacate
an award if: --

"(1)  the award was procured by corruption, fraud or other
undue means;

"(2)  there was evident partiality by an arbitrator
appointed as a neutral, or corruption in any of the
arbitrators, or misconduct prejudicing the rights of any
party;

"(3)  the arbitrators exceeded their powers;

"(4)  the arbitrators refused to postpone the hearing upon
sufficient cause being shown therefor or refused to hear
evidence material to the controversy or otherwise so
conducted the hearing . . . as to prejudice substantially
the rights of a party; or

"(5)  there was no arbitration agreement and the issue was
not adversely determined in proceedings under [§ 2]
. . . ."

G. L. c. 251, § 12.

[9] Section 13 of the MAA allows a court to modify or correct
an award in certain ways that do not affect the merits of the
decision or the controversy.  G. L. c. 251, § 13.

(2001), cert. denied, 534 U.S. 1131 (2002).  An error of law or fact will not be reviewed by a court unless there is fraud; even a grossly erroneous decision is binding in the absence of fraud. Trustees of the Boston & Me. Corp. v. Massachusetts Bay Transp. Auth., 363 Mass. 386, 390 (1973).

     At the core of Levine's challenge to the arbitrator's award -- and to the motion judge's confirmation of the award -- is the claim that the arbitrator fundamentally misinterpreted the agreement.  Contrary to that interpretation, Levine argues that an involuntary withdrawal under section 4(e) of the agreement is a wholly separate and distinct type of withdrawal from a withdrawal for cause under section 4(f), and that, insofar as the arbitrator found that Levine's withdrawal was "for cause" under section 4(f), Levine cannot be made subject to any prohibition against competition, because, in his view, the penalty for competing with the firm only applies if the shareholder is terminated "involuntarily" under section 4(e). Levine acknowledges that the arbitration agreement is governed by G. L. c. 251.  He argues, however, that to the extent his objection to the award is a claim that the arbitrator committed an error of law, Levine is entitled to have a court consider the merits of his claim because in the arbitration clause of the agreement, the parties specifically provided for judicial review of an award to determine whether there was a "material, gross

and flagrant error" by the arbitrator.[10]  He reasons that arbitration is strictly a creature of contract, that the aim of the MAA is to enforce the parties' contractual agreement to arbitrate, and that, therefore, the parties' agreed-upon standard of judicial review should be enforced.

Although arbitration is a matter of contract, <u>Commonwealth v. Philip Morris Inc</u>., 448 Mass. 836, 843 (2007), we disagree that parties, through contract, may modify the scope of judicial review that is set out in §§ 12 and 13 of the MAA.  As previously stated, the directive of G. L. c. 251, § 11, is that a court "shall confirm" an award unless grounds for vacating it pursuant to §§ 12 and 13 are shown; this statutory language "carries no hint of flexibility."  See <u>Hall St. Assocs., L.L.C. v. Matell, Inc</u>., 552 U.S. 576, 587 (2008) (<u>Hall St</u>.).

In <u>Hall St</u>., the United States Supreme Court considered whether the grounds stated in the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq. (2012), for vacating or modifying an arbitration award were the exclusive grounds, or whether parties could expand the grounds -- and thereby expand the scope of judicial review -- by the terms of their agreement.  See 552

---

[10] The language in section 13(j) of the agreement that Levine points to is the following:  "The decision of the arbitrator shall be final; provided, however, <u>solely in the event of a material, gross and flagrant error by the arbitrator, such decision shall be subject to review in court</u>" (emphasis added; emphasis in original omitted).

U.S. at 578, 586.  The Court held that under the FAA the statutory grounds are the exclusive grounds for judicial review and parties are unable to contract otherwise.  Id. at 586. However, the Court also made clear that States are free to reach a different result on grounds of State statutory law or common law.  Id. at 590 ("The FAA is not the only way into court for parties wanting review of arbitration awards:  they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable").[11]  Nonetheless, the Court's analysis of the FAA in Hall St. remains instructive and we reach the same result in relation to the MAA.

The provisions of the MAA governing judicial review of an arbitration award are substantively (and often linguistically) identical to the analogous provisions in the FAA.[12]  The Court in

---

[11] Some States have construed their arbitration statutes to permit parties to modify by contract the scope of judicial review of an arbitration award.  See Raymond James Fin. Servs., Inc. v. Honea, 55 So. 3d 1161, 1163, 1169 (Ala. 2010); Cable Connection, Inc. v. DIRECTV, Inc., 44 Cal. 4th 1334, 1340 (2008); Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 358 (1994); Nafta Traders, Inc. v. Quinn, 339 S.W.3d 84, 87 (Tex. 2011), cert. denied, 132 S. Ct. 455 (2011). See also HH E. Parcel, LLC v. Handy & Harman, Inc., 287 Conn. 189, 204 n.16 (2008).

[12] The judicial review provisions in the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq. (2012), provide that if a party applies to a court for an order confirming an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in [§§] 10 and 11 of this

Hall St. ruled that "the statutory text gives [the Court] no business to expand the statutory ground." Id. at 589.  We are not persuaded that there is any reason to read the corresponding provisions of the MAA differently.  See Warfield v. Beth Israel Deaconess Med. Ctr., Inc., 454 Mass. 390, 394 (2009) ("the language of the FAA and the MAA providing for enforcement of arbitration provisions are similar, and we have interpreted the cognate provisions in the same manner").

As the Court in Hall St., 552 U.S. at 586, recognized with respect to the FAA, the legislative intent behind the MAA becomes more clear when the language of its provisions governing judicial review is compared to other provisions in which the Legislature explicitly endorsed the parties' right to contract.

---

title."  9 U.S.C. § 9.  The grounds for vacatur are listed in § 10(a) of the FAA, and include the following:

"(1)  where the award was procured by corruption, fraud, or undue means;

"(2)  where there was evident partiality or corruption in the arbitrators . . . ;

"(3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or of any other misbehavior by which the rights of any party have been prejudiced; or

"(4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

9 U.S.C. § 10(a).  Compare G. L. c. 251, § 12 (a) (1)-(4), quoted in note 8, supra.

For example, G. L. c. 251, § 3, directs that the parties'
contractual provisions for appointing an arbitrator are to be
followed in the first instance, and sets up a default method of
appointment if a contractually defined method is not available:

> "If the arbitration agreement provides a method of
> appointment of arbitrators, such method shall be followed.
> In the absence thereof, or if the agreed method fails or
> for any reason cannot be followed, or if an arbitrator
> appointed fails or is unable to act and his successor has
> not been duly appointed, the court on application of a
> party shall appoint an arbitrator."

In contrast, G. L. c. 251, §§ 11 through 13, are not default
provisions.  Section 11 commands that "the court _shall_ confirm
an award" (emphasis added) except in the circumstances described
in §§ 12 and 13; the language of the statute leaves no room for
parties to contract otherwise.

Our reading of G. L. c. 251, §§ 11 through 13, to mean that
a court will review an arbitrator's award to determine only
whether one of the statutory grounds for vacating, modifying, or
correcting the award has been met accords with this court's
interpretation of the MAA since its enactment in 1960.  See
Beacon Towers Condominium Trust v. Alex, 473 Mass. 472, 474
(2016) ("[A]n arbitration award is subject to a narrow scope of
review. . . .  We do not review an arbitration award for errors
of law or errors of fact" [quotation and citation omitted]);
Lynn, 435 Mass. at 62 n.13 ("The Legislature has identified the
extremely limited grounds on which courts may vacate or modify

arbitration awards"); Plymouth-Carver Regional Sch. Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990) (Plymouth-Carver) ("Courts inquire into an arbitration award only to determine if the arbitrator has exceeded the scope of his authority, or decided the matter based on 'fraud, arbitrary conduct, or procedural irregularity in the hearings'" [citation omitted]); Floors, Inc. v. B.G. Danis of New England, Inc., 380 Mass. 91, 96 (1980) ("[T]he court should not interject itself or its practice into arbitrations unless required to do so by statutory provision or necessity" [citation omitted]); Trustees of the Boston & Me. Corp., 363 Mass. at 390 (judicial review is based on grounds stated in G. L. c. 251, §§ 12 and 13); Grobert File Co. of Am. v. RTC Sys., Inc., 26 Mass. App. Ct. 132, 135 (1998) ("Once in the arena of arbitration, the powers of the arbitrator concerning the issue are wide and the scope of judicial review of the arbitration proceedings is narrow.  Short of fraud, arbitrary conduct, or significant procedural irregularity, the arbitrator's resolution of matters of fact or law is binding. . . .  See also other statutory grounds for vacating an arbitration award contained in G. L. c. 251, § 12" [citations omitted]).  The pertinent language of §§ 11 through 13 of the MAA has not changed since the statute's enactment, and we continue to adhere to our longstanding reading of it.[13]

---

[13] In concluding here that allowing parties to define

In addition to the language of the MAA, there are strong policy considerations that support limiting the scope of judicial review to the statutorily defined "egregious departures from the parties' agreed-upon arbitration," Hall St., 552 U.S. at 586, that are listed in G. L. c. 251, §§ 12 and 13.  Allowing parties to expand the grounds for judicial review would "undermine the predictability, certainty, and effectiveness of the arbitral forum that has been voluntarily chosen by the parties" (citation omitted).  Plymouth-Carver, 407 Mass. at 1007.  See Hall St., supra at 588 (purpose of arbitration is to provide efficient alternative to parties seeking finality, not "a prelude to a more cumbersome and time-consuming judicial review process" [citation omitted]).  If parties were able to

---

alternative grounds for standards of judicial review of an award would contravene the express terms of the MAA, we join with the courts that have declined to construe their State arbitration statutes to permit contractual expansion or redefinition of the scope of judicial review by the parties.  See Brookfield Country Club, Inc. v. St. James-Brookfield, LLC, 287 Ga. 408, 413 (2010) ("the [Georgia] Arbitration Code does not permit contracting parties who provide for arbitration of disputes to contractually expand the scope of judicial review that is authorized by statute" [citation omitted]); HL 1, LLC v. Riverwalk, LLC, 15 A.3d 725, 727, 736 (Me. 2011) (grounds for vacating arbitration award enumerated in Maine Uniform Arbitration Act [UAA] are exclusive and do not provide for judicial review of errors of law); John T. Jones Constr. Co. v. City of Grand Forks, 665 N.W.2d 698, 704 (N.D. 2003) ("We agree with the courts that hold [that] parties to an arbitration agreement cannot contractually expand the scope of judicial review beyond that provided by [the North Dakota UAA]"); Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp., 320 S.W.3d 252, 260 (Tenn. 2010) (parties cannot expand the scope of judicial review beyond scope of review provided by Tennessee UAA).

redefine by contract language the scope of what a court was to review with respect to every arbitration award, it would spawn potentially complex and lengthy case-within-a-case litigation devoted to determining what the parties intended by the contractual language they chose.  This is fundamentally contrary to the intent and purpose of our arbitration statute.  See Lawrence v. Falzarano, 380 Mass. 18, 28 (1980) ("The purpose of G. L. c. 251 governing arbitration is to provide further speedy resolution of disputes by a method which is not subject to delay and obstruction in the courts" [quotation and citation omitted]).[14]  The policy of limited judicial review preserves arbitration as an expeditious and reliable alternative to litigation for commercial disputes.  See Plymouth-Carver, supra.[15]

---

[14] This case is illustrative of the problem.  Further litigation likely would be necessary to determine the intended meaning of "material, gross and flagrant error by the arbitrator" as it stated in the arbitration clause of the agreement.  The parties' briefs on appeal before us suggest that they do not agree on this point.

[15] Levine argues that if the judicial scope of review agreed to by the parties is rendered invalid, then the entire arbitration clause is unenforceable.  This argument was not raised by Levine in the Superior Court, and was not raised until Levine's reply brief to this court.  An argument raised for the first time in a reply brief is not properly before us, and we do not consider it here.  See Commissioner of Revenue v. Plymouth Home Nat'l Bank, 394 Mass. 66, 67 n.3 (1985).

2.   Vacatur under G. L. c. 251, § 12.  In recognizing that
this court may decide that the scope of judicial review is
restricted to the grounds set out in G. L. c. 251, § 12, Levine
recasts his challenges to the award to fit within the provisions
of G. L. c. 251, § 12 (a) (3) (arbitrators exceeded their
authority), or § 12 (a) (1) (award was procured by fraud).  The
repackaging effort fails.

Levine contends that the arbitrator exceeded his authority
in awarding KNS $480,412 in liquidated damages on account of
Levine's competing with KNS within three years following
Levine's withdrawal;[16] and $1,068,403.70 to compensate for (1)
amounts allegedly paid to Levine after his termination from the
firm by former firm clients for work that Levine had earlier
completed and that had earlier been billed to the clients
(accounts receivable); and (2) amounts allegedly paid to Levine
after his termination for work that was still in progress at the
time Levine left LKNS (work in progress).  An arbitrator exceeds
his or her authority by granting relief that is beyond the scope
of the arbitration agreement, beyond that to which the parties

---

[16] Section 8(a)(iii)(1) of the agreement requires a
stockholder who withdraws involuntarily and violates the
noncompete provision to pay the firm "14% in the case of Levine
and Katz, and . . . 18% in the case of any other Stockholder, of
all gross billings from the withdrawn Stockholder's book of
business which is lost [by KNS] in the twelve month period
following the withdrawal."  If the withdrawing stockholder
sufficiently demonstrates that some business was not lost by
KNS, this amount will be deducted from the amount owed.

bound themselves, or prohibited by law.  Superadio Ltd.
Partnership v. Winstar Radio Prods., LLC, 446 Mass. 330, 334
(2006), quoting Plymouth-Carver, 407 Mass. at 1007.  "If the
arbitrators in assessing damages commit an error of law or fact,
but do not overstep the limits of the issues submitted to them,
a court may not substitute its judgment on the matter."
Lawrence, 380 Mass. at 28-29.  The issues of whether a
stockholder's withdrawal or termination pursuant to section 4(e)
or section 4(f) of the agreement (or both) gives rise to
damages, and if so, what those damages may be, fall squarely
within the broad arbitration clause in the agreement:  "In the
event of any dispute concerning any aspect of this Agreement,
the parties agree to submit the matter to binding arbitration."
Levine asks us to substitute our interpretation of the contract
for that of the arbitrator.[17]  Interpreting the agreement is the
role of the arbitrator, not this court.  See Plymouth-Carver,
407 Mass. at 1007 (reversing Superior Court's judgment vacating
award where question was one of interpretation of agreement);
Greene v. Mari & Sons Flooring Co., 362 Mass. 560, 563 (1972)
("courts have no business overruling [the arbitrator] because

---

[17] In connection with his challenge to the damages awarded,
Levine again contests the arbitrator's conclusion that a "for
cause" withdrawal under section 4(f) of the agreement is subject
to the noncompete provision.

their interpretation of the contract is different from his"

[citation omitted]).

Levine also argues that the portion of the damages award

for payments collected from former KNS clients for accounts

receivable and work in progress was procured by fraud.  He

contends that KNS misrepresented the amounts that were collected

by Levine and his new firm, and the arbitrator erroneously

relied on conclusory evidence of LKNS's historical rate or

percentage of collection on billings for Levine's work to

determine damages related to accounts receivable and work in

progress while ignoring the evidence that Levine presented.[18]  We

agree with the motion judge, who concluded that "the

arbitrator's approach was reasonable and more than fair to

---

[18] Each party was asked to submit accounting and data
relating to the categories of damages described in the partial
final award.  Levine submitted to the arbitrator a brief on
damages and attached as an exhibit a spreadsheet (referred to by
the parties as "Exhibit D") that purported to list accounts
receivable of his new firm, LCMG; Levine argued that the numbers
illustrated the amounts his new firm collected from former LKNS
clients.  The arbitrator made clear in the final award, however,
that Levine "failed to provide the necessary data to more
accurately determine the sums due [to KNS] by him for accounts
receivable and work in progress."  KNS's position is that the
spreadsheet proffered by Levine's counsel is a self-serving
document that offers little, and that Levine failed to produce
any evidence showing money paid to LCMG or Levine following
Levine's withdrawal to determine whether Levine invoiced former
firm clients for work performed prior to his departure.  Exhibit
D is in the record before us, and although Levine characterizes
the numbers as an accurate statement of money received by LCMG
on account of work Levine performed while still at LKNS, we can
find no evidentiary substantiation of this proposition in the
record.

Levine" and the arbitrator was under no obligation to credit Levine's testimony.  There is nothing to show that the arbitrator reached his conclusion on the basis of fraud or undue means, "that is, in an underhanded, conniving, or unlawful manner."  Superadio Ltd. Partnership, 446 Mass. at 337.  Levine presents nothing more than a dispute over a question of fact that is not reviewable by this court.

3.  Remaining claims.  Levine presents two additional claims:  (1) the motion judge erred in dismissing the remaining counts of KNS's complaint -- that is, the counts that followed the first count for confirmation of the arbitration award; and (2) the judge also erred in awarding KNS attorney's fees and costs associated with the dismissed claims.

These claims lack merit.  First, the motion judge did not abuse his discretion in dismissing the remaining counts against Levine and his firm.  After the parties stipulated to a form of security for any judgment that might enter against Levine, the remaining counts of KNS's complaint -- each of which was aimed at securing any potential judgment confirming the arbitration award -- all became moot, and the judge was warranted in allowing KNS's motion to dismiss them.  Second, the judge did not err in awarding attorney's fees and costs in connection with the dismissed claims.  The agreement provided that "the cost of enforcing any judgment entered by the arbitrator (including

reasonable attorney's fees) shall be borne by the party against whom such award was made and/or judgment entered."  The claims that supplemented KNS's request to confirm the award were within the purview of enforcing the judgment and sufficiently interconnected to the confirmation of the award.  <u>Fabre</u> v. <u>Walton</u>, 441 Mass. 9, 10 (2004), <u>Peckham</u> v. <u>Continental Cas. Ins. Co</u>., 895 F.2d 830, 841 (1st Cir. 1990).

<u>Conclusion</u>.  The judgments of the Superior Court confirming the arbitrator's award and dismissing the additional claims are affirmed, as is the judgment granting attorney's fees and costs. The plaintiffs may apply to this court for attorney's fees and costs in accordance with the procedure set forth in <u>Fabre</u>, 441 Mass. at 10-11.

<u>So ordered</u>.