# EXHIBIT 17

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss

SUPERIOR COURT
CIVIL ACTION NO.  1472CV00511

SUNLINK CORPORATION,

      Plaintiff,

v.

AMERICAN CAPITAL ENERGY, INC.;
ARCH INSURANCE COMPANY;
BERKLEY REGIONAL INSURANCE
COMPANY; and BERKLEY INSURANCE
COMPANY,

      Defendants.

**PLAINTIFF SUNLINK CORPORATION'S
OPPOSITION TO DEFENDANT
AMERICAN CAPITAL ENERGY, INC.'S
APPLICATION TO VACATE
ARBITRATION AWARD**

## INTRODUCTION

Defendant American Capital Energy, Inc.'s ("**ACE**") Application to Vacate Arbitration Award ("**ACE Motion**") is both procedurally and substantively flawed and, as a result, must be denied.  As set forth in plaintiff SunLink Corporation's ("**SunLink**") Emergency Motion to Strike previously filed with this Court on November 13, 2015 – to the extent ACE's Motion is even properly filed in state court rather than in a prior pending federal action (which it is not) – the Massachusetts Uniform Arbitration Act, MASS. GEN. LAWS ch. 251, § 1 *et seq.*, unconditionally required ACE to file its motion in *Suffolk* Superior Court, which ACE chose not to do.[1]  With respect to the substance (or lack thereof) of ACE's Motion, beyond wholly mischaracterizing what transpired in the arbitration proceedings, ACE presents no credible or reasoned basis for this Court to grant the extraordinary and rare remedy ACE seeks here –

---

[1] SunLink incorporates by reference herein the *procedural* grounds set forth in its earlier filed Emergency Motion to Strike ACE's Motion.  To the extent the Court does not strike ACE's Motion and considers the merits of the same, this Opposition by SunLink sets forth the *substantive* grounds which warrant the summary denial of ACE's Motion. The Court ordered that such Opposition be filed by November 20, 2015. *See* Docket, File Reference No. 17.

*outright vacatur of a fully reasoned arbitration award* contracted for by two sophisticated commercial entities. Rather, ACE presents little more than half-truths, speculation, and conclusory arguments, all of which are unavailing.

Specifically, ACE raises the following two arguments to support its Motion: (1) the arbitrator did not recuse himself because he and his law firm represented (in *unrelated* matters) a public utility that at some point became the parent company of a *non-party* guarantor of certain surety bonds issued by a *non-party* surety; and (2) the arbitrator did not grant ACE a last-minute continuance of the hearings. Precisely how the many degrees of separation between ACE and the arbitrator's (or his firm's) *unrelated* work for a public utility could possibly satisfy the "evident partiality" standard required for vacatur is unknown (and it certainly is not explained reasonably by ACE in its Motion). Regardless, the arbitrator <u>did</u> timely disclose his firm's representation of the attenuated, *non-party* public utility, and the American Arbitration Association's Administrative Review Council independently deemed it wholly insufficient to warrant disqualification. Furthermore, the dates on which the arbitration was conducted *were demanded by ACE itself* (over SunLink's objection) at the outset of the arbitration proceedings. The arbitrator appropriately denied ACE's last minute request to postpone the hearings because ACE's grounds for postponement were that *ACE* did not want to pay its then legal counsel to review documents; but rather, to replace its then counsel with new counsel (at the eleventh hour) who had a known physical injury. Moreover, SunLink and the arbitrator nevertheless fully accommodated ACE's new counsel by postponing the hearings to start two days later than planned, allowing ACE's new counsel to fully participate in all seven (7) days of hearings without incident. Indeed, ACE's new counsel's representation of ACE engendered a comment by the arbitrator on the record commending him for his advocacy during the proceedings. In

short, ACE has not presented this Court with *any* reason to overturn the arbitrator's otherwise thorough and well-reasoned award.

**RELEVANT PROCEDURE/FACTS**

1.     **Demand for Arbitration/Answer.**  On October 20, 2014, SunLink demanded arbitration. *See* Exhibit A attached hereto.[2]  On November 26, 2014, Reimer & Braunstein, LLP ("**Reimer**"), on behalf of ACE, submitted an answer. *See* Exhibit B attached hereto. ACE and Reimer chose not to file (or pay the administrative fee for) any counterclaim against SunLink. *See id.*

2.     **Appointment of Arbitrator.**  On December 17, 2014, the American Arbitration Association appointed David Lee Evans ("**Mr. Evans**"). *See* Exhibit C attached hereto. Mr. Evans has served as an arbitrator in more than 350 cases. *See* ACE Motion Exhibit 12, p. 6.

3.     **Scheduling Order No. 1.**  On January 5, 2015, Mr. Evans scheduled a preliminary hearing and requested the parties to submit a proposed discovery plan and scheduling order. *See* Exhibit D attached hereto. In response, on January 12, 2015, the parties submitted a proposed plan and order. *See* Exhibit E attached hereto. In particular, SunLink requested that hearings commence on March 30, 2015 (based on its precarious financial circumstances caused by ACE's failure to pay SunLink over $7,000,000 for products ACE unconditionally accepted and installed on the underlying solar construction projects on Cape Cod and the Islands); whereas ACE requested May 11, 2015. *See id.*, p. 6. On January 20, 2015, over SunLink's objection, Mr. Evans issued Scheduling Order No. 1, wherein he adopted *ACE's* requested hearing date, i.e., May 11, 2015. *See* Exhibit F attached hereto.

---

[2] *See* Affidavit of Paul J. Murphy in Support of Plaintiff Sunlink Corporation's Opposition to Defendant American Capital Energy, Inc.'s Application to Vacate Arbitration Award, Appendix of Exhibits, Exhibit A submitted herewith. Hereinafter, reference to Exhibits will simply be "Exhibit _ attached hereto."

4.      **ACE's First Motion to Amend Scheduling Order No. 1 and Initial Attempt to Delay Arbitration Hearings.**   On March 11, 2015, ACE filed a motion seeking to amend Scheduling Order No. 1.   *See* Exhibit G attached hereto.   In particular, ACE stated that "the management of the delivery of documents from ACE to its counsel has been *supervised to date* by Robert Dowd, Esquire, outside General Counsel to [ACE]."   *See id.,* p. 2, ¶ 5 ("**Mr. Dowd**") (emphasis added).   Also, ACE noted that Mr. Dowd has suffered an injury while walking on some ice the week before.   *See id.*   Mr. Dowd not only was involved as General Counsel during all of the underlying events that lead to the parties' dispute, he also is related by consanguinity to one of ACE's owners and its President.   *See* Exhibit H attached hereto.   On March 16, 2015, SunLink opposed ACE's motion and highlighted that ACE simply had failed to comply with Scheduling Order No. 1 by not producing documents – despite Mr. Dowd's alleged oversight.   *See* Exhibit I attached hereto.   After a hearing with Mr. Evans, the parties agreed to phase discovery in the arbitration proceeding as ACE had requested in its motion.   *See* Exhibit J attached hereto.   Among other things, ACE was allowed to avoid altogether having to provide any discovery concerning its alleged "offset" damages claims, something which the parties agreed would only become relevant to the case if ACE were able to prove its seminal affirmative defense that SunLink allegedly had furnished its supplies late and in breach of the underlying sales contracts.   *See id.*

5.      **ACE's Second Motion to Amend Scheduling Order No. 1 and Further Attempt to Delay Arbitration Hearings.**   On April 14 or 15, 2015 – despite having experienced an injury more than a month before – Mr. Dowd formally entered his appearance for ACE, and Reimer withdrew from the arbitration as ACE's counsel.   Concomitantly, ACE filed a motion to continue the arbitration hearing (which was then set to begin less than a month later).

*See* Exhibit K attached hereto.  As grounds, ACE relied on (i) injury to Mr. Dowd (again, the injury had occurred more than one month earlier and was known to ACE when ACE shifted the representation from Reimer to Mr. Dowd); and (ii) ACE's expressed unwillingness to pay Reimer to handle discovery in the arbitration proceedings. *See id.*, pp. 1-2.  According to ACE, Mr. Dowd was "more familiar with [ACE]'s documents and systems[.]" *See id.*, p. 2.  Contrary to what ACE *now* asserts (*see* ACE Motion, pp. 2-4), at no time did ACE assert in its earlier motion for a continuance that ACE needed a continuance because Reimer had not conducted any discovery or had to be replaced because of a conflict of interest.  *See* Exhibit J.  On April 15, 2015, SunLink opposed ACE's second motion to continue the hearings (SunLink also moved to compel ACE to produce documents).  *See* Exhibit K attached hereto.  Put simply, although SunLink wished Mr. Dowd well, ACE's choice to terminate Reimer (because of cost) and retain new counsel with a known physical limitation (that ACE had known about since early March 2015) did not provide ACE with any cause, much less good cause, to change the hearing date *that ACE had demanded at the outset of the proceedings*.  *See id.*  Stated differently, ACE's "emergency" was entirely of ACE's own making.  *See id.*

      6.    **Denial of ACE's Second Motion to Continue Hearings.**  After a hearing on the merits of the parties' motions, on April 21, 2015, Mr. Evans, among other things, ruled/concluded as follows:

- ACE's request for a continuance is denied. Scheduling Order No. 1 (SO) has been in place since January 20, 2015, and was specifically agreed to by the parties at the preliminary conference and confirmed by email on January 15. For economic reasons, SunLink advocated for a more aggressive schedule, which I rejected on scheduling grounds (both ACE's counsel and I had conflicts) and also because the proposal was unrealistic. **The parties stipulated to hearings beginning May 11, and continuing for 2 weeks.**

- The SO required the parties to produce relevant documents by March 2, 2015. While the parties apparently agreed to relax that schedule, the major bottleneck appeared to be limitations in ACE's IT infrastructure and its ability to produce records from the cloud. SunLink's requests were also overbroad. After some intervention by me, the requests were scaled back. I offered to rule on specific search terms and offered guidance on appropriate ESI requests. Eventually, the parties reached an agreement.

- **ACE has now determined that it cannot subsidize R&B's review of documents and representation at the hearings "within ACE's litigation budget restrictions."** It caused R&B to withdraw in favor of its "outside general counsel," Mr. Dowd, who has been given unenviable task of handling the hearings "within ACE's budget." Mr. Dowd sustained an injury in March which has limited and will limit his ability to travel and conduct the arbitration. **This cannot possibly serve as a basis for a continuance, however, as Mr. Dowd's limitations were well known at that time of his formal appearance and R&B's withdrawal.** Nor is Mr. Dowd in any worse position to deal with the recent document exchange than SunLink's counsel, who, after all, have never seen ACE's records. It would be unfair to impose a delay upon SunLink, which has its own fiscal challenges.

- **We vetted options for Mr. Dowd's participation at a portion of the hearings by video conference. GT will make such service available to Mr. Dowd at no cost.**

See <u>Exhibit M</u> attached hereto (emphasis added). As such, based on the record actually before him, Mr. Evans correctly denied ACE's request because ACE failed to present any good cause for the relief ACE requested. Also, granting the request would have unfairly prejudiced SunLink, (which had been placed in a dire financial situation – *by ACE*).

7. **ACE's Motion to Compel.** On April 30, 2015, just eleven days before the scheduled hearings, ACE moved to compel the production of documents (*See* ACE Motion, Ex. 7), which SunLink opposed on May 4, 2015. *See* <u>Exhibit N</u> attached hereto (May 1, 2015 email from David Thomas to Mr. Evans with attachments) and <u>Exhibit O</u> attached hereto. On May 5, 2015, Mr. Evans denied ACE's motion based on SunLink's response. *See* <u>Exhibit P</u> attached hereto.

8. **Arch's Attempt to Continue the Hearings.** On May 8, 2015, just three days before the hearings, Arch Insurance Company ("**Arch**"), one of the two surety companies from whom ACE obtained payment and other project required surety bonds, filed a motion to intervene and to continue the arbitration proceedings. *See* Exhibit Q attached hereto. SunLink opposed on grounds that, among other things, (i) Arch was not an indispensable party and (ii) there was manifest unfairness to SunLink, *considering that Arch knew about these proceedings since October 2014. See* Exhibit R attached hereto. Furthermore, Arch's motion was provisional in nature, in that Arch only sought information if a continuance was granted. *See id.*, p. 2. Mr. Evans denied Arch's motion on May 11, 2015. *See* Exhibit S attached hereto.

9. **Agreement to Postpone the Hearings until May 13, 2015.** On May 7, 2015, at Mr. Dowd's request, the parties agreed to start the hearings on May 13 (rather than May 11), 2015 (so long as the hearings could be completed timely). *See* Exhibit T attached hereto.

10. **Berkley's Attempt to Continue the Hearings.** On May 11, 2015, Berkley Regional Insurance Company ("**Berkley**") filed a motion to intervene and continue the hearings based on similar grounds as Arch. *See* Exhibit U attached hereto. Berkley, however, in a footnote, disclosed – *for the first time* – that its surety bonds were issued in reliance on the credit of certain guarantees by certain non-party indemnitors, including ES Boulos Company ("**ESB**"), which, at some point, had become a subsidiary of the public utility, Eversource (**"Eversource"**). *See id.* Berkley also noted that Mr. Evans and his law firm had represented Eversource. *See id.*

11. **Mr. Evans's Disclosure and ACE's Attempt to Disqualify Mr. Evans (and third attempt to continue the hearings).** On May 11, 2015, in light of Berkley's "footnote" disclosure, Mr. Evans – noting that the sureties and Eversource (a public utility) had <u>not</u> been listed on the parties' conflict disclosures at the beginning of the case – disclosed that he and his

firm represented Eversource in matters *unrelated* to the arbitration proceedings; however, he stated that he did not believe that this indirect, attenuated relationship constituted grounds for his disqualification or called into question his ability to be impartial or to adjudicate the parties' dispute. *See* <u>Exhibit V</u> attached hereto. In response, on May 12, 2015, both parties submitted their positions concerning Eversource to the AAA's Administrative Review Council ("**AAA Council**"). *See* <u>Exhibit W</u> and <u>Exhibit X</u> attached hereto. The decision whether to disqualify Mr. Evans was made independently by the AAA Council. On May 12, 2015 (the day before the hearings were to begin), the AAA Council concluded that there was no basis to disqualify Mr. Evans. *See* <u>Exhibit Y</u> attached hereto.

12.   **The Hearings.**   The hearings commenced on May 13 and ended on May 20, 2015. *See* <u>Exhibit Z</u> attached hereto (copies of hearing transcripts). Mr. Dowd did not require any of the accommodations previously discussed by the parties, and was able to participate in the arbitration hearings fully and in person. *See id.* Contrary to the statement made in the ACE Motion, the hearings lasted seven (7) full days wherein the parties dealt with ten witnesses and generated over 1,570 "mini-script" pages of hearing testimony (with approximately 280 exhibits). *See id.* When the hearings concluded, Mr. Evans stated for the record that ACE had been well represented by Mr. Dowd and that he had capably handled ACE's defense. *See* ACE's Motion, Exhibit 5.

13.   **Post-Hearing Submissions and the Partial Final Award.**   After the hearings concluded, the parties submitted extensive, substantive post-hearing briefs. *See* <u>Exhibit AA</u> (SunLink's opening brief), <u>Exhibit BB</u> (ACE's opposition), and <u>Exhibit CC</u> (SunLink's reply). On August 18, 2015, Mr. Evans issued a Partial Final Award granting SunLink (i) $7,856,649.60 in damages, plus late fees and interest, (ii) $1,041,407.94 in Chapter 93A damages, and (iii)

attorneys' fees and costs to be submitted by SunLink in a fee application. *See* Exhibit DD attached hereto. Contrary to the statements made in the ACE Motion, the non-Chapter 93A damages were allocated to each specific construction site, which Mr. Evans aggregated for the Partial Final Award. *See* Exhibit DD, p. 23-24; Exhibit EE (SunLink Hearing Exhibit 233 without attachments).

14. **ACE's Settlement with Oldcastle.** On August 31, 2015, after the Partial Final Award was issued, ACE filed a motion for reconsideration based on, among other things, an alleged settlement ACE had engineered with one of SunLink's down-line suppliers, Oldcastle Precast, Inc. (**"Oldcastle"**). *See* Exhibit FF attached hereto. Reportedly, on July 23, 2015 – well after the completion of the arbitration hearings – ACE entered into a payment arrangement with Oldcastle which ACE wanted to present as an offset to SunLink's claims. *See id.* Also, ACE sought to have the arbitrator completely re-determine the merits of the parties' claims as found in the Award. *See id.* On September 1, 2015, SunLink opposed ACE's motion to reconsider and argued, among other things, that (like the current ACE Motion) it was fatally defective, both substantively and procedurally. *See* Exhibit GG attached hereto. On September 2, 2015, Mr. Evans denied ACE's motion for reconsideration. *See* Exhibit HH attached hereto.

15. **Additional Post-Hearing Submissions and the Final Award.** Pursuant to the Partial Final Award, the parties then submitted briefing concerning SunLink's attorneys' fees and costs. *See* Exhibit II (SunLink's fee application), Exhibit JJ (ACE's opposition), Exhibit KK (SunLink's reply), Exhibit LL (ACE's sur-reply). When opposing SunLink's fee application, among other things – contrary to the position now taken in the ACE Motion – ACE described the parties' dispute as "a straightforward contact claim for goods sold and delivered." *See* Exhibit JJ, pp. 1, 4 and 5. Finally, on October 6, 2015, Mr. Evans issued a Final Award granting

SunLink $1,287,629.60 in attorneys' fees and costs, among other things.   *See* Exhibit MM attached hereto.

16.   **Settlements with the Sureties.**   On or about September 22, 2015, even before the issuance of the Final Award, SunLink reached a settlement with Berkley with respect to SunLink's *bond* claims on the four Berkley-insured projects.   In the context of that settlement, credits were provided to Berkley (and effectively ACE as Principal on the Berkley surety bonds) for payments allegedly made by ACE to Oldcastle.   SunLink is presently negotiating with Arch concerning the *bond* claims SunLink filed on the Arch-insured projects, and has offered similar credits for the payments ACE allegedly made to Oldcastle on the Arch-insured projects.

<u>RELEVANT LEGAL STANDARDS</u>

The Massachusetts Uniform Arbitration Act, MASS. GEN. LAWS Ch. 251, § 1 *et seq.* ("**MUAA**") was designed "to further the speedy, efficient, and uncomplicated resolution of business disputes with very limited judicial intervention or participation."   *See Floors, Inc. v. B.G. Danis of New England, Inc.*, 380 Mass. 91, 96 (1980); *Quirk v. Data Terminal Sys., Inc.*, 379 Mass. 762 , 767 (1980).   In Massachusetts, arbitration proceedings are subject to a "narrow scope of judicial review."   *See Trustees of Boston & Me. Corp. v. Massachusetts Bay Transp. Auth.*, 363 Mass. 386, 390 (1973).   Indeed, judicial review of an arbitration award is "among the narrowest known in the law."   *See Eastern Seaboard Constr. Co., Inc. v. Gray Constr., Inc.*, 553 F.3d 1, 3 (1st Cir. 2008); *Maine Cent. R. Co. v. Brotherhood of Maintenance of Way Employees*, 873 F.2d 425, 428 (1st Cir. 1989).   The strong public policy in Massachusetts favoring arbitration is reflected in upholding an arbitration award "even where it is wrong on the facts or the law, and whether it is wise or foolish, clear or ambiguous."   *See* 47 MASS. PRAC. SERIES, Mediation and Arbitration (West 2013); *Massachusetts Highway Dep't v. Massachusetts*

*Org. of State Eng'g and Scientists*, 81 Mass. App. 334, 338-39 (2012) (citing *Boston v. Boston Police Patrolmen's Assn.*, 443 Mass. 813, 818 (2005)). In general, a trial court should inquire into an arbitration award to determine *only* if an arbitrator exceeded his or her authority, or decided the matter based on "fraud, arbitrary conduct, or procedural irregularity in the hearings." *See Greene v. Mari & Sons Flooring Co.*, 362 Mass. 560, 563 (1972). To do otherwise would undermine the predictability, certainty, and effectiveness of the parties' chosen forum. *Cf Quirk v. Data Terminal Sys., Inc.* 394 Mass. 334 , 339 (1985). As a result, a trial court is "strictly bound" by an arbitrator's findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing. *See Lynn v. Thompson*, 435 Mass. 54, 61 (2001).

<u>ARGUMENT</u>

Despite ACE's various alleged grievances and protestations concerning Mr. Evans, ACE bases its extraordinary request to vacate the award only on two specific grounds under the MUAA: according to ACE, (1) there existed "evident partiality" in Mr. Evans based on his representation of *non-party* Eversource, and (2) Mr. Evans "refused to postpone the hearing upon sufficient cause being shown" by ACE so as to "prejudice substantially" ACE's rights to conduct the hearings. *See* ACE Motion, pp. 7-12. Of course, a party challenging an arbitration award bears the burden of proof to present facts sufficient to show why it should be overturned. *See* MASS. GEN. LAWS ch. 251, § 19; *Barletta v. French*, 34 Mass. App. Ct. 87, 95 (1993). ACE assuredly has not met that burden in the ACE Motion.

**I.    THERE IS NO CREDIBLE EVIDENCE THAT MR. EVANS HARBORED ANY "EVIDENT PARTIALITY" UNDER THE MUAA.**

Proving "evident partiality" of an arbitrator jointly selected by the parties is extremely difficult to establish. *See* <u>Mediation and Arbitration</u>, § 17.3 (*citing JCI Comm., Inc. v. Intern'l*

*Broth. of Elec. Workers, Local 103*, 324 F.3d 42, 48 (1st Cir. 2008)).  In particular, the mere suggestion of an appearance of bias, without more, is insufficient to establish "evident partiality." *See JCI Comm., Inc.*, 324 F.3d at 51.  Indeed, as ACE concedes in its Motion, evidence supporting "evident partiality" *must* be "direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *See Kiewit v. Int'l Bhd. of Elec. Workers, Local 103, AFL-CIO*, 76 F. Supp.2d 77, 79-80 (D. Mass. 1999).  Most commonly, challenges to partiality arise from cases where an arbitrator (1) did <u>not</u> disclose information relating to a relationship with one *party* to the arbitration or (2) is alleged to have an actual bias.  *See* <u>Mediation and Arbitration</u>, § 17.3.  ACE's alleged "evidence" here is more than lacking – it is nonexistent.

Among other things, ACE does <u>not</u> allege that Mr. Evans actually failed to disclose anything or harbored an actual bias.  Rather, ACE asserts there existed "evident partiality" because Mr. Evans and his firm represented *non-party* Eversource, a public utility, which is something that Berkley (not ACE) raised – for the first time – in a footnote in its motion to intervene filed just 2 days before the hearings were to begin.  ACE's argument, however, is akin to asking this Court to play a game of speculative, three-dimensional chess.  <u>Berkley, ESB, and Eversource were neither parties to the contracts between ACE and SunLink, nor parties to the arbitration proceedings.</u>  Rather, *non-party* Berkley, as surety, issued certain payment and other surety bonds on certain of the projects at issue.  Apparently, another *non-party* to the arbitration proceedings, ESB, provided a guarantee of some sort to the surety, Berkley, in the event payment under the bonds was ultimately made necessary by Berkley, i.e., if ACE failed to pay its suppliers and/or subcontractors as done here.  *Non-party* Eversource, apparently, at some point in time not made clear in the papers, acquired and ended up becoming the parent company of ESB.

Graphically, and despite a dearth of factual information provided, this attenuated "relationship" can be illustrated as follows:



Although ACE ostensibly implies that Mr. Evans actually failed to disclose his relationship with Eversource, ACE apparently is wise enough not to make such a direct assertion in a pleading filed with this Court. That is because it is abundantly clear that Mr. Evans was not even aware that *non-party* Eversource had any interest – actual, remote or otherwise – in any of the proceedings until *non-party* Berkley noted the tangential connection in a footnote to its motion to intervene and its attempt to postpone the hearings. Nonetheless, Mr. Evans immediately disclosed his and his firm's relationship with Eversource (completely unrelated to the arbitration proceedings), and requested that the parties submit to the AAA Council their positions concerning his disclosure. Then, *the AAA Council* determined that Mr. Evans should

not be disqualified merely because he and his firm represented a *non-party* parent of a *non-party* subsidiary that reportedly guaranteed payment under bonds issued by a *non-party* surety. Simply put, whether or not Mr. Evans or his firm represented *non-party* Eversource in completely unrelated matters, and whether *non-party* ESB would be required to reimburse *non-party* Berkley for *non-party* Berkley's payment under certain bonds, cannot possibly constitute sufficient evidence to find "evident partiality" under the MUAA.

Massachusetts case law clearly supports a finding that ACE's "evidence" of evident partiality on the part of the arbitrator is plainly lacking here. *See Barnstead v. Ridder*, 39 Mass. App. Ct. 934, 937 (1996) (vacatur not required even though the arbitrator failed to disclose his partiality to the defendant based on his "close business connections" between the arbitrator's family and the defendant's family); *Parekh Constr., Inc. v. Pitt Constr. Corp.*, 31 Mass. App. Ct. 354, 360 (1991) (vacatur not required even though arbitrator had represented contractor and its president); *Coughlan Const. Co., Inc. v. Town of Rockport*, 23 Mass. App. Ct. 994, 997 (1987) (vacatur not required where arbitrator had nominated attorney for one of the parties as general counsel to a professional association and the attorney had represented a company belonging to one of the arbitrator's brothers because such association was of a professional nature and unrelated to the arbitration); *Bernstein v. Gramercy Mills, Inc.*, 16 Mass. App. Ct. 403, 413 (1983) (vacatur not required where arbitration did not figure in any legal matters in which lawyers from the arbitrator's firm and sales representative's lawyer's firm were mutually involved and where arbitrator had two contacts or associations with sales representative's attorney in the past); *Wilson v. Dan McCabe's Creative Carpentry*, 11 Mass. App. Ct. 956, 956 (1981) (vacatur not required even though arbitrator and defendant's president had been active in town affairs and arbitrator knew father-in-law of defendant's president).

Here, neither Mr. Evans nor his firm represented any party or any party's parent or subsidiary in the proceeding, and when questions about the remote relationship to a *non-party* public utility (through two other *non-parties*) were raised, Mr. Evans – after learning of the remote relationship that had not been disclosed before by the parties – disclosed his and his firm's unrelated work with the public utility, which aptly was deemed insufficient to require disqualification by the AAA Council. ACE fails to cite to a single Massachusetts case that could conceivably support ACE's arguments otherwise.[3]

## II.   DENIAL OF ACE'S ELEVENTH-HOUR MOTION TO CONTINUE DOES NOT SUPPORT VACATUR.

As ACE concedes in its Motion, an arbitrator has discretion <u>not</u> to postpone the arbitration hearing and a court must <u>not</u> interfere in that decision if <u>any</u> reasonable basis exists for it. *See Local Union No. 251 v. Narragansett Improvement Co.*, 503 F.2d 309, 312 (1st Cir. 1974); *El Dorado Sch. Dist. # 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001). In addition, a party seeking vacatur on such grounds must explain why a postponement was necessary to assure a fair hearing. *See Local Union No. 251*, 503 F.2d at 312. Furthermore,

---

[3] The non-Massachusetts cases cited by ACE are clearly distinguishable. *See Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 146 (1968) (arbitrator failed to disclose that a direct, close financial relationship existed between arbitrator and one of the parties, involving fees of about $12,000 over a period of four to five years and included services on the very projects involved in the lawsuit); *Thomas Kinkade Co. v. White*, 711 F.3d 719, 724 (6th Cir. 2013) (finding evident partiality where five years into the arbitration proceeding and after 50 days of hearing, arbitrator's firm was hired by one party's arbitrator-advocate and again by that same party for engagements that would be substantial, where it was disclosed to the arbitrator that there were attempts to disqualify him based on evident partiality, and where the arbitrator's own actions, i.e., allowing one party to rely upon documents that they had deliberately and wrongfully withheld for years, demonstrated his evident partiality); *Schmitz v. Zilveti*, 20 F.3d 1043, 1049 (9th Cir. 1994) (concluding that an arbitrator has a duty to investigate and disclose conflicts of interest he has with actual parties to the arbitration and the arbitrator's failure to investigate and disclose resulted in a reasonable impression of partiality); *Schlossberg v. State Bar Grievance Bd.*, 388 Mich. 389, 396 (Mich. 1972) (concluding under the court's Code of Professional Responsibility, Canons and Disciplinary Rules, an attorney's failure to disqualify himself as a member of the Michigan Employment Security Commission in consideration of some claims against a party when the attorney is a member of a law firm representing wholly owned subsidiaries of that party constitutes professional misconduct).

also as ACE concedes in its Motion, a party seeking vacatur must prove that the arbitrator

abused his or her discretion by *clear and convincing evidence. See In re Time Constr., Inc.*, 43

F.3d 1041, 1045 (6th Cir. 1995).   Beyond ACE's rhetoric, speculation, and conclusory

statements, ACE presents no *evidence* to support vacatur, let alone clear and convincing

evidence.

Specifically, ACE bases its nebulous "unfair-prejudice-because-of-failure-to-postpone"

argument on the following assertions:

1.   ACE's prior counsel had to withdraw based on a conflict of interest and
     had not conducted any discovery;

2.   ACE would have been able to "coordinate" claims brought by SunLink
     and other subcontractors to credit payments allegedly already made by
     ACE to other subcontractors;

3.   ACE would have been informed and prepared to show how SunLink's
     banking relationship supported the fraudulent inducement claims of ACE
     in stark contrast to the arbitrator's use of that bank's records to support its
     decision adverse to ACE; and

4.   Had ACE's still recuperating attorney, Mr. Dowd, been given more time,
     "ACE could have highlighted the arbitrator's April ruling that the hearings
     would not include 'quantification of what ACE called its offsets . . .
     against the Arbitrator's statements that 'although it filed no counterclaim,
     ACE also requests that it be allowed to recover, presumably by way of
     offset' . . . which the arbitrator denied, declaring he found no contractual
     breach, misrepresentation or other actionable conduct."

*See* ACE Motion, at pp. 10-12.  These assertions, to the extent they all are even comprehensible,

are either complete mischaracterizations of the record or otherwise simply do not support ACE's

vacatur request based on Mr. Evans's exercise of discretion not to postpone the arbitration

hearings.

First, contrary to what ACE asserts now, ACE did <u>not</u> inform Mr. Evans that Reimer had

failed to conduct discovery and had to withdraw because of a conflict of interest when asking

Mr. Evans to postpone the hearings.  Rather, in its motion to continue:

- ACE presented the following two alleged reasons: "With respect to the continuance, there are two major reasons . . . (1) the review and production of voluminous documents demanded by SunLink, and (2) the temporary disability of Attorney Dowd." *See* <u>Exhibit K</u> attached hereto, p. 2.

- As to the Reimer firm, ACE asserted that it did not believe ACE's document production could "be undertaken at this junction by the Reimer Firm within ACE's litigation budget restrictions." *See id.* at pp. 1-2.

- ACE specifically noted that Reimer had "**provided excellent representation** to" ACE. *See id.,* p. 1 (emphasis added).

For ACE to assert here that ACE informed the arbitrator that ACE needed a continuance because

its prior counsel had not conducted discovery and had a conflict of interest, goes well beyond

being disingenuous.  ACE's assertions simply are false.  ACE cannot now sandbag the arbitrator

and SunLink with new reasons for a failed attempt to obtain a continuance.

Second, nothing prevented ACE from "coordinating" claims brought by Oldcastle.

Indeed, ACE listed Oldcastle on its hearing witness list.  *See* <u>Exhibit NN</u> attached hereto.

However, *ACE decided* not to call any Oldcastle witnesses during the hearings.  In addition, the

Oldcastle payments were made by ACE well *after* the hearings concluded.  Finally, when settling

payment under the bonds with Berkley, SunLink credited ACE for the Oldcastle payments and

has offered to do so in its communications with Arch.  Therefore, ACE cannot rely on the

Oldcastle claim or credit issue – whatever it may be – as evidence to somehow support how an

alleged improper denial of a continuance.

Third, ACE's fraudulent inducement claims were entirely baseless and no additional time

– no matter how long – would have made those claims viable.  A losing party's claim that it

should have been afforded more time to investigate its defenses will not support vacatur if that party had information necessary to develop those defenses since the outset of the proceedings and when those defenses were unlikely to succeed. *See Restaurant Consulting Servs. Inc. v. Mountzuris*, 253 F. Supp. 2d 45, 56 (D. Mass. 2003). Whatever basis ACE had for its fraudulent inducement claims was soundly disproven by the overwhelming weight of evidence to the contrary and the credibility of the parties' witnesses. *See* Exhibit AA, at pp. 8-14, 45-46 (detailing ACE's baseless defenses); Exhibit CC, at pp. 13-16 (further detailing ACE's baseless defenses). That Mr. Evans relied on SunLink's banking records (which were produced to ACE) to support SunLink's rather than ACE's arguments is not competent evidence to support vacatur by an improper denial of a continuance.

Fourth, to the extent ACE's fourth alleged error above (concerning the "April ruling") can even be comprehended, Mr. Evans bifurcated the proceedings (to deal with ACE's alleged offsets if Mr. Evans found SunLink liable) *at ACE's request*. Apparently, what ACE really complains of here is the simple fact that Mr. Evans appropriately concluded that SunLink did *not* breach the parties' contracts, did *not* make any misrepresentations, and did *not* engage in any other actionable conduct. If Mr. Evans's findings are wrong on the facts and the law, unwise, or even foolish (which based on the record, they assuredly are not), those findings must be upheld under the MUAA. ACE does not get a second bite at the apple now.

Finally, Mr. Evans – based on the facts ACE presented to him at the time – gave a thorough, fully supported, and fully reasoned basis for his denial of ACE's several motions to continue the hearings. Put simply, ACE's litigation budget restrictions and choice of new counsel with a known physical injury did not present Mr. Evans with any cause, much less good cause, to continue the hearings which Mr. Evans had set at ACE's request and over SunLink's

objection.  Rather, granting the motion would have been grossly unfair and highly prejudicial to SunLink under the circumstances.  Moreover, the parties ultimately agreed to start the hearings two days later to accommodate Mr. Dowd's travel plans, and Mr. Dowd fully participated in every aspect of the hearings without incident or complaint.

<b>CONCLUSION</b>

For the foregoing reasons, and based on strong and time-honored Massachusetts public policy and jurisprudence, this Court should (1) deny ACE's Motion to Vacate, (2) award SunLink its attorneys' fees and costs in having to oppose it, and (3) grant such further relief as this Court deems just and equitable.

Respectfully submitted,

SUNLINK CORPORATION,
Claimant,

By its attorneys,

Paul J. Murphy (BBO # 363490)
David G. Thomas (BBO # 640854)
Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Tel: 617-310-6000
Dated:  November 20, 2015          Fax:  617-310-6001

CERTIFICATE OF SERVICE
I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD
FOR EACH OTHER PARTY BY MAIL via overnight mail
(BY HAND) ON  11/20/15