# EXHIBIT H

1490

1    Volume VII, Pages 1490-1578

2

3    AMERICAN ARBITRATION ASSOCIATION

4

5    SUNLINK CORPORATION,

6             Claimant,

7    vs.              AAA No. 01-14-0001-7516

8    AMERICAN CAPITAL ENERGY, INC.,

9             Respondent.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - -

11              ARBITRATION HEARING, DAY 7

12   Before:    David Evans, Attorney, as Arbitrator

13   Held at:   Law Office of Greenberg Traurig

14              One International Place

15              Boston, Massachusetts  02110

16   Date:      Wednesday, May 20, 2015

17   Commence:  11:05 a.m.

18   Reporter:  Judith M. Williams, RPR, CLR, CRR, CSR

19

20              K. L. GOOD & ASSOCIATES

21              Post Office Box 367

22         Swampscott, Massachusetts 01907

23              Tel. 781-367-0815

24         Kathleen.Good@verizon.net

1556

1   Q.   All right.  Are you related to Mr. Dowd?

2   A.   Mr. Dowd?

3   Q.   Yes.

4   A.   Yes.

5   Q.   How?

6   A.   He is my mom's brother.

7   Q.   Okay.  Would you turn to the credit letter,

8        please.

9                 (Witness complying.)

10  Q.   You stated on direct that your quote-unquote

11       financial folks prepared the numbers for the

12       liquidated damages and the lost SREC production.

13       Do you recall that?

14  A.   Yes.

15  Q.   What financial folks?

16  A.   We have a finance department of -- you know,

17       with under Art that includes, you know, several

18       folks, people.

19  Q.   Do you remember who actually did the

20       calculations?

21  A.   No.  I don't know who did the calculations.

22  Q.   You testified on direct that those numbers were

23       based on Bill Peltz' e-mail that was contained

24       in ACE Exhibit 4.  Correct?

# EXHIBIT I

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| SUNLINK CORPORATION,<br><br>       Claimant,<br><br>v.<br><br>AMERICAN CAPITAL ENERGY, INC.<br><br>       Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   AAA No. 01-14-0001-7516 |

## CLAIMANT SUNLINK CORPORATION'S MEMORANDUM IN OPPOSITION TO RESPONDENT'S MOTION TO AMEND SCHEDULING ORDER NO. 1

Claimant SunLink Corporation ("SunLink") requests that the Arbitrator deny Respondent American Capital Energy, Inc.'s ("ACE") Motion to Amend Scheduling Order No. 1 (the "Motion") insofar as:

(i) ACE's Motion is filed late and with the singular, admitted purpose of delaying these proceedings until a mediation can occur in a Superior Court Civil Action to which SunLink is not even a party;

(ii) ACE's Motion is premised upon an alleged claim of over breadth in SunLink's discovery requests, when SunLink's requests are driven entirely by ACE's so-called "Thirteenth Affirmative Defense" (essentially ACE's counterclaim here) seeking "offset damages" of approximately $8M against SunLink;

(iii) ACE has still not filed written responses/objections to ACE's Request for Production of Documents served January 30, 2015, has not produced a single document to SunLink in the proceedings to date, and has refused to respond to SunLink's repeated requests to confirm an electronically stored information (ESI) protocol the parties discussed and generally agreed to in mid-February; and

(iv) ACE has recently admitted in verified pleadings filed in Superior Court proceedings initiated by ACE against the Owners/Developers of the nine solar projects, that the delays allegedly experienced on the Projects, and the resulting "offset damages" ACE seeks here against SunLink, were in fact caused not by ACE or any of its subcontractors/suppliers, but by the acts/omissions of the Owners/Developers of the Projects, Clean Focus Corporation ("Clean Focus") and Redwood Solar Development, LLC ("Redwood").

Put simply, ACE cannot have it both ways.  Specifically, ACE cannot, on the one hand, plead an affirmative defense/counterclaim for breach of contract against SunLink premised upon alleged contract negotiations and a prior course of dealing between the parties "dating back to 2011" (see Respondent's Answer, Thirteenth Affirmative Defense, p. 7); and, on the other hand, deny SunLink legitimate discovery of the factual underpinnings upon which its defenses and counterclaims are predicated.[1]  To be blunt, ACE's entire defense here, as articulated in the Thirteenth Affirmative Defense, is constructed to provide ACE the opportunity to delay these proceedings and fund its litigation against the Owners/Developers, Clean Focus and Redwood, a fact made clear by its Motion and by ACE's recent verified pleadings filed in Superior Court.  See infra, ¶ 8, below.  SunLink is not required, however, to stand idly by and delay recovery of the amounts it is unquestionably owed on these Projects, while ACE pursues recovery from one or more third parties in proceedings entirely unrelated to SunLink.

In short, ACE's Motion must be denied, and ACE must be compelled to respond to SunLink's document requests, and to provide the requested documents on a schedule that will neither prejudice SunLink, nor allow any slippage in the hearings currently scheduled for mid-May.  Alternatively, if ACE simply refuses to participate in the required discovery, as is presently the case, the Arbitrator should entertain a motion by SunLink to strike ACE's Thirteenth Affirmative Defense, direct a finding of liability in favor of SunLink, and proceed with evidentiary hearings on the issues of SunLink's damages and SunLink's causes of action sounding in fraud and violation of G.L. 93A.

---

[1] Approximately 93 of SunLink's 162 requests of which ACE complains actually seek the production of documents *directly relating to ACE's Thirteenth Affirmative Defense* (i.e., its claim of alleged "late" delivery by SunLink) and the alleged "offset damages" ACE claims against SunLink which the Arbitrator ordered ACE to "itemize" in Paragraph 3 of the Scheduling Order.  See Claimant SunLink Corporation's First Request for Production of Documents from Respondent American Capital Energy, Inc. Nos. 60-62; 65-156.

In further support of its opposition to ACE's Motion, SunLink states as follows:

1.      Scheduling Order No. 1 dated January 20, 2015 was the product of a *joint* proposal submitted by the parties, and was issued following the preliminary hearing held January 13, 2015 with the Arbitrator.  Pursuant to the Arbitrator's direction in ¶ 3 of the Scheduling Order, on January 23, 2015, ACE provided its "itemization" of "costs, expenses and damages" alleged in its Thirteenth Affirmative Defense.  A true and accurate copy of ACE's January 23, 2015 itemization (without the invoices and other backup provided) is attached hereto as **Exhibit A**.  The materials include claims/damages sought against SunLink totaling approximately $8M and broken out into the following categories:  "subcontractor overtime; ACE direct labor; ACE overhead; SunLink change orders, liquidated damages; and lost SRECs."  See **Exhibit A**.

2.      On January 30, 2015, again pursuant to the Scheduling Order, the parties exchanged document requests.  A copy of SunLink's Requests for Production of Documents served upon ACE is attached as Exhibit A to ACE's Motion; attached hereto as **Exhibit B** is a true and accurate copy of ACE's Request for Production of Documents served upon SunLink.  Both parties propose essentially "contention" requests for documents derived wholly from the allegations contained in the pleadings and other documents filed in the case.  As set forth above, at least 93 out of 162 requests of SunLink are specifically directed to ACE's claims, defenses and alleged damages of approximately $8M as set forth in the Thirteenth Affirmative Defense, and subsequently "itemized" at the Arbitrator's direction in Scheduling Order No. 1.

3.      On February 13, 2015, again as directed by the Arbitrator, the parties filed a *joint* status report concerning certain discovery issues.  No complaint or objection concerning the breadth of discovery sought by SunLink was raised by ACE.

3

4.     On February 17, 2015, counsel for SunLink and ACE held a conference call to discuss document discovery issues, including a protocol for ESI.  During the call, a series of agreements were reached as to a workable protocol for document production.  At no time during the call on February 17, 2015, did ACE raise any complaint or objection concerning the breadth of discovery sought by SunLink.  On February 18, 2015, SunLink sent ACE a draft ESI protocol consistent with the parties' discussions, to which ACE has never responded despite repeated requests to do so.  A true and accurate copy of counsel's draft ESI protocol sent to ACE on February 18, 2015 is attached hereto as **Exhibit C.**

5.     On Thursday, February 26, 2015 at 6:21 p.m., a full month after service of the supposedly offending document requests served by SunLink, after the filing of a joint status report with the Arbitrator, after a telephone call between counsel at which discovery protocols were discussed and seemingly agreed to, and on the eve of the date (Monday, March 2, 2015) by which the parties were to file their written responses to each other's document requests and commence actual production of documents, ACE emailed SunLink for the first time complaining of the breadth of SunLink's discovery.

6.     On March 2, 2015, in accordance with the Scheduling Order, SunLink filed its objections and specific written responses to ACE's Request for Production of Documents, a true and accurate copy of which is attached hereto as **Exhibit D.**  Also on March 2, 2015, SunLink commenced actual production of documents in its possession responsive to ACE's requests.  As of this writing, SunLink has produced approximately 13,305 pages of documents to ACE, and intends to conclude its rolling production by early next week.  As of this writing ACE has not served <u>any</u> written responses to SunLink's discovery requests, nor has ACE produced a single document to SunLink in discovery.

4

7.     Despite being in complete non-compliance with the Scheduling Order, and offering no justification other than its own perception of the issues, ACE blithely asks the Arbitrator to "phase the discovery and arbitration in this case to limit the initial discovery and initial arbitration hearing to the preliminary issues (as defined by ACE)." In the Motion, however, ACE defines the "relevant evidence" pertaining to the issues it raises as follows: *"the relevant evidence pertaining to this issue consists of the contracts, evidence pertaining to the interpretation of the contracts (including pre-contract communications regarding timing and prior course of dealing), and the delivery schedules and dates."* See Motion, ¶ 7.  In other words -- all of the evidence and facts "dating back to 2011" upon which ACE predicates its Thirteenth Affirmative Defense, and that which SunLink seeks by way of its discovery.  What ACE attempts here, of course, is to define an arbitrary and artificially narrow series of what it calls "preliminary issues," deny SunLink meaningful discovery on these issues, then put on a case in which ACE selectively advances the issues to be tried and the evidence to be offered. Respectfully, that is not how this process goes.

8.     The real reason behind ACE's Motion is revealed in Paragraphs 11 and 12.  ACE is, purely and simply, trying to buy time by its Motion to attempt to settle its case with Clean Focus/Redwood with no guarantee that SunLink will be the beneficiary.  Attached hereto as **Exhibit E** is a true and accurate copy of ACE's "Verified Complaint with Prayers for Injunctive Relief" filed in the Barnstable Superior Court, Civil Action No. 1572CV00025, on January 20, 2015 against Clean Focus and Redwood.  The Barnstable Action covers six of the nine Projects at issue (those located in Barnstable County).  On information, ACE has filed a substantially similar, and also verified, pleading in Dukes County covering the remaining three Projects located in that county, making up the total of nine projects at issue here.

5

In its Verified Complaint, ACE's principal, Art Hennessy, alleges, among other things, that:

1.  ACE fully performed and timely completed all obligations under its "EPC contracts" with Clean Focus and Redwood. See **Exhibit E**, Paragraphs 20-67.

2.  Despite ACE's having fully performed its obligations under the contracts, Redwood, "and its affiliate Clean Focus," have "orchestrated the complex payment structure to avoid Redwood's obligations under the EPC contract." **Id**, ¶ 72.

3.  "Redwood caused the delays for which it blames ACE." **Id**, ¶¶ 78-105.

4.  "Because the major delays were caused by [Clean Focus and Redwood's] failures under the EPC contract with regard to the NStar interconnection, ACE has rejected the liquidated damages in the contact adjustment which the Defendants have sought to impose on ACE as a pre-textual basis to not pay ACE for all of its work on the solar projects." **Id**, ¶ 103.

5.  Redwood and Clean Focus breached their contracts with ACE, breach implied covenants of good faith and fair dealing, were unjustly enriched, and have violated G.L. 93A. **Id**, Counts II-IV.

In other words, the "offset damages" ACE seeks to recover against SunLink are alleged in ACE's verified pleadings in Barnstable Superior Court to be the product of delays occasioned by the Owners, and not SunLink.

9.      There is nothing in the sales contracts between ACE and SunLink that conditions ACE's payment obligations upon its receipt of payment under ACE's EPC contracts with Clean Focus/Redwood.  None of the provisions of the EPC contracts between Clean Focus/Redwood and ACE are incorporated into the sales contracts at issue in this arbitration proceeding.  Stated more simply, ACE has no right to withhold payment to SunLink simply because the Owners/Developers have refused to make payments which ACE alleges are due and owing under

its EPC contracts.  There is no "pay when paid" provision in Sunlink's Sales Contracts.  Yet, that is exactly what ACE has done and that unquestionably violates Massachusetts General Laws Chapter 93A.

10.     The fact that ACE may or may not end up mediating its disputes with the Owners/Developers on "April 1 and 2" is utterly irrelevant to this proceeding.  SunLink is not a party in any of the Superior Court proceedings commended by ACE, and will not be a participant in any upcoming mediation associated with those proceedings.  SunLink has commenced its own Superior Court proceedings to perfect claims it has made under various surety bonds ACE provided on the Projects at issue.  SunLink's Superior Court actions have been stayed pending the outcome of this Arbitration between SunLink and ACE, something which the parties expressly contracted for and which is the predicate to payment under the surety bonds.

11.     This arbitration proceeding, therefore, may well be "extremely impractical" for ACE (Motion ¶ 12, p. 5), particularly given its verified pleadings filed in Superior Court taking positions which directly contradict the positions it takes here.  Assuredly, however, from SunLink's perspective, this proceeding is most definitely not "the tail wagging the dog" (Motion, ¶ 12, p. 5).  No matter the clever euphemisms employed by ACE to attempt to dismiss these proceedings, a fair and speedy resolution (that which the parties contracted for and agreed to with the Arbitrator) is absolutely essential.  In fact, anything short of a speedy resolution of its claims completely deprives SunLink of the benefit of its bargain struck with ACE at the outset of these Projects, and will only further delay SunLink in its efforts to recover against ACE's surety bonds, which will, effectively, insure payment of amounts properly adjudged in SunLink's favor.

12.     If ACE were seriously interested in curtailing/avoiding unnecessary legal fees and costs, it would simply admit here to owing SunLink for the materials it undisputedly purchased,

installed, and put into uninterrupted, continuous service beginning June of 2014 on the Projects -
- something which ACE has effectively already admitted in its verified pleadings filed in
Superior Court. See ¶ 8, above.

13.    If ACE continues to refuse to comply with the Scheduling Order, SunLink
respectfully requests that the Arbitrator entertain the imposition of sanctions, including, at a
minimum, a motion to strike ACE's Thirteenth Affirmative Defense, direct liability under the
sales contracts in SunLink's favor, and truncate the upcoming hearings as necessary to resolve
any legitimate, remaining issues pertinent to the swift entry of an award.

WHEREFORE, for all of the foregoing reasons, SunLink respectfully requests that the
Arbitrator deny ACE's Motion to Amend the Scheduling Order, enter an order (i) compelling
ACE to respond to SunLink's document requests, and (ii) to immediately commence production
of responsive documents on a reasonable schedule that will insure that the hearings in May go
forward as currently planned.

Alternatively, SunLink respectfully requests that the Arbitrator entertain a motion by
SunLink to strike ACE's Thirteenth Affirmative Defense, direct liability under the sales
contracts in favor of SunLink, and truncate the upcoming hearings to address exclusively those
issues which would remain outstanding, such as SunLink's damages, and ACE's liability under
any of the remaining causes of action in the Demand sounding in fraud, violation of G.L. c. 93A,
etc.

Claimant,

SUNLINK CORPORATION,

By its attorneys,

Paul J. Murphy
David G. Thomas
Greenberg Traurig LLP
1 International Place
Boston, MA 02110
617-310-6000
murphyp@gtlaw.com
thomasda@gtlaw.com

and

Mark Ginalski
SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA  94901
mark.ginalski@sunlink.com

Dated:  March 16, 2015

CERTIFICATE OF SERVICE
I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD
FOR EACH OTHER PARTY BY ~~MAIL~~ email
~~(BY HAND) ON~~ 3|16|15

# EXHIBIT A

# RIEMER │ BRAUNSTEIN

Dennis E. McKenna
dmckenna@riemerlaw.com
(617) 880-3454 direct
(617) 692-3454 direct fax
(617) 834-3454 cell

January 23, 2015

**BY EMAIL**
murphyp@gtlaw.com

Paul J. Murphy, Esquire
Greenberg Traurig, LLP
One International Place
Boston, MA  02110

    *Re:*    *Sunlink Corporation v. American Capital Energy, Inc.,*
          *AAA No. 01-14-0001-7516.*

Dear Paul:

      Per the Court's Scheduling Order No. 1, Item No. 3, attached is the itemization of American Capital Energy, Inc. ("ACE") of the cost, expenses, and damages it claims to have incurred, as alleged, in the Thirteenth Affirmative Defense.

      I believe that the itemization is self-explanatory.  As you will see, for the line items involving Subcontractor overtime, I have provided you with additional line item breakdowns and backup supporting material for those line items as received from the subcontractor, E.S. Boulos Company.  While we have also provided you with the subcontractor overtime further breakdown on the Katama, Nunnepog, Eastham, Harwich, and Tisbury Projects on the document entitled "CVEC OT cost thru 7/22/14" as received from Eli B. Flourence Co., we have not yet received from the subcontractor all of the backup materials supporting such itemizations and breakdowns, and recognize our obligation to provide that to you upon our receipt of that additional material from the subcontractor.  For the columns entitled Liquidated Damages and Lost SRECs, we have provided you with the itemization per the Scheduling Order, and have also provided you with relevant pages from the EPC Contract, as well as certain correspondence received from Redwood with regard thereto.  I have also requested from ACE a further calculation to help explain the breakdown of these claimed offsets and upon my receipt of that calculation, I will promptly provide it to you.

                Very truly yours,

                Dennis E. McKenna

DEM:cas

cc:    Eric T. McLean, P.E.
       Robert K. Dowd, Esquire

1792834.1

| Site | Subcontractor overtime | ACE Direct labor | ACE overhead | Sunlink Change Orders | Liquidated Damages | Lost SRECs | total |
|---|---|---|---|---|---|---|---|
| Barnstable | $364,908 | $15,714 | $21,315 | | $335,830 | $415,977 | $1,660,509 |
| Brewster | $254,758 | $16,782 | $15,206 | | $101,789 | $123,425 | $511,960 |
| Chatham | $367,462 | $34,457 | $22,507 | | $150,947 | $197,401 | $772,776 |
| Dennis | $696,758 | $19,861 | $40,131 | | $546,564 | $622,649 | $1,925,963 |
| Eastham | $147,043 | $4,728 | $8,499 | | $0 | $47,477 | $207,747 |
| Harwich | $582,566 | $30,403 | $34,326 | $506,765 | $288,940 | $447,461 | $1,383,696 |
| Katama | $177,459 | $4,750 | $10,204 | | $58,889 | $116,414 | $367,716 |
| Nunnepog | $169,451 | $3,511 | $9,686 | | $66,802 | $135,425 | $384,876 |
| Tisbury | $196,623 | $9,914 | $11,566 | | $97,388 | $117,579 | $433,070 |
| Mashpee | $186,000 | $9,834 | $10,967 | na | na | | $206,801 |
| Duxbury | $74,520 | $6,997 | $4,565 | | na | na | $86,082 |
| total | $3,217,550 | $156,951 | $188,972 | $506,765 | $1,647,150 | $2,223,808 | $7,941,196 |

Additional Cost from E.S. Boulos on Dennis, Barnstable, Brewster, Chatham

| PROJECT | OT Date | CO # | OT COST |
|---|---|---|---|
| DENNIS | 4/11/2014 | 5 | $19,732.06 |
| DENNIS | 4/18/2014 | 7 | $28,576.14 |
| DENNIS | 4/25/2014 | 8 | $28,867.34 |
| DENNIS | 5/2/2014 | 9 | $25,722.48 |
| DENNIS | 5/9/2014 | 11 | $27,518.24 |
| DENNIS | 5/16/2014 | 12 | $26,691.92 |
| DENNIS | 5/23/2014 and 5/24/2014 | 13 | $46,443.28 |
| DENNIS | 5/30/2014 and 5/31/2014 | 13 | $79,124.40 |
| DENNIS | extended construction time 39 days | | $414,082.16 |
| Total Dennis | | | $696,758.02 |
| BARNSTABLE | 4/11/2014 | 3 | $14,791.76 |
| BARNSTABLE | 4/18/2014 | 5 | $14,530.56 |
| BARNSTABLE | 4/25/2014 | 6 | $22,918.80 |
| BARNSTABLE | 5/2/2014 | 7 | $18,047.44 |
| BARNSTABLE | 5/9/2014 | 9 | $15,989.44 |
| BARNSTABLE | 5/16/2014 | 10 | $15,468.56 |
| BARNSTABLE | 5/23/2014 and 5/24/2014 | 11 | $20,992.32 |
| BARNSTABLE | extended construction time 44 days | | $242,169.18 |
| Total Barnstable | | | $364,908.06 |
| BREWSTER | 4/18/2014 & 4/19/2014 | 4 | $16,834.84 |
| BREWSTER | 4/25/2014 | 5 | $9,092.56 |
| BREWSTER | 5/9/2014 | 6 | $9,288.72 |
| BREWSTER | 5/23/2014 | 7 | $6,456.08 |
| BREWSTER | extended construction time 45 days | | $213,086.23 |
| Total Brewster | | | $254,758.43 |
| CHATHAM | 4/18/2014 & 4/19/2014 | 4 | $23,687.76 |
| CHATHAM | 4/25/2014 | 5 | $10,464.72 |
| CHATHAM | 5/9/2014 | 6 | $10,437.12 |
| CHATHAM | 5/23/2014 and 5/24/2014 | 7 | $21,002.16 |
| CHATHAM | 5/30/2014 and 5/31/2014 | 8 | $24,178.72 |
| CHATHAM | extended construction time 48 days | | $277,691.64 |
| Total Brewster | | | $367,462.12 |
| | Total | | $1,683,886.63 |

Additional Cost from ProStar Electric Co on Mashpee
Duxbury

| PROJECT | OT Date | OT COST |
|---------|---------|---------|
| MASHPEE | extended construction, overtime and lost time Jan to May 31 | $186,000 |
| DUXBURY | extended construction, overtime and lost time Jan to May 31 | $74,520 |

Additional Cost from Florence Electric Co on Katama,
Nunnepog, Eastham, Harwich, Tisbury

| PROJECT | OT Date | OT COST |
|---------|---------|---------|
| KATAMA | extended construction, overtime and lost time Jan to May 31 | $177,459 |
| NUNNEPOG | extended construction, overtime and lost time Jan to May 31 | $169,451 |
| EASTHAM | extended construction, overtime and lost time Jan to May 31 | $147,043 |
| HARWICH | extended construction, overtime and lost time Jan to May 31 | $582,566 |
| TISBURY | extended construction, overtime and lost time Jan to May 31 | $196,623 |
|  | Total | $1,273,143 |

CVEC OT COST THRU 7/22/14

**ACE-CVEC**

| SITE | Hours To Date 7/22/14 | OT Hours To Date 7/22/14 | OT Rate | OT Cost | O&P 15% | Total OT | Lost Hours as of 7/22/14 | Rate | Lost Prod. Cost | O&P 15% | Total Lost Prod. | TOTAL LATE MATERIAL DELIVERY COST AS OF 7/22/14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| VATAMA | 6109 | 1813 | $ 36.25 | $ 65,728.50 | $ 9,859.28 | $ 75,587.78 | 1221 | $ 72.50 | $ 88,589.49 | $ 13,287.51 | $ 101,876.81 | $ 177,464.69 |
| NUNNEPOG | 5782 | 1752 | $ 36.25 | $ 63,510.00 | $ 9,526.50 | $ 73,036.50 | 1156 | $ 72.50 | $ 83,839.00 | $ 12,575.85 | $ 96,414.85 | $ 169,451.35 |
| EASTHAM | 4921 | 1559 | $ 36.25 | $ 56,506.50 | $ 8,475.98 | $ 64,982.48 | 984 | $ 72.50 | $ 71,357.40 | $ 10,703.61 | $ 82,061.01 | $ 147,043.49 |
| HARWICH | 26674 | 4105 | $ 36.25 | $ 148,806.25 | $ 22,320.94 | $ 171,127.19 | 4585 | $ 72.50 | $ 357,773.00 | $ 53,665.95 | $ 411,438.95 | $ 583,566.14 |
| TISBURY | 6184 | 2243 | $ 36.25 | $ 81,308.75 | $ 12,196.31 | $ 93,555.06 | 1287 | $ 72.50 | $ 93,308.00 | $ 13,450.20 | $ 109,118.20 | $ 196,673.26 |
| **TOTAL** | **47670** | **11472** | | **$ 415,860.00** | **$ 62,379.00** | **$ 474,239.00** | **1237** | **$ 72.50** | **$ 651,220.68** | **$ 100,683.12** | **$ 734,903.92** | **$ 1,273,142.32** |

## Summary of Overtime Hours

| Project | Personnel | Wks Delayed | Unit Cost | % Allocated | Total BASE | Project Total |
|---|---|---|---|---|---|---|
| DENNIS | | | | | | |
| | Bill Guinasso | 7.8 | 2,307.70 | 9% | 1,636.37 | |
| | Terry Jennings | 7.8 | 2,000.00 | 100% | 15,600.00 | |
| | Zac Osgood | 7.8 | 2,019.23 | 8% | 1,312.50 | |
| | Jeff Gadomski | 7.8 | 2,019.23 | 8% | 1,312.50 | 19,861.37 |
| | | | | | | |
| BARNSTABLE | | | | | | |
| | Bill Guinasso | 9 | 2,303.70 | 9% | 1,884.85 | |
| | Tony Meriano | 9 | 1,200.00 | 100% | 10,800.00 | |
| | Zac Osgood | 9 | 2,019.23 | 8% | 1,514.42 | |
| | Jeff Gadomski | 9 | 2,019.23 | 8% | 1,514.42 | 15,713.69 |
| | | | | | | |
| BREWSTER | | | | | | |
| | Bill Guinasso | 10 | 2,303.70 | 9% | 2,094.27 | |
| | Sean Berardi | 10 | 3,400.00 | 33% | 11,322.00 | |
| | Zac Osgood | 10 | 2,019.23 | 8% | 1,682.69 | |
| | Jeff Gadomski | 10 | 2,019.23 | 8% | 1,682.69 | 16,781.66 |
| | | | | | | |
| CHATHAM | | | | | | |
| | Bill Guinasso | 10.2 | 2,303.70 | 9% | 2,136.16 | |
| | Sean Berardi | 10.2 | 3,400.00 | 33% | 11,548.44 | |
| | Ken Defranco | 10.2 | 3,400.00 | 50% | 17,340.00 | |
| | Zac Osgood | 10.2 | 2,019.23 | 8% | 1,716.35 | |
| | Jeff Gadomski | 10.2 | 2,019.23 | 8% | 1,716.35 | 34,457.29 |
| | | | | | | |
| HARWICH | | | | | | |
| | Bill Guinasso | 9 | 2,303.70 | 9% | 1,884.85 | |
| | Sean Berardi | 9 | 3,400.00 | 33% | 10,189.80 | |
| | Ken Defranco | 9 | 3,400.00 | 50% | 15,300.00 | |
| | Zac Osgood | 9 | 2,019.23 | 8% | 1,514.42 | |
| | Jeff Gadomski | 9 | 2,019.23 | 8% | 1,514.42 | 30,403.49 |
| | | | | | | |
| EASTHAM | | | | | | |
| | Bill Guinasso | 5 | 2,303.70 | 9% | 1,047.14 | |
| | Brian Langton | 5 | 1,200.00 | 33% | 1,998.00 | |
| | Zac Osgood | 5 | 2,019.23 | 8% | 841.35 | |
| | Jeff Gadomski | 5 | 2,019.23 | 8% | 841.35 | 4,727.83 |
| | | | | | | |
| KATAMA | | | | | | |
| | Mark Bean | 4.6 | 1,461.54 | 33% | 2,238.79 | |
| | Bill Guinasso | 4.6 | 2,303.70 | 9% | 963.37 | |
| | Zac Osgood | 4.6 | 2,019.23 | 8% | 774.04 | |
| | Jeff Gadomski | 4.6 | 2,019.23 | 8% | 774.04 | 4,750.23 |

TISBURY

| | | | | | |
|---|---|---|---|---|---|
| Mark Bean | 9.6 | 1,461.54 | 33% | 4,672.25 | |
| Bill Guinasso | 9.6 | 2,303.70 | 9% | 2,010.50 | |
| Zac Osgood | 9.6 | 2,019.23 | 8% | 1,615.38 | |
| Jeff Gadomski | 9.6 | 2,019.23 | 8% | 1,615.38 | **9,913.52** |

NUNNEPOG

| | | | | | |
|---|---|---|---|---|---|
| Mark Bean | 3.4 | 1,461.54 | 33% | 1,654.76 | |
| Bill Guinasso | 3.4 | 2,303.70 | 9% | 712.05 | |
| Zac Osgood | 3.4 | 2,019.23 | 8% | 572.12 | |
| Jeff Gadomski | 3.4 | 2,019.23 | 8% | 572.12 | **3,511.04** |

MASHPEE

| | | | | | |
|---|---|---|---|---|---|
| Bill Guinasso | 10.4 | 2,303.70 | 9% | 2,178.04 | |
| Brian Langton | 10.4 | 1,200.00 | 33% | 4,155.84 | |
| Zac Osgood | 10.4 | 2,019.23 | 8% | 1,750.00 | |
| Jeff Gadomski | 10.4 | 2,019.23 | 8% | 1,750.00 | **9,833.88** |

DUXBURY

| | | | | | |
|---|---|---|---|---|---|
| Bill Guinasso | 7.4 | 2,303.70 | 9% | 1,549.76 | |
| Brian Langton | 7.4 | 1,200.00 | 33% | 2,957.04 | |
| Zac Osgood | 7.4 | 2,019.23 | 8% | 1,245.19 | |
| Jeff Gadomski | 7.4 | 2,019.23 | 8% | 1,245.19 | **6,997.19** |

ACE Overhead Calculation

| Site | Subcontractor overtime | ACE Direct labor | ACE overhead* |
|------|------------------------|------------------|---------------|
| Barnstable | $364,908 | $15,714 | $21,315 |
| Brewster | $254,758 | $16,782 | $15,206 |
| Chatham | $367,462 | $34,457 | $22,507 |
| Dennis | $696,758 | $19,861 | $40,131 |
| Eastham | $147,043 | $4,728 | $8,499 |
| Harwich | $582,566 | $30,403 | $34,326 |
| Katama | $177,459 | $4,750 | $10,204 |
| Nunnepog | $169,451 | $3,511 | $9,686 |
| Tisbury | $196,623 | $9,914 | $11,566 |
| Mashpee | $186,000 | $9,834 | $10,967 |
| Duxbury | $74,520 | $6,997 | $4,565 |
| total | $3,217,550 | $156,951 | $188,972 |

*Overhead Rate is 0.056
Overhead calculation is cost multiplied by overhead rate

**SunLink Change Order Associated with Delivery**

| # | Description | Value | |
|---|---|---|---|
| 1 | 50% Split of Net Cost to Deliver First 10% of A-Frames | $ | 61,812.10 |
| 2 | 50% Split of Net Cost to Deliver Second 10% of A-Frames | $ | 61,812.10 |
| 3 | 50% Split of Net Cost to Deliver Third 10% of A-Frames | $ | 66,201.80 |
| 4 | Acceleration of 1,608 Ballast Blocks (April Delivery to Last Two Weeks in March) | $ | 72,780.00 |
| 5 | Cost for (15) Additional Frames and Saturday Delivery (180 Ballasts per Sat.) | $ | 72,500.00 |
| 6 | OMITTED - CHANGE ORDER 6 REJECTED | | |
| 7 | Sunday Production for MBO (80 Ballasts per Sunday) | $ | 48,000.00 |
| 8 | Shift Ballast Blocks from MBO/Scituate to Old Castle, All Ballasts Delivered no Later than 04/16/2014 | $ | 90,033.50 |
| 9 | Shipping Cost for Old Castle to Deliver to Tisbury | $ | 33,625.00 |
| | TOTAL | $ | 506,764.50 |

**Lost SRECs and LDs claimed by Redwood Capital**

| Site | Lost SREC Revenue | Liquidated Damages | Total Adjustment |
|------|------------------:|-------------------:|-----------------:|
| Barnstable | $ 415,977.40 | $ 335,830.50 | $ 751,807.90 |
| Brewster | $ 123,425.00 | $ 101,788.82 | $ 225,213.82 |
| Chatham | $ 197,401.48 | $ 150,947.44 | $ 348,348.92 |
| Dennis | $ 622,648.77 | $ 546,563.86 | $ 1,169,212.63 |
| Eastham | $ 47,476.63 | $ - | $ 47,476.63 |
| Harwich | $ 447,460.56 | $ 288,939.71 | $ 736,400.27 |
| Katama | $ 116,414.39 | $ 58,889.04 | $ 175,303.43 |
| Nunnepog | $ 135,425.28 | $ 66,802.40 | $ 202,227.68 |
| Tisbury | $ 117,578.96 | $ 97,388.13 | $ 214,967.09 |
| | $ 2,223,808.47 | $ 1,647,149.89 | $ 3,870,958.36 |

# EXHIBIT B

AMERICAN ARBITRATION ASSOCIATION

SUNLINK CORPORATION,

Claimant,

v.

AMERICAN CAPITAL ENERGY, INC.,

Respondent.

AAA No. 01-14-0001-7516

## RESPONDENT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED UPON THE CLAIMANT, SUNLINK CORPORATION

The Respondent, American Capital Energy ("ACE"), by its attorneys hereby propounds

its First Request for Production of Documents upon the Claimant, Sunlink Corporation, in

accordance with Scheduling Order No. 1 and the definitions and instructions set forth below.

### INSTRUCTIONS

A.    These discovery requests require supplemental or amended responses to the extent

required by Mass.R.Civ.P. 26(e).

### DEFINITIONS

1.    The term "Sunlink" refers to the Claimant, Sunlink Corporation, its members,

managers, employees, agents, representatives, attorneys, or any other persons acting for or on its

behalf.

2.    The term "ACE" refers to the Respondent, American Capital Energy, Inc., its

members, managers, employees, agents, representatives, attorneys, or any other persons acting

for or on its behalf.

3.    The term "Demand for Arbitration", as used herein, refers to that certain Demand

for Arbitration filed on behalf of Sunlink with the American Arbitration Association, AAA No.

01-14-0001-7516.

4. The term "Answer", as used herein, refers to that certain Answer filed by ACE with the American Arbitration Association, AAA No. 01-14-0001-7516.

5. The term "SREC", as used herein, refers to that certain Solar Renewable Energy Certificate Program."

6. The term "Projects", as used herein, refers to the nine (9) projects described in the Demand for Arbitration.

7. The term "Master Sales Contract", as used herein, refers to the contract between ACE and Sunlink signed on March 6, 2012.

8. The term "Equipment", as used herein, refers to that certain photovoltaic equipment of Sunlink, also referred by Sunlink in the Demand for Arbitration as the "SunLink MMS System" supplied by Sunlink on each of the Projects.

9. As used herein, the term "including" means including but not limited to.

10. "Document" shall mean drafts, originals and copies of any and all writings, papers and other tangible inscriptions, whether handwritten, typed, printed, photographed or otherwise produced, including, but not limited to, letters, cables, wires, minutes, electronic mail messages, metadata, diaries, calendar or desk pads, scrapbooks, notebooks, correspondence, postcards, bulletins, press releases, circulars, forms, pamphlets, notices, statements, journals, reports, notes, memoranda (written memoranda of telephone conversations, office conversations, discussions, agreements, acts and activities), and inter-office and intra-office communications, contracts, agreements, assignments and other official records and legal instruments; microfilm, microfiche and other systems of information storage and retrieval; photographs, photomicrographs, and photographic film and negatives, phone records, tapes, and other sound recordings; computer tapes, cards, programs and printouts; specifications, work statements, blueprints, drawings,

graphs, charts, scientific data and test results; data compilations from which information can be

obtained, translated, if necessary, through detection devices into reasonably usable form;

published materials of any kind, travel reports, accounts and vouchers; ledgers, bills, expense

accounts, price listings, catalogs, orders, books, records, purchase orders, invoices, checks,

receipts and files, and also including, but not limited to, the document itself, all earlier and later

editions, revisions and supplements, as well as all materials or data incorporated into or referred

to in the document.

     11.    The term "Communication" shall mean any written or oral transmission of fact,

information or opinion, including any utterance, notation, or statement of any nature whatsoever,

including, but not limited to, Documents, as defined above, correspondence, emails and

telephone conversations.

     12.    The term "concerning" means referring to, describing, evidencing, or constituting.

     13.    The terms "Claimant" and "Respondent" as well as a party's full or abbreviated

name, or a pronoun referring to a party, mean the party and, where applicable, its officers,

directors, employees, partners, corporate parent, subsidiaries, or affiliates.  The definition is not

intended to impose a discovery obligation on any person who is not a party to the litigation.

     14.    The term "Person" shall mean the plural as well as the singular and includes a

natural person, firm, partnership, limited partnership, corporation, limited liability company,

association, trust, business trust, joint venture, sole proprietorship or any other business or

governmental entity or agency and also includes the officers, directors, employees, agents,

attorneys, divisions, subsidiaries, affiliates, and predecessors and successors in interest thereof.

15.     Except where the context does not permit, the words "and" and "or" shall be construed to mean "and/or"; words used in the singular shall be deemed to include their plural forms; and words used in the plural shall be deemed to include their singular forms.

## DOCUMENT REQUESTS

### REQUEST FOR PRODUCTION NO. 1:

All Documents and Communications which constitute, evidence, memorialize, and/or refer to communications between Sunlink and ACE from 2011 through the date of the Demand for Arbitration concerning the Projects.

### REQUEST FOR PRODUCTION NO. 2:

All Documents and Communications which constitute, evidence, memorialize, and/or refer to agreements and/or contracts between Sunlink and ACE concerning the Projects including, but not limited to the "nine sales contracts" identified in Paragraph 11 of the Demand for Arbitration.

### REQUEST FOR PRODUCTION NO. 3:

All Documents and Communications which constitute, evidence, memorialize, and/or refer to all notices to proceed on any and all of the Projects received from ACE including, but not limited to, such notices identified in Paragraph 13 of the Demand for Arbitration.

### REQUEST FOR PRODUCTION NO. 4:

All Documents and Communications which constitute, evidence, memorialize, and/or refer to communications with any supplier or potential supplier (even if not hired) of the Equipment to be used on the Projects including, but not limited to, communications with the actual Chinese suppliers from whom Sunlink purchased the Equipment.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to agreements and contracts with any supplier or potential supplier (even if not hired) of the Equipment to be used on the Projects including, but not limited to, the agreements and contracts with the actual Chinese suppliers from whom Sunlink purchased the Equipment.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to orders actually placed by Sunlink with any vendor for the Equipment including, but not limited to, purchase orders issued for the Equipment by Sunlink.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to all internal communications (including emails) within Sunlink from 2011 through the date of the Demand for Arbitration about the Projects, the Equipment, Sunlink, timing for delivery of the Equipment, timing for production of the Equipment, ACE's obligations with respect to timely completion of the Projects, the consequences of not completing the Projects on a timely basis, and/or Sunlink's ability to timely deliver the Equipment.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the contracts with any subcontractor on any of the Projects.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to all purchase orders submitted to any subcontractor on any of the Projects.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to all communications with any subcontractor on any of the Projects.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to any payments to any and all subcontractors on any of the Projects.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to any communications with any lender or financial institution of Sunlink including, but not limited to Bridge Bank Capital Finance Division, related to any of the Projects.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to any written agreements, contracts, or instruments with any lender or financial institution of Sunlink including, but not limited to Bridge Bank Capital Finance Division, related to any of the Projects.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to any submissions, requisitions, request for an advance, or other similar documents submitted by Sunlink to any lender or financial institution of Sunlink including, but not limited to Bridge Bank Capital Finance Division, related to any of the Projects.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "Changeorders" identified in Paragraph 14 of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications which constitute, evidence, memorialize, and/or support Sunlink's contention that "ACE has fully and unconditionally accepted and installed all of Sunlink's projects" and "construction of all nine projects was completed in June, 2014" as alleged in Paragraph 15 of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the payments Sunlink admits to receiving as set forth in Paragraph 17 of the Demand for Arbitration, as well as such documents reflecting that "approximately $6.6M" remains due and owing to Sunlink as set forth in Paragraph 17 of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "LOC" described in Paragraph 18 of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "written communications sent directly to Bridge Bank" as identified in Paragraph 20 of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to all notices of default, including the notice identified in Paragraph 21 of the Demand for Arbitration, received by Sunlink from any lender or financial institution including, but not limited to, Bridge Bank between 2011 and the Date of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the telephone conference identified in Paragraph 22 of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the June 4, 2014 telephone conference identified in Paragraph 23 of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "annotated spreadsheet" identified in Paragraph 23 of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "Notice of Credit Owed to ACE" identified in Paragraph 26 of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents and Communications in Sunlink's possession, custody, or control between 2011 and the date of the Demand for Arbitration that if the projects were not timely completed, the Projects may not qualify for tax-based incentives and/or that ACE may be subject to liquidated damages and/or reductions to its contracts for construction of the Projects.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents and Communications in Sunlink's possession, custody, or control regarding the Solar Renewable Energy Certificate Program and/or the deadlines for completion of the Projects.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "restructuring costs" identified in Paragraph 29 of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the damages claimed by Sunlink against ACE in the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "material benefit" conferred upon ACE as alleged in Paragraph 34 of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the representations alleged to have been made by ACE to Sunlink including, but not limited to, those referred to in Paragraphs 38 and 43 of the Demand for Arbitration.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to any internal memoranda, emails, or other forms of communication at Sunlink about the Solar Renewable Energy Certificate Program and/or discussions with ACE about timely completion of the Projects and/or financial consequences of not timely completing the Projects.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the manufacturers of other equipment supplied by Sunlink to ACE on any other project, other than the Projects, and the location of each such manufacturer.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents and Communications between 2001 and December, 2013 which constitute, evidence, memorialize, and/or refer to notice by Sunlink to ACE that Sunlink intended to use Chinese manufacturers for the Equipment.

**REQUEST FOR PRODUCTION NO. 34:**

To the extent not already produced pursuant to an earlier request, all Communications from ACE to Sunlink about Sunlink's default(s) on any of the Projects.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to any projected or estimated time period to manufacturer the equipment provided by Sunlink to ACE at any time since 2011 including, but not limited to, those contained in the Master Sales Contracts between ACE and Sunlink, whether or not such contract was acted upon by issuance of a Purchase Order.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents and Communications, to the extent not produced in response to a prior request, which constitute, evidence, memorialize, and/or refer to all payments by Sunlink to its subcontractors, vendors, and suppliers including, but not limited to, payments made in December, 2013 and January, 2014.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the security interest granted by ACE to Sunlink which formed the basis of its UCC filing

with the Massachusetts Secretary of State's Office on or about June 30, 2014 claiming to be a

secured party of ACE with respect to the Equipment.

AMERICAN CAPITAL ENERGY, INC.

By Its Attorneys,
RIEMER & BRAUNSTEIN LLP

Dated: January 30, 2015

Dennis E. McKenna, BBO #556428
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 880-3454
dmckenna@riemerlaw.com

## CERTIFICATE OF SERVICE

I, Dennis E. McKenna, Esquire, hereby certify that on this 30 day of January, 2015, I
caused a true and accurate copy of the foregoing document to be served by first class mail,
postage prepaid, upon the following:  Paul J. Murphy, Esquire, Greenberg Traurig, LLP, One
International Place, Boston, MA 02110.

Dennis E. McKenna

1793441.1

# EXHIBIT C

**Murphy, Paul (Shld-Bos-LT)**

| | |
|---|---|
| **From:** | Thomas, David G. (Shld-Bos-LT) |
| **Sent:** | Wednesday, February 18, 2015 3:31 PM |
| **To:** | Dennis McKenna; Kevin Hern Jr |
| **Cc:** | Murphy, Paul (Shld-Bos-LT) |
| **Subject:** | Sunlink-ACE/Draft ESI Protocol |
| **Attachments:** | 47612791_1.docx |

Dennis and Kevin – please see the attached ESI protocol for your review and consideration.

David G. Thomas
Shareholder
Greenberg Traurig, LLP | One International Place | Boston, MA 02110
Tel 617.310.6040 | Fax 617.897.0940 | Cell 781.267.9614
ThomasDa@GTLAW.com | www.gtlaw.com

GreenbergTraurig

ALBANY  ·  AMSTERDAM  ·  ATLANTA  ·  AUSTIN  ·  BOSTON  ·  CHICAGO  ·  DALLAS  ·  DELAWARE  ·  DENVER  ·  FORT LAUDERDALE  ·  HOUSTON  ·  LAS VEGAS  ·  LONDON*  ·  LOS ANGELES  ·  MEXICO CITY*  ·  MIAMI  ·  NEW JERSEY  ·  NEW YORK  ·  NORTHERN VIRGINIA  ·  ORANGE COUNTY  ·  ORLANDO  ·  PALM BEACH COUNTY  ·  PHILADELPHIA  ·  PHOENIX  ·  SACRAMENTO  ·  SAN FRANCISCO  ·  SEOUL*  ·  SHANGHAI  ·  SILICON VALLEY  ·  TALLAHASSEE  ·  TAMPA  ·  TEL AVIV*  ·  TOKYO*  ·  WARSAW*  ·  WASHINGTON, D.C.  ·  WESTCHESTER COUNTY
*LONDON: OPERATES AS GREENBERG TRAURIG MAHER LLP; MEXICO CITY: OPERATES AS GREENBERG TRAURIG, S.C.; SEOUL: OPERATED BY GREENBERG TRAURIG LLP FOREIGN LEGAL CONSULTANT OFFICE; TEL AVIV: A BRANCH OF GREENBERG TRAURIG, P.A., FLORIDA, USA; GREENBERG TRAURIG TOKYO LAW OFFICES ARE OPERATED BY GREENBERG TRAURIG HORITSU JIMUSHO, AN AFFILIATE OF GREENBERG TRAURIG, P.A. AND GREENBERG TRAURIG, LLP.; WARSAW: OPERATES AS GREENBERG TRAURIG GRZESIAK SP.K.

## AMERICAN ARBITRATION ASSOCIATION

SUNLINK CORPORATION,

    Claimant,

v.

AMERICAN CAPITAL ENERGY, INC.,

    Respondent.

## AAA NO. 01-14-0001-7516

## ELECTRONICALLY STORED INFORMATION PROTOCOL

Pursuant to Scheduling Order No. 1, dated January 20, 2015, Claimant Sunlink Corporation and Respondent American Capital Energy, Inc. (each a **"Party"** and together **"Parties"**) respectfully request the Arbitrator to enter this Electronically Stored Information Protocol as an Order to govern the discovery and production of electronically stored information (**"ESI"**) in this proceeding (**"Stipulated ESI Protocol"**). As grounds for this request, the Parties hereby stipulate and agree, through their respective counsel, to the entry of the Stipulated ESI Protocol in effort to make the discovery and production of ESI efficient and cost effective.

### DISCOVERY OF RESPONSIVE ESI

The Parties are responsible for discovering their own ESI that is responsive to the other Party's document requests and nothing contained herein shall limit or narrow that responsibility. If a Party so choses, it may conduct a traditional linear review of its ESI to find responsive information. Based on the volume of potentially responsive ESI, the Parties recognize that use of ESI search terms may provide efficiencies over a traditional linear review. As such, if a Party intends to use search terms to discover responsive ESI, the Parties agree to negotiate search terms and to test and sample search results, as well as revise search terms, if necessary, for the purpose of discovering responsive ESI. The Parties also recognize that

designing search terms without adequate discussion, testing, and quality assurance likely will lead to inefficient results and unnecessarily increase costs. *See Gross Constr. Assoc. v. Am. Mfrs. Mut. Ins.*, 256 FRD 134 (S.D.N.Y 2009) (Peck, J.). It is the Parties' intention to negotiate an effective and defensible key word search protocol that will achieve the goals of narrowing the ultimate data set of ESI to be reviewed by the Party requesting the use of search terms, while at the same time insuring that the Party discovers information responsive to the other Party's document request.

In this regard, the Parties agree to consider Section IV of The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery in crafting and negotiating search terms. Among other things that may be agreeable to the Parties, the Parties agree that the Party seeking to use search terms will provide the other Party with an initial list of proposed search terms (along with necessary information about the data source to be searched and software to be used so that the Parties can apply the appropriate syntax and search term logic to their efforts). The other Party will respond to the suggested search terms within 2 business days of receipt. The proposal and response will seek, among other things, to identify search terms that may identify responsive information based on the Parties' business knowledge and practices (e.g., if a Party used a particular acronym for describing information that would be responsive, that acronym will be provided for search term purposes). Once the Parties are in agreement with the list of search terms, the search terms will run against an agreed-to statistical sample to determine if the search terms are effective and/or whether they need to be revised.

In addition, the Parties may apply other standard culling strategies to remove duplicative or extraneous information from the data set to be reviewed, including, without

2

limitation: (a) DeNISTING, (b) Domain Name Analysis, and (c) Deduplication (including exact deduplication, near de-duplication, vertical de-duplication across custodians, and/or horizontal de-duplication across custodians, as appropriate). The Parties may apply these other culling strategies even if search terms are not used.

## FORM OF ESI PRODUCTION

All responsive, non-privileged ESI will be produced as kept in the usual course of business (including native form if maintained in native form) or in searchable Adobe .PDF format. Unless technical needs warrant, (i) all ESI that can be bates numbered, shall be bates numbered sequentially per page (e.g., SL000001, SL00002, etc.); and (ii) all ESI that cannot be bates-numbered shall be sequentially numbered per file (e.g., SLFILE00001.XLS, SLFILE00002.MSG, etc.). To the extent a Party seeks the production of any specific metadata, the Parties will confer about production of metadata upon reasonable request. ESI shall be produced by a secure FTP transfer no larger than 5 GB. Productions larger than 5 GB shall be produced on an external hard drive, as the Parties may mutually agree.

## MISCELLANEOUS

1.      Nothing herein shall be construed as a waiver of any right to seek or object to any discovery not set forth herein or to seek to broaden the scope of this protocol.

2.      Nothing herein shall require any party to produce any information where such production is prohibited or limited by law.

3.      Nothing herein is meant to waive or otherwise limit the protections afforded by the attorney-client privilege, work-product doctrine or any other doctrine, privilege or immunity protecting information from disclosure.

3

4.    The provisions of the Parties' Stipulated Protective Order shall apply to any and all ESI subject to this protocol.

Respectfully submitted,

SUNLINK CORPORATION,
Claimant,

By its Attorneys,

_____
Paul J. Murphy (BBO # 363490)
David G. Thomas (BBO # 640854)
Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Tel: 617-310-6000
Fax:  617-310-6001

Dated:  February 18, 2015

Respectfully submitted,

AMERICAN CAPITAL ENERGY,
INC., Respondent,

By its Attorneys,

_____
Dennis E. McKenna (BBO #556428)
Riemer & Braunstein, LLP
Three Center Plaza
Boston, MA  02108
Tel: 617-880-3454

Dated:  February 18, 2015

**SO ORDERED on this** _____ **day of**
_____, 2015:

_____
David L. Evans, Arbitrator

4

# EXHIBIT D

AMERICAN ARBITRATION ASSOCIATION

SUNLINK CORPORATION,

        Claimant,

v.

AMERICAN CAPITAL ENERGY, INC.,

        Respondent.

**AAA No. 01-14-0001-7516**

## SUNLINK CORPORATION'S OBJECTIONS AND RESPONSES TO AMERICAN CAPITAL ENERGY, INC.'S REQUESTS FOR PRODUCTION OF DOCUMENTS

Sunlink Corporation (**"Claimant"**) submit its objections and responses to American Capital Energy, Inc.'s (**"ACE"**) Requests for Production of Documents, dated January 30, 2015 (**"Requests"**).

### RESERVATIONS

The following reservations apply to each of ACE's Requests and, unless otherwise stated, shall have the same force and effect as if set forth in response to each of the Requests:

1.    Claimant respond to the Requests without conceding the materiality, admissibility or relevance of the responses or Requests and Claimant otherwise reserve all objections to the use of any hard copy document or electronically stored information produced.

2.    Claimant, by responding to the Requests, does not intend to waive any privilege or right. Nevertheless, if any response may be deemed to be a waiver of any privilege or right, such waiver shall be a limited waiver with respect to that particular response only.

3.    Claimant's responses reflect the current state of its knowledge or information regarding the information requested. Further investigation may reveal additional information that could lead to additions to, changes in, and/or variations from the responses. Claimant

1

reserves the right to supplement, amend, correct, clarify or modify its responses as further knowledge information becomes available.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS

In addition to the reservations above, Claimant provides the following specific objections and responses to the Requests:

## REQUEST NO. 1

All Documents and Communications which constitute, evidence, memorialize, and/or refer to communications between Sunlink and ACE from 2011 through the date of the Demand, for Arbitration concerning the Projects.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 1

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 2

All Documents and Communications which constitute, evidence, memorialize, and/or refer to agreements and/or contracts between Sunlink and ACE concerning Projects including, but not limited to the "nine sales contracts" identified in Paragraph 11 of the Demand for Arbitration.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 2

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

2

### REQUEST NO. 3

All Documents and Communications which constitute evidence, memorialize, and/or refer to notices to proceed on any and all of the Projects received from ACE including, but not limited to, such notices identified in Paragraph 13 of the Demand for Arbitration.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

### RESPONSE TO REQUEST NO. 3

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

### REQUEST NO. 4

All Documents and Communications which constitute, evidence, memorialize, and/or refer to communications with any supplier or potential supplier (even if not hired) of the Equipment to be used on the Projects including, but not limited to, communications with the actual Chinese suppliers from whom Sunlink purchased the Equipment.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

### RESPONSE TO REQUEST NO. 4

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications concerning the *actual* suppliers of the equipment at issue in this proceeding.

### REQUEST NO. 5

All Documents and Communications which constitute, evidence, memorialize, and/or refer to agreements and contracts with any supplier or potential supplier (even if not hired) of the Equipment to be used on the Projects including, but not limited to, the agreements and contracts with the actual Chinese suppliers from whom Sunlink purchased the Equipment.

3

**SPECIFIC OBJECTION**

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

**RESPONSE TO REQUEST NO. 5**

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications concerning the *actual* suppliers of the equipment at issue in this proceeding.

**REQUEST NO. 6**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to orders actually placed by the Sunlink with any vendor for the Equipment including, but not limited to, purchase orders issued for the Equipment by Sunlink.

**SPECIFIC OBJECTION**

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

**RESPONSE TO REQUEST NO. 6**

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

**REQUEST NO. 7**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to all internal communications (including emails) within Sunlink from 2011 through the date of the Demand for Arbitration about the Projects, the Equipment, Sunlink, timing for delivery of the Equipment, timing for production of the Equipment, ACE's obligations with respect to timely completion of the Projects, the consequence of not completing the Projects on a timely basis, and/or Sunlink's ability to timely deliver the Equipment.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 7

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 8

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the contracts with any subcontractor on any of the Projects.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 8

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 9

All Documents and Communications which constitute, evidence, memorialize, and/or refer to all purchase orders submitted to any subcontractor on any of the Projects.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 9

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 10

All Documents and Communications which constitute, evidence, memorialize, and/or refer to all communications with any subcontractor on any of the Projects.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 10

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 11

All Documents and Communications which constitute, evidence, memorialize, and/or refer to any payments to any and all subcontractors on any of the Projects.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 11

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 12

All Documents and Communications which constitute, evidence, memorialize, and/or refer to any communications with any lender or financial institution of Sunlink including, but not limited to Bridge Bank Capital Finance Division, related to any of the Projects.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 12

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications concerning Bridge Bank to the extent they relate to the parties' claims or defenses in this proceeding.

## REQUEST NO. 13

All Documents and Communications which constitute, evidence, memorialize, and/or refer to any written agreements, contracts, or instruments with any lender or financial institution of Sunlink including, but not limited to Bridge Bank Capital Finance Division, related to any of the Projects.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 13

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications concerning Bridge Bank to the extent they relate to the parties' claims or defenses in this proceeding.

## REQUEST NO. 14

All Documents and Communications which constitute, evidence, memorialize, and/or refer to any submissions, requisitions, requests for an advance, or other similar documents submitted by Sunlink to any lender or financial institution of Sunlink including, but not limited to Bridge Bank Capital Finance Division, related to any of the Projects.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

### RESPONSE TO REQUEST NO. 14

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications concerning Bridge Bank to the extent they relate to the parties' claims or defenses in this proceeding.

### REQUEST NO. 15

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "Changeorders" identified in Paragraph 14 of the Demand for Arbitration.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

### RESPONSE TO REQUEST NO. 15

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

### REQUEST NO. 16

All Documents and Communications which constitute, evidence, memorialize, and/or support Sunlink's contention that "ACE has fully and unconditionally accepted and installed all of Sunlink's projects" and "construction of all nine projects was completed in June, 2014" as alleged in Paragraph 15 of the Demand for Arbitration.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 16

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 17

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the payments Sunlink admits to receiving as set forth in Paragraph 17 of the Demand for Arbitration, as well as such documents reflecting that "approximately $6.6M" remains due and owing to Sunlink as set forth in Paragraph 17 of the Demand for Arbitration.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 17

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 18

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "LOC" described in Paragraph 18 of the Demand for Arbitration.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

### RESPONSE TO REQUEST NO. 18

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

### REQUEST NO. 19

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "written communications sent directly to Bridge Bank" as identified in Paragraph 20 of the Demand for Arbitration.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

### RESPONSE TO REQUEST NO. 19

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

### REQUEST NO. 20

All Documents and Communications which constitute, evidence, memorialize, and/or refer to all notices of default, including the notice identified in Paragraph 21 of the Demand for Arbitration, received by Sunlink from any lender or financial institution including, but not limited to Bridge Bank between 2011 and the Date of the Demand for Arbitration.

**SPECIFIC OBJECTION**

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

**RESPONSE TO REQUEST NO. 20**

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications concerning Bridge Bank to the extent they relate to the parties' claims or defenses in this proceeding.

**REQUEST NO. 21**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the telephone conference identified in Paragraph 22 of the Demand for Arbitration.

**SPECIFIC OBJECTION**

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

**RESPONSE TO REQUEST NO. 21**

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

**REQUEST NO. 22**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the June 4, 2014 telephone conference identified in Paragraph 23 of the Demand for Arbitration.

**SPECIFIC OBJECTION**

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

**RESPONSE TO REQUEST NO. 22**

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

**REQUEST NO. 23**

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "annotated spreadsheet" identified in Paragraph 23 of the Demand for Arbitration.

**SPECIFIC OBJECTION**

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

**RESPONSE TO REQUEST NO. 23**

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

**REQUEST NO. 24**

All Documents and Communications which constitute evidence, memorialize, and/or refer to the "Notice of Credit Owed to ACE" identified in Paragraph 26 of the Demand for Arbitration.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 24

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 25

All Documents and Communications in Sunlink's possession, custody, or control between 2011 and the date of the Demand for Arbitration that if the projects were not timely completed, the Projects may not qualify for tax-based incentives and/or that ACE may be subject to liquidated damages and/or reductions to its contracts for construction of the Projects.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 25

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 26

All Documents and Communications in Sunlink's possession, custody, or control regarding the Solar Renewable Energy Certificate Program and/or the deadlines for completion of the Projects.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 26

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 27

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "restructuring costs" identified in Paragraph 29 of the Demand for Arbitration.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 27

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 28

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the damages claimed by Sunlink against ACE in the Demand for Arbitration.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 28

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

### REQUEST NO. 29

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the "material benefit" conferred upon ACE as alleged in Paragraph 34 of the Demand for Arbitration.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

### RESPONSE TO REQUEST NO. 29

Subject to the reservations and specific objection above, Claimant will produce

responsive documents and communications.

### REQUEST NO. 30

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the representations alleged to have been made by ACE to Sunlink including, but not limited to, those referred to in Paragraphs 38 and 43 of the Demand for Arbitration.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

### RESPONSE TO REQUEST NO. 30

Subject to the reservations and specific objection above, Claimant will produce

responsive documents and communications.

### REQUEST NO. 31

All Documents and Communications which constitute, evidence, memorialize, and/or refer to any internal memoranda, emails, or other forms of communication at Sunlink about the Solar Renewable Energy Certificate Program and/or discussions with ACE about timely completion of the Projects and/or financial consequences of not timely completing the Projects.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity. Claimant also objects to this request as seeking information called for by Request No. 26.

## RESPONSE TO REQUEST NO. 31

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 32

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the manufacturers of other equipment supplied by Sunlink to ACE on any other project, other than the Projects, and the location of each such manufacturer.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## REQUEST NO. 33

All Documents and Communications between 2001 and December, 2013 which constitute, evidence, memorialize, and/or refer to notice by Sunlink to ACE that Sunlink intended to use Chinese manufacturers for the Equipment.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 33

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications for the period from 2011 to December, 2013.

16

## REQUEST NO. 34

To the extent not already produced pursuant to an earlier request, all Communications from ACE to Sunlink about Sunlink's default(s) on any of the Projects.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 34

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 35

All Documents and Communications which constitute, evidence, memorialize, and/or refer to any projected or estimated time period to manufacturer the equipment provided by Sunlink to ACE at any time since 2011 including, but not limited to, those contained in the Master Sales Contracts between ACE and Sunlink, whether or not such contract was acted upon by issuance of a Purchase Order.

### SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 35

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications.

## REQUEST NO. 36

All Documents and Communications, to the extent not produced in response to a prior request, which constitute, evidence, memorialize, and/or refer to all payments by Sunlink to its subcontractors, vendors, and suppliers including, but not limited to, payments made in December, 2013 and January 2014.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 36

Subject to the reservations and specific objection above, Claimant will produce responsive documents and communications concerning payments to subcontractors to the extent they concern the parties' claims and defenses in this proceeding.

## REQUEST NO. 37

All Documents and Communications which constitute, evidence, memorialize, and/or refer to the security interest granted by ACE to Sunlink which formed the basis of its UCC filing with the Massachusetts Secretary of State's Office on or about June 30, 2014 claiming to be a secured party of ACE with respect to the Equipment.

## SPECIFIC OBJECTION

Claimant objects to this request as being overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Claimant also objects to this request to the extent it seeks information protected by the attorney-client communication, work-product immunity or any other privilege or immunity.

## RESPONSE TO REQUEST NO. 37

Subject to the reservations and specific objection above, Claimant will produce

responsive documents and communications.

SUNLINK CORPORATION

By its attorneys,

Paul J. Murphy
David G. Thomas
Greenberg Traurig LLP
1 International Place
Boston, MA 02110
617-310-6000
murphyp@gtlaw.com
thomasda@gtlaw.com

-and-

Mark Ginalski
SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
mark.ginalski@sunlink.com

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above
document was served upon the attorney(s) of
record for each other party by mail by hand
on 3/2/2015        E-MAIL

Dated: March 2, 2015

# EXHIBIT E

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.                                    SUPERIOR COURT
                                                  CIVIL ACTION NO.

| | |
|---|---|
| AMERICAN CAPITAL ENERGY, INC.,<br>　　　　　Plaintiff,<br><br>v.<br><br>REDWOOD SOLAR DEVELOPMENT<br>LLC, CF CVEC OWNER ONE LLC, and<br>CF CVEC MASTER TENANT ONE LLC<br>　　　　　Defendants,<br><br>v.<br><br>TOWN OF BARNSTABLE, TOWN OF<br>BREWSTER, TOWN OF CHATHAM,<br>TOWN OF DENNIS, TOWN OF<br>EASTHAM, TOWN OF HARWICH, and<br>CAPE & VINEYARD ELECTRIC<br>COOPERATIVE, INC.<br>　　　　　Nominal Defendants<br>　　　　　and Reach and<br>　　　　　Apply Defendants. | **VERIFIED COMPLAINT WITH PRAYERS<br>FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

The Plaintiff, American Capital Energy, Inc. ("ACE"), brings this action for enforcement

of six Mechanic's Liens and also to recover the damages caused to it by the Defendants in

connection with the construction of solar arrays situated on land leased from six Towns located

on Cape Cod (the "Towns"). Redwood Solar Development LLC ("Redwood") contracted with

ACE to construct the solar arrays. CF CVEC Owner One LLC ("CF Owner") is the owner of the

solar arrays constructed and CF CVEC Master Tenant One LLC ("CF Tenant") has the leasehold

interests and operates the solar arrays under contract with the Towns. Redwood has failed to pay

ACE on six (6) separate Engineering, Procurement and Construction Agreements (the "EPC

Agreements") for construction of the six (6) solar projects (the "Solar Projects") for the Towns

and pursuant to which ACE is owed over $12,000,000.00. Redwood has failed to pay ACE construction milestone payments and continues to refuse to pay ACE and its subcontractors for services and materials rendered in the construction of the Solar Projects, even though it has admitted at least $3.9 million is due and owing to ACE. The Solar Projects have been constructed and have been producing electricity to the Towns for many months, and thereby generating revenue and other valuable benefits for Redwood, CF Owner, and CF Tenant (collectively, the "Defendants"). The Towns, excluding Dennis which pays the Defendants directly, have paid, and will continue to pay Cape & Vineyard Electric Cooperative, Inc. ("CVEC") which then pays the Defendants for the electricity produced from the construction of the Solar Projects by ACE. In connection with its action, ACE seeks prejudgment relief in the form of a reach and apply lien of the electrical payments currently being made to, or for the benefit of, the Defendants from the electricity produced from the work of ACE, which lien is in the nature of an equitable attachment and which will preserve the status quo and prevent the dissipation of the income by the Defendants to the detriment of ACE which has not been paid for its services and the result of which has imperiled its Massachusetts based business and all of its employees.

## PARTIES

1.      The Plaintiff, American Capital Energy, Inc. ("ACE"), has a principal place of business at 1001 Pawtucket Boulevard, Suite 278, Lowell, Massachusetts.

2.      The Defendant, Redwood Solar Development LLC ("Redwood"), is a Delaware limited liability company with an address at 8275 S. Eastern Avenue, Suite 200-548, Las Vegas, Nevada, with a registered agent for service of process care of the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware.

3.      The Defendant, CF CVEC Owner One LLC ("CF Owner"), is upon information and belief a Delaware limited liability company with a principal place of business at 150 Mathilda Place, Suite 206, Sunnyvale, California, with a registered agent for service of process care of the Incorp Services, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, Delaware.

4.      The Defendant, CF CVEC Master Tenant One LLC ("CF Tenant"), is upon information and belief a Delaware limited liability company with a principal place of business at 150 Mathilda Place, Suite 206, Sunnyvale, California, with a registered agent for service of process care of the Incorp Services, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, Delaware.

5.      The Defendant and Reach and Apply Defendant, Town of Barnstable, is a duly organized town within the Commonwealth of Massachusetts with a principal place of business at the Town Hall, 367 Main Street , Hyannis MA  02601.  The Town is a party in interest pursuant to G.L. c. 254, § 5, and is also named as a Reach and Apply Defendant.

6.      The Defendant and Reach and Apply Defendant, Town of Brewster, is a duly organized town within the Commonwealth of Massachusetts with a principal place of business at 2198 Main Street, Brewster, MA 02631.  The Town is a party in interest pursuant to G.L. c. 254, § 5, and is also named as a Reach and Apply Defendant.

7.      The Defendant and Reach and Apply Defendant, Town of Chatham, is a duly organized town within the Commonwealth of Massachusetts with a principal place of business at 549 Main Street, Chatham, MA 02633.  The Town is a party in interest pursuant to G.L. c. 254, § 5, and is also named as a Reach and Apply Defendant.

8.     The Defendant and Reach and Apply Defendant, Town of Dennis, is a duly organized township within the Commonwealth of Massachusetts with a principal place of business at 485 Main Street, South Dennis, MA 02660. The Town is a party in interest pursuant to G.L. c. 254, § 5, and is also named as a Reach and Apply Defendant.

9.     The Defendant and Reach and Apply Defendant, Town of Eastham, is a duly organized township within the Commonwealth of Massachusetts with a principal place of business at the Town Hall, 2500 State Highway, Eastham, MA 02642. The Town is a party in interest pursuant to G.L. c. 254, § 5, and is also named as a Reach and Apply Defendant.

10.    The Defendant and Reach and Apply Defendant, Town of Harwich, is a duly organized township within the Commonwealth of Massachusetts with a principal place of business at 732 Main Street, Harwich, MA 02645. The Town is a party in interest pursuant to G.L. c. 254, § 5, and is also named as a Reach and Apply Defendant.

**11.**    The Reach and Apply Defendant, Cape & Vineyard Electric Cooperative, Inc. is a Massachusetts corporation with a principal place of business at 3195 Main Street, Barnstable, Massachusetts ("CVEC").

## FACTS COMMON TO ALL COUNTS

12.    ACE and CF Owner agreed to the sale by ACE of nine (9) companies ("Project Companies") to CF Owner (the "Sale"), which Project Companies owned assets related to nine (9) to-be-constructed solar power plants on Cape Cod and Martha's Vineyard, six (6) of which Projects are the subject of this action (the "Solar Projects"), and three (3) of which involve projects on Martha's Vineyard and which are the subject of a similar civil action being simultaneously commenced in Dukes County.

4

13.     At the time of the Sale, the Project Companies possessed a valuable potential future asset, which was the potential to receive income from production of electricity sold to the Towns once the solar power plants were constructed and generating electricity.

14.     The solar projects produce energy which is supplied to the Grid through Interconnection Contracts by and between CF Owner and NSTAR.

15.     The electricity is net metered and cash payments made to one or more of the Defendants at set prices agreed to with each of the Towns pursuant to a complex structure devised by Redwood.

16.     CVEC is a cooperative that was formed by Barnstable and Dukes County and twenty-two other Cape and Island municipalities, including the host towns for the Projects.

17.     Each of the Towns, with the exception of Dennis, entered into agreements with CVEC and CVEC then entered into agreements now held by CVEC Owner.

18.     As the electricity is generated by each of the Projects, with the exception of Dennis, the Towns pay their proportionate share for the electricity to CVEC which then pays these funds to the Defendants.  The Town of Dennis pays for the electricity generated directly to the Defendants.

19.     Redwood, which is an affiliate of CF Owner and CF Tenant and shares common officers, entered into nine separate EPC Agreements with ACE for the construction of the nine solar array sites owned by CF Owner.  The EPC Agreements were executed in November, 2013 and went into effect in December, 2013 upon the issuance by Redwood to ACE of nine separate Notices to Proceed.

<u>Mechanic's Liens for Failure to Pay and Amounts Due on Each Solar Project</u>

A.     <u>Barnstable.</u>

20.     Mechanical Completion pursuant to the terms of the EPC Agreements means that the generating facilities and each subsystem thereof are mechanically, electrically (up to the point of Interconnection), and functionally completed, installed and ready for initial operations, adjustment, testing, and interconnection with the Utility.

21.     By June 13, 2014, ACE had provided Redwood with a Certificate of Mechanical Completion under the EPC Agreements.

22.     Despite ACE providing the Notice of Mechanical Completion  and no dispute being issued by Redwood, payment was not timely made by Redwood to ACE on the mechanical completion milestone.

23.     NSTAR completed all the electrical interconnections between April 23, 2014 and September 29, 2014 so that the Solar Projects were connected to the Grid and producing electricity.

24.     Upon reaching substantial Completion Milestone Payment and Final Completion milestone payment, Redwood refused, and continues to refuse, to pay for the services provided.

25.     As a result, on November 10, 2014 ACE filed and recorded at the Barnstable County Registry of Deeds a Notice of Written Contract at Book 28497, Page 282, Document #51826.  A true and accurate copy of the Notice of Written Contract is annexed hereto and incorporated by reference herein as Exhibit "A."

26.     ACE also filed with the Barnstable County Registry of Deeds a Statement of Sworn Account on November 10, 2014 at Book 28497, Page 326, Document #51827.  A true and accurate copy of the Statement of Sworn Account is annexed hereto and incorporated by reference herein as Exhibit "B."

27.     The Statement of Account sets out the amounts owed under the EPC Agreement in the amount of $12,070,982.42, changeorders in the amount of $19,110.03, payments received in the amount of $9,272,139.45, and thus a remaining balance due in the amount of $2,817,952.99.

**B.      Brewster.**

28.     Mechanical Completion pursuant to the terms of the EPC Agreements means that the generating facilities and each subsystem thereof is mechanically, electrically (up to the point of Interconnection) and functionally completed installed and ready for initial operations, adjustment, testing, and interconnection with the Utility.

29.     By June 13, 2014, ACE provided Redwood with a Certificate for the Mechanical Completion under the EPC Agreements.

30.     Despite ACE providing Notice of Mechanical Completion and no dispute being issued by Redwood, payment was not timely made on the mechanical completion milestone.

31.     NSTAR completed all the electrical interconnections between April 23, 2014 and September 29, 2014 so that the Solar Projects were connected to the Grid and producing electricity.

32.     Upon reaching substantial Completion Milestone Payment and Final Completion milestone payment, Redwood refused, and continues to refuse, to pay for the services provided.

33.     As a result, on November 10, 2014 ACE filed and recorded at the Barnstable Land Court a Notice of Written Contract as Document #1,258,008.  A true and accurate copy of the Notice of Written Contract is annexed hereto and incorporated by reference herein as Exhibit "C."

34.     ACE also filed on November 10, 2014 at the Barnstable Land Court a Statement of Sworn Account as Document #1,258,009.  A true and accurate copy of the Statement of Sworn Account is annexed hereto and incorporated by reference herein as Exhibit "D."

35.     The Statement of Account sets out amounts owed under the EPC Agreement in the amount of $3,563,359.10, changeorders in the amount of $5,768.48, payments received in the amount of $2,737,139.46, and thus a remaining balance due in the amount of $831,988.12.

**C.     Chatham.**

36.     Mechanical Completion pursuant to the terms of the EPC Agreements means that the generating facilities and each subsystem thereof are mechanically, electrically (up to the point of Interconnection), and functionally completed, installed and ready for initial operations, adjustment, testing, and interconnection with the Utility.

37.     By June 13, 2014, ACE provided Redwood with a Certificate for the Mechanical Completion under the EPC Agreements.

38.     Despite ACE providing the Notice of Mechanical Completion and no dispute being issued by Redwood, payment was not timely made by Redwood to ACE on the mechanical completion milestone.

39.     NSTAR completed all the electrical interconnections between April 23, 2014 and September 29, 2014 so that the Solar Projects were connected to the Grid and producing electricity.

40.     Upon reaching substantial Completion Milestone Payment and Final Completion milestone payment, Redwood refused, and continues to refuse, to pay for the services provided.

41.     As a result, on November 10, 2014 ACE filed and recorded at the Barnstable County Registry of Deeds a Notice of Written Contract at Book 28497, Page 310, Document

#51822. A true and accurate copy of the Notice of Written Contract is annexed hereto and incorporated by reference herein as Exhibit "E."

42.    ACE also filed with the Barnstable County Registry of Deeds a Statement of Sworn Account on November 10, 2014 at Book 28497, Page 314, Document #51823. A true and accurate copy of the Statement of Sworn Account is annexed hereto and incorporated by reference herein as Exhibit "F."

43.    The Statement of Account sets out the amounts owed under the EPC Agreement in the amount of $5,316,389.17, changeorders in the amount of $12,360.49, payments received in the amount of $4,083,702.56, and thus a remaining balance due in the amount of $1,245,047.10.

**D.    Dennis.**

44.    Mechanical Completion pursuant to the terms of the EPC Agreements means that the generating facilities and each subsystem thereof are mechanically, electrically (up to the point of Interconnection), and functionally completed, installed and ready for initial operations, adjustment, testing, and interconnection with the Utility.

45.    By June 13, 2014, ACE provided Redwood with a Certificate for the Mechanical Completion under the EPC Agreements.

46.    Despite ACE providing the Notice of Mechanical Completion and no dispute being issued by Redwood, payment was not timely made by Redwood to ACE on the mechanical completion milestone.

47.    NSTAR completed all the electrical interconnections between April 23, 2014 and September 29, 2014 so that the Solar Projects were connected to the Grid and producing electricity.

48.    Upon reaching substantial Completion Milestone Payment and Final Completion milestone payment, Redwood refused, and continues to refuse, to pay for the services provided.

49.     As a result, on November 10, 2014 ACE filed and recorded at the Barnstable County Registry of Deeds a Notice of Written Contract at Book 28497, Page 304, Document #51820.  A true and accurate copy of the Notice of Written Contract is annexed hereto and incorporated by reference herein as Exhibit "G."

50.     ACE also filed with the Barnstable County Registry of Deeds a Statement of Sworn Account on November 10, 2014 at Book 28497, Page 308, Document #51821.  A true and accurate copy of the Statement of Sworn Account is annexed hereto and incorporated by reference herein as Exhibit "H."

51.     The Statement of Account sets out the amounts owed under the EPC Agreement in the amount of $17,095,465.19, changeorders in the amount of $23,315.98, payments received in the amount of $13,131,618.58, and thus a remaining balance due in the amount of $3,987,162.59.

**E.     Eastham.**

52.     Mechanical Completion pursuant to the terms of the EPC Agreements means that the generating facilities and each subsystem thereof are mechanically, electrically (up to the point of Interconnection), and functionally completed, installed and ready for initial operations, adjustment, testing, and interconnection with the Utility.

53.     By June 13, 2014, ACE provided Redwood with a Certificate for the Mechanical Completion under the EPC Agreements.

54.     Despite ACE providing the Notice of Mechanical Completion and no dispute being issued by Redwood, payment was not timely made by Redwood to ACE on the mechanical completion milestone.

55.    NSTAR completed all the electrical interconnections between April 23, 2014 and September 29, 2014 so that the Solar Projects were connected to the Grid and producing electricity.

56.    Upon reaching substantial Completion Milestone Payment and Final Completion milestone payment, Redwood refused, and continues to refuse, to pay for the services provided.

57.    As a result, on November 10, 2014 ACE filed and recorded at the Barnstable County Registry of Deeds a Notice of Written Contract at Book 28497, Page 316, Document #51824. A true and accurate copy of the Notice of Written Contract is annexed hereto and incorporated by reference herein as Exhibit "I."

58.    ACE also filed and recorded with the Barnstable County Registry of Deeds a Statement of Sworn Account on November 10, 2014 at Book 28497, Page 320, Document #51825. A true and accurate copy of the Statement of Sworn Account is annexed hereto and incorporated by reference herein as Exhibit "J."

59.    The Statement of Account sets out the amounts owed under the EPC Agreement in the amount of $1,698,596.05, payments received in the amount of $1,304,750.41, and thus a remaining balance due in the amount of $393,845.64.

F.    **Harwich.**

60.    Mechanical Completion pursuant to the terms of the EPC Agreements means that the generating facilities and each subsystem thereof are mechanically, electrically (up to the point of Interconnection), and functionally completed, installed and ready for initial operations, adjustment, testing, and interconnection with the Utility.

61.    By June 13, 2014, ACE provided Redwood with a Certificate for the Mechanical Completion milestone payment under the EPC Agreements.

62.     Despite ACE providing the Notice of Mechanical Completion and no dispute being issued by Redwood, payment was not timely made by Redwood to ACE on the mechanical completion milestone.

63.     NSTAR completed all the electrical interconnections between April 23, 2014 and September 29, 2014 so that the Solar Projects were connected to the Grid and producing electricity.

64.     Upon reaching substantial Completion Milestone Payment and Final Completion milestone payment, Redwood refused, and continues to refuse, to pay for the services provided.

65.     As a result, on November 10, 2014 ACE filed and recorded at the Barnstable County Registry of Deeds a Notice of Written Contract at Book 28497, Page 328, Document #51828.  A true and accurate copy of the Notice of Written Contract is annexed hereto and incorporated by reference herein as Exhibit "K."

66.     ACE also filed with the Barnstable County Registry of Deeds a Statement of Sworn Account on November 10, 2014 at Book 28497, Page 332, Document #51829.  A true and accurate copy of the Statement of Sworn Account is annexed hereto and incorporated by reference herein as Exhibit "L."

67.     The Statement of Account sets out the amounts owed under the EPC Agreement in the amount of $12,997,952.38, changeorders in the amount of $13,281.18, payments received in the amount of $9,984,177.15, and thus a remaining balance due in the amount of $3,027,056.41.

**Redwood's Refusal to Pay ACE**

68.     Despite ACE's full performance under the EPC Contracts, pursuant to which it is owed at least $12,303,052.85 on the six (6) Solar Projects, Redwood has asserted that it will not pay ACE on any of the nine Solar Projects as it is Redwood's position that because the Solar

12

Projects were not completed in a timely fashion, Redwood intends to utilize the liquidated damage provisions within the EPC Contracts as a basis to not pay ACE. A representative EPC Contract for the Barnstable Project is annexed hereto and incorporated by reference herein as Exhibit "M."

69.    Although each of the EPC Contracts contains a liquidated damages provision, those provisions are not applicable as they were intended to apply if ACE failed to complete the Solar Projects, such that the Defendants did not receive SRECs and did not receive revenue from the Towns generated from Solar Projects.

70.    In fact, all of the Solar Projects are completed and are generating electricity for the Towns, and thus leading to payments from the Towns to CVEC and then to the Defendants and the Town of Dennis to the Defendants, as well as the production of valuable SRECs to the Defendants.

71.    Upon information and belief, the Defendants have engaged in a course of conduct designed to try to shield the electricity payments so that they are directed to one or more of the Defendants so that Redwood might avoid its monetary obligations to ACE and its subcontractors.

72.    ACE believes and therefore avers that Redwood, and its affiliates, CF Owner and CF Tenant, have orchestrated the complex payment structure to avoid Redwood's obligations under the EPC Contract.

**Redwood Admits Owing ACE in Excess of $3.9 Million.**

73.    Notwithstanding Redwood's failure and refusal to pay ACE in excess of $12,000,000.00 owed on these six Solar Projects, Redwood has admitted to owing ACE $3,949,104.17 on the nine Solar Projects, yet it refuses to pay these undisputed amounts to ACE, which in turn has prevented ACE from paying its subcontractors, leading to multiple lawsuits,

including in Barnstable County, Middlesex County, Dukes County, and at least one arbitration proceeding.

74.     By correspondence dated December 30, 2014 sent from Redwood to Berkley Regional Insurance Company, one of the bonding companies on four of the Solar Projects, Redwood has acknowledged owing $2,403,463.07 on the Barnstable, Brewster, Chatham, and Dennis Solar Projects (the "Berkley Letter"). A true and accurate copy of the Berkley Letter is annexed hereto and incorporated by reference herein as Exhibit "N."

75.     As set forth in the Berkley Letter, Redwood admits that "after offsetting the updated liquidated damages amounts against the adjusted contract price for each of the 9 projects, the following amounts would be available for payment on each of the projects subject to lender and Berkley approval: . . . **$2,403,463.07."**

76.     Similarly, by additional correspondence dated December 30, 2014 sent from Redwood to Arch Insurance Company, one of the bonding companies on four of the Solar Projects, Redwood has acknowledged owing $1,545,641.10 on the Eastham, Harwich, Katama, Nunnepog, and Tisbury Solar Projects (the "Arch Letter"). A true and accurate copy of the Arch Letter is annexed hereto and incorporated by reference herein as Exhibit "O."

77.     As set forth in the Arch Letter, Redwood admits that "after offsetting the updated liquidated damages amounts against the adjusted contract price for each of the 9 projects, the following amounts would be available for payment on each of the projects subject to lender and Berkley approval: . . . **$1,545,641.10."**

**Redwood Caused The Delays For Which It Blames ACE.**

78.     On each of the Solar Projects, it was a fundamental necessity for the Solar Array owner to enter into agreement with the electric utility company, NStar, so that the electricity generated by the Solar Projects could be utilized by the Towns through the electric grid.

79.     Therefore, and at the time when the project companies were owned by ACE, ACE

entered into a certain Interconnection Service Agreement ("ISA") with NStar on each of the nine

Solar Projects, including the six Solar Projects that are the subject of this action, and a

representative sample of which is annexed hereto as Exhibit "P", which is the ISA for the

Barnstable Solar Project.

80.     Even after ACE completed all of its work under the EPC Contracts, until and

unless NStar completed all of its work pursuant to each of the ISAs, not one of the Solar Projects

could generate electricity useful to the Towns.

81.     When the Project Companies were transferred by ACE to CF Owner, as an

affiliate of Redwood, the rights and obligations under each of the ISAs became the obligation of

CF Owner and Redwood to ensure that NStar properly and timely completed its interconnection

work on the Solar Projects.

82.     Through their daily involvement with each of the Solar Projects, the Defendants

were aware that NStar was not completing its interconnection work on the Solar Projects in a

timely fashion, with the exception of Eastham, which in turn prevented ACE from completing its

work.

83.     Through emails, text messages, correspondence, weekly meetings, and reporting

on the Project Summary Document/Construction Schedule, the Defendants were made aware by

ACE that the NStar upgrades and interconnection work, which was the Defendants' obligations

to complete, were being delayed.

84.     The delays caused by NStar were thus the Defendants' obligations, and not those

caused by ACE.

85.   By the deadline set for each of the Solar Projects to be completed per the EPC Contracts, NStar had not completed its upgrades and interconnection work, which prevented ACE from completing the Solar Projects, with the exception of Eastham.

86.   In order to assist the Defendants and attempt to eliminate the delays by the Defendants' inability to have NStar complete its work, in July, 2014, ACE offered to act on the Defendants' behalf as its authorized agent to attempt to cure the delays caused by the NStar delays.

87.   On July 22, 2014, Bill Peltz of Clean Focus, with the knowledge and consent of the Defendants, appointed ACE as its authorized agent to commence the agreed upon dispute resolution procedure with NStar, and requested that ACE commence dispute resolution procedures "on all projects."  A true and accurate copy of said July 22, 2014 email is annexed hereto and incorporated by reference herein as Exhibit "Q."

88.   Following its appointment as authorized agent of the Defendants for the NStar dispute, ACE, through Eric McLean, its Executive Vice President of Operations, sent correspondence to NStar on each of the Solar Projects to initiate the dispute resolution process because of "NStar's failure to act in a timely manner." A representative letter sent by ACE to NStar on the Barnstable Project is annexed hereto and incorporated by reference herein as Exhibit "R."

89.   Based solely on the actions taken by ACE on behalf of the Defendants with NStar, ACE successfully prosecuted the dispute resolution procedures which then caused NStar to complete the interconnection service work and upgrades for the Defendants.

90.   After NStar completed its interconnection work, ACE then promptly completed all of the Solar Projects.

91.     On or about October 24, 2014, and pursuant to Sections 11.4, 11.6, and 11.7 of the EPC Contracts, ACE issued changeorders for each of the Solar Projects as a result of the Defendants' failure to comply with Sections 9.3 and 9.4 of the EPC Contracts, which required the Defendants to effectuate NStar's timely performance of the NStar's interconnection. Representative changeorders for the Barnstable Project are annexed hereto and incorporated by reference herein collectively as Exhibit "S."

92.     On December 22, 2014, Bill Peltz of Clean Focus confirmed that notwithstanding the liquidated damages and other offsets against the EPC amounts owed to ACE, the Defendants admitted owing ACE $3,949,104.16.  A true and accurate copy of said December 22, 2014 email is annexed hereto and incorporated by reference herein as Exhibit "T."

93.     The Defendants are using the delays caused by the NStar interconnection issues as a basis to impose liquidated damages against ACE and as a basis to not to pay ACE and its subcontractors for all of the work on the Solar Projects, and without regard to the fact that per Section 10.2 of the EPC Contracts, the imposition of liquidated damages were "subject to time extensions for Excused Delays . . ."

94.     Each of the EPC Contracts recognized that if ACE's "performance of the Work is delayed due to a failure by Customer to perform its obligations hereunder . . . then [ACE] shall be entitled to a Changeorder pursuant to Section 11.4."

95.     Sections 11.4 and 11.7 of the EPC Contract recognize that there will be an adjustment to both the time of performance and adjustment to the contract price by providing in Section 11.4 that "there shall be an equitable adjustment of the payments and time of performance under this contract . . ."

96.   The Defendants' customer-caused delays are the major justification entitling ACE to adjustments to both time of performance and the contract amount.

97.   As expressly set out in Section 9.4 of each of the EPC Contracts, it was Redwood's express obligation to "provide [ACE] with [Redwood's] schedule for taking the steps necessary for obtaining Utility Interconnection Approval, including all final inspections. [Redwood] shall be responsible for scheduling such activities."

98.   It was further expressly recognized that it was only after the interconnection work was complete so that each of the Solar Projects were able to operate and be connected to the grid that there would be a "certificate acknowledging receipt of Distribution Utility Interconnection Approval and the successful interconnection of Generating Facility . . .", per Section 9.4 of the EPC Contracts.

99.   Redwood also caused delays to the completion of the Solar Projects by failing to provide written acceptance of the Mechanical Completion of each of the Solar Projects, and by not providing comments on the ALTA surveys timely submitted by ACE, all of which entitled ACE to additional time extensions for performance and eliminate any claim by Redwood and/or CF Owner for liquidated damages.

100.   Redwood attempts to take the position that somehow it was unaware of the delays caused by NStar, and attempts to impose a notice requirement on ACE, where none exists under the EPC Contracts, by ignoring that it was Redwood's failure to have NStar complete the interconnection work was the cause of the major delay, and notwithstanding the fact that there were daily communications, including telephone calls, text messages, emails, and other communications documenting every step of the construction project and schedule, a major component of which was the NStar delays.

101.    In addition to the fact that the NStar work was a customer caused delay under the EPC Contracts, it also resulted in the basis of excused performance by ACE under Section 11.6 of the EPC Contracts which provides that a Force Majeure Event is ". . . the occurrence of an event beyond the reasonable control, and not the fault or negligence of the party affected that results in the failure or delay by such Party or some performance under the contract . . ."

102.    Certificates of Occupancy by each Town could not be completed until the interconnection work by NStar was completed, which entitled ACE to adjustments as to time of performance and the contract amount.

103.    Because the major delays were caused by the Defendants' failures under the EPC Contract with regard to the NStar interconnection, ACE has rejected the liquidated damages and the contract adjustment which the Defendants have sought to impose on ACE as a pretextual basis to not pay ACE for all of its work on the Solar Projects.

104.    For Eastham, because there was not a significant NSTAR delay, ACE timely completed the Solar Project, but the Defendants refuse to pay ACE in full, and sought to impose liquidated damages on the basis that the Project was not complete.

105.    However, the Eastham Project was completed, and the only technical item that remained incomplete was the acceptance of the ALTA Survey by Redwood, which survey ACE timely submitted but which Redwood refused to accept and for which it seeks to impose liquidated damages even though Redwood has delayed accepting the ALTA Survey.

## COUNT I
### (Enforcement of Mechanic's Lien Per G.L. c. 254)

106.    The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 105 above.

107.    By virtue of the EPC Agreements, the Notices of Contract and the Statements of Account, ACE claims a right to a mechanic's lien on each of the nine projects enumerated herein to secure the amounts that Redwood owes ACE for labor and materials, per G.L. c. 254.

108.    ACE brings this action on its own behalf and on behalf of all persons in interest who are or shall become parties.

109.    ACE has performed all duties and obligations required of it in order to maintain its claim for said mechanic's liens.

110.    By reason of the foregoing, ACE is entitled to a Judgment in foreclosure of its mechanic's liens.

## COUNT II
### (Breach of Contract)

111.    The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 110 above.

112.    By each of the above actions and inactions, individually and taken in the aggregate, the Defendants have breached their contractual obligations to ACE under the EPC Agreements.

113.    As such, the Defendants are liable to ACE for all its damages, plus interest, costs, and attorneys' fees.

## COUNT III
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

114.    The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 113 above.

115.    By each of the above actions and inactions, individually and taken in the aggregate, the Defendants have breached their implied covenant of good faith and fair dealing inherent in the EPC Agreements.

116.    As such, the Defendants are liable to ACE for all its damages, plus interest, costs, and attorneys' fees.

## COUNT IV
### (Quantum Meruit/Unjust Enrichment)

117.    The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 116 above.

118.    By each of the above actions and inactions, individually and taking in the aggregate, the Defendants have been unjustly enriched to the detriment of ACE.

119.    As such, the Defendants are liable to ACE for all of its damages, plus interest, costs, and attorneys' fees.

## COUNT V
### (for Chapter 93A Violation)

120.    The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 119 above.

121.    ACE, Redwood, and CF Owner are engaged in trade or commerce as defined in Massachusetts General Laws Chapter 93A, §§ 2 and 11.

122.    The actions of Redwood and CF Owner, individually and in the aggregate, constitutes unfair or deceptive acts and practices within the meaning of Massachusetts General Laws Chapter 93A, §§ 2 and 11.

123.    The actions of Redwood and CF Owner have been intentionally and knowingly committed.

124.    As a result, ACE seeks damages against Redwood and CF Owner in the amount of its actual damages, to be doubled or trebled, plus interest, costs, and attorneys' fees.

## COUNT VI
### (to Reach and Apply)

125.    The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 124 above.

126.    The Defendants receive monthly payments from one or more of the Reach and Apply Defendants because of the electricity produced by the Solar Projects.

127.    ACE believes and therefore avers that the Defendants possess the right, title or interest, legal or equitable in such periodic payments which cannot be attached or taken on execution in an action or at law.

128.    Accordingly, ACE seeks to reach and apply the property, right, title or interest, legal or equitable, of the Defendants to the payments owed to any one of the Defendants from any of the Reach and Apply Defendants as a result of the electricity generated by the Solar Projects, pursuant to G.L. ch. 214 §3(6).

## COUNT VII
### (for Declaratory Judgment)

129.    The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 128 above.

130.    There is an actual controversy between the Defendants, on the one hand, and ACE, on the other, as to whether the Defendants may impose liquidated damages and contract adjustments under the EPC Contracts upon ACE.

131.    There is a further controversy between the Defendants, on one hand, and ACE, on the other, as to whether the liquidated damages as sought to be applied by the Defendants to

ACE under the EPC Contracts amounts to an unenforceable penalty and/or otherwise unenforceable provision of the EPC Contracts.

132.    It is ACE's position that the Defendants may not apply, under the facts, the liquidated damage provisions of the EPC Contracts or impose contract adjustments, and the liquidated damages provisions of the EPC Contracts is an unenforceable penalty or is otherwise unenforceable against ACE.

133.    ACE requests a Declaratory Judgment that the Defendants may not impose the liquidated damages provisions or make contract adjustments against ACE under the EPC Contracts.

**COUNT VIII**
**(for Reach and Apply Lien/Injunction)**

134.    The Plaintiff realleges and incorporates by reference herein paragraphs 1 through 133 above.

135.    The Defendants are special purpose entities with Nevada and California addresses and with no known assets in Massachusetts, other than the entitlement to the income generated by the nine (9) solar power plants on Cape Cod and the Islands constructed by ACE.

136.    Moreover, because the income and interest in the Solar Projects are readily transferable and easily liquidated, a money judgment against the Defendants may not provide any value to ACE because it is unknown if the Defendants will have any assets subject to the Judgment, and certainly none in Massachusetts.

137.    It is the Defendants' stated position to ACE that it intends to litigate the issue, and boasted that it has the financial wherewithal to litigate the case for years, thereby implying that part of the Defendants' goal is to outspend and outlast ACE with regard to collecting on the EPC

Agreements while having the full benefit of the receipt and value of the income generated from the solar arrays constructed by the Plaintiff.

138.    In the absence of the prejudgment relief requested in the form of a reach and apply lien, and a status quo injunction, ACE is likely to be irreparably harmed for which a money judgment will not suffice, and its business will be imperiled.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff, American Capital Energy, Inc., respectfully prays for the following relief:

1.    That the Defendants, Redwood Solar Development LLC, CF CVEC Owner One LLC, and CF CVEC Master Tenant One LLC, and all of their respective managers, members, agents, employees, officers, representatives, nominees, successors, assigns, and attorneys, and all persons in active concert or participation with it, be temporarily, and then preliminarily, restrained and enjoined from selling, transferring, assigning, alienating, encumbering, or in any other manner disposing of any income from the Town of Barnstable, Town of Brewster, Town of Chatham, Town of Dennis, Town of Eastham, and Town of Harwich, or interests in the six Cape Solar Projects, including Solar Renewable Energy Certificates from the Solar Projects, pending further Order of the Court.

2.    That the Reach and Apply Defendants, Town of Barnstable, Town of Brewster, Town of Chatham, Town of Dennis, Town of Eastham, and Town of Harwich, and all of their respective managers, members, agents, administrators, employees, officers, representatives, nominees, successors, assigns, and attorneys, and all persons in active concert or participation with it, be temporarily, and then preliminarily, restrained and enjoined from directly or indirectly, transferring, paying or in any manner disposing of or diminishing the solar energy income payments due to Redwood Solar Development LLC, CF CVEC Owner One LLC, and

CF CVEC Master Tenant One LLC from the six solar projects, pending further Order of this Court;

3.      That the Court, pursuant to Count I of the Complaint, enter Judgment in favor of the Plaintiff and against the Defendants, for foreclosure of ACE's mechanic's lien.

4.      That the Court, pursuant to Counts II, III and IV of the Complaint, enter Judgment in favor of the Plaintiff and against the Defendants in the amount of its damages, plus interest, costs and attorneys' fees;

5.      That the Court, pursuant to Count V of this Complaint, enter Judgment in favor of the Plaintiff and against the Defendants in the amount of its damages, to be doubled or trebled, plus interest, costs, and attorneys' fees;

6.      That the Court, pursuant to Count VI of this Complaint, find that the property sought to be reached and applied may be reached and applied to satisfy the obligations of the Defendants to the Plaintiff;

7.      That the Court, pursuant to Count VII of this Complaint, enter a Declaratory Judgment in favor of the Plaintiff and against the Defendants as sought in Count VII; and

8.      For such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

The Plaintiff demands a jury trial on all counts so triable.

AMERICAN CAPITAL ENERGY, INC.

By Its Attorneys,
RIEMER & BRAUNSTEIN LLP

Dated: January 20, 2015

Dennis E. McKenna, BBO #556428
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 880-3454
dmckenna@riemerlaw.com

<u>**VERIFICATION**</u>

I, Art Hennessey, Chief Financial Officer, American Capital Energy, Inc., verify that I have read each of the paragraphs and exhibits to the Verified Complaint with Prayers for Injunctive Relief and that the facts contained therein are, to the best of my knowledge, information, and belief, true and accurate.

*Signed under the pains and penalties of perjury this* 19 *day of January, 2015.*

Art Hennessey
Chief Financial Officer
American Capital Energy, Inc.

1786137.2