# EXHIBIT J

## Thomas, David G. (Shld-Bos-LT)

| | |
|---|---|
| **From:** | David L. Evans <DEvans@murphyking.com> |
| **Sent:** | Friday, March 20, 2015 3:41 PM |
| **To:** | Murphy, Paul (Shld-Bos-LT); LisaRomeo@adr.org; DMcKenna@riemerlaw.com; Thomas, David G. (Shld-Bos-LT); mark.ginalski@sunlink.com; KHern@riemerlaw.com |
| **Subject:** | RE: REMINDER: SunLink Corporation v. American Capital Energy, Inc., AAA No. 01-14-0001-7516 |

I intended to subsume within my shorthand, non-exhaustive description of the issues the items listed as 1-4 below. Specifically, what were the terms of the parties' agreement on a delivery schedule (whether under the express terms of the Agreements, or perhaps as modified orally or through course of dealings) and whether the schedule was met (i.e., whether there was a deviation from or breach of the schedule, and, if so, whether it was waived or excused). There was no attempt to mimic an "issues presented" section of an appellate brief. I didn't specifically address the limitation of liability issue because it's likely a legal question, but in any event the discovery relevant to the other items should be relevant here too.

My idea of an IT chat was agreed to by counsel, but I used the word "may" because the ACE person had yet to be contacted to confirm availability. I assume it will occur soon so as to meet the 3/25 report date.

The hearings will proceed in May 2015. As I stated, I have not decided ACE's motion, or the question of whether there should some form of bifurcation. My expectation is that the parties will discuss exactly what should be tried, and if they can't agree I will decide the motion. The issue is whether the parties can agree to defer the presentation of ACE's purported "damages/offsets," because the issue could be moot if SunLink prevails on its contention that it adequately performed whatever was the parties' agreement, or that any deviation was waived or excused.

I hope this clarifies matters.


David L. Evans
Murphy & King
Professional Corporation
One Beacon Street
Boston, MA  02108-3107
Tel: (617) 423-0400 (ext. 445)
Fax: (617) 423-0498
Direct dial: (617) 226-3445
E-mail: devans@murphyking.com
Web: www.murphyking.com

**From:** murphyp@gtlaw.com [mailto:murphyp@gtlaw.com]
**Sent:** Friday, March 20, 2015 3:05 PM
**To:** David L. Evans; LisaRomeo@adr.org; DMcKenna@riemerlaw.com; ThomasDa@GTLAW.com; mark.ginalski@sunlink.com; KHern@riemerlaw.com
**Subject:** RE: REMINDER: SunLink Corporation v. American Capital Energy, Inc., AAA No. 01-14-0001-7516

Dear Mr. Evans:

Respectfully, we think the email does not accurately define the fundamental issues in the case, and what we understood to have been your strong recommendations, if not order, to the parties in terms of moving the case along so as to ensure hearings as scheduled.

First, SunLink agrees and understands the seminal issues to include the following:

      1.      Whether and to what extent the sales contracts contain a definitive date by which SunLink is to have made delivery of its products including, the meaning and import of the term "lead time" in the contracts; and, if so, whether any of those dates were approximate and could be changed at SunLink's discretion under various circumstances?

      2.      Whether and to what extent ACE and/or SunLink met their obligations under the sales contracts?

      3.      Whether SunLink's performance was excused because of changes directed by ACE on the Projects, or because of events outside of SunLink's control as provided for in the contracts?

      4.      Whether ACE nevertheless waived any right to assert a breach of the sales contracts by SunLink as a result of its actions, including accepting SunLink's products?

      5.      Whether, in any event, the so-called "offset damages" sought by ACE under the Thirteenth Affirmative Defense are excluded under sales contracts?

We understood that ACE agreed to set up a conference call between the IT personnel for each of the respective parties (counsel may be present on the call) to occur within a couple of business days in pursuit of a resolution of the ESI issues raised by Mr. Hern.

We further understood that the issue of segmentation (in some way or form that is not presently understood by SunLink) would be deferred until later, but that the hearings would proceed to a conclusion as scheduled irrespective of whether document exchanges were completed, but that the parties would be bound to the scope of their productions.

Thank you, Paul

---

**From:** David L. Evans [mailto:DEvans@murphyking.com]
**Sent:** Friday, March 20, 2015 12:12 PM
**To:** 'AAA Lisa Romeo'; Murphy, Paul (Shld-Bos-LT); DMcKenna@riemerlaw.com; Thomas, David G. (Shld-Bos-LT); mark.ginalski@sunlink.com; KHern@riemerlaw.com
**Subject:** RE: REMINDER: SunLink Corporation v. American Capital Energy, Inc., AAA No. 01-14-0001-7516

All,

Confirming the results of our call today, the parties will meet and confer about appropriate search parameters and a production schedule for documents and ESI relevant and material to the fundamental issues in the case. The parties have identified these issues as including the delivery schedule agreed to by the parties and whether that schedule was met by SunLink. Counsel for the parties may facilitate a conversation between IT personnel respecting ACE's computer system and cloud service.

The parties will report to me by COB on March 25, 2015 whether they have reached agreement on the search parameters and production schedule. If there remain areas of disagreement, they will be presented to me for decision.

The parties are encouraged to discuss whether the hearings scheduled for May 2015 should be segmented in a way that reserves for later decision the issue of ACE's so-called offsets. In the interim, ACE's Motion to Amend the Scheduling Order will remain under advisement, and all operative provisions of Scheduling Order #1 remain in effect.

Please let me know if you believe I have not accurately reported where things stand.

DLE

David L. Evans
Murphy & King
Professional Corporation
One Beacon Street
Boston, MA  02108-3107
Tel: (617) 423-0400 (ext. 445)
Fax: (617) 423-0498
Direct dial: (617) 226-3445
E-mail: devans@murphyking.com
Web: www.murphyking.com

**From:** AAA Lisa Romeo [mailto:LisaRomeo@adr.org]
**Sent:** Thursday, March 19, 2015 9:25 AM
**To:** murphyp@gtlaw.com; DMcKenna@riemerlaw.com; ThomasDa@GTLAW.com; mark.ginalski@sunlink.com; KHern@riemerlaw.com
**Cc:** David L. Evans; AAA Lisa Romeo
**Subject:** REMINDER: SunLink Corporation v. American Capital Energy, Inc., AAA No. 01-14-0001-7516

Greetings,

Confirming a conference call for Friday, March 20 at 11:00AM

Please dial in: 888-537-7715 // passcode 3099 2507#

Have nice day!

Lisa



**AAA Lisa Romeo**
**Director of  ADR Services**
American Arbitration Association
One Center Plaza Suite 300
Boston, MA 02108
www.adr.org
**T:**617 695 6037
**F:**617 451 0763

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

------------------------------
This e-mail message and any attachments are confidential and may be privileged. If you are not the intended

recipient please notify Murphy & King, P.C. immediately -- by replying to this message or by sending a message to postmaster@murphyking.com -- and destroy all copies of this message and any attachments. Thank you. For more information about Murphy & King, P.C., please visit us at http://www.murphyking.com Pursuant to IRS Circular 230, please be advised that, to the extent this communication (and any attachments) contains any tax advice, it is not intended to be, and cannot be used, for purposes of avoiding penalties under the Internal Revenue Code.

----------------------------

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate such information.


----------------------------

This e-mail message and any attachments are confidential and may be privileged. If you are not the intended recipient please notify Murphy & King, P.C. immediately -- by replying to this message or by sending a message to postmaster@murphyking.com -- and destroy all copies of this message and any attachments. Thank you. For more information about Murphy & King, P.C., please visit us at http://www.murphyking.com Pursuant to IRS Circular 230, please be advised that, to the extent this communication (and any attachments) contains any tax advice, it is not intended to be, and cannot be used, for purposes of avoiding penalties under the Internal Revenue Code.

----------------------------

# EXHIBIT K

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| SUNLINK CORPORATION,<br>                Claimant,<br><br>v.<br><br>AMERICAN CAPITAL ENERGY, INC.,<br>                Respondent. | AAA No. 01-14-0001-7516 |

## MOTION FOR CONTINUANCE OF ARBITRATION HEARING

Now comes American Capital Energy Inc. ("ACE"), and moves for a brief continuance of the arbitration hearing scheduled to begin on May 11, 2015 for the reasons enumerated herein:

1.     Robert Dowd originally directed the hiring of Riemer & Braunstein LLP (the "Riemer Firm") who has provided excellent representation to American Capital Energy Inc. (hereinafter "ACE"). The original plan of representation was for Attorney Dowd to be responsible for the document production, and to play an active role at the arbitration hearing.

2.     On March 5, 2015 an accident occurred wherein Attorney Dowd fell on ice in New Hampshire. Attorney Dowd was forced to return to Dallas for major surgery of a quad tendon rupture repair, as well as additional repairs as enumerated in the medical report attached and marked Exhibit A. At the age of sixty-seven (67) the healing and rehabilitation process for Attorney Dowd has been slow. After consultation and examination by Dr. Cooper, Attorney Dowd's orthopedic surgeon, Dr. Cooper has set forth the following findings attached and marked Exhibit B.

3.     To represent ACE at the arbitration hearing the Riemer Firm has indicated it must thoroughly review the document productions and relevant documentation. Due to the breadth of the ESI requests in this matter this has become a very burdensome and expensive proposition which ACE does not believe can be undertaken at this juncture by the Riemer Firm within Ace's

litigation budget restrictions. As Attorney Dowd has been working as outside General Counsel to ACE and is more familiar with its documents and systems at ACE. He is in a better position to handle this document-intensive effort and to prepare for the arbitration within ACE's budget for this matter. It is anticipated that the document to be exchanged by the parties may well exceed 50,000 documents. The costs are simply too great for ACE to have the Riemer Firm do this work which was to be done by Attorney Dowd. Cash flow for ACE is tight after the recent failure of the mediation in its $14,000,000 claim against the owner for the nine (9) projects.

4.      ACE has determined that the only feasible method for it to pursue this matter is by having Attorney Dowd act as its counsel with full responsibility for the arbitration. Accordingly, ACE has directed Attorney Dowd to appear and the Riemer Firm to withdraw its appearance (both of which are filed herewith).

5.      With respect to continuance, there are two major reasons in support of ACE's Motion: (i) the review and production of voluminous documents demanded by Sunlink, and (ii) the temporary disability of Attorney Dowd.

6.      With respect to disability, it is not anticipated that Mr. Dowd will be able to put shoes and socks on until mid-May; with rehabilitation needed in May that makes May 11th starting date for the arbitration prohibitive for Attorney Dowd.

7.      With respect to document review and production, Attorney Dowd expects to be able to work on this during his rehabilitation and the parties have already culled and produced substantial documentation as shown by ACE's email report submitted today. Any additional internal emails required by Sunlink should be able to be produced within a reasonable time. The brief additional extension of time sought by the undersigned should also help to make the arbitration more efficient, given the large amounts of documents that have been and will be

exchanged in discovery and the need to cull from those massive documents those that will be used at arbitration. It should be noted that the parties have not yet even designated experts as this date was postponed by agreement of the parties (at the request of Sunlink), so additional work also remains to be done. Given the sheer magnitude of the document discovery so far in this expedited case, it is respectfully submitted that it is reasonable and appropriate to briefly extend the arbitration and other related deadlines to permit this case to be tried in a more efficient and orderly manner and also to permit the undersigned counsel a brief period to recover from his injuries before commencing the arbitration.

AMERICAN CAPITAL ENERGY, INC.

By Its Attorneys,
LAW OFFICE OF ROBERT K. DOWD, P.C.

Dated: April /_/_, 2015

Robert K. Dowd, BBO #132800
Law Office of Robert K. Dowd, P.C.
4814 Bengal Street, Unit #1
Dallas, Texas 75235
robtdowd@sbcglobal.net

CERTIFICATE OF SERVICE

I, Robert K. Dowd, hereby certify that on this /5/, day of April, 2015, I caused a true and accurate copy of the foregoing document to be served by email upon all counsel of record.

Robert K. Dowd

1824331.2



### ★NORTH CENTRAL SURGICAL CENTER

**OPERATIVE REPORT**

**PATIENT:**      DOWD, ROBERT

**DATE:**        03/17/15

**ACCT #:**       00473560    **FIN #:** 000042787

**DOB:**         08/10/1947

**SURGEON:**      Daniel Cooper, M.D.

**PREOPERATIVE DIAGNOSIS:**     Right knee complete extensor mechanism rupture with quadriceps tendon and retinacular disruption.

**POSTOPERATIVE DIAGNOSIS:**    Right knee complete extensor mechanism rupture with quadriceps tendon and retinacular disruption.

**PROCEDURES:**    Right knee:
1. Primary repair, quadriceps tendon.
2. Primary repair, medial and lateral retinaculum.

**ASSISTANT:**     Santana Gonzales, OPA-C (PA clinically indicated for assistance with positioning, holding the arthroscope and camera during operative steps, wound suturing and dressing application).

**ANESTHESIOLOGIST:**     Kirby Swift, MD

**ANESTHESIA:**    General, LMA.

**DESCRIPTION IN DETAIL:**    After satisfactory anesthesia, the right leg was prepped and draped free in the usual sterile manner and antibiotics were given.  The limb was exsanguinated. Tourniquet was inflated to 300 mmHg.

9301 North Central Expressway • Suite 100 • Dallas, Texas 75231 • (214) 265-2810 • Fax (214) 265-2820

*Exhibit A*



**NORTH CENTRAL** SURGICAL CENTER

RE: DOWD, ROBERT
OPERATIVE REPORT
Page 2 of 2

A longitudinal midline incision was made and the hemarthrosis was evacuated. The wound was thoroughly irrigated. This was a pretty classic quadriceps tendon tear through calcific tendinosis right at the attachment to the patella superior pole. Medial and lateral retinacula were disrupted transversely down to the epicondyles. The knee was stable on examination under anesthesia.

At this time, calcific bodies were debrided with a rongeur. Three transosseous tracts were made in the patella with a Steinmann pin and the Hewson suture passer was used to pass a loop of suture material to use as passing. Then, #5 FiberWire was then woven through the distal quadriceps tendon in an interlocking Krackow pattern of suture. This was then passed with the passing sutures through the patella and was tied over the distal pole of the patella, hiding these knots beneath the patellar tendon. The medial and lateral retinacula were then closed with interrupted figure-of-eight suture of #1 cottony Dacron.

The tourniquet was inflated, hemostasis was obtained and then a drain inserted. Retinacular closure was performed and then subcutaneous and subcuticular closure performed. Steri-Strips and a sterile dressing were applied. A bulky sterile dressing was applied with a T-scope brace locked in full extension.

**POSTOPERATIVE PLAN:** I will leave the knee immobilized for about 10 days and then we will start a CPM from about 0° to 30° or 40° just to keep him from getting adhesions. We will do this for 3 weeks. He will be weightbearing as tolerated with his brace locked.

Daniel Cooper, M.D.
DC/SN/snhsavantmt12/FST-17567840
D:  03/17/15 11:39 A
T:  03/18/15 05:08 A

**Daniel E. Cooper, M.D.**
SPORTS MEDICINE
RECONSTRUCTIVE AND ARTHROSCOPIC
KNEE AND SHOULDER SURGERY

FELLOW AMERICAN
ACADEMY OF
ORTHOPAEDIC
SURGERY

DIPLOMAT
AMERICAN BOARD
OF ORTHOPAEDIC
SURGERY

ACTIVE MEMBER
AMERICAN
ORTHOPAEDIC
SOCIETY FOR
SPORTS MEDICINE

ACTIVE MEMBER
ARTHROSCOPY
ASSOCIATION OF
NORTH AMERICA

April 13, 2015

5246 Farquar Lane
Dallas, TX 75209

Re:  Robert A. Dowd

To Whom It May Concern:

Robert Dowd has been under my care for a right knee quadriceps tendon rupture that was an acute injury back in March of this year. On March 17, 2015 he underwent a major reparative surgery to the right knee. He has been required to use a brace. He will be required to use this brace until May 1, 2015 for ambulation and thereafter has to attend physical therapy to restore range of motion and strengthen his knee.

Please grant this patient special consideration regarding the upcoming arbitration in May of 2015. I think it is very reasonable for him to delay travel plans due to the temporary ambulatory problems he has with his right leg. I expect him to recover well enough to travel by mid-June or early July.

Best regards,

Daniel E. Cooper, M.D.

DEC/jmo

THE CARRELL CLINIC
ORTHOPAEDIC SURGERY
9301 N. CENTRAL EXPWY, SUITE 400 DALLAS, TEXAS 75231
TELEPHONE 214-220-2468 ANSWERED 24 HOURS DAILY • FAX 214-720-1982

*Exhibit B*

# EXHIBIT L

**AMERICAN ARBITRATION ASSOCIATION**

|  |  |
|---|---|
| SUNLINK CORPORATION,<br><br>　　　Claimant,<br><br>v.<br><br>AMERICAN CAPITAL ENERGY, INC.,<br><br>　　　Respondent. | **AAA NO. 01-14-0001-7516**<br><br>**SUNLINK CORPORATION'S (1)**<br>**OPPOSITION TO MOTION TO**<br>**CONTINUE ARBITRATION HEARING**<br>**AND (2) MOTION TO COMPEL**<br>**PRODUCTION OF DOCUMENTS** |

Pursuant to L-3(a) and (e) and R-23 of the American Arbitration Association's Commercial Arbitration Rules ("**Rules**"), Claimant SunLink Corporation ("**SunLink**") hereby (1) opposes Respondent American Capital Energy, Inc. ("**ACE**") Motion for Continuance of Arbitration Hearing, dated April 15, 2015, and (2) moves to compel production of documents. In support of this Opposition and Motion, SunLink states as follows:

**OPPOSITION TO MOTION TO CONTINUE**

1.　　With less than one month before the Hearing, ACE moves for continuance of the Hearing based on (1) a March 2015 injury to counsel (Robert Dowd) who, prior to today, had not made an appearance in this proceeding or signed a single pleading or motion for ACE, and (2) the allegedly extensive nature of ACE's document production. Neither asserted reason supports ACE's request to move the Hearing and ACE's motion should be denied.

2.　　First, although SunLink and its counsel wish Mr. Dowd well, a physical injury to his leg does not afford ACE a valid basis to continue the hearing scheduled for May 11, 2015 ("**Hearing**").[1]　ACE made the same argument in its Motion to Amend Scheduling Order No. 1,

---

[1] ACE also makes reference to an inability to pay Reimer and Braunstein, LLP. ACE's costs of this proceeding cannot serve as a legitimate basis to extend the Hearing as the work needed to prepare for the Hearing presumably will be done by Mr. Dowd, who is outside counsel to ACE

dated March 11, 2015 (wherein ACE asserted that Mr. Dowd merely had "supervised" production of documents by ACE, as opposed to actively handling the production).  *See* ACE Motion to Amend, ¶ 5.  Since late 2014, however, ACE's counsel in this proceeding has been Reimer and Braunstein, LLP.  ACE simply cannot – with less than one month before the hearing – change counsel, particularly when its new proposed counsel has a known limitation, and seek to extend the Hearing based on that unilateral choice.  This is an emergency or situation of ACE's own making and does not do justice to the parties' agreement to arbitrate, the parties' dealings and negotiations in this proceeding, or the principles underlying the Rules.

3.     Second, ACE's reliance on the allegedly "burdensome" and costly discovery is misplaced, at best.  As the Arbitrator knows, SunLink vastly reduced the scope of its requested discovery and ACE's burden is based mostly on its own information technology systems.  Moreover, most of the work required by ACE already has been done or otherwise can be streamlined under the circumstances.

4.     Specifically, what is left to produce are ACE's *internal* emails about the key issues in this proceeding.  That production is not burdensome as ACE already has admitted.  Indeed, on March 26, 2015, ACE asserted – with respect to those internal emails – that its system "is perfectly capable of using search terms" to pull down emails that could be produced in searchable format.  *See* Exhibit A (email from Kevin Hern, dated March 26, 2015, at 5:38 p.m.).  All that was needed prior to production of those emails was a privilege review.  *See id.*  As these emails are fully searchable, ACE can automatically cull out any potential attorney-client communications by searching for the relevant attorneys' email addresses and names and

---

and will bill ACE for his services.  The reality is ACE to date has failed in its attempts to recover on its $14M claim against the owners in an unrelated mediation, out of which ACE apparently hoped to pay SunLink.  Nevertheless, whether ACE cannot, or simply does not want to, pay for this proceeding does not absolve ACE of its agreement to arbitrate.

reviewing that data set for privilege instead of all of the emails. To the extent that *any* attorney-client communications are inadvertently produced, they will be returned to ACE immediately pursuant to the protective order governing these proceedings, which contains an agreed-to claw back. *See* Exhibit B, at ¶ 13.

5.    Beyond that, in light of SunLink's concerns about the unilaterally chosen search terms used by ACE, SunLink provided ACE with 5 search terms to be used in searching 5 ACE custodial accounts in Rackspace, which generated positive "hits" on some of the key issues in this case, such as "lead time", "delivery schedule", and China. *See* Exhibit C (email from Kevin Hern, dated April 14, 2015, at 4:52 p.m.). As set forth below, SunLink will limit those hit results to the years 2013 and 2014, which should further reduce the total emails for download and production.

6.    Put simply, ACE has not shown any good cause to continue the Hearing.

## MOTION TO COMPEL

7.    As set forth above, the only emails left for production are internal emails falling into two separate set as follows:

(i).    emails generated by ACE's unilaterally chosen search terms as run through 14 ACE custodial accounts ("**Set No. 1**"); and

(ii)    emails generated from SunLink's 5 chosen search terms as run through only 5 of the initial 14 ACE custodial accounts ("**Set No. 2**").

Both sets should be produced forthwith.

8.    As to Set No. 1, it has already been downloaded by ACE and is in searchable format. ACE should be compelled to use its information technology search functions to cull out any *potential*[2] attorney-client communications from this set. ACE should then produce the

---

[2] In communications with SunLink, ACE included Mr. Dowd on occasion. Those emails, however, would not be privileged. To the extent that ACE copied Mr. Dowd on an email with a third party or that

presumably non-privileged documents immediately. Furthermore, ACE should then conduct a

privilege review on the potential attorney-client communications and produce those that are not

privileged by April 22, 2015.

9.      As to Set No. 2, ACE should be compelled to download it in searchable format

for the years 2013 and 2014 only. Furthermore, ACE should be compelled to cull out any

*potential* attorney-client communications from this set, then produce non-privileged documents

immediately, and finally conduct a privilege review and produce those that are not privileged

by April 24, 2015.

WHEREFORE, SunLink respectfully requests the Arbitrator to deny ACE's Motion to

Continue and grant SunLink's Motion to Compel, as set forth in Paragraphs 8 and 9 above.

Respectfully submitted,

SUNLINK CORPORATION,
Claimant,

By its Attorneys,

Paul J. Murphy (BBO # 363490)
David G. Thomas (BBO # 640854)
Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Tel: 617-310-6000
Fax: 617-310-6001

Dated:  April 15, 2015

---

email was sent to a third party, that email similarly would not be privileged. Culling the data set for communications on which Mr. Dowd was copied, therefore, could cull responsive, non-privileged emails. SunLink expects the occurrence of this will not be great. Accordingly, all ACE would need to do would be to review this culled set for privilege as opposed to all of the emails generated by the search terms.

# EXHIBIT A

**Thomas, David G. (Shld-Bos-LT)**

| | |
|---|---|
| **From:** | Kevin Hern Jr <KHern@riemerlaw.com> |
| **Sent:** | Thursday, March 26, 2015 5:38 PM |
| **To:** | David L. Evans; Thomas, David G. (Shld-Bos-LT) |
| **Cc:** | Dennis E McKenna; Murphy, Paul (Shld-Bos-LT); mark.ginalski@sunlink.com |
| **Subject:** | RE: SunLink's Report on Discovery Negotiations |
| **Attachments:** | Sunlink Response to ACE Document Requests.pdf |

This is an update on what ACE has doing on ESI and document productions.

Procedural Background

As you know, this matter involves 9 construction projects that were discussed with Sunlink over several years from about 2010 to 2013.   These parties have worked together on various projects in the past, as well and on other projects during this time frame.  It is ACE's position that Sunlink quoted certain "lead time(s)" for production (generally about 6 weeks) and that this was confirmed before ACE signed the owner contracts, and it was expressly specified in the contract with the items FOB at various sites in the US.  ACE does not believe that the term lead time as used by ACE in its form contract is ambiguous.  Moreover, there is really no material dispute as to when the deliveries occurred.  These delivery dates well exceeded that lead times (even providing a few days lead time for approximation) making this a simple case of breach of contract.  To the extent that Sunlink that this term is ambiguous, or the arbitrator finds reason to interpret this phraseology, then that would be governed by the common rules of contract construction (e.g. language, course of negotiation and dealing etc) to arrive at the intent of the parties.  That is clearly the heart of this dispute.

It is a reasonable estimate that close to 90% of the documents that could possibly be relevant to the issue of the meaning of the contract were already in the hands of Sunlink prior to the commencement of this arbitration.  The most relevant documents relating to the intent issue would naturally be communications shared between the parties.   The same is also true of the information relating to whether Sunlink's Limitation of Damages clause should be avoided based upon its conduct.  The relevant information is primarily in Sunlink's possession – not ACE's.  If the arbitrator finds no breach then little else is relevant other than any damages claimed by Sunlink beyond its contract balance.   The contract balances are discernible based upon accounting records if no backcharge is permitted.  If the arbitrator finds a breach, then ACE can backcharge its direct damages against Sunlink if the Limitation of Damages clause is enforced.  If this provision is not enforced, as ACE claims should be the case, ACE can also backcharge some or all of its other special damages, including those being passed on to it by the owner (once these are finally resolved).

Productions

I believe that the at the last conference our instructions were to focus on producing documents first pertaining to these core issues identified above.

1. Because of the exceedingly broad 162 paragraph request originally made by Sunlink, (and objected to by Ace in a timely email), ACE has already produced over 23,000 emails between all of the major players on the 9 projects and from all of the email accounts at ACE maintained by those people who were involved in this project. These are in native format and, to my understanding, they are fully word searchable in Outlook or any other major email software. They are also organized by folders based upon the user and by subfolders. We would respectfully submit that this production is perfectly adequate for Sunlink's purposes and complies with ACE's obligation to produce documents as they are maintained in the ordinary course of business (by email account holder).   This covers all communications maintained by ACE with the identified parties (generally Sunlink and the owner (Redwood) and owner rep (Clean Focus) for the entire projects. However, the documents to and from Sunlink (which Sunlink obviously has on their own system) only cover 2013 – 2014.

2.  ACE has downloaded all emails on its system to and from Sunlink for 2012, 2011 and 2010.  (Of course, since these are communications with Sunlink one would think that Sunlink already has these).  These will also be provided in fully searchable format tomorrow through BOX.  By the end of the day on Tuesday ACE expects to supplement this production with Sunlink's contracts and project schedules and weekly reports through the time of Mechanical Completion (which was in or about June 2014).  All will be in Native Format or as otherwise maintained by ACE in the ordinary course.

3.  ACE will then cull through word searches all <u>internal emails</u> through the time of Mechanical Completion when Sunlink's portion of the project was complete – this is generally 2013 through around June of 2014 (the "Sunlink Project Period").  Its system is perfectly capable of using search terms alone or with "and" connectors to pull down emails which then can be produced to Sunlink in fully word searchable native formats.  This will take through next week (about 10 days) and at that point will be fully searchable.  We will try to eliminate the emails already produced (23,040) and will limit the universe in any event by using broad search terms to include the following (Dennis, CVEC, Cape Vineyard Electric, Coop, Katama, Nunnepog, Tisbury, Edgartown, Dennis, Chatham, Brewster, Barnstable, Harwich, Eastham, Sunlink, Ballasted Ground Mount System, BGMS, Cleanfocus, and Redwood) – this is to ensure they relate to the CVEC projects.  From this group ACE can further narrow this by searching them with search terms provided by Sunlink (not Boolean) (using the limited number of reasonable search terms as mentioned by you at the last hearing) and will produce these emails after vetting them for privilege.  This should put ACE in a position to produce the internal emails requested during the week of April 6th.

4.  After number 3 above ACE is prepared to cull and produce evidence of its direct damages (assuming the arbitrator does not decide to bifurcate the damages issues as requested).   Streamlining the arbitration as requested would save further (already exorbitant) discovery costs and related costs associated with what ACE believes should be a much more efficient and cost-effective arbitration.

5.  At our last telephonic hearing I believe the arbitrator recognized that ACE could not be in a position to determine or present its special damages and related damages at or prior to the arbitration dates set as these items have not been vetted with the owner.  We understand that we are not to do this discovery work yet, but seek for confirmation on this point.

<u>Sunlink's Discovery</u>

ACE has certain concerns it wishes to express relative to Sunlink's discovery responses.

1.  It's primary concern, as alluded to above, is that Sunlink is unnecessarily running up the cost of this case by making excessive discovery requests and demands.  Arbitration is supposed to present and efficient and affordable mechanism for resolving these types of disputes.  Sunlink has offered opposing counsel a logical and balanced mechanism for handling the arbitration to avoid unnecessary attorney's fees and costs and has presented this proposal by motion to the arbitrator (which remains under advisement).  Sunlink's claim is only one of the matters being addressed by ACE on these 9 jobs.  ACE is also dealing with a substantial holdback from the owner (as well as subcontractor claims associated therewith) that ACE maintains are, at least in part, a consequence of Sunlink's breach of contract.  Sunlink should not be permitted to put the "squeeze" on ACE while it tries to juggle these issues on multiple fronts and thereby benefit from the consequences of its own breach of contract.  ACE needs to have a reasonable opportunity to review the evidence and present its case in the arbitration.  The current discovery deluge does not provide such an opportunity.

2.  Sunlink has provided a formal document response to ACE as one would in formal litigation.  (See attached.)  In this document response Sunlink objected to <u>every</u> one of ACE's requests and also raised General Objections coined as "Reservations."  Of course, while the Mass Rules don't apply here, this method has been proscribed by the Massachusetts Superior Court Rules because it masks whether or not the responding party plans to actually produce the requested documents.  Sunlink's intentions are unclear from its responses and ACE requests that the arbitrator order that Sunlink provide a plain English response as to the scope of documents it is producing.

3.  As of yesterday's Supplemental Production by Sunlink, Sunlink has now produced (by its Bates Numbering) 21,823 pages of documents.  These documents must be reviewed but have been provided in no discernible order or descriptive identification (other than by Bates Number).  This has left ACE with the daunting task of discerning what requested documents have been produced (and which have not).   This is likely to take enormous man hours with or without search terms and does not appear to conform to either of the methods typically permitted by the rules of civil procedure.  One can only assume that this was done in this manner with full knowledge of the excess burden it would place on ACE and its counsel.

---

In total the document productions alone in this matter are likely to reach or exceed about 50,000 pages (of which only a relatively small number actually will be needed as evidence).   That is a very large amount of documents to digest to prepare a case by any standard and even on a typical Superior Court track.  Moreover, counsel all have other cases to attend to in addition to this case.  Because of these concerns ACE again respectfully requests that the arbitrator implement some strategies in this case (certain or which have been suggested in ACE's motion) to limit unnecessary expenditure of legal time and costs and to provide an adequate opportunity for the parties to prepare for and present sequentially the somewhat discrete components of the this case.

Kevin Hern Jr., Esquire
Riemer | Braunstein LLP
Three Center Plaza, Suite 600 | Boston, Massachusetts 02108
d: 617.880.3554 | f: 617.692.3554 | c: 617.834.3554
khern@riemerlaw.com | www.riemerlaw.com



RIEMER BRAUNSTEIN

BOSTON  NEW YORK  CHICAGO  BURLINGTON

**From:** David L. Evans [mailto:DEvans@murphyking.com]
**Sent:** Thursday, March 26, 2015 10:11 AM
**To:** 'ThomasDa@GTLAW.com'
**Cc:** Kevin Hern Jr; Dennis E McKenna; murphyp@gtlaw.com; mark.ginalski@sunlink.com
**Subject:** RE: SunLink's Report on Discovery Negotiations

When will ACE be able to report on what it is willing and able to do in regards to production of its ESI?

David L. Evans
Murphy & King
Professional Corporation
One Beacon Street
Boston, MA  02108-3107
Tel: (617) 423-0400 (ext. 445)
Fax: (617) 423-0498
Direct dial: (617) 226-3445
E-mail: devans@murphyking.com
Web: www.murphyking.com

---

**From:** ThomasDa@GTLAW.com [mailto:ThomasDa@GTLAW.com]
**Sent:** Wednesday, March 25, 2015 3:57 PM

**To:** David L. Evans
**Cc:** KHern@riemerlaw.com; DMcKenna@riemerlaw.com; murphyp@gtlaw.com; mark.ginalski@sunlink.com
**Subject:** SunLink's Report on Discovery Negotiations

Mr. Evans,

From SunLink's perspective, the status of our negotiations with ACE are set forth below. We are sending this to you individually as we understand that Mr. Hern is out of the office at a meeting and is waiting for information from ACE as to whether ACE will agree to use an eDiscovery vendor to assist ACE organize and find its *responsive* documents (as set forth in more detail below).

1. We understand that ACE has produced 23,040 *emails* to date from various ACE Custodians (we are waiting for confirmation from Mr. Hern as to how many and their full names). We further understand that ACE's counsel has *not* reviewed any of the emails for responsiveness. Rather, ACE produced them directly to us. We have been told that those emails are *external* emails between the ACE custodians and the following "parties" (ACE's word) below:

   o  stanley.chin@cleanfocus.us
   o  sam@redwood-solar.com
   o  bill.peltz@cleanfocus.us
   o  john.checklick@gmail.com
   o  aeidelman@bck.com
   o  casey.purcell@sunlink.com

2. We understand that ACE has *not* searched for *internal* emails amongst ACE custodians, despite the fact the Scheduling Order mandated production on March 2nd. We further understand that ACE uses a "Rackspace Cloud" to store its emails. According to ACE, the maximum number of emails that can be downloaded at a time is 100. Also, there is a physical size limit of approximately 50MB for downloaded files. Further, even when downloaded, Rackspace has extremely limited search capability functions. Among other things, it does *not* allow for Boolean searching and only basic searches can be performed, e.g., a search for "CVEC" could be run, but common connectors such as "within 5 of Dennis" would not be possible. We do not believe that using Rackspace's search functions would be an efficient and defensible method for ACE to find responsive emails. ACE's internal emails, in SunLink's view, are critical to the issues we have outlined for discovery, e.g., (i) what ACE custodians were discussing about the contracts, terms, lead times, schedules, etc. during contract formation and performance, and (ii) what ACE custodians were discussing about their communications with the owners of the project about these key issues and obligations and when ACE ultimately had to be substantially complete with its own work..

3. We do not know if ACE has searched for any information from any relevant File Server. We have asked ACE's counsel to confirm. At this point, as set forth above, it appears that all that ACE has done is download emails for certain custodians using the "to" and "from" fields as parameters. We do not believe this approach is an efficient and defensible method for ACE to find responsive emails.

4. After learning the above, particularly as it relates to Rackspace and internal emails, we suggested that ACE work with an eDiscovery vendor, who could collect all of the data from Rackspace and use its own third-party eDiscovery platform to organize the information and run search terms through the "data set" so that ACE can find and then produce responsive documents. Recently, we were informed that ACE may not have an answer to that question today.

5. We've informed ACE about SunLink's efforts to find and produce responsive documents. Specifically, SunLink's "data set" consists of documents/emails/attachments/etc. contained in (i) SunLink's ACE-CVEC Project shared file folders (a central repository for project data) and (ii) email and file folders (either maintained on SunLink's server or on individual laptop computers) for (1) Chris Tilly, (2) John Eastwood, (3) Jonathan Eastwood, (4) Joost DeWilde, (5) Scott Morrison, (6) Nick Troia, (7) Ranjan Prasad, (8) Ted Ridgway, and (9) Casey Purcell. After conducting custodial interviews in January and February to determine where potentially relevant documents/emails/attachments/etc. would reside, the data was retrieved by Empire Discovery, GT's third-party eDiscovery vendor, and GT's eDiscovery Specialist Manny Almonte. The data was then loaded into and indexed by Empire's "Relativity" eDiscovery database/platform. Relativity is an end-to-end eDiscovery platform used by 195 law firms out of the AM Law 200 to manage the eDiscovery process. Since the data was loaded into and indexed by Relativity, Paul Murphy and I have reviewed (through Relativity) *all* of those documents/emails/attachments/etc. for responsiveness and privilege. To date, as a result of our review for responsiveness and privilege, we have produced documents/emails/attachments/etc. bates labeled SL0000001 to SL0021823. Beyond reviewing documents segregated as attorney-client privilege/providing a privilege log, SunLink has completed its production.

Ultimately, although we appreciate the effort it takes to review documents, ACE's choice to use Rackspace should not unfairly prejudice SunLink from obtaining responsive information in a timely manner (e.g., internal emails amongst the ACE custodians about lead time, scheduling, the schedules provided by companies upstream, etc., etc., which we understand from our call have not yet been searched for or reviewed by ACE). *See Starbucks Corp. v. ADT*, 2009 WL 4730798 (W.D.Wash., Apr. 30, 2009) ("the Court cannot relieve Defendant of its duty to produce those documents merely because Defendant has chosen a means to preserve the evidence which makes ultimate production of relevant documents expensive…. To permit a party to 'reap the business benefits of such technology and simultaneously use that technology as a shield in litigation would lead to incongruous and unfair results.") (citations omitted). Similarly, we believe it is ACE's *duty* to produce *responsive* documents, rather than *all* documents between custodians with the view that SunLink can search for responsive documents itself after production. As such, we believe that ACE should be required to use an eDiscovery vendor, as SunLink has done, to expedite the process of finding and producing documents *responsive* to the issues in this proceeding.

Although we appreciate your order that the parties meet and resolve their differences, we do not believe that will occur without your participation.

Sincerely,

David

David G. Thomas
Shareholder
Greenberg Traurig, LLP | One International Place | Boston, MA 02110
Tel 617.310.6040 | Fax 617.897.0940 | Cell 781.267.9614
ThomasDa@GTLAW.com | www.gtlaw.com



If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate such information.

------------------------------

This e-mail message and any attachments are confidential and may be privileged. If you are not the intended recipient please notify Murphy & King, P.C. immediately -- by replying to this message or by sending a message to postmaster@murphyking.com -- and destroy all copies of this message and any attachments. Thank you. For more information about Murphy & King, P.C., please visit us at http://www.murphyking.com Pursuant to IRS Circular 230, please be advised that, to the extent this communication (and any attachments) contains any tax advice, it is not intended to be, and cannot be used, for purposes of avoiding penalties under the Internal Revenue Code.

------------------------------

**Privileged And Confidential Communication.**
This electronic transmission, and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521), (b) may contain confidential and/or legally privileged information, and (c) are for the sole use of the intended recipient named above. If you have received this electronic message in error, please notify the sender and delete the electronic message. Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited.

# EXHIBIT B

## AMERICAN ARBITRATION ASSOCIATION

SUNLINK CORPORATION,

Claimant,

v.

AMERICAN CAPITAL ENERGY, INC.,

Respondent.

AAA NO. 01-14-0001-7516

### CONFIDENTIALITY STIPULATION AND PROTECTIVE ORDER

Pursuant to Paragraph 6 of Scheduling Order No. 1, dated January 20, 2015, Claimant Sunlink Corporation and Respondent American Capital Energy, Inc. (each a "**Party**" and together "**Parties**") respectfully request the Arbitrator to enter this Confidentiality Stipulation and Protective Order as an Order to govern this proceeding ("**Stipulated Order**"). As grounds for this request, the Parties hereby stipulate and agree, through their respective counsel, to the entry of the Stipulated Order to (1) protect the Parties' confidential information that may be produced or otherwise disclosed during this proceeding and (2) protect the Parties' attorney-client privileged information and work product that may be produced or otherwise disclosed during the proceeding. The protections afforded by the Stipulated Order are meant to apply to the Parties and any third party in this proceeding and in any other proceeding.

### DEFINITIONS

1.      "**Confidential Information**" means all information designated as being confidential (as set forth below) that is produced, provided, or made available in the course of formal or informal discovery in the proceeding, including, but not limited to:  (a) documents, tangible things, and electronically-stored information ("**Documents**"); (b) answers, information, and testimony provided during the course of depositions or any hearings, including the

transcripts of such depositions or hearings; and (c) information provided to the Arbitrator through motion practice or otherwise.

2.      **"Permitted Expert"** means an expert or consultant who is retained or used by a Party in the proceeding or the Party's counsel to assist counsel in connection with counsel's work in the proceeding or to provide testimony in the proceeding.

<u>DESIGNATING CONFIDENTIAL INFORMATION</u>

3.      **Criteria for Designation**.  A Party may designate information as Confidential Information if the Party making such designation reasonably believes that the information embodies or contains: (a) competitive or confidential business information; (b) sensitive financial information; (c) sensitive product information; (d) sensitive or confidential personal information; or (e) information that is otherwise required to be maintained as confidential pursuant to another agreement or order.

4.      **Method for Designation**.  A Party may designate information as Confidential Information by the following means:

(a).    <u>Documents Produced By A Party Or A Non-Party</u>: For Documents, a Party shall mark any page containing Confidential Information with the legend **"CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."** A producing Party may designate Documents as such prior to production. A receiving Party may designate Documents as such within 7 calendar days of receipt of such Documents. Such retroactive designation shall be made in writing and it shall be the obligation of the designating Party to provide the other Party with a revised copy of the information being retroactively designated containing the proper confidentiality designations.

PHI 317264525v1

Upon receipt, the non-designating Party shall destroy all undesignated copies of such Documents (except for any original versions maintained by that Party prior to production, _provided, however_, that the non-designating Party shall only use the retroactively designated copies for the purposes of the proceeding).

(b).   Answers, Information, And Testimony Provided In The Course Of Depositions Or Hearings, Including The Transcripts Of Such Proceedings:

(i).   All testimony and exhibits shall be treated as Confidential Information until 7 calendar days after the final transcript is received from the stenographer.   Within 7 calendar days after receipt of the final transcript, a Party may designate any portion of the subject testimony as containing Confidential Information by serving written notice upon all other Parties and the stenographer identifying the portions of the transcript, by page and line reference for which confidentiality is claimed.   After any such designation, counsel for all the Parties shall be responsible for marking the designated material in all previously unmarked copies of transcripts and exhibits as containing Confidential Information as set forth above.

(ii).   During the taking of testimony (or during oral argument), a Party believing that any testimony or oral argument about to be elicited (or proffered) will contain Confidential Information, may designate that portion of the testimony, argument, or exhibit as containing

3

Confidential Information and the Parties shall instruct the stenographer (or request the Arbitrator) to so mark the transcript or exhibit accordingly.  Also, prior to taking any such testimony or proffering such exhibit, all persons who are not permitted recipients of Confidential Information shall be asked to leave the room while such testimony is being taken and exhibit is being proffered.

(iii).    Any stenographer or videographer who transcribes or videotapes testimony in this proceeding shall be required to agree, before transcribing or videotaping any such testimony, that all information designated Confidential Information shall not be disclosed except as provided in this Stipulated Order, and that copies of any transcript, stenographer's notes, videotapes, or any other transcription records of any such testimony will be retained in absolute confidence and safekeeping by such stenographer or videographer or shall be delivered to an attorney of record or filed under seal with the Arbitrator.  The Party designating information or Documents attached as Confidential Information shall be responsible for notifying any stenographer or videographer of these obligations.

5.    If a receiving Party, at any time, wishes to have the designation of any particular Confidential Information removed or changed, that Party shall first request, in writing, that the designating Party change its designation and the receiving Party shall provide the reasons

4

therefor in detail. Thereafter, the challenging Party and the designating Party shall make good-faith efforts to resolve the dispute. If the designating Party refuses to agree to remove or change the designation, then the challenging Party may file a motion with the Arbitrator for an order removing or changing the designation; provided, however, that the designating Party shall have the burden of proving that such particular Confidential Information is properly designated as Confidential Information. At all times during the process of challenging a designation, the Parties shall treat the Confidential Information as originally designated until the Parties agree upon or the motion is decided by the Arbitrator and written notice of such decision is served on the Parties.

### USE AND DISCLOSURE OF CONFIDENTIAL INFORMATION

6.      The Parties shall use Confidential Information only for the purpose of this proceeding.

7.      Any Party filing with the Arbitrator any motion, brief, exhibit, or other document in the proceeding that incorporates, contains, or discloses the contents of Confidential Information shall reference clearly and conspicuously in the motion that the material has been marked as containing Confidential Information pursuant to this Stipulated Order. Also, the motion, brief, or other document itself shall contain the designation "**CONFIDENTIAL –**

**SUBJECT TO PROTECTIVE ORDER**" on the first page of the document, as well as on every other page on which Confidential Information appears.

8.    Confidential Information shall be disclosed only to the following persons and entities and shall be limited to the disclosure reasonably necessary for such person's or entity's activities in connection with the proceeding:

(a).    The Arbitrator and AAA personnel as it becomes necessary during the course of the proceeding or as is allowed or directed by the Arbitrator;

(b).    Outside support providers retained by counsel for the Parties, such as electronic discovery, graphics services, and trial technology providers, photographers, videographers, and similar support providers, all of whom shall use such information solely for purposes of this proceeding and all of which shall execute the Designation and Agreement described below in Paragraph 10 prior to receiving any Confidential Information;

(c).    The Parties and their employees who have a need to know of such information;

(d).    In-house or outside attorneys for the Parties, and those attorneys' respective employees;

(e).    Certified stenographers and videographers transcribing or filming depositions or testimony involving such Confidential Information as well as translators working for or on behalf of a Party;

(f).    Permitted Experts who have signed the Declaration and Agreement described in Paragraph 10 below, their employees, assistants, and clerical personnel; and

(g).    Non-Party witnesses who may be examined and may testify concerning such Confidential Information if it appears on its face or from other documents that the witness is the author or recipient of such Confidential Information and the non-Party has signed the Declaration and Agreement described in Paragraph 10 below.

6

9.    Notwithstanding anything to the contrary in Paragraph 8 above, Confidential Information may be disclosed and copies may be provided to persons who counsel reasonably believes authored the information to be disclosed or received the information to be disclosed prior to its production in the proceeding and any other persons with the prior authorization of the Arbitrator.

10.   Disclosure of Confidential Information to service providers, Permitted Experts and non-Party witnesses is appropriate only after such persons have signed the following "**Declaration and Agreement**" ("**Declarant**"), which shall be set forth on a document containing the caption of this proceeding and the original or a copy of which is retained by counsel who facilitates disclosure of the information to such persons:

<u>**Declaration and Agreement**</u>

I, _____, hereby declare as follows:

1.    I am employed by _____ in the capacity of _____.

2.    I have read the Confidentiality Stipulation and Protective Order governing this proceeding

3.    I agree to be bound by the Stipulated Order, and I agree not to disclose information protected by the Stipulated Order to any person not authorized to receive that information.

4.    I consent to the jurisdiction of the Arbitrator for enforcement of the Stipulated Order and waive any and all objections to jurisdiction and venue.

5.    I understand that I may be subject to contempt or other sanctions for the failure to obey the Stipulated Order.

6.    I will use information deemed to be or designated as Confidential Information under the Stipulated Order exclusively for my activities, work, or testimony in connection with this proceeding.

7.    When I am informed that this proceeding is concluded, I will return all Confidential Information in my possession, custody, or control to the person who furnished the information or to counsel in the proceeding or will destroy such information, as counsel may instruct.

7

[If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".]

[If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".]]

11.     Once a Declarant terminates his or her services in this proceeding, he or she shall destroy all Confidential Information that was provided to him or her.  Upon termination, the Declarant will no longer be allowed access to Confidential Information unless he or she executes a new Declaration and Agreement.

12.     Within 7 calendar days after the conclusion of the proceeding, whether by dismissal, judgment, or settlement, counsel retaining executed Declarations and Agreements shall be responsible for notifying all Declarants that the proceeding has ended and instruct those Declarants to destroy all Confidential Information that was provided to him or her.

## INADVERTENT PRODUCTION

13.     If any attorney-client privileged information or work product is disclosed inadvertently, such disclosure shall not operate as a waiver in the proceeding so long as the producing Party takes reasonable steps to rectify the error.  Specifically, the *producing* Party shall notify the receiving Party in writing and identify the privileged or protected material by Bates designation or other identifiable description.  Upon receipt of a notice of inadvertent disclosure, the receiving Party must refrain from viewing such material or using such material in any way, and must follow the producing Party's reasonable instructions regarding the disposition of the material.  To the extent there is a disagreement regarding the proper disposition of the material, the receiving Party shall refrain from using the material unless and until the Arbitrator makes a determination as to its proper disposition.  Also, in the event a *receiving* Party believes that the producing Party inadvertently produced privileged or protected material, the receiving

8

Party shall notify the producing Party in writing and identify the suspected privileged or protected material by "Bates" designation or other identifiable description within 5 calendar days of such discovery.   Once the receiving Party believes that there has been an inadvertent disclosure, the receiving Party must refrain from viewing such material or using such material in any way and must follow the producing Party's reasonable instructions regarding the disposition of the material.   To the extent there is a disagreement regarding the proper disposition of the material, the receiving Party shall continue to refrain from using the material unless and until the Arbitrator makes a determination as to its proper disposition.   The provisions of this Paragraph 13 above specifically apply to meta data produced by the Parties – inadvertently or otherwise.

15.     The production of any information by a Party in this proceeding shall not, for the purposes of this proceeding or any other proceeding, constitute a waiver by either Party of any privilege applicable to that information, including the attorney-client privilege and the work product doctrine, as to the information produced or as to the subject matter thereof.

### MISCELLANEOUS PROVISIONS

16.     Nothing herein shall prohibit a reference to or summary of Confidential Information in briefs, motions or memoranda of facts or law filed in the proceeding; provided, however, that the reference to or summary of such Confidential Information must be classified as and treated as Confidential Information as set forth herein.

17.     This Stipulated Order shall survive the termination of this proceeding and the protection afforded by this Stipulated Order shall remain in effect until limited or terminated by the Parties or the Arbitrator.

18.     Within 60 calendar days after any and all final appellate rights are exhausted, each Party possessing Confidential Information designated as such by the other Party will destroy the

9

Confidential Information, maintain it in a manner consistent with the terms of this Stipulated Order, or return it to the appropriate counsel, as counsel requests. Each Party must deliver to the disclosing Party's counsel a certification that the Party has complied with the terms of this Stipulated Order or explain why it has not done so.

19.    If Confidential Information in the possession, custody, or control of a Party in the proceeding is subpoenaed, requested or demanded in another action or proceeding, the Party in possession, custody, or control of the Confidential Information shall object to production of the Confidential Information by setting forth the existence of this Stipulated Order. A Party shall also give prompt written notice of such subpoena, request, or demand to the appropriate Party that asserted the information was Confidential Information. Neither the provisions of this Stipulated Order, nor any designation or failure to designate any particular information as Confidential Information under this Stipulated Order, shall constitute a waiver of a Party's assertion of confidentiality with respect to any information in any other action or proceeding. Provided that the Party seeking to maintain the confidentiality of the information has taken the necessary steps to prevent, through judicial process, production of the documents sought, the Party that possesses such documents shall not produce in the other action any documents produced as Confidential Information in this proceeding until the motion to quash or analogous proceeding has been resolved.

20.    If any information that a producing Party claims is Confidential Information is inadvertently disclosed to a receiving Party without being properly designated as Confidential Information, the designating Party may notify the receiving Party that such Confidential Information was inadvertently not designated, provided the producing Party gives such notice in writing as soon as reasonably possible after becoming aware that the Confidential Information

10

was not properly designated. Such written notice shall identify with specificity the information the designating Party is then designating to be Confidential Information. If the designating Party gives such written notice as provided above, its claims of confidentiality shall not be deemed to have been waived by its failure to designate properly the information as Confidential Information prior to disclosure. Upon receipt of written notice as provided for herein, the receiving Party shall mark the original and all known copies of the information with the proper designation. In addition, the receiving Party shall use its best efforts to ensure that the information that was inadvertently disclosed is thereafter restricted to only those persons entitled to receive Confidential Information under the terms set forth herein.

21.      No Party shall be obligated to challenge the appropriateness of any confidentiality designation, or Confidential Information by another Party, and the failure to do so shall not constitute a waiver or otherwise preclude a challenge to the designation in another or subsequent action or proceeding. This Stipulated Order shall not abrogate or diminish any contractual, statutory, or other legal obligation or right of any Party or person with respect to any Confidential Information. The fact that information is marked with a confidentiality designation under this Stipulated Order shall not be deemed to be determinative of what a trier of fact may determine to be confidential or proprietary. The fact that any information is disclosed, used, or produced in any court proceeding with a confidentiality designation shall not be offered in any action or proceeding before any court, agency, or tribunal as evidence of or concerning whether or not such information is admissible, confidential, or proprietary.

22.      Notwithstanding any other provision of this Stipulated Order to the contrary, the confidentiality obligations of this Stipulated Order shall not apply, or shall cease to apply, to any information that:

11

(a).    at the time of disclosure hereunder was already lawfully in the possession of the receiving Party and was not acquired under any obligation of confidentiality; or

(b).    at the time of disclosure hereunder was, or subsequently becomes, through no fault of the receiving Party, a public document or publicly available.

23.    Nothing in the provisions of this Stipulated Order shall prevent a designating Party from using its own Confidential Information in any manner such designating Party desires subject to any other Party's rights who has an interest in the documents.

24.    This Stipulated Order shall be without prejudice to the right of any Party to oppose production of any information on any ground.

25.    This Arbitrator retains jurisdiction even after termination of the proceeding to enforce this Stipulated Order and to make such deletions from or amendments, modifications, and additions to the Stipulated Order, as stipulated by the Parties and as the Arbitrator may deem appropriate from time to time.   Any Party for good cause may apply, before or after termination of the proceeding, to the Arbitrator for a modification of this Stipulated Order.

26.    The Parties shall make every reasonable effort to act in good faith to limit and curtail the volume of information, documents, things, testimony or other materials designated by them as Confidential Information; shall use their best efforts to act in good faith to separate out and segregate documents, things and other materials containing Confidential Information from those that do not contain Confidential Information; shall use their best efforts to act in good faith to limit the number of persons to whom Confidential Information is to be disclosed; and shall confer with each other in good faith for the purpose of attempting to limit and curtail the volume of information and materials to be so designated.

12

Respectfully submitted,

SUNLINK CORPORATION,
Claimant,

By its Attorneys,

_____
Paul J. Murphy (BBO # 363490)
David G. Thomas (BBO # 640854)
Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Tel: 617-310-6000
Fax: 617-310-6001

Dated:  January 27, 2015

Respectfully submitted,

AMERICAN CAPITAL ENERGY,
INC., Respondent,

By its Attorneys,

_____
Dennis E. McKenna (BBO # 556428)
Riemer & Braunstein, LLP
Three Center Plaza
Boston, MA  02108
Tel: 617-880-3454

Dated:  January 27, 2015

SO ORDERED on this ___2nd___ day of
___February___, 2015:

_____
David L. Evans, Arbitrator

# EXHIBIT C

## Thomas, David G. (Shld-Bos-LT)

| | |
|---|---|
| **From:** | Kevin Hern Jr <KHern@riemerlaw.com> |
| **Sent:** | Tuesday, April 14, 2015 4:52 PM |
| **To:** | David L. Evans (DEvans@murphyking.com) |
| **Cc:** | robtdowd@sbcglobal.net; Dennis E McKenna; Murphy, Paul (Shld-Bos-LT); Thomas, David G. (Shld-Bos-LT) |
| **Subject:** | SunLink/ACE - Follow-Up to Telephone Hrg of 4.13.15 |
| **Attachments:** | Copy of GT Box Usage (as of 4.14.15).xlsx |

Dear Mr. Evans:

Below is an email from ACE's IT person.  As indicated by her (see attached production log), all emails sent "to or from SunLink" or  "to or from" the following key people or companies were produced by March 26th and downloaded by GT as of April 2.  This covers the entire period of 2011 through 2014.

1. stanley.chin@cleanfocus.us<mailto:stanley.chin@cleanfocus.us>
2. sam@redwood-solar.com<mailto:sam@redwood-solar.com>
3. bill.peltz@cleanfocus.us<mailto:bill.peltz@cleanfocus.us>
4. john.checklick@gmail.com<mailto:john.checklick@gmail.com>
5. aeidelman@bck.com<mailto:aeidelman@bck.com>
6. casey.purcell@sunlink.com<mailto:casey.purcell@sunlink.com>

Also, Attorney Bob Dowd has been culling through the tens of thousands of internal emails downloaded originally to respond to ACE's request.   Mr. Dowd is working on this production (which may become unnecessary if Sunlink only needs a subset of these documents that can reasonably be culled by search terms).

In addition, please be advised it has been determined by ACE that Riemer & Braunstein LLP. will be withdrawing as counsel to ACE in this arbitration and that Attorney Dowd will be handling all aspects of this matter going forward.   A copy of R&B's Withdrawal of Appearance and the Appearance of Attorney Dowd will be filed forthwith.

Thanks

Kevin Hern Jr., Esquire
Riemer | Braunstein LLP
Three Center Plaza, Suite 600 | Boston, Massachusetts 02108
d: 617.880.3554 | f: 617.692.3554 | c: 617.834.3554
khern@riemerlaw.com | www.riemerlaw.com



RIEMER
BRAUNSTEIN

BOSTON · NEW YORK · CHICAGO · BURLINGTON

---

**From:** Jennifer Harden [mailto:jennifer.harden@americancapitalenergy.com]
**Sent:** Monday, April 13, 2015 6:01 PM
**To:** Kevin Hern Jr
**Subject:** RE: SunLink/ACE - Arbitrator' Order

There are (5) accounts listed below.  The total comes to 16,616.  If all needed to be produced, I could do it in about 7 business days, give or take.  Again, this will produce a tremendous number of duplicate emails that have already been produced.

|        | Lead & Time | China | Delivery & Schedule | Operational & April | Critical & Path |
|--------|-------------|-------|---------------------|---------------------|-----------------|
| Eric   | 1229        | 435   | 1249                | 1516                | 220             |
| Zac    | 498         | 136   | 1006                | 506                 | 130             |
| Art    | 2248        | 1415  | 565                 | 707                 | 121             |
| Bill G | 455         | 159   | 793                 | 308                 | 36              |
| Jeff   | 1019        | 106   | 1175                | 453                 | 131             |

**Total Emails**            **16,616**

–Jennifer

----

**Privileged And Confidential Communication.**
This electronic transmission, and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521), (b) may contain confidential and/or legally privileged information, and (c) are for the sole use of the intended recipient named above. If you have received this electronic message in error, please notify the sender and delete the electronic message. Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited.