# EXHIBIT P

**Curley, Penny R. (Secy-Bos-LT)**

| | |
|---|---|
| **From:** | David L. Evans <DEvans@murphyking.com> |
| **Sent:** | Tuesday, May 05, 2015 3:54 PM |
| **To:** | Thomas, David G. (Shld-Bos-LT); LisaRomeo@adr.org |
| **Cc:** | robtdowd@sbcglobal.net; Murphy, Paul (Shld-Bos-LT); mark.ginalski@sunlink.com |
| **Subject:** | Ruling on ACE's Motion to Compel |

ACE's motion to compel is denied. This ruling is premised on SunLink's representations that (i) the documents (except the so-called Bank documents) have been produced, (ii) neither party produced documents in searchable formats, but the documents could be rendered searchable if loaded into a document management program (as SunLink's vendor did with ACE's production), (iii) as an apparent accommodation to Mr. Dowd, SunLink produced a second searchable set of documents, and (iv) any Bates number gaps or other problems with the documents uploaded by SunLink to the FTP site have been explained or rectified. I will re-visit the motion to compel if these representations prove to be inaccurate.

The request to compel any additional Bank documents is also denied.

DLE

David L. Evans
Murphy & King
Professional Corporation
One Beacon Street
Boston, MA  02108-3107
Tel: (617) 423-0400 (ext. 445)
Fax: (617) 423-0498
Direct dial: (617) 226-3445
E-mail: devans@murphyking.com
Web: www.murphyking.com

**From:** ThomasDa@GTLAW.com [mailto:ThomasDa@GTLAW.com]
**Sent:** Monday, May 04, 2015 4:31 PM
**To:** David L. Evans; LisaRomeo@adr.org
**Cc:** robtdowd@sbcglobal.net; murphyp@gtlaw.com; mark.ginalski@sunlink.com
**Subject:** AAA NO. 01-14-0001-7516/SunLink's Opposition to Motion to Compel


Enclosed for submission is SunLink's Opposition to ACE's Motion to Compel.

Sincerely,

David


David G. Thomas
Shareholder
Greenberg Traurig, LLP | One International Place | Boston, MA 02110
Tel 617.310.6040 | Fax 617.897.0940 | Cell 781.267.9614
ThomasDa@GTLAW.com | http://www.gtlaw.com

1

ALBANY  ·  AMSTERDAM  ·  ATLANTA  ·  AUSTIN  ·  BOSTON  ·  CHICAGO  ·  DALLAS  ·  DELAWARE  ·  DENVER  ·  FORT
LAUDERDALE  ·  HOUSTON  ·  LAS VEGAS  ·  LONDON*  ·  LOS ANGELES  ·  MEXICO CITY*  ·  MIAMI  ·  NEW JERSEY  ·  NEW YORK  ·  NORTHERN
VIRGINIA  ·  ORANGE COUNTY  ·  ORLANDO  ·  PALM BEACH COUNTY  ·  PHILADELPHIA  ·  PHOENIX  ·  SACRAMENTO  ·  SAN
FRANCISCO  ·  SEOUL*  ·  SHANGHAI  ·  SILICON VALLEY  ·  TALLAHASSEE  ·  TAMPA  ·  TEL AVIV*  ·  TOKYO*  ·  WARSAW*  ·  WASHINGTON,
D.C.  ·  WESTCHESTER COUNTY
*LONDON: OPERATES AS GREENBERG TRAURIG MAHER LLP; MEXICO CITY: OPERATES AS GREENBERG TRAURIG, S.C.; SEOUL: OPERATED BY GREENBERG TRAURIG
LLP FOREIGN LEGAL CONSULTANT OFFICE; TEL AVIV: A BRANCH OF GREENBERG TRAURIG, P.A., FLORIDA, USA; GREENBERG TRAURIG TOKYO LAW OFFICES ARE
OPERATED BY GREENBERG TRAURIG HORITSU JIMUSHO, AN AFFILIATE OF GREENBERG TRAURIG, P.A. AND GREENBERG TRAURIG, LLP; WARSAW: OPERATES AS
GREENBERG TRAURIG GRZESIAK SP.K.
STRATEGIC ALLIANCE WITH AN INDEPENDENT LAW FIRM
MILAN · ROME

If you are not an intended recipient of confidential and privileged information in this email, please delete
it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate such information.

----------------------------
This e-mail message and any attachments are confidential and may be privileged. If you are not the
intended recipient please notify Murphy & King, P.C. immediately -- by replying to this message or by
sending a message to postmaster@murphyking.com -- and destroy all copies of this message and any
attachments. Thank you. For more information about Murphy & King, P.C., please visit us at
http://www.murphyking.com Pursuant to IRS Circular 230, please be advised that, to the extent this
communication (and any attachments) contains any tax advice, it is not intended to be, and cannot be
used, for purposes of avoiding penalties under the Internal Revenue Code.

----------------------------

# EXHIBIT Q

## AMERICAN ARBITRATION ASSOCIATION

SUNLINK CORPORATION,    :
    Claimant,     :  AAA Case No. 01-14-0001-7516
            :
v.           :
            :
            :
AMERICAN CAPITAL ENERGY,   :
    Respondent.    :

## ARCH INSURANCE COMPANY'S EMERGENCY MOTION TO INTERVENE AND CONTINUE PROCEEDINGS

Non-party Arch Insurance Company ("Arch") hereby files this Emergency Motion to Intervene and Continue by at least forty-five (45) days the arbitration hearings scheduled to commence on May 13, 2015. The claimant Sunlink Corporation ("Sunlink") seeks to recover over $8 million in alleged damages from Arch's bond principal, the respondent American Capital Energy, Inc. ("ACE"), in connection with nine solar energy projects (the "Solar Projects") located throughout Cape Cod, Massachusetts. Arch provided payment and performance bonds (the "Arch Bonds") in favor of ACE on five of the nine Solar Projects, those located in Eastham and Harwich on Cape Cod, and Tisbury, Katama and Nunnepog on Martha's Vineyard (collectively the "Arch Bonded Projects").[1] Until recently, Arch was represented in related court actions by ACE's now-former counsel, who withdrew from its representation of ACE in this arbitration on April 15, 2015, and at the same time withdrew from its representation of Arch in the related court actions. Arch's counsel in the related court actions was replaced by undersigned counsel on May 1, 2015.

---

[1] Arch understands that Berkley Regional Insurance Company, as surety on the bonds issued on the remaining four Solar Projects not bonded by Arch, will be filing a similar Emergency Motion to Intervene and Continue.

#53243863 070425/0162728

Any award that might be entered in this arbitration against ACE or that otherwise determines ACE's liability is likely to impair the interests of Arch, as ACE's surety on the Arch Bonded Projects. See Kearsage Metallurgical Corporation v. Pearless Insurance Company, 383 Mass. 162, 166-168 (1981). Therefore, Arch respectfully requests that the Arbitrator allow it to intervene in this arbitration to protect Arch's interests and avoid the prejudice that would result from an adverse award against ACE.

Arch's request to intervene is provisional to the extent that Arch also requests a continuance of the arbitration hearings by at least forty-five (45) days to prepare its defenses to Sunlink's claims. Arch asks that the Arbitrator grant Arch's request to intervene *only* if the Arbitrator also grants Arch's request for a continuance.

In further support of this motion, Arch states as follows:

## FACTUAL BACKGROUND

1.      This arbitration arises out of contracts between Sunlink and ACE ("Sales Contracts") by which Sunlink agreed to provide ACE with mounting system equipment and materials for the Solar Projects located on Cape Cod and Martha's Vineyard, Massachusetts.

2.      Arch, as surety for ACE, issued performance and payment bonds on each of the Arch Bonded Projects.

3.      Sunlink has asserted claims against ACE in this arbitration totaling approximately $8,800,000, inclusive of interest, costs, fees, and alleged debt restructuring costs. Sunlink has named ACE as the only respondent in this arbitration.

4.      Sunlink also has filed court actions in the Barnstable County and Dukes County Superior Courts, respectively (the "Actions"). In the Actions, Sunlink has asserted the same

claims it has asserted against ACE in this arbitration, in addition to payment bond claims against Arch.

5. Between April 7 and April 15, 2015, counsel for ACE withdrew from its representation of ACE in this arbitration and from its representation of Arch in the Actions. ACE thereafter replaced its counsel in this arbitration with attorney Robert K. Dowd. However, due to serious concerns raised by those withdrawals, Arch replaced its counsel in the Actions with the undersigned.

6. Among those concerns was that Arch had not been advised by its former counsel that its participation in this arbitration was necessary or was otherwise required to protect its interests, and that Arch had not been kept abreast of the status of the proceedings or the details regarding the claims in dispute.

## ARGUMENT

### I. Applicable Legal Standard.

The right to intervene is afforded by Rule 24 of the Massachusetts Rules of Civil Procedure. See Mass. R. Civ. P. 24(a). Under Rule 24(a), a request to intervene *must* be granted "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect the interest, unless the applicant's interest is adequately represented by the parties." Mass. R. Civ. P. 24(a). An applicant seeking intervention bears the "minimal" burden of demonstrating that, absent intervention, representation of its interest would be inadequate. See Frostar Corp. v. Malloy, 77 Mass. App. Ct. 705, 712 (2010) (citation omitted). Although the propriety of intervention obviously is discretionary, "lenity is the prescribed attitude in disposing of intervention motions." See Peabody Federation of Teachers,

Local 1289, AFT v. School Committee of Peabody, 28 Mass. App. Ct. 410, 413 (1990) (citation omitted).

## II.   Intervention Is Warranted Here.

The Arbitrator should permit Arch to intervene, and continue the arbitration hearings to permit Arch to prepare its defense, because: (1) as ACE's surety on the Arch Bonded Projects, Arch has a direct interest in the outcome of Sunlink's claims against ACE, and is so situated that disposition of those claims without Arch's participation will impair or impede Arch's ability to protect its interest[2]; (2) Arch's interest is not adequately represented by any party to this arbitration; and (3) Arch will be significantly prejudiced if the Arbitrator declines to permit intervention and the continuance requested by Arch.

First, Arch's direct interest in the outcome of Sunlink's claims is obvious: as ACE's payment bond surety on the Arch Bonded Projects, Arch is exposed to liabilities under the bonds for unpaid labor and materials provided by Sunlink to the Arch Bonded Projects.[3]   Arch thus may be precluded from contesting any issue actually decided in the arbitration proceeding.  See C&I Steel, LLC v. Travelers Casualty and Surety Company, 70 Mass. App. Ct. 653, 660 (Mass. App. 2007).

Second, Arch's interest is not adequately represented by any party to this arbitration, including ACE.  The late withdrawal of counsel for ACE in this arbitration has seriously compromised ACE's ability to vigorously defend against Sunlink's claims, and therefore has severely prejudiced both ACE and Arch.  Before it obtained new counsel, Arch had not been adequately apprised of the details of Sunlink's claims or the nature of ACE's planned defenses.

---

[2] Lack of a fair opportunity for Arch to participate in this arbitration may also impair Sunlink's ability to recover on the Arch Bonds if successful in this arbitration.
[3] Under the Arch Bonds, Arch's liability is limited to payments determined to be for labor and materials only.  Arch is not liable for extra-contractual damages, including punitive, multiple, or consequential damages of any kind.

Arch is now concerned that the prosecution of this arbitration by ACE may fail to fully preserve the rights of ACE and Arch, or otherwise maximize ACE's potential recovery or minimize its potential liability.

Arch understands that the Arbitrator, through previous motion practice, has deemed ACE's recent change of counsel insufficient to warrant a continuance. The circumstances confronted by Arch, however, differ materially from those of ACE. Unlike ACE, Arch is a non-party who has never participated in this arbitration. Indeed, Arch was never advised of the necessity to participate or of the gravity of its interests at stake, and was forced to replace its counsel two weeks ago when counsel for ACE withdrew. Arch should not be penalized for the actions of ACE's counsel, nor should Arch, as a non-party, be placed in the same category as ACE for purposes of its request to intervene and continue. To adequately protect its interests, Arch must be permitted to participate directly in the prosecution of ACE's defenses and claims, after having the opportunity to carefully review the positions of, and information exchanged by, the parties.

Third, Arch will be prejudiced if it is denied permission to intervene and continue the arbitration hearings to properly prepare its defense. If Sunlink wins an award in this arbitration against ACE, Sunlink likely will attempt to enforce the award as binding against Arch. See C&I Steel, 70 Mass. App. Ct. at 663. Arch is at risk of being subjected to a potentially preclusive impact of events occurring in this arbitration and denied the full and fair opportunity to participate in defending the claims for which it may be held liable.

Such an outcome is contrary to the principles of rightful intervention and compulsory joinder of necessary and indispensable parties under established Massachusetts law. See Mass. R. Civ. P. 24(a), *supra*; Mass. R. Civ. P. 19(a)(2)(i) (a person "shall be joined" if in his absence

he "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may … as a practical matter impair or impede his ability to protect that interest").

## **CONCLUSION**

Non-party Arch requests that the Arbitrator grant Arch's request to intervene as a Respondent in this arbitration, but only if the Arbitrator also grants Arch's request to continue the commencement of this arbitration by at least forty-five (45) days, or to a date mutually agreed to by the parties and the Arbitrator.

ARCH INSURANCE COMPANY
By its attorneys,

John P. Connelly, BBO #546670
Jonathan T. Elder, BBO #654411
HINCKLEY, ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109
T: 617.345.9000
F: 617.345.9020
jconnelly@hinckleyallen.com
jelder@hinckleyallen.com

Dated:  May 8, 2015

# EXHIBIT R

5/10

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| SUNLINK CORPORATION, | **AAA NO. 01-14-0001-7516** |
| Claimant, | |
| | **SUNLINK CORPORATION'S** |
| v. | **OPPOSITION TO EMRGENCY MOTION** |
| | **TO INTERVENE AND CONTINUE** |
| AMERICAN CAPITAL ENERGY, INC., | **PROCEEDINGS** |
| Respondent. | |

Claimant SunLink Corporation ("**SunLink**") hereby opposes non-party Arch Insurance

Company's ("**Arch**") provisional Emergency Motion to Intervene and Continue Proceedings.

### RELEVANT BACKGROUND

1.      On October 20, 2014, SunLink filed a Demand for Arbitration against American

Capital Energy, Inc. ("**ACE**") in these proceedings.

2.      On the same day, SunLink filed lawsuits against ACE and Arch in Massachusetts

Superior Court to enforce certain statutory and/or common law surety bonds issued to ACE by

Arch ("**Superior Court Actions**").   *See* Exhibit A (a copy of the Verified Complaints filed in

both actions, without exhibits).    The Superior Court Actions make clear reference to these

proceedings on the first page of the Verified Complaints:

> This is an action by Plaintiff SunLink Corporation ("SunLink") to enforce certain
> statutory and/or common law surety bonds issued to Defendant American Capital
> Energy, Inc. ("ACE") by Defendant Arch Insurance Company ("Arch").  ACE is
> the "Contractor/Principal" listed on all of the bonds at issue.  Effectively, this
> Complaint is filed as a provisional remedy under G.L. c. 149, § 29, G.L. c. 254, §
> 14, and/or the common law, and is without prejudice to **nor waiver of, an**
> **arbitration proceeding now pending between SunLink and ACE before the**
> **American Arbitration Association ("AAA") in Boston, Massachusetts (the**
> **"Arbitration Proceeding").**
>
> **The Arbitration Proceeding involves, among other things, SunLink's claims**
> **against ACE arising out of or relating to material supply contracts entered**
> **into by and between SunLink and ACE on three solar (photovoltaic) energy**
> **projects located in Tisbury and Edgartown, Martha's Vineyard,**

**Massachusetts.** The surety bonds at issue, and the relevant statutory framework, require that claimants under the bonds, such as SunLink, commence an action in the Superior Court in the county in which the project is located in order to preserve and perfect their rights to recover under the bonds.

**This action is intended by SunLink to be stayed pending SunLink's prosecution of the Arbitration Proceeding.**

*See* Exhibit A, p. 1 (emphasis added).

3.      On Friday, May 8, 2015, at 5:04 p.m. – only two business days before the hearings are to commence – Arch filed its provisional Emergency Motion to Intervene and Continue Proceedings ("**Provisional Motion**"). It is provisional as Arch only wants to intervene if the hearings are extended by at least forty-five (45) days. Arch bases the Provisional Motion on concerns that "Arch's interests" will not be adequately represented as a result of alleged inactions or actions by ACE's prior counsel, which is the same counsel that had represented Arch in the Superior Court Actions. Specifically, Arch alleges that ACE's and Arch's prior counsel (i) did not advise Arch that Arch's participation in these proceedings was necessary to protect Arch's interests and (ii) did not keep Arch abreast of the status of these proceedings or the details regarding the claims in dispute. Provisional Motion ¶ 6. Ultimately, Arch argues that Arch should not be penalized by the actions of ACE's and Arch's prior counsel.[1] Provisional Motion p. 5.

## ARGUMENT

4.      There are three reasons why the Arbitrator should deny the Provisional Motion: (i) Arch is not a necessary party, (ii) Arch sat on whatever rights it believes it has, and (iii) granting the motion will unfairly prejudice SunLink and deny SunLink the benefit of its bargain for a swift and speedy resolution of its dispute with ACE.

---

[1] SunLink takes no position on Arch's claims against ACE's and Arch's prior counsel other than noting that prior counsel has an excellent reputation in the community.

2

5.      First, a surety is _not_ an indispensable party in an action against the bonded party because its liability is independent of the principal's liability. *See McGinness v. National Union Fire Ins. Co of Pittsburgh, PA.*, No. 95-10200, 1995 WL 337090 (D. Mass. May 19, 1995).   Nor will Arch be prejudiced in asserting its own rights in a subsequent action under the relevant bonds. *See C & I Steel, LLC v. Travelers Cas. and Sur. Co. Of America*, 70 Mass. App. Ct. 653, 660-1 (2007) (although an arbitration award may preclude a third-party "from contesting any issue actually decided in the arbitration proceedings … [i]t does not necessarily mean that the award actually runs against the nonparticipant") (cited by Arch).

6.      Arch's reliance on *C & I Steel, LLC* is very much misplaced. In *C & I Steel, LLC*, the Massachusetts Appeals Court vacated a trial court's judgment of punitive damages for a subcontractor against a surety, as that judgment triggered issues about scope of coverage under a bond, which was not addressed during the underlying arbitration between the subcontractor and general contractor as the surety was not a party to the arbitration. *See* 70 Mass. App. Ct. at 663. The Appeals Court actually remanded the case for entry of a new judgment in the amount of the arbitrator's award against the general contractor for which the surety was obligated to pay under the bond. *See id.* Indeed, according to the Appeals Court, conducting an arbitration without the surety and later judicially dealing with any coverage issues when the prevailing party seeks to enforce the arbitration award is a perfectly acceptable way to deal with a bonded party's and surety's separate types of liability. *See id.* That is the route SunLink, ACE, and Arch chose to follow since this proceeding was filed. There is no cause to change direction now.

7.      Furthermore, SunLink has not brought any claims against Arch in this proceeding. As such, there is no need to allow Arch to intervene to "prepare its defense." *See Provisional Motion p. 2.* Certainly, Arch has no standing or right to defend – concomitantly with ACE – the principal breach of contract claims brought by SunLink against ACE or somehow force SunLink

to arbitrate any coverage issues that may or may not arise under the bonds. Yet, that is exactly what Arch seeks to do here – but only if the hearings are extended by at least 45 days.

8.      Second, allowing a non-party to wait in the wings while an action is pending and then pounce just two business days before hearings are set to commence would be "manifestly unfair to [the claimant]." *See Narragansett Indian Tribe v. Ribo, Inc.*, 868 F.2d 5, 8 (1st Cir. 1989) (denying third-party's motion to intervene because introduction of that party "at the eleventh hour would have necessitated either a continuance or the endorsement of trial by ambush"). Arch has been well aware of these proceedings since October 2014 – <u>more than six months ago</u>. *See* <u>Exhibit A</u>. Arch could have sought to intervene at any time since then, or, more recently, since ACE's and Arch's counsel withdrew "between April 7 and 15, 2015" – weeks ago. *See* Provisional Motion, ¶ 5. Yet, Arch failed to confer with SunLink's counsel and waited to file the motion on the eve of the hearings. Arch sat on whatever rights it believes it has to its own peril. *See In re Efron*, 746 F.3d 30, 36 (1st Cir. 2014) (in affirming denial of a motion to intervene, the First Circuit stated that "parties having knowledge of the pendency of litigation which may affect their interests sit idle at their peril.") (quoting *Narragansett Indian Tribe*"). There is no basis to continue the hearings as a result of Arch's actions or inactions. Arch does not have a right to have a seat at the table in these proceedings, especially at such a late hour.

9.      Third, although not taking a position on Arch's alleged claims against ACE's and Arch's prior counsel, and although Arch parsimoniously argues it should not be penalized by the actions of prior counsel, SunLink assuredly should not be penalized for anything to do with Arch's or its prior counsel's actions or inactions. Indeed, the prejudice that will be visited upon SunLink should the Arbitrator grant a continuance vastly outweighs any prejudice that could possibly be visited upon Arch. Ultimately, if Arch has been put in a position such that it believes its interests have not been protected, Arch can bring claims against the appropriate parties in the appropriate venue at the appropriate time. Those issues should not cause a delay to the hearings.

To the contrary, delaying the hearings will prevent SunLink from getting the benefit of its bargain – a swift and speedy resolution of its dispute with ACE – as SunLink sets forth in its Opposition to ACE's Motion to Amend Scheduling Order No. 1, dated March 16, 2015 (which was ACE's first of two unsuccessful attempts to continue these proceedings).  *See* Exhibit B (a copy of SunLink's Opposition).

**CONCLUSION**

Consequently, the Arbitrator should deny Arch's provisional Emergency Motion to Intervene and Continue Proceedings.

Respectfully submitted,

SUNLINK CORPORATION,
Claimant,

By its attorneys,

Paul J. Murphy (BBO # 363490)
David G. Thomas (BBO # 640854)
Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Tel: 617-310-6000
Fax:  617-310-6001

Dated:  May 10, 2015

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss                                  SUPERIOR COURT
                                                CIVIL ACTION NO.

|  |  |
|---|---|
| SUNLINK CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>AMERICAN CAPITAL ENERGY, INC.;<br>ARCH INSURANCE COMPANY;<br>BERKLEY REGIONAL INSURANCE<br>COMPANY; and BERKLEY INSURANCE<br>COMPANY,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT AND JURY DEMAND

This is an action by Plaintiff SunLink Corporation ("SunLink") to enforce certain

statutory and/or common law surety bonds issued to Defendant American Capital Energy, Inc.

("ACE") by either Defendant Arch Insurance Company ("Arch"), Defendant Berkley Regional

Insurance Company ("Berkley Regional"), or Defendant Berkley Insurance Company

("Berkley"). ACE is the "Contractor/Principal" listed on all of the bonds at issue. Effectively,

this Complaint is filed as a provisional remedy under G.L. c. 149, § 29, G.L. c. 254, § 14, and/or

the common law, and is without prejudice to nor waiver of, an arbitration proceeding now

pending between SunLink and ACE before the American Arbitration Association ("AAA") in

Boston, Massachusetts (the "Arbitration Proceeding").

The Arbitration Proceeding involves, among other things, SunLink's claims against ACE

arising out of or relating to material supply contracts entered into by and between SunLink and

ACE on six solar (photovoltaic) energy projects located in the following towns in Barnstable

County, Massachusetts:  Harwich, Dennis, Barnstable, Brewster, Chatham, and Eastham, respectively.  The surety bonds at issue, and the relevant statutory framework, require that claimants under the bonds, such as SunLink, commence an action in the Superior Court in the county in which the project is located in order to preserve and perfect their rights to recover under the bonds.

This action is intended by SunLink to be stayed pending SunLink's prosecution of the Arbitration Proceeding.

## PARTIES

1.     SunLink is a California corporation with a principal place of business located at 1010 B Street, Suite 400, San Rafael, California 94901.  SunLink designs, produces and supplies Module Mounting Systems (MMS) used to install and secure photovoltaic modules on solar array projects.

2.     ACE is, on information and belief, a Massachusetts corporation with a principal place of business located at 1001 Pawtucket Boulevard, Suite 278, Lowell, Massachusetts 01854.  ACE is a solar engineering, procurement, and construction contractor and solar developer.

3.     Arch is, on information and belief, a Missouri corporation with a principal place of business located in Jersey City, New Jersey.  Arch is duly organized to transact business as a surety within the Commonwealth of Massachusetts.

4.     Berkley Regional is, on information and belief, a Delaware corporation with a principal place of business located at 11201 Douglas Avenue, Urbandale, Iowa 50322.  Berkley Regional is duly organized to transact business as a surety within the Commonwealth of Massachusetts.

2

5.      Berkley is, on information and belief, a Delaware corporation with a principal place of business located in Greenwich, Connecticut. Berkley is duly organized to transact business as a surety within the Commonwealth of Massachusetts.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

6.      In or about September 2007, the Cape & Vineyard Electric Cooperative, Inc. ("CVEC") was formed. CVEC's membership is limited to public entities, principally cities and townships located on Cape Cod or Martha's Vineyard. CVEC was formed by its members to develop renewable energy projects, and to procure and sell electric supply or other energy-related goods and services at competitive prices to its member communities and consumers within its member communities.

7.      On information and belief, in 2011, CVEC entered into certain "inter-governmental agreements" with eight of its "Host Town" members (Harwich, Barnstable, Brewster, Chatham, Eastham, Tisbury, Katama, and Nunnepog) (the "CVEC-Related Projects") whereby (i) CVEC was provided lease and development rights to capped landfill and other real estate sites in each of the Host Towns to construct solar energy (photovoltaic panel array) projects, and to assign all of CVEC's rights to a third party developer who would develop each of the projects; and (ii) CVEC would sell net-metering credits generated on each of the projects to its member communities and rate payers within those communities.

8.      In or about April 2011, CVEC awarded the development and construction of the CVEC-Related Projects to Defendant ACE. Thereafter, between June and October 2011, CVEC entered into an Energy Management Services ("EMS") Agreement with ACE on each of the eight CVEC-Related Projects whereby CVEC, in turn, assigned to ACE all of its lease and development rights, and agreed to pay ACE a net-metered power purchase price for all power

generated on the CVEC-Related Projects. CVEC, in turn, passes through the price paid to ACE

for power to each of the Host Towns under its inter-governmental agreements.

9.      On information and belief, at apparently the same time that the CVEC-Related

Projects were awarded to ACE, the Town of Dennis, Massachusetts, separately awarded ACE the

solar energy (photovoltaic panel array) project which Dennis was then contemplating for its

capped landfill site (the "Dennis Project"). Then Dennis Project was structured similarly to the

eight CVEC-Related Projects, however, without having CVEC as the intermediary. The CVEC-

Related Projects were designed to leverage its members' aggregate size to purchase solar power

at favorable rates. Dennis, on the other hand, chose instead to contract directly with the

developer/owner of the solar project for its solar power. On information and belief, like CVEC,

however, Dennis also entered into an Energy Management Services Agreement with ACE

whereby ACE would develop and own the Dennis Project, and sell Dennis net-metering credits

generated on the Dennis Project.

10.      The combined nine solar projects (the eight CVEC-Related Projects, plus the

Dennis Project), represent a 22MW portfolio of solar (PV) arrays, alleged to be the largest solar

development in New England. It is estimated that the solar power generated from the nine PV

plants will supply 45% of the Cape Cod and Martha's Vineyard municipal electrical load.

11.      On information and belief, the nine projects were initially anticipated to be

completed in early 2013. The permitting and approval of the nine projects by the Massachusetts

Department of Energy Resources ("DOER") was, however, substantially delayed. These delays

allegedly caused ACE substantial cash flow problems in 2013, and ultimately required ACE to

sell 100% of its ownership interests in the nine solar projects to a subsidiary corporation of Clean

Focus Corporation ("Clean Focus"), a Delaware corporation with a principal place of business

located in Sunnyvale, California. On information and belief, Clean Focus finances, owns and operates solar power installations throughout the United States and the Americas.

12.     On information and belief, sometime prior to November 2013, Clean Focus entered into one or more contractual or other arrangements whereby another entity, Redwood Solar Development, LLC ("Redwood"), a Delaware corporation with a principal place of business located in Las Vegas, Nevada, acquired an ownership or other beneficial interest in each of the nine solar energy projects being developed by Clean Focus. On information and belief, Redwood, at all times material hereto, acted on behalf of, in concert with, and/or at the direction of, Clean Focus in connection with any or all of its activities associated with the nine solar projects at issue.

13.     On information and belief, sometime prior to November 2013, on each of the nine projects, Redwood entered into an Engineering, Procurement and Construction (EPC) Contract with ACE whereby ACE agreed to design, build and initially operate the nine solar projects at issue for the benefit of Redwood/Clean Focus.

14.     In the summer of 2011, ACE began discussions and negotiations with SunLink to supply the SunLink MMS system on each of the nine projects. The projects were, however, substantially delayed as referenced above. It was not until October 15, 2013, that ACE and SunLink finally executed nine sales contracts, one for each of the projects, and all containing the same terms and conditions with the exception of the specific nature and amount of product to be furnished, and the sales price.

15.     Each of the sales contracts requires ACE to furnish a Payment Bond from a duly authorized surety, for 100% of the value of the sales contract between ACE and SunLink.

16.     There were no delivery and/or construction schedules furnished to SunLink by ACE at the time the sales contracts were entered into in mid-October 2013 as the projects were still effectively in suspense. Pursuant to the sales contracts, "lead times" for delivery of SunLink's products are "approximate" and SunLink is not responsible for delays caused by, among other things, "government regulation, transportation delay, or any other act or cause beyond the reasonable control [SunLink]."

17.     Despite having executed sales contracts with ACE, SunLink did not immediately receive notice to proceed on any of the projects. The initial notice to proceed on same, but not all, of the projects did not occur until December/January 2014. On a number of the projects, SunLink did not receive notice to proceed until after it had commenced production; and on others, formal notice was never properly effected. ACE's delayed project commencement pushed the projects into a particularly harsh winter on Cape Cod, and also pushed the manufacture of certain required SunLink equipment in China into the Chinese New Year. This latter consequence completely halted the China supply chain for necessary components of the SunLink MMS systems being installed on the Projects.

18.     Change Orders were eventually agreed upon in 2014 by and between ACE and SunLink for a sharing of the cost to allow for the expedited delivery of products manufactured outside of the U.S. SunLink met or exceeded the delivery schedules ultimately agreed upon by ACE and SunLink in 2014 for all of SunLink's products on all nine projects.

19.     ACE has fully and unconditionally accepted and installed all of SunLink's products furnished on all of the nine projects. Construction of all nine projects was completed in June 2014.

6

20.     On September 30, 2014, the "partnership" of CVEC, the Town of Dennis, Clean

Focus (Redwood) and ACE officially dedicated the entire nine project, 22MW portfolio of solar

arrays located on Cape Cod and Martha's Vineyard.  Massachusetts Governor Deval Patrick was

present at the dedication and praised all parties involved.  Stanley Chin, the CEO of Clean Focus,

the owner of the projects stated, "It was terrific partnering with this exceptional team of

professionals to bring clean, reliable and renewable solar electricity to Massachusetts –

contributing to the health and vibrancy of this region."  For his part, CVEC's president stated the

following:  "Our outstanding partners, Clean Focus and American Capital Energy, have

demonstrated significant expertise and skill in deploying these valuable solar assets."  CVEC, the

Town of Dennis, Clean Focus and ACE have had full use and benefit of all nine projects now for

several months.

21.     The nine SunLink sales contracts for the "portfolio" of nine projects on Cape Cod

and Martha's Vineyard have an aggregate contract value of more than $9M.  SunLink has been

paid, however, only approximately $2.4M on an aggregated basis to date, leaving a balance due

under the nine sales contracts of approximately $6.6M, excluding late fees due under the sales

contracts of $1.5% per month, attorneys' fees, interests and costs.

### Count I – Harwich Solar Project
### (Action on Harwich Payment Bond)

22.     SunLink reasserts and incorporates by reference herein the allegations contained

in paragraphs 1 through 21 of this Complaint as if each were separately and specifically

realleged herein.

23.     The Town of Harwich Solar Project (the "Harwich Solar Project"), the product of

a so-called "Public/Private Partnership," is situated on property owned by a "county, city, town,

district or other political subdivision of the Commonwealth," and is for the ultimate benefit of

7

the Town of Harwich and the citizens/rate payers within Harwich and the other municipal

members of CVEC.  The Harwich Solar Project is a "public work" as contemplated in G.L. c.

149, § 29.

24.    On or about December 16, 2013, Arch, as Surety, issued a Payment Bond, No.

SU1124971, in connection with the Harwich Solar Project to insure that subcontractors on the

project, such as SunLink, who furnished labor and/or materials on the Harwich Solar Project

would be paid in full (the "Harwich Payment Bond").  ACE is identified as the

Contractor/Principal on the Harwich Payment Bond; and Redwood is identified as the Owner on

the Harwich Payment Bond.  A true and accurate copy of the Harwich Payment Bond is attached

hereto as **Exhibit A.**

25.    On or about October 15, 2013, SunLink and ACE entered into a sales contract for

the Harwich Solar Project whereby SunLink agreed to design, produce and deliver its MMS

system for use on the Harwich Solar Project (the "Harwich Sales Contract").  SunLink agreed to

furnish its materials for an original contract amount of $1,616,947.00, plus taxes, shipping and

handling, and subject to amounts to be added or deducted for changes in the work and/or

materials.  A true and accurate copy of the Harwich Sales Contract is attached hereto as **Exhibit**

**B.**

26.    The work and/or materials called for under the Harwich Sales Contract were

changed at the direction of ACE.  The net effect of all such changes, combined with all

additional charges and other costs, and less credits due ACE on the Harwich Solar Project,

resulted in the Harwich Sales Contract having an adjusted contract value of $2,197,511.17.

27.    Despite having unconditionally accepted all of SunLink's work and materials,

having incorporated that work/material into the Harwich Solar Project, and having the full use

8

and benefit of SunLink's work and materials now for several months, ACE has made payments to date of only $117,450.36 on the Harwich Sales Contract, leaving a balance due and owing SunLink under the Harwich Sales Contract of $2,079,960.46, excluding late fees, attorneys' fees, interests and costs.

28.      SunLink is authorized to claim under the Harwich Payment Bond as it has a direct contract with the Contractor/Principal, ACE, and because it sent a Claim, as defined in the Payment Bond, to Arch on or about August 5, 2014, which Claim Arch has acknowledged. Pursuant to the Harwich Payment Bond, ACE, as Principal, and Arch, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink and against ACE.

29.      SunLink has not been paid in full for the work and/or materials it has performed/furnished on the Harwich Solar Project, and, pursuant to G.L. c. 149, § 29, and/or Massachusetts common law, is thus entitled to recover under the terms of the Harwich Payment Bond.

<u>**Count II – Harwich Solar Project**</u>
**(Action on Harwich Lien Dissolution Bond)**

30.      SunLink reasserts and incorporates by reference the allegations contained in paragraphs 1 through 29 of this Complaint as if each were separately and specifically realleged herein.

31.      On or about June 27, 2014, SunLink recorded in the Barnstable Country Registry of Deeds, a Notice of Written Contract in connection with the Harwich Solar Project, a copy of which is attached hereto as **Exhibit C**.

32.      On or about June 27, 2014, SunLink recorded in the Barnstable Registry County of Deeds, a Statement of Account in connection with the Harwich Solar Project, a copy of which is attached hereto as **Exhibit D**.

9

33.     On or about August 6, 2014, ACE dissolved the lien recorded by SunLink in connection with the Harwich Solar Project by recording in the Barnstable County Registry of Deeds, pursuant to G.L. c. 254, § 14, a Dissolution of Lien Bond issued by Arch, No. SU1128665, a copy of which is attached hereto as **Exhibit E** (the "Harwich Lien Dissolution Bond"). SunLink was provided notice of this recording on or about August 20, 2014. Pursuant to the Harwich Lien Dissolution Bond, ACE, as Principal, and Arch, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink against ACE, up to the penal sum of $2,079,960.46.

34.     SunLink has not been paid in full for its work and/or materials performed/furnished on the Harwich Solar Project, and is thus entitled to recover under the terms of the Harwich Lien Dissolution Bond.

**Count III – Dennis Solar Project**
**(Action on Dennis Payment Bond)**

35.     SunLink reasserts and incorporates by reference herein the allegations contained in paragraphs 1 through 34 of this Complaint as if each were separately and specifically realleged herein.

36.     The Town of Dennis Solar Project (the "Dennis Solar Project"), the product of a so-called "Public/Private Partnership," is situated on property owned by a "county, city, town, district or other political subdivision of the Commonwealth," and is for the ultimate benefit of the Town of Dennis and the citizens/rate payers within Dennis and the other municipal members of CVEC. The Dennis Solar Project is a "public work" as contemplated in G.L. c. 149, § 29.

37.     On or about November 25, 2013, Berkley Regional, as Surety, issued a Payment Bond, No. 0180059, in connection with the Dennis Solar Project to insure that subcontractors on the project, such as SunLink, who furnished labor and/or materials on the Dennis Solar Project

would be paid in full (the "Dennis Payment Bond"). ACE is identified as the Contractor/Principal on the Dennis Payment Bond; and Redwood is identified as the Owner on the Dennis Payment Bond. A true and accurate copy of the Dennis Payment Bond is attached hereto as **Exhibit F**.

38.     On or about October 15, 2013, SunLink and ACE entered into a sales contract for the Dennis Solar Project whereby SunLink agreed to design, produce and deliver its MMS system for use on the Dennis Solar Project (the "Dennis Sales Contract"). SunLink agreed to furnish its materials for an original contract amount of $2,126,678.00, plus taxes, shipping and handling, and subject to amounts to be added or deducted for changes in the work and/or materials. A true and accurate copy of the Dennis Sales Contract is attached hereto as **Exhibit G**.

39.     The work and/or materials called for under the Dennis Sales Contract were changed at the direction of ACE. The net effect of all such changes, combined with all additional charges and other costs, and less credits due ACE on the Dennis Solar Project, resulted in the Dennis Sales Contract having an adjusted contract value of $2,416,279.08.

40.     Despite having unconditionally accepted all of SunLink's work and materials, having incorporated that work/material into the Dennis Solar Project, and having the full use and benefit of SunLink's work and materials now for several months, ACE has made payments to date of only $465,070.56 on the Dennis Sales Contract, leaving a balance due and owing SunLink under the Dennis Sales Contract of $1,951,683.52, excluding late fees, attorneys' fees, interests and costs.

41.     SunLink is authorized to claim under the Dennis Payment Bond as it has a direct contract with the Contractor/Principal, ACE, and because it sent a Claim, as defined in the

Payment Bond, to Berkley Regional on or about June 26, 2014, which Claim Berkley Regional has acknowledged.  Pursuant to the Dennis Payment Bond, ACE, as Principal, and Berkley Regional, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink and against ACE.

42.     SunLink has not been paid in full for the work and/or materials it has performed/furnished on the Dennis Solar Project, and, pursuant to G.L. c. 149, § 29, and/or Massachusetts common law, is thus entitled to recover under the terms of the Dennis Payment Bond.

<u>**Count IV – Dennis Solar Project**</u>
**(Action on Dennis Lien Dissolution Bond)**

43.     SunLink reasserts and incorporates by reference the allegations contained in paragraphs 1 through 42 of this Complaint as if each were separately and specifically realleged herein.

44.     On or about June 25, 2014, SunLink recorded in the Barnstable Country Registry of Deeds, a Notice of Written Contract in connection with the Dennis Solar Project, a copy of which is attached hereto as **Exhibit H**.

45.     On or about June 25, 2014, SunLink recorded in the Barnstable Registry County of Deeds, a Statement of Account in connection with the Dennis Solar Project, a copy of which is attached hereto as **Exhibit I**.

46.     On or about August 19, 2014, ACE dissolved the lien recorded by SunLink in connection with the Dennis Solar Project by recording in the Barnstable County Registry of Deeds, pursuant to G.L. c. 254, § 14, a Dissolution of Lien Bond issued by Berkley, No. 0184044, a copy of which is attached hereto as **Exhibit J** (the "Dennis Lien Dissolution Bond").  SunLink was provided notice of this recording on or about August 20, 2014.  Pursuant to the

Dennis Lien Dissolution Bond, ACE, as Principal, and Berkley, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink against ACE, up to the penal sum of $1,951,683.52.

47.     SunLink has not been paid in full for its work and/or materials performed/furnished on the Dennis Solar Project, and is thus entitled to recover under the terms of the Dennis Lien Dissolution Bond.

<u>Count V – Barnstable Solar Project</u>
<u>(Action on Barnstable Payment Bond)</u>

48.     SunLink reasserts and incorporates by reference herein the allegations contained in paragraphs 1 through 47 of this Complaint as if each were separately and specifically realleged herein.

49.     The Town of Barnstable Solar Project (the "Barnstable Solar Project"), the product of a so-called "Public/Private Partnership," is situated on property owned by a "county, city, town, district or other political subdivision of the Commonwealth," and is for the ultimate benefit of the Town of Barnstable and the citizens/rate payers within Barnstable and the other municipal members of CVEC. The Barnstable Solar Project is a "public work" as contemplated in G.L. c. 149, § 29.

50.     On or about November 25, 2013, Berkley Regional, as Surety, issued a Payment Bond, No. 0177516, in connection with the Barnstable Solar Project to insure that subcontractors on the project, such as SunLink, who furnished labor and/or materials on the Barnstable Solar Project would be paid in full (the "Barnstable Payment Bond"). ACE is identified as the Contractor/Principal on the Barnstable Payment Bond; and Redwood is identified as the Owner on the Barnstable Payment Bond. A true and accurate copy of the Barnstable Payment Bond is attached hereto as **Exhibit K**.

51.     On or about October 15, 2013, SunLink and ACE entered into a sales contract for the Barnstable Solar Project whereby SunLink agreed to design, produce and deliver its MMS system for use on the Barnstable Solar Project (the "Barnstable Sales Contract"). SunLink agreed to furnish its materials for an original contract amount of $1,501,632.00, plus taxes, shipping and handling, and subject to amounts to be added or deducted for changes in the work and/or materials. A true and accurate copy of the Barnstable Sales Contract is attached hereto as **Exhibit L.**

52.     The work and/or materials called for under the Barnstable Sales Contract were changed at the direction of ACE. The net effect of all such changes, combined with all additional charges and other costs, and less credits due ACE on the Barnstable Solar Project, resulted in the Barnstable Sales Contract having an adjusted contract value of $1,637,152.64.

53.     Despite having unconditionally accepted all of SunLink's work and materials, having incorporated that work/material into the Barnstable Solar Project, and having the full use and benefit of SunLink's work and materials now for several months, ACE has made payments to date of only $297,085.25 on the Barnstable Sales Contract, leaving a balance due and owing SunLink under the Barnstable Sales Contract of $1,340,067.39, excluding late fees, attorneys' fees, interests and costs.

54.     SunLink is authorized to claim under the Barnstable Payment Bond as it has a direct contract with the Contractor/Principal, ACE, and because it sent a Claim, as defined in the Payment Bond, to Berkley Regional on or about June 26, 2014, which Claim Berkley Regional has acknowledged. Pursuant to the Barnstable Payment Bond, ACE, as Principal, and Berkeley Regional, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink and against ACE.

14

55.     SunLink has not been paid in full for the work and/or materials it has

performed/furnished on the Barnstable Solar Project, and, pursuant to G.L. c. 149, § 29, and/or

Massachusetts common law, is thus entitled to recover under the terms of the Barnstable

Payment Bond.

**Count VI – Barnstable Solar Project**
**(Action on Barnstable Lien Dissolution Bond)**

56.     SunLink reasserts and incorporates by reference the allegations contained in

paragraphs 1 through 55 of this Complaint as if each were separately and specifically realleged

herein.

57.     On or about June 27, 2014, SunLink recorded in the Barnstable Country Registry

of Deeds, a Notice of Written Contract in connection with the Barnstable Solar Project, a copy of

which is attached hereto as **Exhibit M**.

58.     On or about June 27, 2014, SunLink recorded in the Barnstable Registry County

of Deeds, a Statement of Account in connection with the Barnstable Solar Project, a copy of

which is attached hereto as **Exhibit N**.

59.     On or about August 19, 2014, ACE dissolved the lien recorded by SunLink in

connection with the Barnstable Solar Project by recording in the Barnstable County Registry of

Deeds, pursuant to G.L. c. 254, § 14, a Dissolution of Lien Bond issued by Berkley, No.

0184045, a copy of which is attached hereto as **Exhibit O** (the "Barnstable Lien Dissolution

Bond"). SunLink was provided notice of this recording on or about August 20, 2014. Pursuant

to the Barnstable Lien Dissolution Bond, ACE, as Principal, and Berkley, as Surety, are jointly

and severally liable to SunLink for all sums adjudged in favor of SunLink against ACE, up to the

penal sum of $1,340,067.39.

15

60.    SunLink has not been paid in full for its work and/or materials

performed/furnished on the Barnstable Solar Project, and is thus entitled to recover under the

terms of the Barnstable Lien Dissolution Bond.

<u>Count VII – Brewster Solar Project</u>
**(Action on Brewster Payment Bond)**

61.    SunLink reasserts and incorporates by reference herein the allegations contained

in paragraphs 1 through 60 of this Complaint as if each were separately and specifically

realleged herein.

62.    The Town of Brewster Solar Project (the "Brewster Solar Project"), the product of

a so-called "Public/Private Partnership," is situated on property owned by a "county, city, town,

district or other political subdivision of the Commonwealth," and is for the ultimate benefit of

the Town of Brewster and the citizens/rate payers within Brewster and the other municipal

members of CVEC.  The Brewster Solar Project is a "public work" as contemplated in G.L. c.

149, § 29.

63.    On or about November 25, 2013, Berkley Regional, as Surety, issued a Payment

Bond, No. 0180061, in connection with the Brewster Solar Project to insure that subcontractors

on the project, such as SunLink, who furnished labor and/or materials on the Brewster Solar

Project would be paid in full (the "Brewster Payment Bond").  ACE is identified as the

Contractor/Principal on the Brewster Payment Bond; and Redwood is identified as the Owner on

the Brewster Payment Bond.  A true and accurate copy of the Brewster Payment Bond is

attached hereto as **Exhibit P.**

64.    On or about October 15, 2013, SunLink and ACE entered into a sales contract for

the Brewster Solar Project whereby SunLink agreed to design, produce and deliver its MMS

system for use on the Brewster Solar Project (the "Brewster Sales Contract").  SunLink agreed to

16

furnish its materials for an original contract amount of $443,282.40, plus taxes, shipping and handling, and subject to amounts to be added or deducted for changes in the work and/or materials. A true and accurate copy of the Brewster Sales Contract is attached hereto as **Exhibit Q**.

65.     The work and/or materials called for under the Brewster Sales Contract were changed at the direction of ACE. The net effect of all such changes, combined with all additional charges and other costs, and less credits due ACE on the Brewster Solar Project, resulted in the Brewster Sales Contract having an adjusted contract value of $487,229.48.

66.     Despite having unconditionally accepted all of SunLink's work and materials, having incorporated that work/material into the Brewster Solar Project, and having the full use and benefit of SunLink's work and materials now for several months, ACE has made payments to date of only $248,813.55 on the Brewster Sales Contract, leaving a balance due and owing SunLink under the Brewster Sales Contract of $238,416.21, excluding late fees, attorneys' fees, interests and costs.

67.     SunLink is authorized to claim under the Brewster Payment Bond as it has a direct contract with the Contractor/Principal, ACE, and because it sent a Claim, as defined in the Payment Bond, to Berkley Regional on or about June 26, 2014, which Claim Berkley Regional has acknowledged. Pursuant to the Brewster Payment Bond, ACE, as Principal, and Berkley Regional, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink and against ACE.

68.     SunLink has not been paid in full for the work and/or materials it has performed/furnished on the Brewster Solar Project, and, pursuant to G.L. c. 149, § 29, and/or

Massachusetts common law, is thus entitled to recover under the terms of the Brewster Payment Bond.

<u>Count VIII – Brewster Solar Project</u>
(Action on Brewster Lien Dissolution Bond)

69.     SunLink reasserts and incorporates by reference the allegations contained in paragraphs 1 through 68 of this Complaint as if each were separately and specifically realleged herein.

70.     On or about July 8, 2014, SunLink recorded in the Barnstable Country Registry of Deeds, a Notice of Written Contract in connection with the Brewster Solar Project, a copy of which is attached hereto as **Exhibit R.**

71.     On or about July 8, 2014, SunLink recorded in the Barnstable Registry County of Deeds, a Statement of Account in connection with the Brewster Solar Project, a copy of which is attached hereto as **Exhibit S.**

72.     On or about August 19, 2014, ACE dissolved the lien recorded by SunLink in connection with the Brewster Solar Project by recording in the Barnstable County Registry of Deeds, pursuant to G.L. c. 254, § 14, a Dissolution of Lien Bond issued by Berkley, No. 0184043, a copy of which is attached hereto as **Exhibit T** (the "Brewster Lien Dissolution Bond").  SunLink was provided notice of this recording on or about August 20, 2014.  Pursuant to the Brewster Lien Dissolution Bond, ACE, as Principal, and Berkley, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink against ACE, up to the penal sum of $238,416.21.

73.     SunLink has not been paid in full for its work and/or materials performed/furnished on the Brewster Solar Project, and is thus entitled to recover under the terms of the Brewster Lien Dissolution Bond.

18

<u>Count IV – Chatham Solar Project</u>
(Action on Chatham Payment Bond)

74.     SunLink reasserts and incorporates by reference herein the allegations contained in paragraphs 1 through 73 of this Complaint as if each were separately and specifically realleged herein.

75.     The Town of Chatham Solar Project (the "Chatham Solar Project"), the product of a so-called "Public/Private Partnership," is situated on property owned by a "county, city, town, district or other political subdivision of the Commonwealth," and is for the ultimate benefit of the Town of Chatham and the citizens/rate payers within Chatham and the other municipal members of CVEC.  The Chatham Solar Project is a "public work" as contemplated in G.L. c. 149, § 29.

76.     On or about November 25, 2013, Berkley Regional, as Surety, issued a Payment Bond, No. 0180060, in connection with the Chatham Solar Project to insure that subcontractors on the project, such as SunLink, who furnished labor and/or materials on the Chatham Solar Project would be paid in full (the "Chatham Payment Bond").  ACE is identified as the Contractor/Principal on the Chatham Payment Bond; and Redwood is identified as the Owner on the Chatham Payment Bond.  A true and accurate copy of the Chatham Payment Bond is attached hereto as **Exhibit U.**

77.     On or about October 15, 2013, SunLink and ACE entered into a sales contract for the Chatham Solar Project whereby SunLink agreed to design, produce and deliver its MMS system for use on the Chatham Solar Project (the "Chatham Sales Contract").  SunLink agreed to furnish its materials for an original contract amount of $661,359.60, plus taxes, shipping and handling, and subject to amounts to be added or deducted for changes in the work and/or

19

materials.  A true and accurate copy of the Chatham Sales Contract is attached hereto as Exhibit V.

78.     The work and/or materials called for under the Chatham Sales Contract were changed at the direction of ACE.  The net effect of all such changes, combined with all additional charges and other costs, and less credits due ACE on the Chatham Solar Project, resulted in the Chatham Sales Contract having an adjusted contract value of $721,371.54.

79.     Despite having unconditionally accepted all of SunLink's work and materials, having incorporated that work/material into the Chatham Solar Project, and having the full use and benefit of SunLink's work and materials now for several months, ACE has made payments to date of only $307,120.51 on the Chatham Sales Contract, leaving a balance due and owing SunLink under the Chatham Sales Contract of $414,271.03, excluding late fees, attorneys' fees, interests and costs.

80.     SunLink is authorized to claim under the Chatham Payment Bond as it has a direct contract with the Contractor/Principal, ACE, and because it sent a Claim, as defined in the Payment Bond, to Berkley Regional on or about June 26, 2014, which Claim Berkley Regional has acknowledged.  Pursuant to the Chatham Payment Bond, ACE, as Principal, and Berkley Regional, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink and against ACE.

81.     SunLink has not been paid in full for the work and/or materials it has performed/furnished on the Chatham Solar Project, and, pursuant to G.L. c. 149, § 29, and/or Massachusetts common law, is thus entitled to recover under the terms of the Chatham Payment Bond.

## Count X -- Chatham Solar Project
### (Action on Chatham Lien Dissolution Bond)

82.     SunLink reasserts and incorporates by reference the allegations contained in paragraphs 1 through 81 of this Complaint as if each were separately and specifically realleged herein.

83.     On or about June 27, 2014, SunLink recorded in the Barnstable Country Registry of Deeds, a Notice of Written Contract in connection with the Chatham Solar Project, a copy of which is attached hereto as **Exhibit W**.

84.     On or about June 27, 2014, SunLink recorded in the Barnstable Registry County of Deeds, a Statement of Account in connection with the Chatham Solar Project, a copy of which is attached hereto as **Exhibit X**.

85.     On or about August 19, 2014, ACE dissolved the lien recorded by SunLink in connection with the Chatham Solar Project by recording in the Barnstable County Registry of Deeds, pursuant to G.L. c. 254, § 14, a Dissolution of Lien Bond issued by Berkley, No. 0184042, a copy of which is attached hereto as **Exhibit Y** (the "Chatham Lien Dissolution Bond"). SunLink was provided notice of this recording on or about August 20, 2014. Pursuant to the Chatham Lien Dissolution Bond, ACE, as Principal, and Berkley, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink against ACE, up to the penal sum of $414,271.03.

86.     SunLink has not been paid in full for its work and/or materials performed/furnished on the Chatham Solar Project, and is thus entitled to recover under the terms of the Chatham Lien Dissolution Bond.

**Count XI – Eastham Solar Project**
**(Action on Eastham Payment Bond)**

87.     SunLink reasserts and incorporates by reference herein the allegations contained

in paragraphs 1 through 86 of this Complaint as if each were separately and specifically

realleged herein.

88.     The Town of Eastham Solar Project (the "Eastham Solar Project"), the product of

a so-called "Public/Private Partnership," is situated on property owned by a "county, city, town,

district or other political subdivision of the Commonwealth," and is for the ultimate benefit of

the Town of Eastham and the citizens/rate payers within Eastham and the other municipal

members of CVEC.  The Eastham Solar Project is a "public work" as contemplated in G.L. c.

149, § 29.

89.     On or about December 16, 2013, Arch, as Surety, issued a Payment Bond, No.

SU1124967, in connection with the Eastham Solar Project to insure that subcontractors on the

project, such as SunLink, who furnished labor and/or materials on the Eastham Solar Project

would be paid in full (the "Eastham Payment Bond").  ACE is identified as the

Contractor/Principal on the Eastham Payment Bond; and Redwood is identified as the Owner on

the Eastham Payment Bond.  A true and accurate copy of the Eastham Payment Bond is attached

hereto as **Exhibit Z.**

90.     On or about October 15, 2013, SunLink and ACE entered into a sales contract for

the Eastham Solar Project whereby SunLink agreed to design, produce and deliver its MMS

system for use on the Eastham Solar Project (the "Eastham Sales Contract").  SunLink agreed to

furnish its materials for an original contract amount of $211,305.60, plus taxes, shipping and

handling, and subject to amounts to be added or deducted for changes in the work and/or

22

materials.  A true and accurate copy of the Eastham Sales Contract is attached hereto as **Exhibit AA**.

91.     The work and/or materials called for under the Eastham Sales Contract were changed at the direction of ACE.  The net effect of all such changes, combined with all additional charges and other costs, and less credits due ACE on the Eastham Solar Project, resulted in the Eastham Sales Contract having an adjusted contract value of $230,786.40.

92.     Despite having unconditionally accepted all of SunLink's work and materials, having incorporated that work/material into the Eastham Solar Project, and having the full use and benefit of SunLink's work and materials now for several months, ACE has made payments to date of only $132,654.38 on the Eastham Sales Contract, leaving a balance due and owing SunLink under the Eastham Sales Contract of $98,084.30, excluding late fees, attorneys' fees, interests and costs.

93.     SunLink is authorized to claim under the Eastham Payment Bond as it has a direct contract with the Contractor/Principal, ACE, and because it sent a Claim, as defined in the Payment Bond, to Arch on or about August 5, 2014, which Claim Arch has acknowledged. Pursuant to the Eastham Payment Bond, ACE, as Principal, and Arch, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink and against ACE.

94.     SunLink has not been paid in full for the work and/or materials it has performed/furnished on the Eastham Solar Project, and, pursuant to G.L. c. 149, § 29, and/or Massachusetts common law, is thus entitled to recover under the terms of the Eastham Payment Bond.

## Count XII – Eastham Solar Project
### (Action on Eastham Lien Dissolution Bond)

95.     SunLink reasserts and incorporates by reference the allegations contained in paragraphs 1 through 94 of this Complaint as if each were separately and specifically realleged herein.

96.     On or about June 27, 2014, SunLink recorded in the Barnstable Country Registry of Deeds, a Notice of Written Contract in connection with the Eastham Solar Project, a copy of which is attached hereto as **Exhibit BB**.

97.     On or about June 27, 2014, SunLink recorded in the Barnstable Registry County of Deeds, a Statement of Account in connection with the Eastham Solar Project, a copy of which is attached hereto as **Exhibit CC**.

98.     On or about August 6, 2014, ACE dissolved the lien recorded by SunLink in connection with the Eastham Solar Project by recording in the Barnstable County Registry of Deeds, pursuant to G.L. c. 254, § 14, a Dissolution of Lien Bond issued by Arch, No. SU1128664, a copy of which is attached hereto as **Exhibit DD** (the "Eastham Lien Dissolution Bond"). SunLink was provided notice of this recording on or about August 20, 2014. Pursuant to the Eastham Lien Dissolution Bond, ACE, as Principal, and Arch, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink against ACE, up to the penal sum of $98,084.30.

99.     SunLink has not been paid in full for its work and/or materials performed/furnished on the Eastham Solar Project, and is thus entitled to recover under the terms of the Eastham Lien Dissolution Bond.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff SunLink Corporation requests the following relief from judgment:

a.      with respect to Count I, that the Court enter judgment in favor of SunLink and against ACE and Arch, jointly and severally, in the amount of $2,079,960.46, plus late fees, attorneys' fees, interest and costs;

b.      with respect to Count II, that the Court enter judgment in favor of SunLink and against ACE and Arch, jointly and severally, in the amount of $2,079,960.46;

c.      with respect to Count III, that the Court enter judgment in favor of SunLink and against ACE and Berkley Regional, jointly and severally, in the amount of $1,951,683.52, plus late fees, and attorneys' fees, interest and costs;

d.      with respect to Count IV, that the Court enter judgment in favor of SunLink and against ACE and Berkley, jointly and severally, in the amount of $1,951,683.52;

e.      with respect to Count V, that the Court enter judgment in favor of SunLink and against ACE and Berkley Regional, jointly and severally, in the amount of $1,340,067.39, plus late fees, and attorneys' fees, interest and costs;

f.      with respect to Count VI, that the Court enter judgment in favor of SunLink and against ACE and Berkley, jointly and severally, in the amount of $1,340,067.39;

g.      with respect to Count VII, that the Court enter judgment in favor of SunLink and against ACE and Berkley Regional, jointly and severally, in the amount of $238,416.21, plus late fees, and attorneys' fees, interest and costs;

h.      with respect to Count VIII, that the Court enter judgment in favor of SunLink and against ACE and Berkley, jointly and severally, in the amount of $238,416.21;

i. with respect to Count IX, that the Court enter judgment in favor of SunLink and against ACE and Berkley Regional, jointly and severally, in the amount of $414,271.03, plus late fees, and attorneys' fees, interest and costs;

j. with respect to Count X, that the Court enter judgment in favor of SunLink and against ACE and Berkley, jointly and severally, in the amount of $414,271.03;

k. with respect to Count XI, that the Court enter judgment in favor of SunLink and against ACE and Arch, jointly and severally, in the amount of $98,084.30, plus late fees, and attorneys' fees, interest and costs;

l. with respect to Count XII, that the Court enter judgment in favor of SunLink and against ACE and Arch, jointly and severally, in the amount of $98,084.30; and

m. that the Court enter such other and further relief as the Court may deem just.

## JURY DEMAND

Plaintiff SunLink Corporation hereby demands a trial by jury on all claims.

 Plaintiff,

 SUNLINK CORPORATION,

 By its attorneys,

 Paul J. Murphy (BBO 363490)
 David G. Thomas (BBO 640854)
 Greenberg Traurig LLP
 1 International Place
 Boston, MA 02110
 617-310-6000
 murphyp@gtlaw.com

Dated:   October 20, 2014

## VERIFICATION

I, Christopher Tilley, CEO of SunLink Corporation, having been duly sworn, do hereby state and verify that all factual allegations set forth herein are true and accurate based upon my personal knowledge and involvement in the activities described, excepting only those matters which are provided on information and belief.  Where I have not been personally involved, I am relying on information provided to me by individuals with personal knowledge who report to me in the ordinary course.

By: _____

Title:  CEO

Date:  October 17, 2014

27

COMMONWEALTH OF MASSACHUSETTS

DUKES, ss

SUPERIOR COURT
CIVIL ACTION NO.

| | |
|---|---|
| SUNLINK CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERICAN CAPITAL ENERGY, INC. and | ) |
| ARCH INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## VERIFIED COMPLAINT AND JURY DEMAND

This is an action by Plaintiff SunLink Corporation ("SunLink") to enforce certain

statutory and/or common law surety bonds issued to Defendant American Capital Energy, Inc.

("ACE") by Defendant Arch Insurance Company ("Arch").  ACE is the "Contractor/Principal"

listed on all of the bonds at issue.  Effectively, this Complaint is filed as a provisional remedy

under G.L. c. 149, § 29, G.L. c. 254, § 14, and/or the common law, and is without prejudice to

nor waiver of, an arbitration proceeding now pending between SunLink and ACE before the

American Arbitration Association ("AAA") in Boston, Massachusetts (the "Arbitration

Proceeding").

The Arbitration Proceeding involves, among other things, SunLink's claims against ACE

arising out of or relating to material supply contracts entered into by and between SunLink and

ACE on three solar (photovoltaic) energy projects located in Tisbury and Edgartown, Martha's

Vineyard, Massachusetts.  The surety bonds at issue, and the relevant statutory framework,

require that claimants under the bonds, such as SunLink, commence an action in the Superior

Court in the county in which the project is located in order to preserve and perfect their rights to recover under the bonds.

This action is intended by SunLink to be stayed pending SunLink's prosecution of the Arbitration Proceeding.

<u>PARTIES</u>

1.     SunLink is a California corporation with a principal place of business located at 1010 B Street, Suite 400, San Rafael, California 94901.  SunLink designs, produces and supplies Module Mounting Systems (MMS) used to install and secure photovoltaic modules on solar array projects.

2.     ACE is, on information and belief, a Massachusetts corporation with a principal place of business located at 1001 Pawtucket Boulevard, Suite 278, Lowell, Massachusetts 01854. ACE is a solar engineering, procurement, and construction contractor and solar developer.

3. .     Arch is, on information and belief, a Missouri corporation with a principal place of business located in Jersey City, New Jersey.  Arch is duly organized to transact business as a surety within the Commonwealth of Massachusetts.

<u>FACTUAL ALLEGATIONS COMMON TO ALL COUNTS</u>

4.     In or about September 2007, the Cape & Vineyard Electric Cooperative, Inc. ("CVEC") was formed.  CVEC's membership is limited to public entities, principally cities and townships located on Cape Cod or Martha's Vineyard.  CVEC was formed by its members to develop renewable energy projects, and to procure and sell electric supply or other energy-related goods and services at competitive prices to its member communities and consumers within its member communities.

5.     On information and belief, in 2011, CVEC entered into certain "inter-governmental agreements" with eight of its "Host Town" members (Harwich, Barnstable, Brewster, Chatham, Eastham, Tisbury, Katama, and Nunnepog) (the "CVEC-Related Projects") whereby (i) CVEC was provided lease and development rights to capped landfill and other real estate sites in each of the Host Towns to construct solar energy (photovoltaic panel array) projects, and to assign all of CVEC's rights to a third party developer who would develop each of the projects; and (ii) CVEC would sell net-metering credits generated on each of the projects to its member communities and rate payers within those communities.

6.     In or about April 2011, CVEC awarded the development and construction of the CVEC-Related Projects to Defendant ACE.  Thereafter, between June and October 2011, CVEC entered into an Energy Management Services ("EMS") Agreement with ACE on each of the eight CVEC-Related Projects whereby CVEC, in turn, assigned to ACE all of its lease and development rights, and agreed to pay ACE a net-metered power purchase price for all power generated on the CVEC-Related Projects.  CVEC, in turn, passes through the price paid to ACE for power to each of the Host Towns under its inter-governmental agreements.

7.     On information and belief, at apparently the same time that the CVEC-Related Projects were awarded to ACE, the Town of Dennis, Massachusetts, separately awarded ACE the solar energy (photovoltaic panel array) project which Dennis was then contemplating for its capped landfill site (the "Dennis Project").  Then Dennis Project was structured similarly to the eight CVEC-Related Projects, however, without having CVEC as the intermediary.  The CVEC-Related Projects were designed to leverage its members' aggregate size to purchase solar power at favorable rates.  Dennis, on the other hand, chose instead to contract directly with the developer/owner of the solar project for its solar power.  On information and belief, like CVEC,

3

however, Dennis also entered into an Energy Management Services Agreement with ACE whereby ACE would develop and own the Dennis Project, and sell Dennis net-metering credits generated on the Dennis Project.

8.      The combined nine solar projects (the eight CVEC-Related Projects, plus the Dennis Project), represent a 22MW portfolio of solar (PV) arrays, alleged to be the largest solar development in New England.  It is estimated that the solar power generated from the nine PV plants will supply 45% of the Cape Cod and Martha's Vineyard municipal electrical load.

9.      On information and belief, the nine projects were initially anticipated to be completed in early 2013.  The permitting and approval of the nine projects by the Massachusetts Department of Energy Resources ("DOER") was, however, substantially delayed.  These delays allegedly caused ACE substantial cash flow problems in 2013, and ultimately required ACE to sell 100% of its ownership interests in the nine solar projects to a subsidiary corporation of Clean Focus Corporation ("Clean Focus"), a Delaware corporation with a principal place of business located in Sunnyvale, California.  On information and belief, Clean Focus finances, owns and operates solar power installations throughout the United States and the Americas.

10.     On information and belief, sometime prior to November 2013, Clean Focus entered into one or more contractual or other arrangements whereby another entity, Redwood Solar Development, LLC ("Redwood"), a Delaware corporation with a principal place of business located in Las Vegas, Nevada, acquired an ownership or other beneficial interest in each of the nine solar energy projects being developed by Clean Focus.  On information and belief, Redwood, at all times material hereto, acted on behalf of, in concert with, and/or at the direction of, Clean Focus in connection with any or all of its activities associated with the nine solar projects at issue.

11.     On information and belief, sometime prior to November 2013, on each of the nine projects, Redwood entered into an Engineering, Procurement and Construction (EPC) Contract with ACE whereby ACE agreed to design, build and initially operate the nine solar projects at issue for the benefit of Redwood/Clean Focus.

12.     In the summer of 2011, ACE began discussions and negotiations with SunLink to supply the SunLink MMS system on each of the nine projects.  The projects were, however, substantially delayed as referenced above.  It was not until October 15, 2013, that ACE and SunLink finally executed nine sales contracts, one for each of the projects, and all containing the same terms and conditions with the exception of the specific nature and amount of product to be furnished, and the sales price.

13.     Each of the sales contracts requires ACE to furnish a Payment Bond from a duly authorized surety, for 100% of the value of the sales contract between ACE and SunLink.

14.     There were no delivery and/or construction schedules furnished to SunLink by ACE at the time the sales contracts were entered into in mid-October 2013 as the projects were still effectively in suspense.  Pursuant to the sales contracts, "lead times" for delivery of SunLink's products are "approximate" and SunLink is not responsible for delays caused by, among other things, "government regulation, transportation delay, or any other act or cause beyond the reasonable control [SunLink]."

15.     Despite having executed sales contracts with ACE, SunLink did not immediately received notice to proceed on any of the projects.  The initial notice to proceed on some, but not all, of the projects did not occur until December/January 2014.  On a number of the projects, SunLink did not receive notice to proceed until after it had commenced production; and on others, formal notice was never properly effected.  ACE's delayed project commencement

pushed the projects into a particularly harsh winter on Cape Cod, it also pushed the manufacture of certain required SunLink equipment in China into the Chinese New Year. This latter consequence completely halted the China supply chain for necessary components of the SunLink MMS systems being installed on the Projects.

16.      Change Orders were eventually agreed upon in 2014 by and between ACE and SunLink for a sharing of the cost to allow for the expedited delivery of products manufactured outside of the U.S. SunLink met or exceeded the delivery schedules ultimately agreed upon by ACE and SunLink in 2014 for all of SunLink's products on all nine projects.

17.      ACE has fully and unconditionally accepted and installed all of SunLink's products furnished on all of the nine projects. Construction of all nine projects was completed in June 2014.

18.      On September 30, 2014, the "partnership" of CVEC, the Town of Dennis, Clean Focus (Redwood) and ACE officially dedicated the entire nine project, 22MW portfolio of solar arrays located on Cape Cod and Martha's Vineyard. Massachusetts Governor Deval Patrick was present at the dedication and praised all parties involved. Stanley Chin, the CEO of Clean Focus, the owner of the projects stated, "It was terrific partnering with this exceptional team of professionals to bring clean, reliable and renewable solar electricity to Massachusetts – contributing to the health and vibrancy of this region." For his part, CVEC's president stated the following: "Our outstanding partners, Clean Focus and American Capital Energy, have demonstrated significant expertise and skill in deploying these valuable solar assets." CVEC, the Town of Dennis, Clean Focus and ACE have had full use and benefit of all nine projects now for several months.

6

into a particularly harsh winter on Cape Cod, it also pushed the manufacture of certain required SunLink equipment in China into the Chinese New Year. This latter consequence completely halted the China supply chain for necessary components of the SunLink MMS systems being installed on the Projects.

16.     Change Orders were eventually agreed upon in 2014 by and between ACE and SunLink for a sharing of the cost to allow for the expedited delivery of products manufactured outside of the U.S. SunLink met or exceeded the delivery schedules ultimately agreed upon by ACE and SunLink in 2014 for all of SunLink's products on all nine projects.

17.     ACE has fully and unconditionally accepted and installed all of SunLink's products furnished on all of the nine projects. Construction of all nine projects was completed in June 2014.

18.     On September 30, 2014, the "partnership" of CVEC, the Town of Dennis, Clean Focus (Redwood) and ACE officially dedicated the entire nine project, 22MW portfolio of solar arrays located on Cape Cod and Martha's Vineyard. Massachusetts Governor Deval Patrick was present at the dedication and praised all parties involved. Stanley Chin, the CEO of Clean Focus, the owner of the projects stated, "It was terrific partnering with this exceptional team of professionals to bring clean, reliable and renewable solar electricity to Massachusetts – contributing to the health and vibrancy of this region." For his part, CVEC's president stated the following: "Our outstanding partners, Clean Focus and American Capital Energy, have demonstrated significant expertise and skill in deploying these valuable solar assets." CVEC, the Town of Dennis, Clean Focus and ACE have had full use and benefit of all nine projects now for several months.

6

19.    The nine SunLink sales contracts for the "portfolio" of nine projects on Cape Cod and Martha's Vineyard have an aggregate contract value of more than $9M.  SunLink has been paid, however, only approximately $2.4M on an aggregated basis to date, leaving a balance due under the nine sales contracts of approximately $6.6M, excluding late fees due under the sales contracts of $1.5% per month, attorneys' fees, interests and costs.

### Count I – Tisbury Solar Project
**(Action on Tisbury Payment Bond)**

20.    SunLink reasserts and incorporates by reference herein the allegations contained in paragraphs 1 through 19 of this Complaint as if each were separately and specifically realleged herein.

21.    The Town of Tisbury Solar Project (the "Tisbury Solar Project"), the product of a so-called "Public/Private Partnership," is situated on property owned by a "county, city, town, district or other political subdivision of the Commonwealth," and is for the ultimate benefit of the Town of Tisbury and the citizens/rate payers within Tisbury and the other municipal members of CVEC.  The Tisbury Solar Project is a "public work" as contemplated in G.L. c. 149, § 29.

22.    On or about December 16, 2013, Arch, as Surety, issued a Payment Bond, No. SU1124970, in connection with the Tisbury Solar Project to insure that subcontractors on the project, such as SunLink, who furnished labor and/or materials on the Tisbury Solar Project would be paid in full (the "Tisbury Payment Bond").  ACE is identified as the Contractor/Principal on the Tisbury Payment Bond; and Redwood is identified as the Owner on the Tisbury Payment Bond.  A true and accurate copy of the Tisbury Payment Bond is attached hereto as **Exhibit A**.

23.     On or about October 15, 2013, SunLink and ACE entered into a sales contract for the Tisbury Solar Project whereby SunLink agreed to design, produce and deliver its MMS system for use on the Tisbury Solar Project (the "Tisbury Sales Contract"). SunLink agreed to furnish its materials for an original contract amount of $422,611.20, plus taxes, shipping and handling, and subject to amounts to be added or deducted for changes in the work and/or materials. A true and accurate copy of the Tisbury Sales Contract is attached hereto as **Exhibit B.**

24.     The work and/or materials called for under the Tisbury Sales Contract were changed at the direction of ACE. The net effect of all such changes, combined with all additional charges and other costs, and less credits due ACE on the Tisbury Solar Project, resulted in the Tisbury Sales Contract having an adjusted contract value of $511,251.45.

25.     Despite having unconditionally accepted all of SunLink's work and materials, having incorporated that work/material into the Tisbury Solar Project, and having the full use and benefit of SunLink's work and materials now for several months, ACE has made payments to date of only $5,916.56 on the Tisbury Sales Contract, leaving a balance due and owing SunLink under the Tisbury Sales Contract of $505,334.89, excluding late fees, attorneys' fees, interests and costs.

26.     SunLink is authorized to claim under the Tisbury Payment Bond as it has a direct contract with the Contractor/Principal, ACE, and because it sent a Claim, as defined in the Payment Bond, to Arch on or about August 5, 2014, which Claim Arch has acknowledged. Pursuant to the Tisbury Payment Bond, ACE, as Principal, and Arch, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink and against ACE.

27.     SunLink has not been paid in full for the work and/or materials it has performed/furnished on the Tisbury Solar Project, and, pursuant to G.L. c. 149, § 29, and/or Massachusetts common law, is thus entitled to recover under the terms of the Tisbury Payment Bond.

**Count II – Tisbury Solar Project**
**(Action on Tisbury Lien Dissolution Bond)**

28.     SunLink reasserts and incorporates by reference the allegations contained in paragraphs 1 through 27 of this Complaint as if each were separately and specifically realleged herein.

29.     On or about June 26, 2014, SunLink recorded in the Dukes Country Registry of Deeds, a Notice of Written Contract in connection with the Tisbury Solar Project, a copy of which is attached hereto as **Exhibit C**.

30.     On or about June 26, 2014, SunLink recorded in the Dukes Registry County of Deeds, a Statement of Account in connection with the Tisbury Solar Project, a copy of which is attached hereto as **Exhibit D**.

31.     On or about August 5, 2014, ACE dissolved the lien recorded by SunLink in connection with the Tisbury Solar Project by recording in the Dukes County Registry of Deeds, pursuant to G.L. c. 254, § 14, a Dissolution of Lien Bond issued by Arch, No. SU1128665, a copy of which is attached hereto as **Exhibit E** (the "Tisbury Lien Dissolution Bond"). SunLink was provided notice of this recording on or about August 20, 2014. Pursuant to the Tisbury Lien Dissolution Bond, ACE, as Principal, and Arch, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink against ACE, up to the penal sum of $505,334.89.

32.     SunLink has not been paid in full for its work and/or materials performed/furnished on the Tisbury Solar Project, and is thus entitled to recover under the terms of the Tisbury Lien Dissolution Bond.

### Count III – Katama Solar Project
### (Action on Katama Payment Bond)

33.     SunLink reasserts and incorporates by reference herein the allegations contained in paragraphs 1 through 32 of this Complaint as if each were separately and specifically realleged herein.

34.     The Town of Edgartown, Katama Solar Project (the "Katama Solar Project"), the product of a so-called "Public/Private Partnership," is situated on property owned by a "county, city, town, district or other political subdivision of the Commonwealth," and is for the ultimate benefit of Katama and the citizens/rate payers within Katama and the other municipal members of CVEC. The Katama Solar Project is a "public work" as contemplated in G.L. c. 149, § 29.

35.     On or about November 25, 2013, Arch, as Surety, issued a Payment Bond, No. SU1124969, in connection with the Katama Solar Project to insure that subcontractors on the project, such as SunLink, who furnished labor and/or materials on the Katama Solar Project would be paid in full (the "Katama Payment Bond"). ACE is identified as the Contractor/Principal on the Katama Payment Bond; and Redwood is identified as the Owner on the Katama Payment Bond. A true and accurate copy of the Katama Payment Bond is attached hereto as **Exhibit F**.

36.     On or about October 15, 2013, SunLink and ACE entered into a sales contract for the Katama Solar Project whereby SunLink agreed to design, produce and deliver its MMS system for use on the Katama Solar Project (the "Katama Sales Contract"). SunLink agreed to furnish its materials for an original contract amount of $305,104.00, plus taxes, shipping and

handling, and subject to amounts to be added or deducted for changes in the work and/or materials. A true and accurate copy of the Katama Sales Contract is attached hereto as Exhibit G.

37.    The work and/or materials called for under the Katama Sales Contract were changed at the direction of ACE. The net effect of all such changes, combined with all additional charges and other costs, and less credits due ACE on the Katama Solar Project, resulted in the Katama Sales Contract having an adjusted contract value of $389,947.73.

38.    Despite having unconditionally accepted all of SunLink's work and materials, having incorporated that work/material into the Katama Solar Project, and having the full use and benefit of SunLink's work and materials now for several months, ACE has made payments to date of only $379,896.65 on the Katama Sales Contract, leaving a balance due and owing SunLink under the Katama Sales Contract of $9,438.85, excluding late fees, attorneys' fees, interests and costs.

39.    SunLink is authorized to claim under the Katama Payment Bond as it has a direct contract with the Contractor/Principal, ACE, and because it sent a Claim, as defined in the Payment Bond, to Arch on or about August 5, 2014, which Claim Arch has acknowledged. Pursuant to the Katama Payment Bond, ACE, as Principal, and Arch, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink and against ACE.

40.    SunLink has not been paid in full for the work and/or materials it has performed/furnished on the Katama Solar Project, and, pursuant to G.L. c. 149, § 29, and/or Massachusetts common law, is thus entitled to recover under the terms of the Katama Payment Bond.

<u>Count IV – Katama Solar Project</u>
**(Action on Katama Lien Dissolution Bond)**

41.     SunLink reasserts and incorporates by reference the allegations contained in paragraphs 1 through 40 of this Complaint as if each were separately and specifically realleged herein.

42.     On or about June 30, 2014, SunLink recorded in the Dukes Country Registry of Deeds, a Notice of Written Contract in connection with the Katama Solar Project, a copy of which is attached hereto as **Exhibit H.**

43.     On or about June 30, 2014, SunLink recorded in the Dukes Registry County of Deeds, a Statement of Account in connection with the Katama Solar Project, a copy of which is attached hereto as **Exhibit I.**

44.     On or about August 5, 2014, ACE dissolved the lien recorded by SunLink in connection with the Katama Solar Project by recording in the Dukes County Registry of Deeds, pursuant to G.L. c. 254, § 14, a Dissolution of Lien Bond issued by Arch, No. SU1128661, a copy of which is attached hereto as **Exhibit J** (the "Katama Lien Dissolution Bond"). SunLink was provided notice of this recording on or about August 20, 2014. Pursuant to the Katama Lien Dissolution Bond, ACE, as Principal, and Arch, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink against ACE, up to the penal sum of $9,438.85.

45.     SunLink has not been paid in full for its work and/or materials performed/furnished on the Katama Solar Project, and is thus entitled to recover under the terms of the Katama Lien Dissolution Bond.

## Count V – Nunnepog Solar Project
### (Action on Nunnepog Payment Bond)

46.     SunLink reasserts and incorporates by reference herein the allegations contained in paragraphs 1 through 45 of this Complaint as if each were separately and specifically realleged herein.

47.     The Town of Edgartown, Nunnepog Solar Project (the "Nunnepog Solar Project"), the product of a so-called "Public/Private Partnership," is situated on property owned by a "county, city, town, district or other political subdivision of the Commonwealth," and is for the ultimate benefit of the Nunnepog and the citizens/rate payers within Nunnepog and the other municipal members of CVEC. The Nunnepog Solar Project is a "public work" as contemplated in G.L. c. 149, § 29.

48.     On or about November 25, 2013, Arch, as Surety, issued a Payment Bond, No. SU1124968, in connection with the Nunnepog Solar Project to insure that subcontractors on the project, such as SunLink, who furnished labor and/or materials on the Nunnepog Solar Project would be paid in full (the "Nunnepog Payment Bond"). ACE is identified as the Contractor/Principal on the Nunnepog Payment Bond; and Redwood is identified as the Owner on the Nunnepog Payment Bond. A true and accurate copy of the Nunnepog Payment Bond is attached hereto as **Exhibit K**.

49.     On or about October 15, 2013, SunLink and ACE entered into a sales contract for the Nunnepog Solar Project whereby SunLink agreed to design, produce and deliver its MMS system for use on the Nunnepog Solar Project (the "Nunnepog Sales Contract"). SunLink agreed to furnish its materials for an original contract amount of $346,104.00, plus taxes, shipping and handling, and subject to amounts to be added or deducted for changes in the work and/or

materials. A true and accurate copy of the Nunnepog Sales Contract is attached hereto as Exhibit L.

50.     The work and/or materials called for under the Nunnepog Sales Contract were changed at the direction of ACE. The net effect of all such changes, combined with all additional charges and other costs, and less credits due ACE on the Nunnepog Solar Project, resulted in the Nunnepog Sales Contract having an adjusted contract value of $424,918.09.

51.     Despite having unconditionally accepted all of SunLink's work and materials, having incorporated that work/material into the Nunnepog Solar Project, and having the full use and benefit of SunLink's work and materials now for several months, ACE has made payments to date of only $423,464.86 on the Nunnepog Sales Contract, leaving a balance due and owing SunLink under the Nunnepog Sales Contract of $1,259.39, excluding late fees, attorneys' fees, interests and costs.

52.     SunLink is authorized to claim under the Nunnepog Payment Bond as it has a direct contract with the Contractor/Principal, ACE, and because it sent a Claim, as defined in the Payment Bond, to Arch on or about August 5, 2014, which Claim Arch has acknowledged. Pursuant to the Nunnepog Payment Bond, ACE, as Principal, and Arch, as Surety, are jointly and severally liable to SunLink for all sums adjudged in favor of SunLink and against ACE.

53.     SunLink has not been paid in full for the work and/or materials it has performed/furnished on the Nunnepog Solar Project, and, pursuant to G.L. c. 149, § 29, and/or Massachusetts common law, is thus entitled to recover under the terms of the Barnstable Payment Bond.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff SunLink Corporation requests the following relief from judgment:

a.     with respect to Count I, that the Court enter judgment in favor of SunLink and against ACE and Arch, jointly and severally, in the amount of $505,334.89, plus late fees, attorneys' fees, interest and costs;

b.     with respect to Count II, that the Court enter judgment in favor of SunLink and against ACE and Arch, jointly and severally, in the amount of $505,334.89;

c.     with respect to Count III, that the Court enter judgment in favor of SunLink and against ACE and Arch, jointly and severally, in the amount of $9,438.85, plus late fees, and attorneys' fees, interest and costs;

d.     with respect to Count IV, that the Court enter judgment in favor of SunLink and against ACE and Arch, jointly and severally, in the amount of $9,438.85;

e.     with respect to Count V, that the Court enter judgment in favor of SunLink and against ACE and Arch, jointly and severally, in the amount of $1,259.39, plus late fees, and attorneys' fees, interest and costs;

f.     that the Court enter such other and further relief as the Court may deem just.

## JURY DEMAND

Plaintiff SunLink Corporation hereby demands a trial by jury on all claims.

Plaintiff,

SUNLINK CORPORATION,

By its attorneys,

Paul J. Murphy (BBO 363490)
David G. Thomas (BBO 640854)
Greenberg Traurig LLP
1 International Place
Boston, MA 02110
617-310-6000
murphyp@gtlaw.com

Dated:  October 20, 2014

16

## VERIFICATION

I, Christopher Tilley, CEO of SunLink Corporation, having been duly sworn, do hereby state and verify that all factual allegations set forth herein are true and accurate based upon my personal knowledge and involvement in the activities described, excepting only those matters which are provided on information and belief.  Where I have not been personally involved, I am relying on information provided to me by individuals with personal knowledge who report to me in the ordinary course.

By: _____

Title:  CEO

Date:  October 17, 2014

17

# EXHIBIT B

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| SUNLINK CORPORATION, )<br><br>Claimant, )<br><br>v. )<br><br>AMERICAN CAPITAL ENERGY, INC. )<br><br>Respondent. ) | AAA No. 01-14-0001-7516 |

## CLAIMANT SUNLINK CORPORATION'S MEMORANDUM IN OPPOSITION TO RESPONDENT'S MOTION TO AMEND SCHEDULING ORDER NO. 1

Claimant SunLink Corporation ("SunLink") requests that the Arbitrator deny Respondent American Capital Energy, Inc.'s ("ACE") Motion to Amend Scheduling Order No. 1 (the "Motion") insofar as:

(i)     ACE's Motion is filed late and with the singular, admitted purpose of delaying these proceedings until a mediation can occur in a Superior Court Civil Action to which SunLink is not even a party;

(ii)     ACE's Motion is premised upon an alleged claim of over breadth in SunLink's discovery requests, when SunLink's requests are driven entirely by ACE's so-called "Thirteenth Affirmative Defense" (essentially ACE's counterclaim here) seeking "offset damages" of approximately $8M against SunLink;

(iii)     ACE has still not filed written responses/objections to ACE's Request for Production of Documents served January 30, 2015, has not produced a single document to SunLink in the proceedings to date, and has refused to respond to SunLink's repeated requests to confirm an electronically stored information (ESI) protocol the parties discussed and generally agreed to in mid-February; and

(iv)     ACE has recently admitted in verified pleadings filed in Superior Court proceedings initiated by ACE against the Owners/Developers of the nine solar projects, that the delays allegedly experienced on the Projects, and the resulting "offset damages" ACE seeks here against SunLink, were in fact caused not by ACE or any of its subcontractors/suppliers, but by the acts/omissions of the Owners/Developers of the Projects, Clean Focus Corporation ("Clean Focus") and Redwood Solar Development, LLC ("Redwood").

Put simply, ACE cannot have it both ways.  Specifically, ACE cannot, on the one hand, plead an affirmative defense/counterclaim for breach of contract against SunLink premised upon alleged contract negotiations and a prior course of dealing between the parties "dating back to 2011" (see Respondent's Answer, Thirteenth Affirmative Defense, p. 7); and, on the other hand, deny SunLink legitimate discovery of the factual underpinnings upon which its defenses and counterclaims are predicated.[1]  To be blunt, ACE's entire defense here, as articulated in the Thirteenth Affirmative Defense, is constructed to provide ACE the opportunity to delay these proceedings and fund its litigation against the Owners/Developers, Clean Focus and Redwood, a fact made clear by its Motion and by ACE's recent verified pleadings filed in Superior Court. See infra, ¶ 8, below.  SunLink is not required, however, to stand idly by and delay recovery of the amounts it is unquestionably owed on these Projects, while ACE pursues recovery from one or more third parties in proceedings entirely unrelated to SunLink.

In short, ACE's Motion must be denied, and ACE must be compelled to respond to SunLink's document requests, and to provide the requested documents on a schedule that will neither prejudice SunLink, nor allow any slippage in the hearings currently scheduled for mid-May.  Alternatively, if ACE simply refuses to participate in the required discovery, as is presently the case, the Arbitrator should entertain a motion by SunLink to strike ACE's Thirteenth Affirmative Defense, direct a finding of liability in favor of SunLink, and proceed with evidentiary hearings on the issues of SunLink's damages and SunLink's causes of action sounding in fraud and violation of G.L. 93A.

---

[1] Approximately 93 of SunLink's 162 requests of which ACE complains actually seek the production of documents *directly relating to ACE's Thirteenth Affirmative Defense* (i.e., its claim of alleged "late" delivery by SunLink) and the alleged "offset damages" ACE claims against SunLink which the Arbitrator ordered ACE to "itemize" in Paragraph 3 of the Scheduling Order. See Claimant SunLink Corporation's First Request for Production of Documents from Respondent American Capital Energy, Inc. Nos. 60-62; 65-156.

2

In further support of its opposition to ACE's Motion, SunLink states as follows:

1.     Scheduling Order No. 1 dated January 20, 2015 was the product of a *joint* proposal submitted by the parties, and was issued following the preliminary hearing held January 13, 2015 with the Arbitrator.  Pursuant to the Arbitrator's direction in ¶ 3 of the Scheduling Order, on January 23, 2015, ACE provided its "itemization" of "costs, expenses and damages" alleged in its Thirteenth Affirmative Defense.  A true and accurate copy of ACE's January 23, 2015 itemization (without the invoices and other backup provided) is attached hereto as **Exhibit A**.  The materials include claims/damages sought against SunLink totaling approximately $8M and broken out into the following categories:  "subcontractor overtime; ACE direct labor; ACE overhead; SunLink change orders, liquidated damages; and lost SRECs."  See **Exhibit A.**

2.     On January 30, 2015, again pursuant to the Scheduling Order, the parties exchanged document requests.  A copy of SunLink's Requests for Production of Documents served upon ACE is attached as Exhibit A to ACE's Motion; attached hereto as **Exhibit B** is a true and accurate copy of ACE's Request for Production of Documents served upon SunLink. Both parties propose essentially "contention" requests for documents derived wholly from the allegations contained in the pleadings and other documents filed in the case.  As set forth above, at least 93 out of 162 requests of SunLink are specifically directed to ACE's claims, defenses and alleged damages of approximately $8M as set forth in the Thirteenth Affirmative Defense, and subsequently "itemized" at the Arbitrator's direction in Scheduling Order No. 1.

3.     On February 13, 2015, again as directed by the Arbitrator, the parties filed a *joint* status report concerning certain discovery issues.  No complaint or objection concerning the breadth of discovery sought by SunLink was raised by ACE.

4.    On February 17, 2015, counsel for SunLink and ACE held a conference call to discuss document discovery issues, including a protocol for ESI. During the call, a series of agreements were reached as to a workable protocol for document production. At no time during the call on February 17, 2015, did ACE raise any complaint or objection concerning the breadth of discovery sought by SunLink. On February 18, 2015, SunLink sent ACE a draft ESI protocol consistent with the parties' discussions, to which ACE has never responded despite repeated requests to do so. A true and accurate copy of counsel's draft ESI protocol sent to ACE on February 18, 2015 is attached hereto as **Exhibit C.**

5.    On Thursday, February 26, 2015 at 6:21 p.m., a full month after service of the supposedly offending document requests served by SunLink, after the filing of a joint status report with the Arbitrator, after a telephone call between counsel at which discovery protocols were discussed and seemingly agreed to, and on the eve of the date (Monday, March 2, 2015) by which the parties were to file their written responses to each other's document requests and commence actual production of documents, ACE emailed SunLink for the first time complaining of the breadth of SunLink's discovery.

6.    On March 2, 2015, in accordance with the Scheduling Order, SunLink filed its objections and specific written responses to ACE's Request for Production of Documents, a true and accurate copy of which is attached hereto as **Exhibit D.** Also on March 2, 2015, SunLink commenced actual production of documents in its possession responsive to ACE's requests. As of this writing, SunLink has produced approximately 13,305 pages of documents to ACE, and intends to conclude its rolling production by early next week. As of this writing ACE has not served <u>any</u> written responses to SunLink's discovery requests, nor has ACE produced a single document to SunLink in discovery.

4

7.    Despite being in complete non-compliance with the Scheduling Order, and offering no justification other than its own perception of the issues, ACE blithely asks the Arbitrator to "phase the discovery and arbitration in this case to limit the initial discovery and initial arbitration hearing to the preliminary issues (as defined by ACE)." In the Motion, however, ACE defines the "relevant evidence" pertaining to the issues it raises as follows: *"the relevant evidence pertaining to this issue consists of the contracts, evidence pertaining to the interpretation of the contracts (including pre-contract communications regarding timing and prior course of dealing), and the delivery schedules and dates."* See Motion, ¶ 7. In other words -- all of the evidence and facts "dating back to 2011" upon which ACE predicates its Thirteenth Affirmative Defense, and that which SunLink seeks by way of its discovery. What ACE attempts here, of course, is to define an arbitrary and artificially narrow series of what it calls "preliminary issues," deny SunLink meaningful discovery on these issues, then put on a case in which ACE selectively advances the issues to be tried and the evidence to be offered. Respectfully, that is not how this process goes.

8.    The real reason behind ACE's Motion is revealed in Paragraphs 11 and 12. ACE is, purely and simply, trying to buy time by its Motion to attempt to settle its case with Clean Focus/Redwood with no guarantee that SunLink will be the beneficiary. Attached hereto as **Exhibit E** is a true and accurate copy of ACE's "Verified Complaint with Prayers for Injunctive Relief" filed in the Barnstable Superior Court, Civil Action No. 1572CV00025, on January 20, 2015 against Clean Focus and Redwood. The Barnstable Action covers six of the nine Projects at issue (those located in Barnstable County). On information, ACE has filed a substantially similar, and also verified, pleading in Dukes County covering the remaining three Projects located in that county, making up the total of nine projects at issue here.

5

In its Verified Complaint, ACE's principal, Art Hennessy, alleges, among other things, that:

1.  ACE fully performed and timely completed all obligations under its "EPC contracts" with Clean Focus and Redwood. See **Exhibit E**, Paragraphs 20-67.

2.  Despite ACE's having fully performed its obligations under the contracts, Redwood, "and its affiliate Clean Focus," have "orchestrated the complex payment structure to avoid Redwood's obligations under the EPC contract." **Id**, ¶ 72.

3.  "Redwood caused the delays for which it blames ACE." **Id**, ¶¶ 78-105.

4.  "Because the major delays were caused by [Clean Focus and Redwood's] failures under the EPC contract with regard to the NStar interconnection, ACE has rejected the liquidated damages in the contact adjustment which the Defendants have sought to impose on ACE as a pre-textual basis to not pay ACE for all of its work on the solar projects." **Id**, ¶ 103.

5.  Redwood and Clean Focus breached their contracts with ACE, breach implied covenants of good faith and fair dealing, were unjustly enriched, and have violated G.L. 93A. **Id**, Counts II-IV.

In other words, the "offset damages" ACE seeks to recover against SunLink are alleged in

ACE's verified pleadings in Barnstable Superior Court to be the product of delays occasioned by

the Owners, and not SunLink.

9.      There is nothing in the sales contracts between ACE and SunLink that conditions

ACE's payment obligations upon its receipt of payment under ACE's EPC contracts with Clean

Focus/Redwood.  None of the provisions of the EPC contracts between Clean Focus/Redwood

and ACE are incorporated into the sales contracts at issue in this arbitration proceeding.  Stated

more simply, ACE has no right to withhold payment to SunLink simply because the

Owners/Developers have refused to make payments which ACE alleges are due and owing under

its EPC contracts.  There is no "pay when paid" provision in Sunlink's Sales Contracts.  Yet, that is exactly what ACE has done and that unquestionably violates Massachusetts General Laws Chapter 93A.

10.     The fact that ACE may or may not end up mediating its disputes with the Owners/Developers on "April 1 and 2" is utterly irrelevant to this proceeding.  SunLink is not a party in any of the Superior Court proceedings commended by ACE, and will not be a participant in any upcoming mediation associated with those proceedings.  SunLink has commenced its own Superior Court proceedings to perfect claims it has made under various surety bonds ACE provided on the Projects at issue.  SunLink's Superior Court actions have been stayed pending the outcome of this Arbitration between SunLink and ACE, something which the parties expressly contracted for and which is the predicate to payment under the surety bonds.

11.     This arbitration proceeding, therefore, may well be "extremely impractical" for ACE (Motion ¶ 12, p. 5), particularly given its verified pleadings filed in Superior Court taking positions which directly contradict the positions it takes here.  Assuredly, however, from SunLink's perspective, this proceeding is most definitely not "the tail wagging the dog" (Motion, ¶ 12, p. 5).  No matter the clever euphemisms employed by ACE to attempt to dismiss these proceedings, a fair and speedy resolution (that which the parties contracted for and agreed to with the Arbitrator) is absolutely essential.  In fact, anything short of a speedy resolution of its claims completely deprives SunLink of the benefit of its bargain struck with ACE at the outset of these Projects, and will only further delay SunLink in its efforts to recover against ACE's surety bonds, which will, effectively, insure payment of amounts properly adjudged in SunLink's favor.

12.     If ACE were seriously interested in curtailing/avoiding unnecessary legal fees and costs, it would simply admit here to owing SunLink for the materials it undisputedly purchased,

7

installed, and put into uninterrupted, continuous service beginning June of 2014 on the Projects -

- something which ACE has effectively already admitted in its verified pleadings filed in

Superior Court.  See ¶ 8, above.

13.    If ACE continues to refuse to comply with the Scheduling Order, SunLink

respectfully requests that the Arbitrator entertain the imposition of sanctions, including, at a

minimum, a motion to strike ACE's Thirteenth Affirmative Defense, direct liability under the

sales contracts in SunLink's favor, and truncate the upcoming hearings as necessary to resolve

any legitimate, remaining issues pertinent to the swift entry of an award.

WHEREFORE, for all of the foregoing reasons, SunLink respectfully requests that the

Arbitrator deny ACE's Motion to Amend the Scheduling Order, enter an order (i) compelling

ACE to respond to SunLink's document requests, and (ii) to immediately commence production

of responsive documents on a reasonable schedule that will insure that the hearings in May go

forward as currently planned.

Alternatively, SunLink respectfully requests that the Arbitrator entertain a motion by

SunLink to strike ACE's Thirteenth Affirmative Defense, direct liability under the sales

contracts in favor of SunLink, and truncate the upcoming hearings to address exclusively those

issues which would remain outstanding, such as SunLink's damages, and ACE's liability under

any of the remaining causes of action in the Demand sounding in fraud, violation of G.L. c. 93A,

etc.

8

Claimant,

SUNLINK CORPORATION,

By its attorneys,

Paul J. Murphy
David G. Thomas
Greenberg Traurig LLP
1 International Place
Boston, MA 02110
617-310-6000
murphyp@gtlaw.com
thomasda@gtlaw.com

and

Mark Ginalski
SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA  94901
mark.ginalski@sunlink.com

Dated:  March 16, 2015

CERTIFICATE OF SERVICE
I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD
FOR EACH OTHER PARTY BY MAIL email
(BY HAND) ON  3/16/15

9