# EXHIBIT DD

AMERICAN ARBITRATION ASSOCIATION

```
-----------------------------------------------------------x
                                              :
SUNLINK CORPORATION,                          :
                                              :
               Claimant,                      :
                                              :
      -and-                                   :      Case No. 01-14-0001-7516
                                              :
                                              :
AMERICAN CAPITAL ENERGY, INC.,                :
                                              :
               Respondent.                    :
-----------------------------------------------------------x
```

## PARTIAL FINAL AWARD

I, the undersigned Arbitrator, having been designated in accordance with the arbitration agreements entered into by the above-named parties dated October 15, 2013, and having been duly sworn, and having heard the proofs and allegations of the parties, hereby AWARD as follows:

## I.   INTRODUCTION

On or about October 20, 2014, Claimant SunLink Corporation ("SunLink") filed a Demand for Arbitration against Respondent American Capital Energy, Inc. ("ACE"), asserting claims for breach of contract (Count I), quantum meruit (Count II), intentional misrepresentation (Count III), negligent misrepresentation (Count IV), and violation of G.L. c. 93A, §§ 2, 11 (Count V), arising from ACE's failure to pay for solar panel mounting systems installed on sites on Cape Cod and Martha's Vineyard. SunLink alleged damages of $8.1 million, later refined to $8,260,961.41,[1] plus multiple damages, attorneys' fees and costs under Chapter 93A.

---

[1] Including interest through August 25, 2015 (the outside date agreed to by the parties for issuance of this Partial Final Award). (*See* SunLink Post-Hearing Memorandum, at p. 47).

In response to the Demand, ACE denied all material allegations and asserted various affirmative defenses, including a right of setoff (thirteenth affirmative defense) based on SunLink's "late delivery" of its products. Pursuant to Scheduling Order No. 1 ("SO"), stipulated to by the parties, ACE later itemized the "costs, expenses and damages" encompassed by its setoff claim (*see* ACE Exh. 4, asserting charges of $7,941,196 for subcontractor overtime, ACE labor and overhead, change orders, liquidated damages, and lost tax (Solar Renewable Energy Certificate – "SREC") credits).

Seven days of hearings were conducted on May 13 through May 20, 2015, in Boston, Massachusetts, chronicled in testimony from ten witnesses and approximately 280 exhibits. Following the hearings, and at the parties' request, I received post-hearing briefs and carefully reviewed the transcripts (over 1,570 "mini-script" pages), exhibits and relevant case law. Set forth below is my decision on the contested issues.

## II.   MATERIAL FACTUAL DETERMINATIONS

The parties requested, and I agreed to prepare, a "reasoned Award which describes the basis for the Arbitrator's decision, but without a comprehensive description of all facts and legal issues." (SO, ¶ 14)(emphasis added). Accordingly, I will focus on the salient facts and issues in this large, complex proceeding, avoiding, where possible, a full description of matters such as ownership, transaction and tax structures, construction details and near daily email traffic between the parties.

ACE is a Massachusetts-based corporation specializing in the development of commercial renewable energy projects. In 2007, various cities and towns on Cape Cod and Martha's Vineyard banded together and formed a cooperative called the Cape & Vineyard Electric Cooperative, Inc. ("CVEC") to develop photovoltaic (PV) energy projects. Some years

later, CVEC awarded approximately 16 megawatts (MW) of PV development to ACE for projects to be situated largely on capped landfills in Barnstable, Brewster, Chatham, Eastham, Harwich, Katama, Nunnepog, and Tisbury. The Town of Dennis separately awarded development rights to ACE for a substantially similar 6 MW solar array (these nine projects, collectively, the "CVEC Project or Projects"). In 2013, ACE transferred its rights to entities in the business of structuring, financing and operating solar power installations called Clean Focus Corporation ("Clean Focus") and Redwood Solar Development LLC ("Redwood"), with ACE assuming the role of the Engineering, Procurement and Construction (EPC) contractor pursuant to an EPC Agreement with Redwood. (ACE Exh. 33).

SunLink is a corporation with its principal place of business in California. SunLink sells racking or mounting systems for solar panels (modules). SunLink had sold ballasted ground-mounted solar (BGMS) systems or large ground-mounted solar (LGMS) systems to ACE in the past, and, as early as 2012, it was asked by ACE to provide quotations for mounting systems for the CVEC Projects. (SL Exh. 4, proposed Master Sales Contract and Volume Price Agreement, dated March 5, 2012).[2] SunLink does not sell solar modules or inverters, or install or construct the solar arrays. Rather, SunLink provides what is commonly referred to in the industry as the "balance of system," which for BGMS systems consists of precast or poured-in-place concrete ballasts, steel A-frames, rails on which the solar panels rest, and related hardware, and for LGMS systems consists of posts, A-frames, rails, and hardware.

On or about October 17, 2013, the parties executed nine "Sales Contracts" for the CVEC Projects (each dated October 15, 2013), under which SunLink agreed to sell and ACE agreed to

---

[2] The March 5, 2012 proposal was never implemented by the parties before it expired at the end of 2012. Thereafter, the CVEC Project was effectively put on hold while ACE pursued financing and an interconnection agreement with the local utility. There were also regulatory changes that disrupted the solar power market in Massachusetts. (*See* ACE Exh. 1 (letter dated June 6, 2013 from ACE's general counsel to creditors and others addressing delays and discussing cash flow problems caused by regulatory changes announced by the Massachusetts DOER)).

purchase GMS products for each CVEC site. (SL Exh. 233)(the "Agreement or Agreements").

The following terms and conditions are most important for this proceeding and are substantially

identical across the nine Agreements.[3]

### Product Lead Time

The Agreements contained two boxes with information about product "lead time," as

follows:

**Contract Information**

| Credit Approval | All orders subject to credit approval before manufacturing. |
|---|---|
| FOB Point | AZ, CA, CO, CT, IN, MN, OH, PA, TX and/or WV. |
| Shipping and Handling Terms | Shipping and Handling is pre-paid by SunLink and added to the invoice. |
| Product Lead Time | All specified lead times are from receipt of signed sales contract, down payment, notice to proceed and proof of payment bond is in place at 100% of contract value. |

**Product Information**

| Line | Product | Specifications | | Unit Price | Qty | Total |
|---|---|---|---|---|---|---|
| 1 | Ballasted Ground Mount System | Site Name | C-Vec Chatham Site | $661,359.60 | 1 | $661,359.60 $102.60/Module $0.3600/Watt |
| | | Wind Speed | 120 mph | | | |
| | | Wind Exposure | C | | | |
| | Lead Time: 6 weeks | Occupancy | | | | |
| | FOB Points: California Minnesota Pennsylvania | Topo. Factor | 1.00 | | | |
| | | Snow Load | 35 psf | | | |
| | | Tilt Angle | 25° | | | |
| | | Module Name | SunPreme GX 285W | | | |
| | | No. of Modules | 6,446 | | | |
| | | String Length | 11 | | | |
| | | Size | 1,837.11 kW | | | |
| | | Array Layout Drawing 1003562-CVECCHATHAM-081513-ENG-R11 | | | | |

---

[3] Under a separate Master Sales Contract and Volume Price Agreement, SunLink sold BGMS systems to ACE for solar projects in Mashpee and Duxbury, Massachusetts. (ACE Exhs. 76, 77 ("Mashpee and Duxbury Projects")). SunLink was paid in full for the Mashpee and Duxbury Projects and there is no claim associated with those Projects advanced in this case. They were nonetheless administered by the parties in conjunction with the CVEC Projects.

(Agreements, pp. 2, 3 (Chatham site used as an example)).

Product lead time for the CVEC Projects was therefore clearly expressed as six weeks (with the exception of Katama, which was eight weeks).

It was undisputed at the hearings that the term product "lead time" as used in the Agreements refers to the time between SunLink's receipt of (i) a signed contract, (ii) deposits, (iii) bonds, and (iv) notices to proceed, and the commencement of deliveries. (Tr., Day 1, 51:23-52:21; 70:8-12; 111:1-18 [Tilley]; Tr., Day 2, 462:13-464:2 [Purcell]; Tr., Day 3, 629:23-630:11 [Eastwood]; Tr., Day 3, 690:7-20 [Prasad]; Tr., Day 5, 1063:9-1064:3 [Osgood]). Product lead time is not the time by which all products will be delivered. (Tr., Day 1, 52:22-53:24; 70:8-12; 111:1-18 [Tilley]; Tr., Day 5, 1063:9-1064:3 [Osgood]).[4]

The Agreements also provide that "lead times as set forth in the 'Proposal' are approximate." (Agreements, p. 6 at § 9). The "Proposal" referred to are pages 2 through 4 of the Agreement. (Tr., Day 1, 65:15-19 [Tilley]).

### Payment Terms

The sales price for SunLink's products was set forth in each Proposal and payment was required in "cash, check or wire transfer in accordance with the Payment Terms" in Appendix B to the Agreements. (Agreements, p. 5 at § 3)). Appendix B provided:

1.  SELLER STANDARD PAYMENT TERMS

    a. 1.40% of LUMP SUM SALES PRICE with order. Purchaser provides check with signed Sales Contract or Purchase Order. Order fulfillment begins with receipt of payment, in addition to signed Sales Contract and approved credit.

    b. 98.60% of LUMP SUM SALES PRICE shall be due upon shipment unless otherwise agreed by the parties, in writing, in a bill-and-hold or multiple-elements arrangement.

        i. Seller will invoice Purchaser and provide an itemized invoice.

---

[4] *But see* ACE's thirteenth affirmative defense (asserting that delivery time in Agreements was six weeks).

      ii. Terms are net 45 days from date of invoice.

      iii. Payments made more than 45 days late shall be charged a late fee of one and one-half percent of the outstanding balance due (1.5%) per month.

There were no "pay-if-paid" provisions in the Agreements (*i.e.*, payment to SunLink was not conditioned upon ACE receiving payment from the owner or any third party). Furthermore, there were no "flow down" provisions in the Agreements incorporating by reference any terms and conditions contained in ACE's EPC Agreement with Clean Focus and/or Redwood. (Tr., Day 1, 73:19-74:14; 112:19-113:2; 117:21-118:18 [Tilley]).

### Shipment and Delivery Terms

Under the Agreements, SunLink's systems were "furnished F.O.B. [Free on Board] San Leandro, California, Allen, Texas, or Carrolton, Texas (or any other location designated by [SunLink])." (Agreements, p. 6 at § 10). Remarkably, and despite critical time constraints and potential penalties imposed upon ACE (discussed further below) by the owners and/or CVEC, there was no delivery schedule incorporated in the Agreements. (Tr., Day 1, 70:8-12; 112:16:18 [Tilley]; Tr., Day 3, 617:21-618:5 [Eastwood]; Tr., Day 5, 1067:5-15 [Osgood]; Tr., Day 6, 1321:7-1322:19 [McLean]). There were also no "Buy American" provisions in the Agreements requiring the use of US manufacturers or products, which could potentially affect delivery times. (F.O.B. governs the transfer of title and risk of loss or damage; it does not refer to the place where the product was to be manufactured.) (Tr., Day 1, 120:18-121:10 [Tilley]; Agreements, p. 6 at § 12 (confirming that risk of loss and transfer of title passes upon delivery to F.O.B. points specified in Agreement)).

### Acceptance

SunLink's products were deemed "unconditionally accepted fifteen days after receipt." (Agreements, p. 6 at § 13)).

### Limitation of Liability

The parties agreed that, in "no event shall [SunLink] . . . be liable to [ACE] or any third party for any special, indirect, incidental, consequential or punitive damages, whether arising in contract, tort or otherwise, even if advised of the possibility of same." (Agreements, p. 8 at § 21.g.).

In October 2013, ACE also agreed to provide a $100,000 deposit for SunLink's ballast supplier to expedite the creation of forms and molds for the production of the approximately 18,000 ballasts required for the CVEC Projects. (Tr., Day 5, 1074:8-1076:1; 1077:16-1079:4 [Osgood]; *see also*, SL Exh. 32 (referencing "the down payment for the $100K for forms"); Tr., Day 1, 100:24-102:15; 107:1-108:5; 109:1-8 [Tilley]; SL Exh. 105 (January 20, 2014 email from ACE acknowledging "the $100,000 down payment" for ballasts.); SL Exh. 26 (referring to "initial payment of $100,000 that will permit [SunLink] to expedite production of the molds for the production of the concrete ballast"); Tr., Day 3, 697:2-698:3; 699:2-6 [Purcell] (SunLink was expecting $100,000 for ballast forms); Tr., Day 5, 912:13-913:21 [Ridgway] (describing need for ballast deposit to provide assurance that project was moving forward in light of the "false starts"); Tr., Day 6, 1292:6-1295:4; 1326:18-1327:2; 1329:5-7 [McLean] (agreeing that SunLink proposed to receive a $100,000 deposit, net 30 days and ACE "did it on better terms than net 30" and that he understood that "SunLink needed $100,000 to order forms").

As noted above, the Agreements required ACE to provide payment bonds, deposits and notices to proceed as preconditions for SunLink to initiate production. The dates on which ACE provided deposits and notices to proceed (NTP) under the Agreements are set forth in the chart below:

7

| Site | NTP | Deposit Date | Deposit Amount |
|---|---|---|---|
| Brewster | 9-Dec-13 | 16-Dec-13 | $10,705.95 |
| Chatham | 3-Jan-14 | 2-Jan-14 | $9,259.03 |
| Eastham | 3-Jan-14 | 2-Jan-14 | $7,458.28 |
| Harwich | 3-Jan-14 | 2-Jan-14 | $27,137.26 |
| Barnstable | 9-Dec-13 | 16-Dec-13 | $25,522.85 |
| Dennis | 9-Dec-13 | 16-Dec-13 | $34,273.49 |
| Tisbury | 3-Jan-14 | 2-Jan-14 | $10,416.56 |
| Katama | 16-Dec-13 | 2-Jan-14 | $10,416.56 |
| Nunnepog | 16-Dec-13 | 2-Jan-14 | $11,345.46 |

(SL Exhs. 56, 60, 66, 68, 80, 112, 155, 233, Tab 3).

ACE provided the $100,000 ballast deposit for the CVEC Projects on January 2, 2014.

(SL Exhs. 56, 60, 66, 68, 80, 112, 155, 233, Tab 3; Tr., Day 5, 1067:16-1068:2 [Osgood]).

### The Critical Issue: "Reasonable" Delivery Terms

The pivotal issue in this case is the time of performance – namely, when SunLink's

products were reasonably expected to be delivered in the absence of contractually-specified

dates. What follows here is a summary of the relevant exchanges between the parties respecting

delivery terms.

On August 1, 2013, two and a half months prior to the execution of the Agreements,

ACE sent SunLink a proposed ballast delivery schedule for the seven CVEC BGMS Projects

(Barnstable, Brewster, Chatham, Dennis, Eastham, Harwich, and Tisbury).[5] (SL Exh. 12

("ACE August 2013 Schedule"); Tr., Day 5, 1059:13-1060:7 [Osgood]). The ACE August

2013 Schedule was based on ACE's assumption that it would receive a notice to proceed from

the owners in August 2013. (Tr., Day 5, 1060:8-1061:21; 1062:3-6 [Osgood]).

The ACE August 2013 Schedule contemplated:

- deliveries commencing at the Chatham and Eastham sites on

---

[5] The Katama and Nunnepog sites were not landfills, so they could accommodate LGMS systems, which use submerged posts in lieu of concrete ballasts.

8

September 25, 2013;

- deliveries ending at the Dennis site on January 9, 2014;

- deliveries occurring five days per week;

- production of 17,460 ballasts (three different types);[6] and

- an approximate four week product lead time.

(SL Exh. 12; Tr., Day 3, 690:1-6 [Prasad]; Tr., Day 5, 1060:8-1061:21 [Osgood]). The
ACE August 2013 Schedule thus afforded SunLink approximately fifteen weeks to deliver just
the ballasts to seven of the nine CVEC Project sites. (SL Exh. 12; Tr., Day 1, 94:22-95:7
[Tilley]; Tr., Day 3, 690:21-691:2 [Prasad]; Tr., Day 5, 1064:19-22 [Osgood]).  Coupled with a
four week lead time, the ACE August 2013 Schedule would span nineteen weeks from deposit
and notice to proceed to final delivery of the ballasts. (Tr., Day 1, 94:22-95:7 [Tilley]; Tr., Day
3, 690:21-691:15 [Prasad]; Tr., Day 5, 1065:6-10 [Osgood]).  Regardless, ACE did not make
payment or issue a notice to proceed to SunLink in August 2013, and the parties never agreed to
or implemented the ACE August 2013 Schedule.  (Tr., Day 1, 90:15-92:1 [Tilley]).

The first post-contract delivery schedule was sent by ACE on January 8, 2014, almost
three months after execution of the Agreements. This schedule covered ballast and post
deliveries for the nine CVEC Project sites - the seven BGMS sites covered by the ACE August
2013 Schedule, plus the two LGMS sites at Nunnepog and Katama. (SL Exh. 87 ("ACE
January 8, 2014 Schedule"); Tr., Day 5, 1090:1-17 [Osgood]).  The ACE January 8, 2014
Schedule provided for:

- deliveries to the BGMS sites commencing in Barnstable and
  Dennis the week of January 17, 2014, and ending in Dennis the
  week of March 14, 2014; and

- deliveries of posts to the two CVEC LGMS Project sites

---
[6] Four types of ballasts were eventually required for the CVEC Projects.  (SL Exh. 13).

9

commencing the week of January 31, 2014 and ending the week of
February 14, 2014.

(SL Exh. 87; Tr., Day 5, 1090:1-17; 1100:22-1101:3 [Osgood]). SunLink did not agree to

the ACE January 8, 2014 Schedule, which reduced to eight weeks the time for SunLink to

deliver the ballasts and posts. (SL Exh. 90; Tr., Day 1, 152:1-153:3 [Tilley]).

On January 10, 2014, in response to ACE's January 8, 2014 Schedule, SunLink sent ACE

its version of a proposed delivery schedule for ballasts, posts and hardware for all nine CVEC

Project sites and for the Mashpee and Duxbury Projects. (SL Exh. 90 ("SunLink January 10,

2014 Schedule"); Tr., Day 2, 474:23-475:15 [Purcell]). The SunLink January 10, 2014 Schedule

proposed:

- deliveries commencing for the CVEC Projects at the Barnstable and
  Dennis sites the week of January 27, 2014;

- deliveries ending for the CVEC Projects at the Harwich site the
  week of May 5, 2014; and

- deliveries commencing and ending for the Mashpee and Duxbury
  Projects the weeks of April 28 and May 19, 2014, respectively.

(SL Exh. 90; Tr., Day 2, 474:23-475:15 [Purcell]).

The SunLink January 10, 2014 Schedule thus afforded SunLink fifteen weeks to deliver the

ballasts, posts and hardware to the nine CVEC Project sites, roughly in line with ACE's August

2013 (pre-contract, ballast only) Schedule. (SL Exhs. 12, 90; Tr., Day 2, 474:23-475:15

[Purcell]); Tr., Day 5, 1101:16-1103:13 [Osgood] (conceding that the SunLink January 10, 2014

Schedule and the ACE August 2013 Schedule each had durations of fifteen weeks)). Although

SunLink continuously advised ACE that it was "working to" the January 10, 2014 Schedule, *see*

SL Exh. 100; Tr., Day 1, 215:9-216:16 [Tilley]; Tr., Day 3, 718:16-21 [Purcell], ACE never

explicitly agreed to that schedule. (SL Exh. 99; Tr., Day 1, 156:18-157:8 [Tilley]).

Given ACE's disappointment with the January 10, 2014 Schedule, on or about January

10

16, 2014, SunLink sent ACE another proposed delivery schedule for all ballasts, posts and

hardware for the nine CVEC Project sites and the Mashpee and Duxbury Projects. (SL Exh.

100 ("SunLink January 16, 2014 Schedule")). The SunLink January 16, 2014 Schedule

proposed:

- deliveries commencing for the CVEC Projects at the Barnstable and Dennis sites the week of January 27, 2014;

- deliveries ending for the CVEC Projects during or before the last week of March 2014 (with the exception of deliveries ending at the Harwich site the week of April 7, 2014); and

- deliveries commencing and ending for the Mashpee and Duxbury Projects the weeks of March 10 and April 7, 2014, respectively.

(SL Exh. 100; Tr., Day 1, 162:16-165:10 [Tilley]; Tr., Day 2, 479:13-480:10 [Purcell]; Tr., Day

3, 623:7-624:15 [Eastwood]). The SunLink January 16, 2014 Schedule gave SunLink eleven

weeks to deliver all of the ballasts, posts and hardware to the nine CVEC Project sites (final

delivery by the week of April 7, 2014, but mostly before the last week of March 2014). (SL

Exh. 100; Tr., Day 2, 479:13-480:10 [Purcell]). This proposed schedule was conditioned on the

payment of an additional $400,000, and ACE rejected it (despite its assertion at the hearings

that $84 million in SREC credits were at risk if the CVEC Projects were not completed in June

2014). (SL Exh. 100, 101; Tr., Day 2, 479:13-480:10 [Purcell]; Tr., Day 1, 164:19-24; 167:19-

23 [Tilley]; Tr., Day 3, 626:7-10 [Eastwood]).

On January 24, 2014, SunLink sent ACE yet another proposed delivery schedule for all

ballasts, posts and hardware for the nine CVEC Project sites and the Mashpee and Duxbury

Projects. (SL Exh. 117 ("SunLink January 24, 2014 Schedule")). The SunLink January 24,

2014 Schedule proposed:

- deliveries commencing for the CVEC Project at the Dennis site the week of January 27, 2014;

- deliveries ending at all CVEC Project sites by the week of April 14 (except for the Harwich site where deliveries would end the week of April 21, 2014); and

- deliveries commencing and ending for the Mashpee and Duxbury Projects the weeks of April 21 and May 5, 2014, respectively.

(SL Exh. 117; Tr., Day 1, 177:6-179:16 [Tilley]; Tr., Day 5, 1112:3-10 [Osgood]). The SunLink January 24, 2014 Schedule thus afforded SunLink thirteen weeks to deliver all of the ballasts, posts and hardware to the nine CVEC Project sites (with final delivery of all products by the week of April 21, 2014, but mostly during the week of April 14, 2014). (SL Exh. 117; Tr., Day 2, 485:15-486:13 [Purcell]; Tr., Day 5, 1112:3-17 [Osgood]). SunLink informed ACE that it would cost an additional $147,000 for SunLink to implement the schedule. (SL Exh. 117; Tr., Day 2, 485:15-486:13 [Purcell]). SunLink also made clear to ACE that SunLink would continue to "work to" the SunLink January 10, 2014 Schedule until there was an agreement on the delivery schedule. (SL Exh. 117). ACE did not agree to the SunLink January 24, 2014 Schedule or pay the $147,000 for SunLink to implement it. (SL Exh. 121; Tr., Day 1, 179:17-180:4; 189:22-190:1 [Tilley]; Tr., Day 6, 1387:17-1388:2 [McLean]).

On or about January 28, 2014, SunLink sent ACE another proposed delivery schedule for all ballasts, posts and hardware for the nine CVEC Project sites and the Mashpee and Duxbury Projects. (SL Exh. 125 ("SunLink January 28, 2014 Schedule")). The SunLink January 28, 2014 Schedule was based on the SunLink January 24, 2014 Schedule, as revised to show expedited shipments of hardware for six of the CVEC Project sites (Dennis, Barnstable, Brewster, Chatham, Harwich, and Eastham). Similar to the SunLink January 24, 2014 Schedule, the SunLink January 28, 2014 Schedule proposed:

- deliveries commencing for the CVEC Projects at the Dennis site the week of January 27, 2014;

- deliveries ending for the CVEC Projects at the Harwich site the week of

12

> April 21, 2014; and
>
> - deliveries commencing and ending for the Mashpee and Duxbury Projects the weeks of April 21 and May 5, 2014, respectively.

(SL Exh. 125). The SunLink January 28, 2014 Schedule thus afforded SunLink thirteen weeks to deliver all of the ballasts, posts and hardware to the nine CVEC Project sites. Furthermore, like the SunLink July 24, 2014 Schedule, the SunLink January 28, 2014 Schedule was conditioned on an additional payment of $147,000. (SL Exh. 154). The parties never agreed to implement the SunLink January 28, 2014 Schedule, and ACE never paid the $147,000 to do so. (Tr., Day 1, 222:23-225:2 [Tilley]; Tr., Day 5, 1120:9-1222:1 [Osgood]; SL Exh. 134; Tr., Day 6, 1394:9-1396:9; 1405:22-1406:11 [McLean]).

While continuing to perform against the SunLink January 10, 2014 Schedule, SunLink offered a number of additional, expedited delivery options similar to those made earlier in January 2014. (SL Exh. 117; Tr., Day 1, 196:18-197:5 [Tilley]). The options were separated into categories for ballasts, hardware and mounting frames and included:

- For ballasts, SunLink gave ACE two options, with the potential for negotiating an in-between option. (Tr., Day 1, 197:6-198:1 [Tilley]). The more aggressive plan involved additional costs of between $350,000 and $550,000. (SL Exh. 132). The other schedule involved an additional cost of $150,000 and provided for all ballast deliveries to be completed by the first week of May 2014. (*Id*).

- Rails and hardware deliveries starting the week of February 24, 2014, and ending a few weeks after that date. (SL Exh. 132).

- SunLink provided ACE with three options for delivery of the A-frames. The first option was that 25% of the A-frames could be delivered by March 10, 2014 by air freight from China at a cost of $310,000. The remaining 75% of the mounting frames would be delivered starting on or about March 31, 2014 and would be completed in two to three weeks. The second option was that 50% of the A-frames would be delivered by March 17, 2014 by air freight from China at a cost of $584,000. The remaining 50% of mounting frames would be delivered starting on or about April 7, 2014 and would be completed within two to three weeks. The third option was that the A-frames would be delivered starting on March 24, 2014 and

13

would be completed within four weeks.  SunLink provided an additional option that 500 mounting frames could be manufactured domestically and delivered during the weeks of March 17 and March 31, 2014, at a cost of $25,000. (SL Exh. 132).

SunLink informed ACE that in order to execute any of these options, a decision (and payment) would have to be made promptly. (Tr., Day 1, 202:17-203:6 [Tilley]).  ACE did not accept any of the proposed options as stated. (Tr., Day 1, 203:7-18 [Tilley]).  Instead, ACE accepted a hybrid proposal for the expedited shipment of a portion of the mounting frames from China by air. (Tr., Day 1, 207:14-208:8 [Tilley]).  ACE and SunLink agreed to share the cost of the air freight equally.  (Tr., Day 1, 208:9-21 [Tilley]).

On February 28, 2014, in the context of another acceleration opportunity presented to ACE by SunLink, this time for the delivery of 1,608 ballasts, ACE accepted one of SunLink's options, albeit orally.  (Tr., Day 1, 234:7-22 [Tilley]; SL Exh. 162).

Ultimately, ACE signed the following change orders documenting the parties' arrangements and authorizing expedited delivery of mounting frames and ballasts:

| Date | Subject | Record Cite |
|------|---------|-------------|
| 2/17/14 | 50% split of frames from China by air (first two 10% shipments) | SL Exh. 234, Tab 1 |
| 2/25/14 | 50% split of frames from China by air (third 10% shipment) | SL Exh. 234, Tab 2 |
| 3/3/14 | Accelerate delivery of 1,608 ballasts from April to March (SunLink pays 20%) | SL Exh. 234, Tab 4 |
| 3/13/14 | Production and delivery of 180 ballasts on five Saturdays | SL Exh. 234, Tab 5 |
| 3/19/14 | Production and delivery of 80 ballasts (MBO) on six Sundays | SL Exh. 234, Tab 6 |

| 4/1/14 | Expediting ballasts from MBO/Scituate (by 4/16) | SL Exh. 234, Tab 8 |
| 4/21/14 | Ballast deliveries from Old Castle for Tisbury (by 4/16) | SL Exh. 234, Tab 9 |

Relying on these change orders, and ACE's corresponding commitment to pay for the products, SunLink expedited delivery of the ballasts, posts and hardware and completed "all major deliveries" for the CVEC Projects by April 18, 2014. (SL Exh. 203; Tr., Day 1, 270:21-272:19 [Purcell]).

**Evidence of SunLink's Actual Performance**

SunLink introduced into evidence an integrated spreadsheet which tracked and documented the date of all deliveries made by SunLink for the nine CVEC Projects. (SL Exh. 241). SunLink's expert witness on construction projects, Steven Collins, extracted the relevant delivery information from the contemporaneous project data contained in SunLink Exhibit 241, and analyzed SunLink's performance on both a cumulative and individual site/product basis. (SL Exhs. A, B, C, D and associated testimony). I found Mr. Collins to be a knowledgeable, professional and credible witness.

The chart below (derived from SunLink Exhibit 241) shows the start and end dates for SunLink's delivery of products to the seven CVEC Project sites for which SunLink seeks damages (excluding products ordered by ACE due to customer design changes, and products in excess of the quantities specified in the Agreements):

15

| CVEC Site | Ballasts Start | Ballasts End | A Frames Start | A Frames End | Rails Start | Rails End | Hard. Start | Hard. End |
|---|---|---|---|---|---|---|---|---|
| Barnstable | 2/3/2014 | 4/17/2014 | 3/11/14 | 4/8/14 | 3/11/14 | 4/10/14 | 2/19/14 | 3/12/14 |
| Brewster | 2/18/2014 | 3/24/2014 | 3/11/14 | 3/31/14 | 3/24/14 | 4/14/14 | 2/19/14 | 3/20/14 |
| Chatham | 2/18/2014 | 4/7/2014 | 3/11/14 | 4/8/14 | 4/8/14 | 4/10/14 | 3/3/14 | 4/1/14 |
| Dennis | 1/30/2014 | 4/23/2014 | 3/11/14 | 4/8/14 | 3/3/14 | 4/14/14 | 2/19/14 | 4/1/14 |
| Eastham | 2/13/2014 | 2/27/2014 | 3/11/14 | 4/8/14 | 3/6/14 | 3/10/14 | 3/7/14 | 4/5/14 |
| Harwich | 3/5/2014 | 4/18/2014 | 4/7/14 | 4/8/14 | 3/27/14 | 4/14/14 | 3/7/14 | 3/24/14 |
| Tisbury | 3/24/2014 | 4/14/2014 | 4/7/14 | 4/8/14 | 4/2/14 | 4/10/14 | 3/11/14 | 3/21/14 |

Mr. Collins compared SunLink's performance to the various schedules exchanged (but never agreed to) between the parties. Specifically, Mr. Collins analyzed SunLink's performance against the ACE August 2013 Schedule, and the SunLink January 10, 2014, January 24, 2014, and January 28, 2014 Schedules. (SL Exhs. A, B, C, D; Tr., Day 4, 787:1-803:22 [Collins]).

Mr. Collins testified that with respect to ballast deliveries, SunLink exceeded all of the relevant schedules exchanged between the parties. (SL Exh. B; Tr., Day 4, 818:17-821:8 [Collins]).

Mr. Collins similarly analyzed all hardware deliveries to the CVEC Project sites, including frames, rails, and miscellaneous parts (nuts and bolts). (Tr., Day 4, 839:1-841:3 [Collins]; SL Exh. D). Mr. Collins testified that, excluding the two LGMS systems projects (Nunnepog and Katama) for which SunLink is not seeking any damages, SunLink delivered all required hardware "consistent with or ahead of" the SunLink January 10, 2014 Schedule (the schedule that SunLink was using as a baseline). (Tr., Day 4, 849:4-15; 851:11-16 [Collins]).

In summary, Mr. Collins confirmed the completion by SunLink of all base contract deliveries by April 18, 2014. (Tr., Day 4, 809:22-810:10 [Collins]). He opined that SunLink

16

performed in a "reasonable manner" given the nature, purpose and circumstances of the CVEC
Project. (Tr., Day 4, 852:20-855:17 [Collins]). ACE offered no expert testimony contradicting
Mr. Collins' analysis, or any contemporaneous business records or receipts refuting the
underlying data respecting the actual delivery dates of SunLink's products.

<u>ACE's Notices of Default</u>

On January 27, 2014, ACE sent SunLink a letter asserting that SunLink was in default
under the Agreements. (SL Exh. 123; Tr., Day 5, 1114:17-1115:15 [Osgood]). The basis for the
alleged default was SunLink's "inability to meet the delivery schedule as defined in the
Contracts." (SL Exh. 123; Tr., Day 5, 1115:16-1116:2 [Osgood]). But, as ACE conceded at the
hearings, there was no delivery schedule set forth in the Agreements. (*See, e.g.,* Tr., Day 5,
1115:24-1116:6 [Osgood]).

On February 4, 2014, ACE sent SunLink a second letter purporting to place SunLink in
default, accusing SunLink of fraud and a violation of Chapter 93A and threatening to attach
SunLink's bank accounts. (SL Exh. 141; Tr., Day 6, 1399:10-14 [McLean]).[7] This time, ACE
based the alleged default on "the terms and conditions" in the Master Sales Contract and Volume
Pricing Agreement (signed on March 6, 2012). (SL Exh. 141). That contract, however, expired
on December 31, 2012. (SL Exh. 4, p. 7 ("specifications and sales price ... valid for product
delivery in the calendar year of 2012"); Tr., Day 5, 1055:7-1056:22 [Osgood]; Tr., Day 6,
1260:5-7 [McLean]). ACE also cited its payment of $903,000 to SunLink; however, the vast
majority of those funds ($803,760) were prepayments for products to be delivered to the
Mashpee and Duxbury Projects, which had different owners (not CVEC) and contracts, and are
therefore irrelevant to the parties' obligations under the Agreements. (Tr., Day 1, 130:4-23;

---

[7] Curiously, on the same day of its second default letter, ACE awarded SunLink a contract for a solar project in
Charlotte, Vermont. (SL Exh. 143; Tr., Day 6, 1404:11-17 [McLean]).

132:11-133:3; 213:10-24 [Tilley]; Tr., Day 6, 1262:11-23 [McLean]; ACE Exhs. 76, 77).

Finally, ACE asserted that SunLink had failed to inform ACE that the A-frames would be

sourced in China and had somehow misled ACE by listing domestic F.O.B. points in the

Agreements. (SL Exh. 141). The Agreements, however, do not contain a "Buy American"

requirement, and F.O.B. terms have no bearing on sources of manufacture.

Overall, I find that the notices of default were utterly baseless, and reflect ACE's

apparent misunderstanding of the terms of the Agreements, coupled with an interest in pressuring

SunLink to expedite performance and absorb the associated cost.

### ACE's Interactions with Bridge Bank Concerning SunLink's Invoices

On March 7, 2014, SunLink informed ACE that SunLink's lender, Bridge Bank, would

be contacting ACE to verify invoices and anticipated dates of payments. Bridge Bank was

providing SunLink with a line of credit based on SunLink's eligible accounts receivables (AR).

(SL Exh. 175; Tr., Day 1, 252:21-253:3 [Tilley]; Tr., Day 5, 920:3-18 [Ridgway]). That same

day, Bridge Bank sent ACE an "AR verification form" seeking confirmation of monies owed to

SunLink for the CVEC Project. (SL Exh. 178).

On March 25, 2014, ACE personnel confirmed internally that all of SunLink's invoices

had "been reviewed and … approved" without qualification. (SL Exh. 192). The next day,

ACE's controller signed the Bridge Bank AR verification form for the following SunLink

invoices:

| Invoice No. | Invoice Date | Anticipated Payment Date | Amount | Confirmed | Comments |
|---|---|---|---|---|---|
| 11099 | 3/14/2014 | Per Contract | $97,607.06 | | Approved |
| 11100 | 3/14/2014 | Per Contract | $133,908.36 | | Approved |
| 11101 | 3/14/2014 | Per Contract | $90,036.81 | | Approved |
| 11102 | 3/14/2014 | Per Contract | $398,625.31 | | Approved |
| 11103 | 3/14/2014 | Per Contract | $141,575.87 | | Approved |
| 11104 | 3/14/2014 | Per Contract | $215,164.48 | | Approved |

| 11105 | 3/14/2014 | Per Contract | $172,157.22 | | Approved |
| 11106 | 3/14/2014 | Per Contract | $529,862.06 | | Approved |
| 11107 | 3/14/2014 | Per Contract | $96,206.46 | | Approved |

(SL Exh. 195; Tr., Day 1, 260:23-262:10 [Tilley]).  The form asked ACE to "indicate if any

contras, offsets or credits against the invoices . . . exist or if there is any reason why payment

will not be made." (SL Exh. 195).  ACE did not identify any contras, offsets or credits, or

express any reason why payment would not be made.  (SL Exh. 195; Tr., Day 1, 260:23-262:10

[Tilley]).  Rather, ACE represented to Bridge Bank that SunLink's invoices had been

"Approved." (SL Exh. 195; Tr., Day 1, 263:9-20 [Tilley]).  In the "Anticipated Payment Date"

column of the form, ACE informed Bridge Bank that payment would be made "Per Contract"

(i.e., within 45 days of invoice).  (SL Exh. 195; Tr., Day 1, 263:9-20 [Tilley]).

 ACE executed another AR verification form on April 2, 2014 for the following SunLink

invoices:

| Invoice No. | Invoice Date | Anticipated Payment Date | Amount | Confirmed | Comments |
| --- | --- | --- | --- | --- | --- |
| 11156 | 3/14/2014 | Per Contract | $589,505.13 | Approved | |
| 11157 | 3/14/2014 | Per Contract | $143,709.56 | Approved | |
| 11158 | 3/14/2014 | Per Contract | $86,865.62 | Approved | |
| 11159 | 3/14/2014 | Per Contract | $329,798.45 | Approved | |
| 11160 | 3/14/2014 | Per Contract | $101,172.97 | Approved | |
| 11162 | 3/14/2014 | Per Contract | $539,708.35 | Approved | |
| 11163 | 3/14/2014 | Per Contract | $234,367.93 | Approved | |
| 11148 | 3/14/2014 | Per Contract | $64,485.30 | Approved | |
| 11150 | 3/14/2014 | Per Contract | $21,423.11 | Approved | |
| 11153 | 3/31/2014 | Per Contract | $93,349.30 | Approved | |
| 11149 | 3/31/2014 | Per Contract | $9,921.77 | Approved | |
| 11151 | 3/31/2014 | Per Contract | $22,034.46 | Approved | |
| 11152 | 3/31/2014 | Per Contract | $22,034.46 | Approved | |

(SL Exh. 239; Tr., Day 1, 272:20-275:3 [Tilley]).  As with the first verification form, ACE

expressed no reason why the "approved" invoices would not be paid in full per the terms of the

19

parties' Agreements.

ACE's controller executed a third unconditional AR verification form on May 1, 2014 for

the following SunLink invoices:

| Invoice No. | Invoice Date | Amount | Confirmed Received (Y/N) | Anticipated Payment Date | Comments |
|---|---|---|---|---|---|
| 11221 | 4/18/14 | $ 286,244.16 | Yes | Per Contract | |
| 11222 | 4/18/14 | $ 266,714.34 | Yes | Per Contract | |
| 11223 | 4/18/14 | $ 365,993.85 | Yes | Per Contract | |
| 11224 | 4/18/14 | $ 385,744.88 | Yes | Per Contract | |
| 11225 | 4/18/14 | $ 260,821.85 | Yes | Per Contract | |
| 11226 | 4/18/14 | $1,050,655.54 | Yes | Per Contract | |

(SL Exh. 240; Tr., Day 1, 276:13-277:13 [Tilley]).

In the aggregate, and without even hinting at any offsets, credits or reasons why payment

would not be forthcoming, ACE verified to Bridge Bank that SunLink invoices totaling

$6,749,681 for the CVEC Projects had been approved and would be paid in accordance with the

terms of the Agreements. (SL Exhs. 195, 239, 240; Tr., Day 1, 277:14-278:4 [Tilley]).

### ACE's Assurances of Payment and Requests for Additional Products

In May 2014, after SunLink had supplied all contractually-required products, ACE

submitted changes orders to SunLink for additional (apparently missing) products. (SL Exhs.

207, 209, 211). Concerned about ACE's account balance, SunLink had placed all change order

shipments on hold until ACE satisfied its arrears. (SL Exh. 212, p. 2; Tr. Day 1, 283:12-284:1

[Tilley]). On May 27, 2014, ACE promised to provide a payment schedule. (Exh. 212, p. 1;

Tr., Day 5, 922:20-923:24 [Ridgway]). On May 29, 2014, ACE informed SunLink that ACE

would attend to its account balance by wire transfers during the following week or two. (SL

Exhs. 215, p. 1, 216.).

Evidently unconvinced, on May 30, 2014, SunLink informed ACE that SunLink required

a conference call with Clean Focus, ACE, and Bridge Bank to discuss ACE's arrears and the possibility that SunLink might have to place supplier liens on the CVEC Projects. (SL Exh. 219, p. 3). In response to SunLink's concerns, ACE wrote:

> Working on it now, a lot will depend when they fund ACE. [W]e have over 11.5 million outstanding, *all is in process just timing.*
>
> *Some payments to you are in process now. You should be receiving some ... today and early next week.*

(SL Exh. 218 (emphasis added); Tr., Day 1, 286:18-287:5 [Tilley]; Tr., Day 5, 924:5-15 [Ridgway]). These statements proved to be untrue, as no significant further payments were ever made to SunLink for the CVEC Projects.

As of June 2, 2014, ACE was approximately $6.92 million past due on the CVEC Projects. (SL Exh. 220). That day, the parties participated in a conference call with Bridge Bank and Clean Focus during which ACE again agreed to provide a payment schedule. (Tr., Day 1, 287:11-290:17 [Tilley]; Tr., Day 5, 925:12-927:2 [Ridgway]). At no point did ACE assert that SunLink was in default, or that ACE was entitled to any offsets or damages, or that there was any justification for withholding payment other than perhaps ACE's capital constraints. (Tr., Day 1, 290:18-291:15 [Tilley]; Tr., Day 5, 927:12-17 [Ridgway]). SunLink lifted the hold on shipment of additional products. (Tr., Day 2, 309:12-19 [Tilley]).

On June 4, 2014, ACE provided an "estimated" payment schedule, as it had agreed to do on the June 2, 2014 conference call. (SL Exh. 224, pp. 1-2; Tr., Day 1, 291:16-293:20 [Tilley]). The schedule contemplated payment of all SunLink invoices by the end of June 2014. (SL Exh. 224, p. 3; Tr., Day 1, 291:16-293:20 [Tilley]). In the covering email, however, ACE asserted that SunLink was in default because of an alleged "late delivery of equipment" and, that SunLink would be paid once ACE achieved its milestones under the EPC Agreement and

21

received payment from Clean Focus. (SL Exh. 224, p. 2). This position is inconsistent with the terms of the Agreements, as payment to SunLink was not in any way conditioned on the schedule in the EPC Agreement or ACE's receipt of funds from Clean Focus or any third party.

### ACE's "Credit Letter" for Alleged Offsets

On June 19, 2014, ACE sent SunLink a self-styled "Credit Letter," setting forth the costs allegedly incurred by ACE due to SunLink's "default and late delivery." (SL Exh. 222). The Credit Letter makes no mention of the three unqualified AR verifications sent to Bridge Bank, or the promise of payment in the May 30 email, or the conference call on June 2, or the June 4 payment plan. Coincidentally, or perhaps not, ACE asserted a credit for almost the precise amount of the outstanding SunLink invoices (~$6.94 vs. $6.92 million). ACE asserted that the credit was comprised of the following "incurred" costs:

- Overtime and lost production by subcontractors of $2,883,217

- ACE direct labor costs of $186,805

- Redwood liquidated damages of $1,647,150

- Redwood lost SREC production of $2,225,000

According to Mr. Hunton, the President of ACE, the basis for the liquidated damages and SREC production offsets was an internal June 5, 2014 email. (Tr., Day 7, 1556:22-1557:15 [Hunton]; ACE Exh. 4, at p. 3). However, the June 5 email relates only to the Eastham site and does not set forth any claims by the owner for liquidated damages or lost SREC production. (Tr., Day 7, 1558:1-11 [Hunton]; ACE Exh. 4, at p. 3). At the hearings, ACE conceded that these costs were not actually "incurred" after all, and abandoned its offset claims for liquidated damages and lost SREC production. (Tr., Day 7, 1563:1-6; 1565:2-5 [Hunton]).[8] Mr. Hunton

---

[8] The offsets for liquidated damages and SREC production are also barred by the limitation on indirect or consequential damages in Section 21(g) of the Agreements.

admitted on the final day of these arbitration proceedings that ACE owes SunLink at least $3,872,150. (Tr., Day 7, 1564:11-13; 1565:10-21 [Hunton]). ACE claims to have requested payment for that amount from an escrow fund established by Clean Focus/Redwood. (Tr., Day 7, 1538:2-17; 1563:9-15 [Hunton]). While the gesture was no doubt appreciated by SunLink, the Agreements do not require SunLink to seek recovery from the escrow account.

### SunLink's Damages

There is no controversy over the amount SunLink is theoretically owed under the Agreements (subject to ACE's defenses discussed below). Under the Agreements, with the exception of Nunnepog, ACE agreed to pay SunLink a total amount of $7,288,919.80. (Tr. Day 5, 927:21-929:1; 931:1-12 [Ridgway]; SL Exh. 233).

Eventually, SunLink issued invoices to ACE for the CVEC BGMS Projects and Katama in the amount of $8,161,340.75. (Tr. Day 5, 927:21-929:1; 931:1-12 [Ridgway]; SL Exh. 233).

The accumulated interest/late fee through April 30, 2015, at the Appendix B (1)(b)(iii) contractual rate of eighteen percent (18%) per annum, on unpaid invoices that SunLink issued to ACE for the CVEC BGMS Projects and Katama totaled $1,128,612.70. (Tr. Day 5, 927:21-929:1; 931:1-12 [Ridgway]; SL Exh. 233).

The total amount of change orders relating to the CVEC Projects is $520,703.97.[9] (Tr. Day 5, 927:21-929:1; 931:1-12 [Ridgway]; SL Exh. 233; SunLink Change Orders Binder).

The total amount ACE paid to SunLink under the Agreements, with the exception of Nunnepog, is $1,954,007.82. (Tr. Day 5, 927:21-929:1; 931:1-12 [Ridgway]; SL Exh. 233).

Less a credit for Katama, the total amount outstanding to SunLink for the seven CVEC

---

[9] SunLink alleges that the total for change orders is $543,203.97. (SunLink Post-Hearing Memorandum, at p. 47; SL Exh 233). While ACE has not challenged that amount, my computation of the change orders entered into evidence yields a slightly lower figure (by $22,500, as reflected in the text). (SunLink Change Orders Binder (change orders 1-16); ACE Exh. 4 (change orders 1-9)).

Projects at issue in this case as of April 30, 2015 was $7,856,649.60. (Tr. Day 5, 927:21-929:1;

931:1-12 [Ridgway]; SL Exh. 233)(net of my deduction of $22,500 in change orders)).

## III.    RULINGS ON SUNLINK'S CLAIMS

### A.    SunLink's Claims for Goods Sold, Delivered and Accepted

Under various legal theories (*see* Counts I-IV of the Demand),[10] SunLink seeks the

account balance under the Agreements for the solar panel racking systems for seven of the

CVEC Projects (Barnstable, Brewster, Chatham, Dennis, Eastham, Harwich, and Tisbury).

There is no serious dispute about the amount of the invoices and change orders (*i.e.*, the math),

or that all of the products were delivered to the CVEC Projects, accepted by ACE and installed

in the now functioning solar arrays.[11]

Accordingly, under the Uniform Commercial Code (UCC), as adopted in

Massachusetts,[12] ACE is obligated to make full payment for SunLink's products in accordance

with the terms of the Agreements, unless it can establish that SunLink breached the Agreements

or the account is subject to a legally cognizable offset. *See* G.L. c. 106, § 2-301. Here, ACE

asserts various breaches or misbehavior by SunLink, or other excuses for its failure to pay, none

of which has any merit.

ACE's principal defense is that SunLink breached the Agreements by failing to timely

deliver the mounting systems, primarily due to SunLink's undisclosed sourcing of the A-frames

---

[10] SunLink's claims for misrepresentation (intentional and negligent) and quantum meruit seek payment on the seven CVEC BGMS Projects for which amounts remain outstanding. These claims will not be separately addressed because the damages sought are duplicative of the breach of contract claim. SunLink's Chapter 93A claim presents different liability and damage issues, and is discussed *infra*.

[11] Nor is there any dispute with respect to approximately $3.87 million owed to SunLink even assuming the applicability of the two remaining offsets asserted by ACE. Rather, it appears the "defense" to the undisputed amount is that the project owners will not permit SunLink to be paid from project funds in the escrow account. As noted above, there is nothing in the Agreement which obligates SunLink to look only to the escrow account for payment or otherwise conditions payment on ACE's receipt of funds from third parties. There is also nothing precluding ACE from paying SunLink from other sources of capital rather than relying on SunLink's forbearance.

[12] Section 23 of the Agreements requires the application of the laws of the Commonwealth of Massachusetts.

in China. ACE asserts that its course of dealings with SunLink on other projects, and earlier (inoperative) versions of CVEC contracts or proposals, led it to believe that *all* products would be delivered in six to eight weeks, and that the A-frames would be manufactured domestically. If a six to eight week delivery schedule for *all* products to *all* CVEC Project sites truly was ACE's expectation, it took no steps to ensure that the assumption was incorporated in the Agreements. The Agreements contain no delivery schedule whatsoever. Indeed, the Agreements generally provide for a product "lead time" of six weeks following NTP, bonds and deposits, and even the lead time for production is expressly qualified as "approximate." Where, as here, there is no prescribed time for shipment or delivery, the UCC sets performance within a "reasonable time." G.L. c. 106, § 2-309(1). What is "reasonable" depends upon the nature, purpose and circumstances of the agreement. G.L. c. 106, § 1-205(a).

Most of the exchanges between the parties respecting delivery schedules, as analyzed by Mr. Collins, confirm an average course of performance in the eleven to fifteen week range (some at an added cost). ACE's suggestion of an eight week ballast/post delivery schedule for all nine CVEC Projects in the ACE January 8, 2014 Schedule was flatly rejected by SunLink as not feasible, and the more aggressive schedules offered by SunLink in January 2014 were declined by ACE. Ultimately, SunLink delivered its products in accordance with the SunLink January 10, 2014 Schedule that SunLink repeatedly and explicitly advised ACE it was using as a target in the absence of an agreement on a schedule. I find and rule that the timing of the delivery of ballasts, posts and hardware to the CVEC Projects was reasonable. What was plainly *unreasonable* was ACE's failure to include a firm delivery schedule in the Agreements and/or a "Buy American" provision, if those terms were truly important to its business objectives and its

25

obligations under the EPC Agreement, or for ACE to have allegedly relied on a course of dealings for jobs much different in scale than the CVEC Projects.[13]

As ancillary support for its breach claim, ACE asserts that the parties modified the Agreements, voided them or entered into some species of a contractual novation pursuant to which SunLink agreed to provide a "pre-panelized" solution for the rails and solar panels, thereby expediting the assembly process. The argument is based on an email exchange between the parties on January 28 (from SunLink) and February 3, 2014 (from ACE). (SL Exhs. 124, 139). This correspondence does not constitute a binding undertaking by either party or a modification or novation of the Agreements. SunLink's January 28 email addresses ACE's notice of default and also advises that SunLink "*will* propose" that the CVEC Projects be staged using a pre-panelization technique. None of the customary or required business terms (including cost) are fully expressed, and no change order was ever prepared or executed for any pre-panelization arrangement.[14] Even if this indication of intent by SunLink could be deemed an offer, it was never unequivocally accepted by ACE. The February 3 email from ACE merely provides its understanding of the assumptions of the proposal, which it would "plug into [the] schedule and see how it works," and indicates that it "would like to move forward with it (we may need some slight tweaks)" and absorb "some portion of the cost."[15]

---

[13] I reject ACE's post-hearing argument that SunLink assumed the heightened duties of a fiduciary because it provided consulting and/or engineering services under a Consulting Services Agreement dated August 8, 2013 (the "CSA"). (ACE Exh. 90). SunLink was not the engineer of record for the CVEC Projects and its CSA relationship with ACE was purely an arms-length services arrangement between sophisticated companies. No claim has been advanced under the CSA, and it has no relevance to the parties' obligations under the fully integrated supply Agreements signed two months later. Perhaps for this reason, the proposition that SunLink served as a fiduciary was never raised as a defense until it appeared in ACE's Post-Hearing Memorandum.
[14] Section 5 of the Agreements provides that any modification of terms may only be effectuated by a written change order.
[15] Numerous contemporaneous documents also confirm the absence of a binding agreement on a pre-panelization regime. (*See* SL Exhs. 141, 154, 155, 157, 160, 161, 164, 166, 167, 176, 194, 204; ACE Exh. 35).

ACE also alleges that it entered into change orders under economic "duress" – meaning that it committed to the change orders because it harbored a fear that SunLink would not provide the balance of system products on an accelerated basis, or at all, thereby jeopardizing the SREC incentives. The standard for establishing economic duress under Massachusetts law is "difficult to meet." *Pizzeria Uno Corp.* v. *Pizza by Pubs, Inc.* 2011 WL 4020845 at \*5 (D. Mass. Sept. 9, 2011).

The elements of economic duress in Massachusetts are: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that the circumstances were the result of coercive acts, that is, "the duress resulted from defendant's wrongful and oppressive conduct and not by plaintiff's necessities." *Cabot Corp. v. AVX Corp.*, 448 Mass. 629, 637-8 (quoting *Int'l Underwater Contractors v. New Eng. Tel. & Tel. Co.*, 8 Mass. App. Ct. 340, 342 (1979)).

As described above, the acceleration of the delivery schedule reflected in various change orders was the product of negotiations beginning in January 2014, shortly after ACE had issued notices to proceed under the Agreements. On January 17, 2014, SunLink proposed an expedited eleven week schedule that would have resulted in the delivery of all products to all sites mostly by the last week of March 2014. This option would have cost ACE an additional $400,000. ACE rejected the proposal, and many that followed, only later to agree to a series of piecemeal change orders for the accelerated delivery of SunLink's products through mid-April 2014, at a roughly equivalent cost. The change orders were not the product of "wrongful and oppressive" business

conduct by SunLink. They were instead the culmination of a post-contract negotiation of a delivery schedule that ACE should have codified in the Agreements in October 2013.[16]

Finally, ACE's assertion that it was fraudulently induced to execute the Agreements because SunLink failed to disclose that it could not deliver all of the mounting systems to all nine CVEC Projects within six to eight weeks, and that the A-frames would be produced in China, is baseless. SunLink never represented that it would complete its performance within that time frame, a fact that should have been apparent from the "approximate" six week product lead time in the Agreements. No ACE witness could credibly support the "six to eight week" assertion at the hearings. And, significantly, under Massachusetts law a party is not liable for non-disclosure unless there is an affirmative duty to speak. *Greenery Rehab. Group, Inc. v. Antaramian*, 36 Mass. App. Ct. 73, 77 (1994). SunLink, a supplier of goods to a construction project, had no duty to volunteer its sources of manufacture, and, as practical matter, it had no ability in October 2013 to construct a reliable delivery schedule given the information then at its disposal from ACE. If ACE was truly concerned with SunLink's sourcing of materials, all it had to do was inquire before it signed the Agreements, or it could have specified approved manufacturers/countries in the Agreements.[17]

### B.    **SunLink's Chapter 93A Claim**

A mere breach of contract does not constitute an unfair or deceptive trade practice in violation of Chapter 93A. However, where the breach is tantamount to commercial extortion, or is bundled with misrepresentations, or is a purposeful violation of the implied covenant of good

---

[16] In any event, ACE waived its purported duress defense and ratified the Agreements by accepting and installing SunLink's products under the signed change orders. *Cabot*, 448 Mass. at 642-3.

[17] Although it filed no counterclaim, ACE also requests that it be allowed to recover, presumably by way of an offset, for SunLink's violations of Chapter 93A. (*See* ACE Post-Hearing Memorandum,, at pp. 44-46, 48). As I have found no contractual breach, misrepresentation or other actionable conduct by SunLink, the request is denied.

faith and fair dealing, there is an actionable claim under Chapter 93A. *See, e.g., Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*, 9 F. Supp. 2d 49, 68–9 (D. Mass. 1998), *aff'd*, 217 F.3d 33 (1st Cir. 2000), *cert. denied*, 531 U.S. 1146 (2001); *Pepsi-Cola Metro. Bottling Co., Inc. v. Checkers, Inc.*, 754 F.2 10, 18 (1st Cir. 1985) (affirming Chapter 93A award where defendant withheld payment as leverage to force plaintiff to supply products); *Mass. Empl'rs Ins. Exch. v. Propac-Mass., Inc.*, 420 Mass. 39, 43 (1995) (conduct which "has a coercive quality" and is "undertaken as leverage to destroy the rights of another party to the agreement while the agreement is still in effect" violated Chapter 93A); *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 475 (1991) (withholding approvals as a pretext to force a party into changing price of underlying contract violated the implied covenant of good faith and fair dealing and Chapter 93A); *Physician Ins. Agency of Mass. v. Investors Capital Holdings, Ltd.*, No. 0303597, 2005 WL 3722373, *4 (Mass. Sup. Ct. Dec. 30, 2005); *Atkinson v. Rosenthal*, 33 Mass. App. Ct. 219, 225–6 (1992); *New Kappa City Const. v. National Floors Direct Inc.*, No. 11-ADMS-40002, 2011 Mass. App. Div. 249, **2-3 (Oct. 19, 2011).

SunLink maintains that ACE violated Chapter 93A by, *inter alia*, entering into the Agreements with insufficient liquidity, issuing specious credit and default letters, prosecuting baseless defenses (including the belatedly withdrawn SREC and liquidated damages offsets for over $3 million), lying to Bridge Bank, and withholding monies that it has repeatedly acknowledged are due and owing to a (financially-squeezed) supplier.

I do not believe that ACE entered into the Agreements in October 2013 with the plan or expectation that it would not meet its financial obligations to SunLink. The CVEC Project was a huge undertaking (the largest solar development in New England), involving nine sites, over 22 MW of PV development, and scores of suppliers and subcontractors operating under a

compressed timeframe. As events unfolded, ACE was simply unprepared for the complexity of the assignment (particularly when combined with the Duxbury, Mashpee and Vermont Projects). Specifically with respect to SunLink, ACE failed to ensure that the overall CVEC Project schedule and the milestones under its EPC Agreement were coordinated with firm contractual deadlines in its Agreements with SunLink. This became apparent by January 2014, shortly after the notices to proceed, yet ACE deferred efforts to accelerate the delivery schedule and mitigate its exposure until mid-February 2014. By then, ACE knew that its EPC Agreement milestones were in jeopardy and it executed multiple change orders to expedite delivery under what it now characterizes as "duress." (Tr. Day 5, 1474:6-1475:4)[McLean]). The anxiety associated with ensuring supply under the change orders spawned a program of deception that relegated SunLink to the position of an involuntary and unsuspecting financier of ACE's accounts receivables. ACE signed the change orders recklessly, without reasonable confidence in having the resources to pay them, and solely as a means to temporize and to encourage SunLink to expedite performance and continue the supply of critical products. ACE confirmed to SunLink's lender on three separate occasions that it had no offsets or defenses to SunLink's invoices, and it admitted at the hearings that it owes SunLink over three million dollars. The defense that the 'owner won't let us pay' is no defense at all under the terms of the Agreements. I find that ACE's conduct in duping SunLink into accelerating deliveries and supplying additional products under the change orders falls comfortably within a common law, statutory, or other established concept of unfairness, and is immoral, unethical, oppressive, or unscrupulous. It is, therefore, an unfair act in violation of Chapter 93A. *See Purity Supreme, Inc. v. Atty. Gen.,* 380 Mass. 762, 776-9 (1980); *Morrison v. Toys "R" Us, Inc.,* 441 Mass. 451, 457 (2004).

It is undisputed that ACE executed change orders totaling at least $520,703.97. (SunLink Change Orders Binder, uncontested as to amount by ACE, but reduced by $22,500 based on my calculations). I find that the proper measure of damages associated with ACE's unfair and deceptive acts is the amount of such unpaid change orders. Moreover, where, as here, a Chapter 93A violation is willful or knowing,[18] a party is entitled to a recovery of up to three, but not less than two times, the amount of actual damages. G.L. c. 93A, § 11. I award SunLink two times the amount of the change orders executed in bad faith by ACE, or $1,041,407.94, without pre-judgment interest.

Chapter 93A also requires an award of attorneys' fees and costs upon the finding of an unfair or deceptive act or practice (regardless of whether the act or practice was willful or knowing). G.L. c. 93A, § 11. Accordingly, SunLink is entitled to an award of attorneys' fees and costs incurred as a consequence of ACE's Chapter 93A violation. Within fourteen (14) days of the date of this Partial Final Award, SunLink shall file and serve an application for attorneys' fees and costs. The application shall include: (a) an itemization of its attorneys' fees, including the date, person, time spent, billing rates, and description of the activities (redacted, as necessary, for privileged material); (b) an itemization of allowable costs, with supporting documentation, as necessary; (c) an affidavit of counsel verifying the foregoing information as true and accurate and within the scope of a permissible Chapter 93A fee and cost award. Within fourteen (14) days of receipt of the application, ACE shall file and serve any opposition. I will thereafter determine whether further activity by the parties is required.

---

[18] Reckless conduct that is willfully undertaken is sufficient to satisfy the willful and knowing standard. *Kattar v. Demoulas*, 433 Mass. 1, 16 (2000); *Heller v. Silverbranch Const. Corp.*, 376 Mass. 621, 627 (1978). ACE's interactions with SunLink, its repeated promises of payment and its callous disregard of financial obligations, as described in this Award, are easily viewed as reckless, if not worse. *See Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 571 F. Supp. 1365, 1374-5 (D. Mass. 1983), *aff'd*, 740 F.2d 59 (1st Cir. 1984).

IV.   **CONCLUSION**

By way of summary and conclusion, I FIND and AWARD as follows:

1. I find in favor of SunLink on its claims for the account balance on the seven (7) CVEC BGMS Projects at issue in this case, and award it the sum of $7,856,649.60, which amount includes interest at the contractual rate of eighteen percent (18%) per annum through April 30, 2015. Interest shall continue to accrue at the contractual rate on any unpaid balance from April 30, 2015 until the entry of any judgment confirming this Award, at which point the statutory rate applicable to judgments in the Commonwealth of Massachusetts shall prevail.

2. I find in favor of SunLink on its claim under G.L. c. 93A, §§ 2, 11, and award it the sum of $1,041,407.94, without pre-judgment interest.

3. I find that SunLink is entitled to an award of attorneys' fees and costs pursuant to G.L. c. 93A, §§ 2, 11. Within fourteen (14) days of the date of this Partial Final Award, SunLink shall file and serve an application for attorneys' fees and costs. The application shall include: (a) an itemization of its attorneys' fees, including the date, person, time spent, billing rates, and description of the activities (redacted, as necessary, for privileged material); (b) an itemization of allowable costs, with supporting documentation, as necessary; (c) an affidavit of counsel verifying the foregoing information as true and accurate and within the scope of a permissible G.L. c. 93A, §§ 2, 11 award. Within fourteen (14) days of receipt of the application, ACE shall file and serve any opposition.

4. The administrative fees of the American Arbitration Association, and the compensation and expenses of the Arbitrator, shall be borne equally by the

parties, and shall be quantified in the Final Award.

5. Except for the issue of attorneys' fees and costs under G.L c. 93A, §§ 2, 11, and the assessment of the fees, compensation and expenses of the arbitration under R-47(c), for which I reserve jurisdiction, this Partial Final Award is in full settlement and satisfaction of any and all issues submitted to this arbitration. To the extent that any claim is not specifically addressed herein, it is denied.

Dated: August 18, 2015

_____
David L. Evans, Arbitrator

I, David L. Evans, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Partial Final Award.

__8/18/15__
Date

_____
David L. Evans, Arbitrator

# EXHIBIT EE

| CONTRACT | INVOICES | INVOICE AMT | DAYS PAST DUE | LATE FEES | CHANGE ORDERS | CHANGE ORDER AMT | PAYMENT | DAMAGE CALC |
|---|---|---|---|---|---|---|---|---|
| $1,501,632.00 | 11055 | $53,228.73 | | $0.00 | CCO1 | $4,500.00 | -$297,085.25 | -$297,085.25 |
| | 11066 | $222,833.67 | | $0.00 | CCO2 | $760.00 | | |
| | 11102 | $398,625.31 | 367 | $73,147.74 | | | | |
| | 11156 | $589,505.13 | 350 | $103,163.40 | | | | |
| | 11221 | $286,244.16 | 332 | $47,516.53 | | | | |
| | 11375 | $1,207.49 | 322 | $194.41 | | | | |
| | | | | | | | | |
| TOTALS $1,501,632.00 | | $1,551,644.49 | | $224,022.08 | | $5,260.00 | -$297,085.25 | $1,483,841.32 |

Late Fee
Annual Rate => 18.00%
Daily Rate => 0.050000%

Barnstable

| CONTRACT | INVOICES | INVOICE AMT | DAYS PAST DUE | LATE FEES | CHANGE ORDERS | CHANGE ORDER AMT | PAYMENT | DAMAGE CALC |
|---|---|---|---|---|---|---|---|---|
| $443,282.40 | 11067 | $79,608.62 | | $0.00 | CCO1 | $4,500.00 | -$248,813.55 | $256,973.55 |
| | 11103 | $141,575.87 | | $0.00 | | | | |
| | 11163 | $234,367.93 | 350 | $41,014.39 | | | | |
| | 11227 | $4,048.28 | 332 | $672.01 | | | | |
| | | | | | | | | |
| TOTALS $443,282.40 | | $459,600.70 | | $41,686.40 | | $4,500.00 | -$248,813.55 | $256,973.55 |

Late Fee
Annual Rate => 18.00%
Daily Rate => 0.050000%

Brewster

| CONTRACT | INVOICES | INVOICE AMT | DAYS PAST DUE | LATE FEES | CHANGE ORDERS | CHANGE ORDER AMT | PAYMENT | DAMAGE CALC |
|---|---|---|---|---|---|---|---|---|
| $661,359.60 | 11068 | $58,218.40 | | $0.00 | CCO1 | $257.18 | -$307,120.51 | |
| | 11104 | $215,164.48 | 367 | $39,482.68 | CCO2 | $4,500.00 | | |
| | 11157 | $143,709.56 | 350 | $25,149.17 | | | | |
| | 11222 | $266,714.34 | 332 | $44,274.58 | | | | |
| | 11510 | $477.18 | 284 | $67.76 | | | | |
| | | | | | | | | |
| TOTALS $661,359.60 | | $684,283.96 | | $108,974.20 | | $4,757.18 | -$307,120.51 | $490,894.83 |

| Late Fee | |
|---|---|
| Annual Rate => | 18.00% |
| Daily Rate => | 0.050000% |

Chatham

| CONTRACT | INVOICES | INVOICE AMT | DAYS PAST DUE | LATE FEES | CHANGE ORDERS | CHANGE ORDER AMT | PAYMENT | DAMAGE CALC |
|---|---|---|---|---|---|---|---|---|
| $2,126,678.00 | 11057 | $19,291.63 | | $0.00 | CCO1 | $1,677.61 | -$465,070.56 | -$465,070.56 |
| | 11058 | $83,384.59 | | $0.00 | CCO2 | $1,558.72 | | |
| | 11070 | $99,718.52 | | $0.00 | CCO4 | $72,780.00 | | |
| | 11071 | $232,902.33 | | $0.00 | | | | |
| | 11105 | $172,157.22 | 367 | $31,590.85 | | | | |
| | 11106 | $529,862.06 | 367 | $97,229.69 | | | | |
| | 11159 | $329,798.45 | 350 | $57,714.73 | | | | |
| | 11160 | $101,172.97 | 350 | $17,705.27 | | | | |
| | 11224 | $385,744.88 | 332 | $64,033.65 | | | | |
| | 11225 | $260,821.85 | 332 | $43,296.43 | | | | |
| | 11312 | $72,780.00 | 364 | $13,245.96 | | | | |
| | 11383 | $514.46 | 319 | $82.06 | | | | |
| | 11504 | $2,681.72 | 284 | $380.80 | | | | |
| | 11506 | $2,800.61 | 284 | $397.69 | | | | |
| TOTALS $2,126,678.00 | | $2,293,631.29 | | $325,677.12 | | $76,016.33 | -$465,070.56 | $2,230,254.18 |

Late Fee
Annual Rate => 18.00%
Daily Rate => 0.050000%

Dennis

| CONTRACT | INVOICES | INVOICE AMT | DAYS PAST DUE | LATE FEES | CHANGE ORDERS | CHANGE ORDER AMT | PAYMENT | DAMAGE CALC |
|---|---|---|---|---|---|---|---|---|
| $211,305.60 | 11056 | $57,044.47 | | $0.00 | CCO1 | $4,500.00 | -$132,654.38 | $107,694.37 |
| | 11069 | $62,729.86 | | $0.00 | | | | |
| | 11099 | $97,607.06 | 367 | $17,910.90 | | | | |
| | 11228 | $477.24 | 332 | $79.22 | | | | |
| TOTALS | | | | | | | | |
| $211,305.60 | | $217,858.63 | | $17,990.12 | | $4,500.00 | -$132,654.38 | $132,654.38 |

Late Fee
Annual Rate => 18.00%
Daily Rate => 0.050000%

Eastham

| CONTRACT | INVOICES | INVOICE AMT | DAYS PAST DUE | LATE FEES | CHANGE ORDERS | CHANGE ORDER AMT | PAYMENT | DAMAGE CALC |
|---|---|---|---|---|---|---|---|---|
| $1,616,947.00 | 11107 | $96,206.46 | 367 | $17,653.89 | CCO1 | $61,812.10 | -$117,450.36 | $2,720,771.10 |
| | 11162 | $539,708.35 | 350 | $94,448.96 | CCO2 | $61,812.10 | | |
| | 11226 | $1,050,655.54 | 332 | $174,408.82 | CCO3 | $66,201.80 | | |
| | 11315 | $72,500.00 | 364 | $13,195.00 | CCO5 | $72,500.00 | | |
| | 11316 | $48,000.00 | 364 | $8,736.00 | CCO7 | $48,000.00 | | |
| | 11317 | $90,033.50 | 364 | $16,386.10 | CCO8 | $90,033.50 | | |
| | 11393 | $4,266.00 | 314 | $669.76 | CCO10 | $4,266.00 | | |
| | 11508 | $10,053.96 | 284 | $1,427.66 | CCO11 | $5,419.96 | | |
| | 22514 | $94,913.00 | | $0.00 | | | | |
| | 22524 | $30,906.05 | | $0.00 | | | | |
| | 22814 | $30,906.05 | | $0.00 | | | | |
| | 30414 | $33,100.90 | | $0.00 | | | | |
| TOTALS $1,616,947.00 | | $2,101,249.81 | | $326,926.19 | | $410,045.46 | -$117,450.36 | $2,720,771.10 |

Late Fee

Annual Rate => 18.00%

Daily Rate => 0.050000%

Harwich

| CONTRACT | INVOICES | INVOICE AMT | DAYS PAST DUE | LATE FEES | CHANGE ORDERS | CHANGE ORDER AMT | PAYMENT | DAMAGE CALC |
|---|---|---|---|---|---|---|---|---|
| $305,104.00 | | | | | | | -$379,896.65 | -$379,896.65 |
| | 11060 | $187,082.62 | | | | | | |
| | 11073 | $77,082.65 | | | | | | |
| | 11101 | $90,036.81 | | $0.00 | | | | |
| | 11172 | $15,508.85 | 350 | $2,714.05 | | | | |
| | 11188 | -$6,270.00 | 350 | ($1,097.25) | | | | |
| | 11216 | $200.00 | | $0.00 | | | | |
| TOTALS | | $363,640.93 | | $1,616.80 | | $0.00 | -$379,896.65 | -$14,638.92 |

Late Fee
Annual Rate => 18.00%
Daily Rate => 0.050000%

Katama

| CONTRACT | INVOICES | INVOICE AMT | DAYS PAST DUE | LATE FEES | CHANGE ORDERS | CHANGE ORDER AMT | PAYMENT | DAMAGE CALC |
|---|---|---|---|---|---|---|---|---|
| $422,611.20 | 11105 | $4,904.80 | | $0.00 | CCO1 | $4,500.00 | -$5,916.56 | |
| | 11158 | $86,865.62 | 350 | $15,201.48 | CCO9 | $33,625.00 | | |
| | 11223 | $365,993.85 | 332 | $60,754.98 | | | | |
| | 11318 | $31,666.67 | 364 | $5,763.33 | | | | |
| | | | | | | | | |
| TOTALS $422,611.20 | | $489,430.94 | | $81,719.80 | | $38,125.00 | -$5,916.56 | $603,359.18 |

Late Fee
Annual Rate => 18.00%
Daily Rate => 0.050000%

Tisbury

| CONTRACT | INVOICES | LATE FEES | CHANGE ORDERS | PAYMENT | TOTAL DAMAGES |
|---|---|---|---|---|---|
| $7,288,919.80 | $8,161,340.75 | $1,128,612.70 | $543,203.97 | -$1,954,007.82 | $7,879,149.60 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

TOTAL DAMAGES

# EXHIBIT FF

AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| **SUNLINK CORPORATION**<br>Claimant | : | AAA No.01-14-0001-7516 |
| | : | |
| v. | : | **MOTION AND MEMORANDUM OF<br>AMERICAN CAPITAL ENERGY<br>INC. IN SUPPORT OF MOTION<br>FOR CLARIFICATION AND FOR<br>RECONSIDERATION** |
| **AMERICAN CAPITAL ENERGY, INC.**<br>Respondent | : | |

Respondent American Capital Energy, Inc. (ACE) moves for clarification and reconsideration of the Partial Final Award issued on August 18, 2015.

## LITIGATION WITH BONDING COMPANIES AND SUBCONTRACTORS

Claimant Sunlink Corporation (Sunlink) filed a Demand for Arbitration against Respondent American Capital Energy, Inc. on October 20, 2104 seeking payment for solar panel mounting systems installed on nine separate project sites[1] on Cape Cod and the Islands.

Sunlink had earlier commenced litigation in Massachusetts Superior Court in two separate actions involving the same nine projects:

> Dukes Superior Court Docket No 1474 CV 00050
> *Sunlink Corporation v American Capital Energy Inc. and Arch Insurance Company*

> Barnstable Superior Court Docket No 1472 CV 00511
> *Sunlink Corporation v American Capital Energy Inc. and Arch Insurance Company and Berkley Regional Insurance Company and Berkley Insurance Company*

The Superior Court Actions were stayed when Joint Motions were allowed to stay the litigations pending the outcome of Arbitration.

---

[1] In the communities of: Barnstable, Brewster, Chatham, Eastham, Harwich, Katama, Nunnepog, and Tisbury. The town of Dennis separately undertook a similar project.

## ACE SETOFF – RULINGS ON BIFURCATION OF HEARINGS

On March 28, 2015 the Arbitrator indicated that his inclination was to bifurcate the hearings such that the quantification of ACE's "damages/offsets/back charges" was reserved, giving ACE to understand that a preliminary finding would issue and that ACE's right to assert offsets would be determined at a second stage of hearings.

On April 21st, 2014, Arbitrator Evans issued his rulings on the Bifurcation Motion - ACE was not to present evidence of offsets at the initial hearing, that all offsets would be bifurcated. In his Email of April 21, 2015 to the parties, the Arbitrator stated "we will not be hearing the quantification of what ACE has called its offsets.  ...At the hearings, we will establish ha briefing schedule for post-hearing briefs per the SO ([scheduling order])".

## ACE PAYMENT TO OLD CASTLE INCLUDING INTEREST SHOULD BE CREDITED

The Award fails to credit ACE for payments of $327,015.50 it made to Oldcastle for ballasts on the projects. See Notice of Executed Settlement Agreement Attached. The amounts were attributable to projects as follows:

- Tisbury $131,183,
- Barnstable $46,940,
- Harwich $54,760 and
- Dennis $94,132.50.

The Partial Award not only requires ACE to pay Sunlink an amount it has already paid to satisfy debts charged by Sunlink and for which the Partial Award constitutes double payment but it also charges ACE 18 per cent (18%) interest on the $327,015.50. ACE notified the American Arbitration Association and the parties of this payment which is the subject of offsets raised in ACE's Thirteenth Affirmative Defense. The Award, after seven days of hearings, recognized that

2

ACE claimed set off rights in its thirteenth affirmative defense based on Sunlink's late delivery of its products but the Award did not acknowledge ACE's claim for offsets for payments ACE made to Sunlink's subcontractor Oldcastle. ACE noted at the Hearing that it had been the subject of lawsuits by Oldcastle and subsequently provided Notice of Payment.

Post hearing briefs included assertions by ACE of its rights to offset Sunlink claims for those paid by ACE –specifically "equitable subrogation for satisfying the debts of Sunlink". Brief at 47 The Partial Award, rather than permitting further evidence in the Arbitration for ACE to show it paid Sunlink's debts, indicates that this award "is in full settlement and satisfaction of any and all issues submitted to this Arbitration.  To the extent any claim is not specifically addressed, here it is denied." (Award at 33).

The Award should be reconsidered and modified to reflect ACE's satisfaction of the debt to Sunlink's subcontractor Old Castle Precast Inc. to prevent double payment and unjust enrichment.

## NEED FOR CLARIFICATION AND ATTRIBUTION OF DAMAGES

The Partial Award does not ascribe liability to individual solar project but instead, groups all solar arrays including change orders in an undifferentiated single award (Award at 15-16). Two separate bonding principals provide guarantees under two separate agreements, the obligations among the nine separate projects[2].  Clarification is necessary to distinguish the liability under each project including the change order charges.

---

[2] The nine separate projects were covered by payment and performance bonds - provided by Arch Insurance on five of the projects, and on the other four projects, by Berkley Insurance.

The award, in Sunlink's favor "for the account balance on the seven (7) CVEC BGMS Projects at issue in this case, (Award at 32) did not quantify or assign liability to the nine separate project contracts[3].  Sunlink's Ridgeway testified ACE was owed a credit for $14,461 on the Katama project.  (Exh. 234 Page 3, Transcript 930). There is no debt due on the Nunnepog project.

## AWARD FINDINGS WITH RESPECT TO CHANGE ORDERS AND GL c 93A

Change Orders were an instrumental element of the Award and served as the basis for the decision regarding G.L. c. 93A. The partial Award recognizes the changes in the contract concerning specific delivery but does not recognize the breaches of Sunlink under the contract changes concerning delivery. The SJC intervened to overturn an arbitral creation in *School Committee of Lexington v Zagaeski* 469 Mass 104 (2014), that made up, out of whole cloth, a remedy not found in the agreement authorizing arbitration. ACE urges reconsideration to align the finding with the realities.

The Partial Award identified seven specific change orders but did not specify the projects. (Award at 15-16)  The Award listing of the change orders below is followed by the italicized text contained in the change orders making them subject to conditions. (Stricken text as on original change orders)

| Date | Subject | Record Cite |
|------|---------|-------------|
| 2/17/14 | 50% split of frames from China by air (first two 10% shipments) | SL Exh. 234, Tab 1 |
|  | *ACE agrees to pay for 50% of the entire net cost to ~~accelerate~~ the delivery of the first 10% ... of hardware... Scheduled to arrive March 3-5...* |  |
| 2/25/14 | 50% split of frames from China by air | SL Exh. 234, Tab 2 |

---

[3] On two of the nine projects Katama and Nunnepog, ACE paid Sunlink in full and was entitled to a credit.

| | (third 10% shipments) | |
|---|---|---|
| | *ACE agrees to pay for 50% of the entire net cost to ~~accelerate~~ the delivery of the second 10% ... of hardware... Scheduled to arrive March 6-10...* | |
| 3/3/14 | Accelerate delivery of 1,608 ballasts from April to March (Sunlink pays 20%) | SL Exh. 234, Tab 4 |
| | *ACE agrees to pay ... to accelerate the delivery of approximately 1608 of the precast ballast blocks ... for delivery ... in the last two weeks of March* | |
| 3/13/14 | Production and delivery of 180 ballasts on five Saturdays | SL Exh. 234, Tab 5 |
| | *This change order shall be for 180 Ballasts per Saturdays Mar. 15,22,29, Apr 5,12 ACE reserves the right to pay Sunlink's subcontractors directly for this work.* | |
| 3/19/14 | Production and delivery of 80 ballasts (MBO) on six Sundays | SL Exh. 234, Tab 6 |
| | *This change order shall be for Sunday production at MBO of 80 Ballast per Sunday. ...6 days... ACE reserves the right to pay Sunlink's subcontractors directly for this work.* | |
| 4/1/14 | Expediting ballasts from MBO/Scituate (by 4/16) | SL Exh. 234, Tab 8 |
| | *To cover costs to expedite ballast deliveries from Old Castle/MBO/Scituate... to be delivered no later than April 16, 2014. ACE reserves the right to pay Sunlink's subcontractors directly for this work.* | |
| 4/21/14 | Ballast deliveries from Old Castle for Tisbury (by 4/16) | SL Exh. 234, Tab 9 |
| | *Shipping costs of ballast deliveries from Old Castle to Tisbury ... no later than April 16, 2014. ACE reserves the right to pay Sunlink's subcontractors directly for this work.* | |

The total amount of change orders "relating to the CVEC Projects" according to the Award is $520,703.97. (Award 23)  The Arbitrator's Award states "there is no serious dispute about the amount of the invoices and change orders (i.e., the math) or that all of the products were delivered to the CVEC Projects, accepted by ACE and installed in the now functioning solar arrays.  (Award at 24) The Award identifies signed Change Orders (Award at 14-15) and indicated that these were the basis of the 93A award (Award at 31).

The Award found that email exchanges "did not constitute a binding undertaking by either party or a modification or novation of the Agreements", (Award at 26) and yet the Arbitrator found there was an agreement on delivery charges resulting from the same negotiations, on an option presented to and agreed to by ACE, based upon the delivery of a specific component, rails, whose expedited delivery would have enabled the prepanelization method of construction. Sunlink failed to make the deliveries of rails as required by the Change Order Option accepted by ACE.  Sunlink's failure to deliver rails made the early fabrication of the equipment onsite impossible and made the expediting charges for delivery of A-Frames and ballasts an unnecessary and useless expense. The Award found ACE's conduct in "duping Sunlink into accelerating deliveries and supplying additional products under the change orders" violated GL c. 93A. (Award at 30)

Sunlink's Eastwood wrote on January 28, 2014

"To demonstrate the level of commitment to ACE and the projects, SunLink has worked hard to shorten its delivery schedule and will propose that the projects be staged using a Pre-panelization technique. This was mentioned in telephone calls with Art Hennessey and Eric McLean this am and will provide efficiencies at the installation stage and permit an improvement in the dates for delivery of the hardware.

ACE's McLean accepted the Sunlink proposed Option including the additional delivery expense in reliance on the representations that the rails would be delivered by February 24, 2014. This was the basis of the change order.  McLean wrote:

I want to make sure I understand the option:

•All tubes and other mounting (for pre penalization) will begin to arrive the week of on February 24th and essentially finish completely March 17th (this

6

is based on an email from Casey dated 1/29) I believe this to be the case and am having my team confirm

Rails were essential to the prepanelization option without the rails the 87,000 panels on site could not be prefabricated. McLean's February 3, 2014 acceptance of the Option offered by Sunlink continued:

> A-frames: o 10% delivered no later than March 3rd (hopefully earlier) We are working to have 10% of the A-frames delivered asap. Per my email yesterday, my expectation (not confirmed yet with our Chinese supplier) is that we will be able to deliver the first of these the week of March 3rd. We are pushing to get the first delivery done by Feb 28.

This change order[4] is the first listed in the Partial Award which makes no reference to the condition of delivery dates.

McLean's confirming email continued:

> o 10% delivered no later than March 10th (hopefully earlier) My expectation is that we should be able to get the second 10% delivered a week from the delivery of the first 10%. Again to be confirmed early next week when we can revisit with our supplier.

This change order[5] is the second listed in the Partial Award.

The remainder of were to arrive by March 31.[6]

> o The remainder come by boat and all arrive by March 31? I am unclear here so please let me know if this assumption is correct.The current schedule shows us delivering the final 75% of frames the weeks of March 24th, March 31, and April

---

[4] (Change Order Number shown at SL 0017915)
[5] (Change Order Number shown at SL 0017934)
[6] (Change Order Number shown at SL 0017916)

7th. Air lifting the first 20% doesn't move up the delivery of the remaining 80%. Again, we will speak with our supplier and try to bring these in, but for right now, that is the working schedule.

o  The cost to airlift the 20% is approximately $240,000. Yes, that is my understanding as well.

In principal this solution is better and we would like to move forward with it (we may need some slight tweaks), as I stated today we are willing to share in some portion of the cost to help execute on the projects as timely as possible." (Exhibit ACE-073)

ACE's change order acceptance of cost sharing depended on timely delivery by Sunlink of the rails. This email between Sunlink and ACE's representatives represents a delivery schedule of rails by February 24, 2014, thereby allowing the pre-panelization option accepted by ACE to be carried out -- attaching solar modules to rails and the attaching them to the ballasts. With no rails, the early delivery of A-Mounts and Ballasts were of no use, expedited construction of solar arrays could not be performed.

The plan conceived by Sunlink and accepted by ACE failed, because no rails were provided as represented.  Only 41% of the rails were manufactured by March 24, 2014[7], almost two months after the promises of Eastwood and Sunlink to produce rails for pre-panelization.

The Award identifies Change Orders ACE signed, authorizing expedited delivery of mounting frames and ballasts. (Award at 14-15)

1.  Wording regarding accelerated delivery was stricken from each change order.

2.  Each change order referred to obligations of Sunlink noted in the Option accepted by ACE which was based on the Option presented by Sunlink and accepted by ACE based

---

[7] ACE exhibit 0-17

on Sunlink's representation about the timing of delivery of rails- to deliver rails on the dates promised, which did not occur.

## AWARD FINDINGS REGARDING PRE-PANELIZATION

While the Partial Award found that no change order was ever prepared or executed for any pre-panelization Option, as was required to modify the terms of the Agreements, (Award at 26) each change order reflects the language of the option agreed to by ACE. ACE's exhibit referred to Changes Orders 1, 2 and 3 as allocating "net cost to deliver 1st, 2nd and 3rd sets of A-Frames.

The Email of Eric McLean describes 10% of A-Frames coming no later than March 1, another 10% arriving no later than March 10th with the remainder arriving by March 31.

The Award found acceleration for the delivery schedule reflected in various change orders was the product of negotiations. (Award at 27) and it found ACE agreed to a series of piecemeal change orders for the accelerated delivery of Sunlink's products through Mid-April. (Award at 27)

ACE asserted offset rights with respect to $506,764.50 on its Exhibit 4, but due to the bifurcation, had no opportunity to present those rights including the charge backs for delivery charges stemming from the Option accepted on February 3, 2014. Each of the charges are tied to the Delivery Change Orders, each of which was subject to Sunlink's complying with its contractual Option and obligations, namely, delivery of the rails as promised in the February 3rd acceptance of the Prepanelization option of Eastwood.

Expediting the construction of solar arrays cannot be accomplished without rails, the other components are superfluous. The deliveries arrived too late to use the pre-panelization method due to Sunlink's breach in its failure to provide the rails in time, as promised, making the extra

charges useless. Even Sunlink's Expert Collins, who testified about reasonable schedules opined that late delivery of the rails made pre-panelization impossible.   Exhibit 4 which establishes offsets of $506,764.50 deals directly with the issue of Chapter 93(a) damages found in the partial award.

## AWARD FINDINGS WITH RESPECT TO GL c. 93A

ACE was found not to have entered into the Agreements planning or expecting not to meet its financial obligations.  (Award at 29)  According to the Partial Award, ACE signed the Change Orders recklessly, without reasonable confidence in having resources to pay them, solely as a means to encourage Sunlink to expedite performance and continue supplying the projects. (Award at 30). The Award found ACE's conduct in "duping Sunlink into accelerating deliveries and supplying additional products under the change orders" violated GL c. 93A. (Award at 30) However, Sunlink's failure to provide rails in time to enable prefabrication as would have sped up the schedule, prevented ACE from enjoying its side of the bargain and resulting in no consideration to ACE.

The entire GL 93A violation finding in the Partial Award is tied up with the change orders.  ACE executed Change Orders totaling at least $520,703.97.  Damages associated with ACE 93A violation is "the amount of such change orders".  (Award at 31)  Due to the issues of offset rights for failed delivery dates, ACE urges reconsideration.

In Summary ACE requests reconsideration or clarification to

1. Establish ACE's rights to offset for payments made to Old Castle Precast Inc.

2. Clarify the obligations according to specific projects or structure for determining which of the nine separate projects the damages are attributable

3. Present further information to establish offset rights for late delivery under the bifurcation rulings.

10

4. Reconsider the 93A finding based on the information already in evidence.

Respectfully submitted,

Attorney for
American Capital Energy, Inc.

ROBERT K. DOWD, P.c.

Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
360 Merrimack Street
Building 9, Entrance K, Suite 202
Lawrence Massachusetts 01843

(978) 221-2000
robtdowd@sbcglobal.net

11

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| **SUNLINK CORPORATION** <br> Claimant <br><br> v. <br><br> **AMERICAN CAPITAL ENERGY, INC.** <br> Respondent | AAA No.01-14-0001-7516 <br><br> **NOTICE OF RESPONDENT AMERICAN CAPITAL ENERGY INC OF SETTLEMENT OF LITIGATIONS BY SUPPLIER OLDCASTLE PRECAST AGAINST PARTIES TO THE ARBITRATION** |

The Respondent American Capital Energy, Inc. provides this Notice of Settlement concerning the same projects that are the subject of the arbitration case between the parties.

Both parties to the pending arbitration Sunlink Corporation (Sunlink) and American Capital Energy Inc. (ACE) were sued by Oldcastle Precast (Oldcastle) in five separate lawsuits captioned:

- *Old Castle Precast, Inc. v Sunlink Corporation, American Capital Energy Inc. and Arch Insurance* Dukes Superior Court Docket No DUCV 2014-00046-A

- *Old Castle Precast, Inc. v Sunlink Corporation, American Capital Energy Inc. and Berkley Insurance Company* Barnstable Superior Court Docket No BACV 2 2014-00482

- *Old Castle Precast, Inc. v Sunlink Corporation, American Capital Energy Inc. and Arch Insurance* Barnstable Superior Court Docket No BACV 2014-00487

- *Old Castle Precast, Inc. v  Sunlink Corporation, American Capital Energy Inc. and Berkley Insurance* Barnstable Superior Court  Docket No BACV 2014-00489

- *Oldcastle Precast, Inc. v Sunlink Corporation and ACE of Cape Cod Solar IV, LLC* Barnstable Superior Court Docket No BACV 2014-00493

The lawsuits involve the same projects that are the subject of the pending Arbitration and were asserted by a supplier to Sunlink the Claimant.

Through the attached settlement agreement, ACE has paid $327,015.50 to Oldcastle and received an assignment of Oldcastle's rights against Sunlink.   The agreement requires Oldcastle to dissolve all liens against the project and bonds.

Part of the claim made by Sunlink against ACE in the arbitration and part of ACE's asserted rights to set-off, involve moneys ACE paid in the attached settlement.

ACE intends through this Notice, and pursuant to *AAA Construction Industry Rules 6, 36(a), 40 and 41*, to provide current facts in relation to ACE's claim for set off rights, asserted at page 47 of the Arbitration Brief ACE filed on July 8, 2015.

Respectfully Submitted

Attorney for
American Capital Energy, Inc.

ROBERT K. DOWD, P.c.

Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
360 Merrimack Street
Building 9, Entrance K, Suite 202
Lawrence Massachusetts 01843

(978) 221-2000
robtdowd@sbcglobal.net

## CERTIFICATE OF SERVICE

I, Robert K. Dowd, attorney for American Capital Energy, Inc., hereby certify that on this date I served the foregoing

**NOTICE OF RESPONDENT AMERICAN CAPITAL ENERGY INC
OF SETTLEMENT OF LITIGATIONS BY SUPPLIER OLDCASTLE PRECAST
AGAINST PARTIES TO THE ARBITRATION**

By email and first-class mail, postage prepaid to all counsel who have entered an appearance in this case.

Paul J. Murphy, BBO #363490
David G Thomas BBO #640854
GREENBERG TRAURIG, LLP
One International Place
Boston MA 02110

(617) 310-6063
murphyp@gtlaw.com
thomasda@gtlaw.com

Signed under the pains and penalties of perjury this 23th day of July, 2015.

American Capital Energy, Inc.

By Its Attorney

Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
360 Merrimack Street
Building 9, Entrance K, Suite 202
Lawrence Massachusetts 01843

(978) 221-2000
robtdowd@sbcglobal.net

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into, as of this *23rd*

day of July 2015, by and between (the Oldcastle Precast, Inc., "Plaintiff"), and American Capital

Energy, Inc., ( the "Defendant"). The Plaintiff and Defendant and are hereinafter collectively

referred to as the "Parties."   The Plaintiff has filed four lawsuits in Barnstable County and one

lawsuit in Dukes County containing allegations arising out of material and services supplied to

solar construction projects.  The Cases hereinafter referred to as "the Lawsuits" are captioned as

follows:

- *Old Castle Precast, Inc. v Sunlink Corporation, American Capital Energy Inc. and Arch Insurance* Dukes Superior Court Docket No DUCV 2014-00046-A

- *Old Castle Precast, Inc. v Sunlink Corporation, American Capital Energy Inc. and Berkley Insurance Company* Barnstable Superior Court Docket No BACV 2014-00482

- *Old Castle Precast, Inc. v Sunlink Corporation, American Capital Energy Inc. and Arch Insurance* Barnstable Superior Court Docket No BACV 2014-00487

- *Old Castle Precast, Inc. v Sunlink Corporation, American Capital Energy Inc. and Berkley Insurance* Barnstable Superior Court Docket No BACV 2014-00489

- *Oldcastle Precast, Inc. v Sunlink Corporation and ACE of Cape Cod Solar IV, LLC* Barnstable Superior Court Docket No BACV 2014-00493

The Agreement between the Parties is as follows:

1.      In consideration of: (1) the payment to the Plaintiff of $327,015.50 (Three

hundred twenty-seven thousand fifteen dollars and fifty cents)   by the Defendant American

Capital Energy Inc. sent by wire transfer to Attorney Christopher Tolley at : Santander Bank

Jeffrey J. Phillips, P.C.IOLTA/Conveyance One Bowdoin Square Boston, MA 02114 Route:

011075150 Account: 60704960255  (2) execution of this release by the Plaintiff  (3) filing and recording by the Plaintiff, of Dissolutions of Lien  on all liens initiated by the Plaintiff relating to the five lawsuits captioned above, in Dukes and Barnstable County Registry of Deeds (4) the previously executed Assignment of Claims and Rights (attached)  (5) the filing of the attached Notices of Dismissal of Defendant, Arch Insurance and Berkley Insurance  and serving pursuant to Superior Court Rule 9A and filing Motions to Substitute and (6) for other good and valuable consideration, the receipt, sufficiency and fairness of which is hereby acknowledged, the Parties do hereby release and forever discharge each other, and their respective present and former principals,   agents,   representatives,   attorneys,   partners,   employees,   directors,   officers, shareholders,  affiliated  entities,  reinsurers,  insurers,  claims  administrators,  predecessors, successors, heirs, issue and assigns, from any and all claims, demands, and causes of action, of any kind, whether in law or in equity, direct or indirect, arising heretofore or hereafter, which are known, unknown, or unknowable, but limited to those that were raised or could have been raised against the Parties to this Release in the Lawsuits captioned above ("the Lawsuits"), or in any way related to the work and materials of or supplied by Plaintiff in connection with Projects- but only for such claims as could have been made against American Capital Energy, Inc., Arch Insurance Company and/or Berkley Insurance in the Lawsuits.

2.      Specifically excluded from this release, and instead preserved unchanged, are all rights, claims, causes of action of Plaintiff Oldcastle Precast Inc. against Sunlink Corporation which were or could have been brought in "the Lawsuits".

3.      Upon receipt of the payments listed above in paragraph 1 above, the Plaintiff will execute and file the Notices of Dismissal of Defendant, Arch Insurance and Berkley Insurance with Prejudice of the Defendant, Arch Insurance and Berkley Insurance in each of the Lawsuits. Also the Plaintiff and American Capital Energy, Inc. shall serve pursuant to Superior Court Rule

2

9A and file a Joint Motion to Substitute American Capital Energy Inc., for Oldcastle Precast Inc., (copy attached) which will be executed by the Parties' counsel simultaneously with this Agreement. If dismissal of the Lawsuits cannot be effectuated for any reason by the Stipulations, the Parties and their counsel, agree to seek dismissal of the cases through a motion filed with the court in which the Lawsuits are pending.

4.      So long as such requests are not unreasonably burdensome, Plaintiff agrees to comply with Defendant's reasonable requests in Defendants' prosecution of rights and claims against Sunlink assigned by Plaintiff however Plaintiff shall not be required to appear at depositions, trials, arbitration or other court or litigation related proceeding or meetings without reasonable compensation nor to attend such proceedings or meetings in a location further than the distance a Massachusetts subpoena may be enforced.

5.      The Parties acknowledge and agree that they do not admit any liability for the claims asserted in the Lawsuits or the Released Claims and that any liability is expressly denied.

6.      The Parties hereto each represent, declare, and warrant that they each have the full authority to consent to the terms of this Agreement and to sign this Agreement. The Plaintiff and Defendant represent and warrant that they have the sole and exclusive right and authority to execute this Settlement Agreement and that no other person or entity has or had any interest in the claims, demands, obligations, or causes of action referred to herein.

7.      The Parties represent and warrant that they are entering into this Agreement voluntarily and in good faith and that the terms contained herein are the product of good faith, arm's-length negotiation. The Parties represent and warrant that this Agreement is not the product of any threat, duress or coercion, and that each Party has had the full opportunity to consult with legal counsel of their choice, and has done so. The Parties agree that they sign this document voluntarily and not based upon any representation or statement of any kind by any

3

other party or their representative.  This Agreement was jointly drafted by all Parties and is not to be construed against any party.

8.     This Agreement is intended by the Parties to be complete, and may only be modified in writing by agreement between the Parties.

9.     This Agreement may be executed in one or more counterparts, each of which when so executed shall be deemed to be an original, and all such counterparts together shall constitute one and the same instrument.

10.     This Agreement shall be governed by the laws of the Commonwealth of Massachusetts and shall take effect as a sealed instrument under the laws of the Commonwealth of Massachusetts.   Its interpretation shall be litigated in the courts of Commonwealth of Massachusetts (state or federal court), regardless of any choice of law rules.


Oldcastle Precast, Inc.

By: _____

Its: _____CFO_____


American Capital Energy, Inc.

By: _ART Hennessey_____

Its: _____CFO_____

4

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA

Phone: 415-925-9650
Fax: 415-925-9636

## SunLink Customer Change Order

Page 1 of 2

**Sold To:**
American Capital Energy
Inc.
1001 Pawtucket Ave,
Lowell, MA 01854

**Ship To:**

## Description of Change

American Capital Energy (Ace) agrees to pay for 50% (fifty percent) of the entire net cost to ~~accelerate~~ the delivery of the first
10% (ten percent) of the SunLink solar power mounting frame hardware (the "hardware") from Hangzou, China to ACE specified
job sites located in Massachusetts, USA. The cost to ~~accelerate~~ delivery of the first 10% (ten percent) of the hardware by air
freight is $127,817.00. A credit of $4,195.80 for air transportation in place of shipment by ocean carriage has been applied
resulting in a net cost of $123,624.00. Ace agrees to pay $61,812.10 (50% of the entire net cost). The shipment of the first 10%
(ten percent) of the hardware herein shall be transported as follows:

First Shipment

490 Mounting frames of Part Number: 81-0017-02 - X04
1400 Mounting frames of Part Number: 81-0018-02 - X03

Scheduled to ship February 25 from manufacturer and arrive March 3-5 depending on equipment availability and customs
clearance.

*Art Hennessey*
Art   Hennessey
CFO

* THIS CHANGE ORDER DOES NOT RELEASE SunLink FROM ANY OF ITS CONTRACTUAL
OBLIGATIONS WITH ACE OR NOTICES PREVIOUSLY PROVIDED TO SunLink BY ACE.
Terms: 50% down payment due prior to shipment. Balance due 30 days after shipment.

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
SunLink assumes a forklift is available to offload at delivery site.

**CONFIDENTIAL**

SL0017915

**SunLink Corporation**
1010 B Street, Suite 400
San Rafael, CA 94901
USA

Phone: 415-925-9650
Fax: 415-925-9636

## SunLink Customer Change Order

Page 1 of 2

| Sold To: | Ship To: |
|---|---|
| American Capital Energy Inc. 1001 Pawtucket Ave, Lowell, MA 01854 | |

### Description of Change

American Capital Energy (Ace) agrees to pay for 50% (fifty percent) of the entire net cost to ~~accelerate~~ the delivery of the second 10% (ten percent) of the SunLink solar power mounting frame hardware (the "hardware") from Hangzou, China to ACE specified job sites located in Massachusetts, USA. The cost to ~~accelerate~~ delivery of the second 10% (ten percent) of the hardware by air freight is $127,817.00. A credit of $4,195.80 for air transportation in place of shipment by ocean carriage has been applied resulting in a net cost of $123,624.00. Ace agrees to pay $61,812.10 (50% of the entire net cost). The shipment of the second 10% (ten percent) of the hardware herein shall be transported as follows:

Second Shipment

350 Mounting frames of Part Number: 81-0017-02 - X04
1540 Mounting frames of Part Number: 81-0018-02 - X03

Scheduled to ship February 28 from manufacturer and arrive March 6-10 depending on equipment availability and customs clearance.

Terms: 50% paid prior to shipment. Balance due 30 days after shipment.

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
SunLink assumes a forklift is available to offload at delivery site.

ART  HENNESSEY
CFO

\* THIS CHANGE ORDER DOES NOT RELEASE SunLink FROM ANY OF ITS CONTRACTUAL OBLIGATIONS WITH ACE OR NOTICES PREVIOUSLY PROVIDED TO SunLink BY ACE.

**CONFIDENTIAL**

SL0017916

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA

Phone: 415-925-9650
Fax: 415-925-9636

## SunLink Customer Change Order

Page 1 of 1

| Sold To:<br>American Capital Energy<br>Inc.<br>1001 Pawtucket Ave,<br>Lowell, MA 01854 | Ship To: |
|---|---|

### Description of Change

American Capital Energy (Ace) agrees to pay for 50% (fifty percent) of the entire net cost to ~~accelerate~~ *Air* the delivery of the third 10% (ten percent) of the SunLink solar power mounting frame hardware (the "hardware") from Hangzhou, China to ACE specified job sites located in Massachusetts, USA. The cost to ~~accelerate~~ delivery of the third 10% (ten percent) of the hardware by air freight is $136,599.40. A credit of $4,195.80 for air transportation in place of shipment by ocean carriage has been applied resulting in a net cost of $132,403.60. Ace agrees to pay $66,201.80 (50% of the entire net cost). The shipment of the third 10% (ten percent) of the hardware herein shall be transported as follows:

<u>Third Shipment</u>

350 Mounting frames of Part Number: 81-0017-02 - X04
1540 Mounting frames of Part Number: 81-0018-02 - X03

Scheduled to ship March 4 from manufacturer and arrive March 11-13 depending on equipment availability and customs clearance.

Terms:  50% paid prior to shipment.  Balance due 30 days after shipment.

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
SunLink assumes a forklift is available to offload at delivery site.

*Art* Hennessey, CFO

This change order does not release SunLink from any of its contractual obligations with ACE or notices previously provided to SunLink by ACE.

**CONFIDENTIAL**

SL0017934

**Oldcastle** Precast®                    CHANGE ORDER PROPOSAL

41 Almeida Road                  Telephone:  508-336-7600
Rehoboth, MA  02769              Fax:        508-336-7707

Quote To:  Sunlink Corp          Ship To:  Sunlink-Ace  Change Order for added production
                                           volume using Avon, CT and Auburn, ME Plants
                                           ACE Solar Siles on Cape Cod and Marthas
                                           Vineyard

| Reference: | | | Contact: | | | Phone: | |
|---|---|---|---|---|---|---|---|
| Order No | Date | Customer No | Terms | Cash discount | | F.O.B. | Quote Valid for |
| S050823 | 2/27/2014 | 003684 | Net 30 Days | | | FOB.IS | 30 days |
| Qty | Unit | | Description | | | Unit Price | Amount |

\*\*\*Added Volume  for Production From Avon Facility to be cast
in March w/ PO Issued on or before March 3rd\*\*\*

Sunlink: This Change Order (CO) proposal is to  move approx....
(1600) ballast all currently scheduled for April production at
Rehoboth facility to the Avon, CT facility. Additional cost to do this is
shown below. Production to commence 2 weeks from PO/CO.
Schedule is dependent on PO/CO being issued NO later than
Monday March 3rd

| 1.00 | Ea | Materials and Labor for Fabrication and set up of wood forming system to produce (120) ballasts per day | -37,500.00 | Ed | 37,500.00 |
| 93.00 | Ea | Added Freight/Load for deliveries from Avon. + Added freight per ballast type: | 575.00 | Ed | 53,475.00 |

                                                          TOTAL    $90,975.00

All terms and conditions from previous quotations apply.

**CONFIDENTIAL**                                    SL0008710

**Oldcastle** Precast*

If you have any questions, please call me at 508-336-7690.

Accepted by _____ 3-3-14 Date    .Dave Bruni _____ Date

*Christopher Tiller*
*CEO / SunLink*

Sincerely,

Dave Bruni

Quotation Contract
Sunlink-Ace Change Order, Harwich, MA
Date: 2/27/2014.

Page 2 of 2

CONFIDENTIAL

SL0008711

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA

Phone: 415-925-9650
Fax: 415-925-9636

## SunLink Customer Change Order

Page 1 of 2

| Sold To: | Ship To: |
|---|---|
| American Capital Energy Inc. 1001 Pawtucket Ave, Lowell, MA 01854 | |

### Description of Change

American Capital Energy (Ace) agrees to pay $72,780 to accelerate the delivery of approximately 1608 of the precast ballast blocks (the "Ballast Blocks") required for the C-Vec projects to ACE specified job sites located in Massachusetts, USA. The following Ballast Blocks scheduled for delivery in April will be accelerated to deliver in the last two weeks of March.

| Quantity | Block Number |
|---|---|
| 768 | 85-0012 |
| 140 | 85-0005 |
| 700 | 85-0011 |

The cost to SunLink for this change is shown in the attached documentation from SunLink's supplier Old Castle. The $72,780 required therefore corresponds to 80% of the cost to SunLink (SunLink will bear 20% of the cost of this change).



CFO    3/3/2014

\* ACE RESERVES THE RIGHT TO PAY OLD CASTLE DIRECTLY FOR THEIR PORTION OF THIS CHANGE ORDER.

\* THIS CHANGE ORDER DOES NOT RELEASE SUNLINK FROM ANY OF IT'S CONTRACTUAL OBLIGATIONS WITH ACE OR NOTICES PREVIOUSLY PROVIDED TO SUNLINK BY ACE.

Terms: Net 30 on costs as billed by Old Castle in change order.

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
SunLink assumes a forklift is available to offload at delivery site.

CONFIDENTIAL

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA

Phone: 415-925-9650
Fax: 415-925-9636

## SunLink Customer Change Order

Page 1 of 2

| Sold To: | Ship To: |
|---|---|
| American Capital Energy Inc. 1001 Pawtucket Ave, Lowell, MA 01854 | |

## Description of Change

American Capital Energy (Ace) agrees to pay $72,780 to accelerate the delivery of approximately 1608 of the precast ballast blocks (the "Ballast Blocks") required for the C-Vec projects to ACE specified job sites located in Massachusetts, USA. The following Ballast Blocks scheduled for delivery in April will be accelerated to deliver in the last two weeks of March:

| Quantity | Block Number |
|---|---|
| 768 | 85-0012 |
| 140 | 85-0005 |
| 700 | 85-0011 |

The cost to SunLink for this change is shown in the attached documentation from SunLink's supplier Old Castle. The $72,780 required therefore corresponds to 80% of the cost to SunLink (SunLink will bear 20% of the cost of this change).

_[signature]_  CFO  3/3/2014

✗ ACE RESERVES THE RIGHT TO PAY OLD CASTLE DIRECTLY FOR THEIR PORTION OF THIS CHANGE ORDER.

‡ THIS CHANGE ORDER DOES NOT RELEASE SUNLINK FROM ANY OF ITS CONTRACTUAL OBLIGATIONS WITH ACE OR NOTICES PREVIOUSLY PROVIDED TO SUNLINK BY ACE.

Terms: Net 30 on costs as billed by Old Castle in change order.

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
SunLink assumes a forklift is available to offload at delivery site.

CONFIDENTIAL

SL0012231

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA


**SUNLINK**

Phone: 415-925-9650
Fax: 415-925-9636

SunLink Reference:  CCO5

**Sales Order:  11002151**

**SunLink Customer Change Order**

Page 1 of 1

| Sold To: | | Hold = False | Ship To: | | |
|---|---|---|---|---|---|
| American Capital Energy | | | American Capital Energy | | |
| 1001 Pawtucket Blvd, Suite 278 | | | 209 Queen Anne Rd | | |
| Lowell | MASS | 01854 | Harwich | MA | 02645 |

| Original Order Date | 01/03/2014 | Ship By | 03/14/2014 | Customer PO Number | |
|---|---|---|---|---|---|

3.7.14 – CCO5 Created for increased form count and Saturday delivery on the following dates: Mar. 15, 22, 29, Apr. 5, 12 . RCP

| Line | Part Number | Description | Quantity |
|---|---|---|---|
| 21 | FRMCHRG | Form Build Charge ($7500 for 15) | 15 |
| 22 | SATDEL | Saturday Production and Delivery Charges 5 Saturdays | 1 |
| | | (MBO $6500/Saturday, Scituate $6,500/Saturday) | |

This change order does not release SunLink from any of its Contractual obligations with ACE or any Notices previously provided to SunLink by ACE.

This change order shall be for (180) Ballasts per Saturday listed above.

ACE reserves the right to pay SunLink's subcontractors directly for this work.

ACE reserves the right to require SunLink to provide back up documentation for all charges and invoices associated with this change order.

| Order Total | $72,500.00 |
|---|---|

Customer Signature        Date 3/13/2014        SunLink Corporation

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
SunLink assumes a forklift is available to offload at delivery site.

**CONFIDENTIAL**

SL0012302



SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA

Phone: 415-925-9650
Fax: 415-925-9636

SunLink Reference:  CCO7

**Sales Order:  11002151**   **SunLink Customer Change Order**   Page 1 of 1

| Sold To: | | Ship To: | |
|---|---|---|---|
| American Capital Energy | Hold= False | American Capital Energy | |
| 1001 Pawtucket Blvd, Suite 278 | | 209 Queen Anne Rd | |
| Lowell | MASS   01854 | Harwich | MA   02645 |

| Original Order Date | 01/03/2014 | Ship By | 03/14/2014 | Customer PO Number | |
|---|---|---|---|---|---|

3.14.2014 - CCO7 - Created to cover Sunday production at MBO from now until completion (8k/Sun x 6 days) - RCP

| Line | Part Number | Description | Quantity |
|---|---|---|---|
| 26 | SUNDEL | Sunday Delivery Charge | 1 |
| 27 | 2000 | SunLink Ground Mount Assembly | 1 |

THIS CHANGE ORDER DOES NOT RELEASE SunLink FROM ANY OF ITS CONTRACTUAL OBLIGATIONS WITH ACE OR DEFAULT NOTICES PREVIOUSLY PROVIDED TO SunLink BY ACE

THIS CHANGE ORDER SHALL BE FOR SUNDAY PRODUCTION AT MBO OF (80) BALLAST PER SUNDAY.

ACE RESERVES THE RIGHT TO PAY SunLink's SUBCONTRACTORS DIRECTLY FOR THIS WORK.

ACE RESERVES THE RIGHT TO REQUIRE SunLink TO PROVIDE BACKUP DOCUMENTATION FOR ALL CHARGES ASSOCIATED WITH THIS CHANGE ORDER.

| | |
|---|---|
| Order Total | $48,000.00 |

_[signature]_      3/19/14
Customer Signature        Date        SunLink Corporation

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
Tax and freight will be billed separately and are not included in this cost.
SunLink assumes a forklift is available to offload at delivery site. If you need special delivery options, please contact: projects@sunlink.com.
This quote expires at the end of the month in which it was issued.

CONFIDENTIAL                                  SL0012341

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA



# SUNLINK

Phone: 415-925-9650
Fax: 415-925-9636

SunLink Reference:  CCO8

Sales Order:  **11002151**

**SunLink Customer Change Order**

Page 1 of 1

| Sold To: | Hold = False | Ship To: | | |
|---|---|---|---|---|
| American Capital Energy | | American Capital Energy | | |
| 1001 Pawtucket Blvd, Suite 278 | | 209 Queen Anne Rd | | |
| Lowell | MASS   01854 | Harwich | MA | 02645 |

| <u>Original Order Date</u> | 01/03/2014 | <u>Ship By</u> | 03/14/2014 | <u>Customer PO Number</u> |
|---|---|---|---|---|

3.24.2014 – CCO8 – Created to cover costs to expedite ballast deliveries from Old Castle/MBO/Scituate – RCP

| Line | Part Number | Description | Quantity |
|---|---|---|---|
| 30 | XPEDCRG | Cost Difference b/w MBO+Scit and OC | 1 |
| 31 | XPEDCRG | MBO/Scit Cancelation | 1 |
| 32 | XPEDCRG | OC Material and Changeover | 1 |
| 33 | 2000 | SunLink Ground Mount Assembly | 1 |

ALL BALLAST BLOCKS SHALL BE DELIVERED TO THE SITES NO LATER THAN April 16, 2014.
THIS CHANGE ORDER DOES NOT RELEASE SunLink FROM ANY OF ITS CONTRACTUAL OBLIGATIONS
WITH ACE OR DEFAULT NOTICES PREVIOUSLY PROVIDED TO SunLink BY ACE.
ACE RESERVES THE RIGHT TO PAY SunLink's SUBCONTRACTORS DIRECTLY FOR THIS WORK.
ACE RESERVES THE RIGHT TO REQUIRE SunLink TO PROVIDE BACKUP DOCUMENTATION FOR ALL
CHARGES ASSOCIATED WITH THIS CHANGE ORDER.

| | | Order Total | $90,033.50 |
|---|---|---|---|

Customer Signature                 Date

SunLink Corporation

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
Tax and freight will be billed separately and are not included in this cost.
SunLink assumes a forklift is available to offload at delivery site. If you need special delivery option, please contact: projects@sunlink.com.
This quote expires at the end of the month in which it was issued.

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA



**SUNLINK**

Phone: 415-925-9650
Fax: 415-925-9636

SunLink Reference:  CC09

**Sales Order:  11002151**          SunLink Customer Change Order                    Page 1 of 1

| Sold To: | Hold= False | Ship To: | |
|---|---|---|---|
| American Capital Energy | | American Capital Energy | |
| 1001 Pawtucket Blvd, Suite 278 | | 209 Queen Anne Rd | |
| Lowell | MASS   01854 | Harwich | MA   02645 |

| Original Order Date  01/03/2014 | Ship By  03/14/2014 | Customer PO Number |
|---|---|---|

4.11.2014 – CC09 - Created to cover shipping costs of ballast deliveries from Old Castle to Tisbury – RCP

| Line | Part Number | Description | Quantity |
|---|---|---|---|
| 37 | XPEDCRG | OC Transport cost to Tisbury | 1 |
| 38 | 2000 | SunLink Ground Mount Assembly | 1 |

ALL BALLAST BLOCKS SHALL BE DELIVERED TO THE SITE NO LATER THAN APRIL 16, 2014
THIS CHANGE ORDER DOES NOT RELEASE SunLink FROM ANY OF IT'S CONTRACTUAL
OBLIGATIONS WITH ACE OR DEFAULT NOTICES PREVIOUSLY PROVIDED TO SunLink BY ACE
ACE RESERVES THE RIGHT TO PAY SunLink's SUBCONTRACTORS DIRECTLY FOR THIS WORK
ACE RESERVES THE RIGHT TO REQUIRE SunLink TO PROVIDE BACKUP DOCUMENTATION
FOR ALL CHARGES ASSOCIATED WITH THIS CHANGE ORDER

| Order Total | $33,625.00 |
|---|---|

Customer Signature      Date  04/21/2014

SunLink Corporation

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
Tax and freight will be billed separately and are not included in this cost.
SunLink assumes a forklift is available to offload at delivery site. If you need special delivery options, please contact: projects@sunlink.com.
This quote expires at the end of the month in which it was issued.

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA



Phone: 415-925-9650
Fax: 415-925-9636

SunLink Reference:  CCO10

**Sales Order:  11002151**

**SunLink Customer Change Order**

Page 1 of 1

| Sold To: | | Hold= False | Ship To: | | |
|---|---|---|---|---|---|
| American Capital Energy | | | American Capital Energy | | |
| 1001 Pawtucket Blvd, Suite 278 | | | 209 Queen Anne Rd | | |
| Lowell | MASS | 01854 | Harwich | MA | 02645 |

| Original Order Date | 01/03/2014 | Ship By | 03/14/2014 | Customer PO Number | |
|---|---|---|---|---|---|

5.1.2014 – CCO10 – Additional ballast requested by ACE to complete installation – RCP

| Line | Part Number | Description | Quantity |
|---|---|---|---|
| 41 | 85-0011 | GM PRECAST BALLAST, 14x330 | 16 |
| 42 | 2000 | SunLink Ground Mount Assembly | 1 |

| | Order Total | $4,266.00 |
|---|---|---|

_3yCO_           05/01/2014

Customer Signature          Date

SunLink Corporation

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
Tax and freight will be billed separately and are not included in this cost.
SunLink assumes a forklift is available to offload at delivery site. If you need special delivery options, please contact: projects@sunlink.com.
This quote expires at the end of the month in which it was issued.

**CONFIDENTIAL**

**SL0017982**

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA


**SUNLINK**

Phone: 415-925-9650
Fax: 415-925-9636

SunLink Reference:  CCO11

Sales Order:  **11002151**      SunLink Customer Change Order      Page 1 of 1

| Sold To: | | Hold= False | Ship To: | | |
|---|---|---|---|---|---|
| American Capital Energy | | | American Capital Energy | | |
| 1001 Pawtucket Blvd, Suite 278 | | | 209 Queen Anne Rd | | |
| Lowell | MASS | 01854 | Harwich | MA | 02645 |

| Original Order Date | 01/03/2014 | Ship By | 03/14/2014 | Customer PO Number | |
|---|---|---|---|---|---|

5.7.2014 - CCO11 - Customer requested additional material - RCP

| Line | Part Number | Description | Quantity |
|---|---|---|---|
| 46 | 86-0008 | Rail, 8x1, 992mm Wide Framed Module | 42 |

| Order Total | $5,419.96 |
|---|---|

Customer Signature        Date        05/12/14

SunLink Corporation

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
Tax and freight will be billed separately and are not included in this cost.
SunLink assumes a forklift is available to offload at delivery site. If you need special delivery options, please contact: projects@sunlink.com.
This quote expires at the end of the month in which it was issued.

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA



**SUNLINK**

Phone: 415-925-9650
Fax: 415-925-9636

SunLink Reference:  CCO2

**Sales Order:   11001823**        SunLink Customer Change Order        Page 1 of 1

| Sold To: | | Ship To: | | |
|---|---|---|---|---|
| American Capital Energy | Hold= False | American Capital Energy | | |
| 1001 Pawtucket Blvd, Suite 278. | | 97 Sam Ryder Rd | | |
| Lowell | MASS   01854 | Chatham | MA | 02633 |

| Original Order Date | 04/11/2012 | Ship By | 03/14/2014 | Customer PO Number |
|---|---|---|---|---|

5.7.2014 – CCO2 – Customer requested extra material – RCP

| Line | Part Number | Description | Quantity |
|---|---|---|---|
| 36 | 86-0002 | Rail, 9x1, Sunpreme | 1 |
| 37 | 86-0010 | Rail, 7x1, Sunpreme | 1 |

| | Order Total | $257.18 |
|---|---|---|

_signature_  05/12/14

Customer Signature          Date          SunLink Corporation

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
Tax and freight will be billed separately and are not included in this cost.
SunLink assumes a forklift is available to offload at delivery site. If you need special delivery options, please contact: projects@sunlink.com.
This quote expires at the end of the month in which it was issued.

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA



Phone: 415-925-9650
Fax: 415-925-9636

SunLink Reference:  CCO2

**Sales Order:  11001821**   **SunLink Customer Change Order**   Page 1 of 1

| Sold To: | Hold= False | Ship To: | Bill Guinasso |
|---|---|---|---|
| American Capital Energy | | | American Capital Energy |
| 1001 Pawtucket Blvd, Suite 278 | | | 45 Flint St |
| Lowell | MASS 01854 | | |
| | | | Marstons Mills   Massac   02648 |
| | | | (781) 392-4892 |

| <u>Original Order Date</u> 04/11/2012 | <u>Ship By</u> 02/19/2014 | <u>Customer PO Number</u> |
|---|---|---|

5.7.2014 – CCO2 – Customer requested extra material – RCP

| Line | Part Number | Description | Quantity |
|---|---|---|---|
| 47 | 09-00115-01 | Button Head Cap Screw 5/16"-18 x 2.5" | 250 |
| 48 | 48-0003-010 | C-RMS End Clamp 40mm | 250 |
| 49 | 09-00130-03 | Hex Head Cap Screw, Galvanized, 1/2in-13 x 3.5in | 300 |
| 50 | 09-00057-03 | 1/2"-13, Hex Nut, ASTM A563, Grade A, Galvanized | 300 |

| | Order Total | $760.00 |
|---|---|---|

_____   05/12/14
Customer Signature        Date        SunLink Corporation

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
Tax and freight will be billed separately and are not included in this cost.
SunLink assumes a forklift is available to offload at delivery site. If you need special delivery options, please contact: projects@sunlink.com.
This quote expires at the end of the month in which it was issued.

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA



Phone: 415-925-9650
Fax: 415-925-9636

SunLink Reference:  CCO2

Sales Order:  **11002134**   **SunLink Customer Change Order**   Page 1 of 1

| Sold To: | Hold= False | Ship To: | Bill Guinasso |
|---|---|---|---|
| American Capital Energy | | | American Capital Energy |
| 1001 Pawtucket Blvd, Suite 278 | | | 120 Theophilus F. Smith Road |
| Lowell | MASS  01854 | | |
| | | | South Dennis    Massac  02660 |
| | | | (781) 392-4892 |

| Original Order Date | 12/12/2013 | Ship By | 02/19/2014 | Customer PO Number |
|---|---|---|---|---|

5.7.2014 – CCO2 – Customer requested additional materials – RCP

| Line | Part Number | Description | Quantity |
|---|---|---|---|
| 43 | 86-0001 | Rail, 8x1, Sunpreme | 7 |
| 44 | 86-0010 | Rail, 7x1, Sunpreme | 5 |
| 45 | 2100 | SunLink Ground Mount 1.5 | 1 |

| Order Total | $1,558.72 |
|---|---|

_____  5/12/14

Customer Signature          Date          SunLink Corporation

All terms and conditions associated with the original sales contract are applicable and not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
Tax and freight will be billed separately and are not included in this cost.
SunLink assumes a forklift is available to offload at delivery site. If you need special delivery options, please contact: projects@sunlink.com.
This quote expires at the end of the month in which it was issued.

SunLink Corporation
1010 B Street, Suite 400
San Rafael, CA 94901
USA



Phone: 415-925-9650
Fax: 415-925-9636

SunLink Reference: CCO1

Sales Order: **11002135**

## SunLink Customer Change Order

Page 1 of 1

| Sold To: | Hold= False | Ship To: | Bill Guinasso |
|---|---|---|---|
| American Capital Energy | | | American Capital Energy |
| 1001 Pawtucket Blvd, Suite 278 | | | 120 Theophilus F. Smith Road |
| Lowell | MASS  01854 | | |
| | | | South Dennis    Massac  02660 |
| | | | 978-905-3137 |

| Original Order Date | 12/12/2013 | Ship By | 02/19/2014 | Customer PO Number |
|---|---|---|---|---|

5.7.2014 – CCO1 – Customer requested additional material – RCP

| Line | Part Number | Description | Quantity |
|---|---|---|---|
| 36 | 86-0008 | Rail, 8x1, 992mm Wide Framed Module | 9 |
| 37 | 2100 | SunLink Ground Mount 1.5 | 1 |

**Order Total**    **$1,677.61**

Customer Signature          5/12/14

Date

SunLink Corporation

All terms and conditions associated with the original sales contract are applicable and are not modified by this change order.
Sales contract number and Purchase Order number must appear on all correspondence.
Tax and freight will be billed separately and are not included in this cost.
SunLink assumes a forklift is available to offload at delivery site. If you need special delivery options, please contact: projects@sunlink.com.
This quote expires at the end of the month in which it was issued.

**CHANGE ORDERS IDENTIFIED IN AWARD** pages 15-16

| Date | Subject | Record Cite |
|---|---|---|
| 2/17/14 | 50% split of frames from China by air (first two 10% shipments) | SL Exh. 234, Tab 1 |
| 2/25/14 | 50% split of frames from China by air (third 10% shipments) | SL Exh. 234, Tab 2 |
| 3/3/14 | Accelerate delivery of 1,608 ballasts from April to March (Sunlink pays 20%) | SL Exh. 234, Tab 4 |
| 3/13/14 | Production and delivery of 180 ballasts on five Saturdays | SL Exh. 234, Tab 5 |
| 3/19/14 | Production and delivery of 80 ballasts (MBO) on six Sundays | SL Exh. 234, Tab 6 |
| 4/1/14 | Expediting ballasts from MBO/Scituate (by 4/16) | SL Exh. 234, Tab 8 |
| 4/21/14 | Ballast deliveries from Old Castle for Tisbury (by 4/16) | SL Exh. 234, Tab 9 |

**SunLink Change Order Associated with Delivery**

| # | Description | Value |
|---|---|---|
| 1 | 50% Split of Net Cost to Deliver First 10% of A-Frames | $ 61,812.10 |
| 2 | 50% Split of Net Cost to Deliver Second 10% of A-Frames | $ 61,812.10 |
| 3 | 50% Split of Net Cost to Deliver Third 10% of A-Frames | $ 66,201.80 |
| 4 | Acceleration of 1,608 Ballast Blocks (April Delivery to Last Two Weeks in March) | $ 72,780.00 |
| 5 | Cost for (15) Additional Frames and Saturday Delivery (180 Ballasts per Sat.) | $ 72,500.00 |
| 6 | OMITTED - CHANGE ORDER 6 REJECTED | |
| 7 | Sunday Production for MBO (80 Ballasts per Sunday) | $ 48,000.00 |
| 8 | Shift Ballast Blocks from MBO/Scituate to Old Castle, All Ballasts Delivered no Later than 04/16/2014 | $ 90,033.50 |
| 9 | Shipping Cost for Old Castle to Deliver to Tisbury | $ 33,625.00 |
| | **TOTAL** | $ 506,764.50 |

# EXHIBIT GG

## Murphy, Paul (Shld-Bos-LT)

| | |
|---|---|
| **From:** | Murphy, Paul (Shld-Bos-LT) |
| **Sent:** | Tuesday, September 01, 2015 11:23 AM |
| **To:** | LisaRomeo@adr.org |
| **Cc:** | robtdowd@sbcglobal.net; Thomas, David G. (Shld-Bos-LT); Mark Ginalski (mark.ginalski@sunlink.com) |
| **Subject:** | SunLink Corporation v. American Capital Energy, Inc., AAA No. 01-14-0001-7516 |

Dear Ms. Romeo:

We have received ACE's unauthorized filing of yesterday to you and Mr. Evans. ACE's "Motion for Clarification and Reconsideration" (the "Motion") of the Arbitrator's Partial Final Award dated August 18, 2015 (the "Award") is both procedurally and substantively defective. ACE merely seeks a redetermination of the merits of claims already decided against ACE by the Arbitrator in the Award, and thus, respectfully, the Motion must be summarily denied by the AAA.

SunLink also objects to ACE's direct communication with the Arbitrator, despite your admonition to the contrary. Direct communication with the Arbitrator is particularly *in*appropriate in these circumstances where the Arbitrator (i) has yet to rule on SunLink's Application for Fees and Costs; or (ii) to formally assess fees, compensation, and expenses of the arbitration. These two issues are, however, the *only* issues reserved by the Arbitrator in the Award.

We can locate no procedural rule which authorizes the filing of this Motion. To the contrary, the AAA's Commercial Arbitration Rules, R-50, provides, in pertinent part, as follows:

> Within 20 calendar days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. **The arbitrator is not empowered to redetermine the merits of any claim already decided....**

In its Motion, ACE is not requesting correction of any clerical, typographical, or computational errors in the Award. Rather, ACE clearly requests redetermination of claims and issues already decided against ACE by the Arbitrator. In part, ACE also seeks to conflate the arbitration proceedings with wholly independent proceedings currently pending in the Massachusetts Superior Court, proceedings which involve parties and claims not before the AAA in this proceeding. Any/all of these extraneous parties and their claims will be addressed appropriately and in due course by the Superior Court.

We are specifically <u>not</u> addressing here any of the substantive arguments raised by ACE in its Motion; each of the issues raised by ACE having been fully addressed by SunLink in its prior filings, and each having now been conclusively determined by the Arbitrator. If, for any reason, either you or Arbitrator Evans seek a formal opposition from SunLink to this Motion, please notify us immediately.

Thank you, Paul

Paul J. Murphy
Shareholder
Greenberg Traurig, LLP | One International Place | Boston, MA 02110
Tel 617.310.6063 | Fax 617.897.0963 | Cell 617.759.9215
murphyp@gtlaw.com | www.gtlaw.com

**GT** GreenbergTraurig

ALBANY · AMSTERDAM · ATLANTA · AUSTIN · BOSTON · CHICAGO · DALLAS · DELAWARE · DENVER · FORT LAUDERDALE · HOUSTON · LAS VEGAS · LONDON* · LOS ANGELES · MEXICO CITY* · MIAMI · NEW JERSEY · NEW YORK · NORTHERN VIRGINIA · ORANGE COUNTY · ORLANDO · PALM BEACH COUNTY · PHILADELPHIA · PHOENIX · SACRAMENTO · SAN FRANCISCO · SEOUL* · SHANGHAI · SILICON VALLEY · TALLAHASSEE · TAMPA · TEL AVIV* · TOKYO* · WARSAW* · WASHINGTON, D.C. · WESTCHESTER COUNTY
*LONDON: OPERATES AS GREENBERG TRAURIG MAHER LLP; MEXICO CITY: OPERATES AS GREENBERG TRAURIG, S.C.; SEOUL: OPERATED BY GREENBERG TRAURIG LLP FOREIGN LEGAL CONSULTANT OFFICE; TEL AVIV: A BRANCH OF GREENBERG TRAURIG, P.A., FLORIDA, USA; GREENBERG TRAURIG TOKYO LAW OFFICES ARE OPERATED BY GT TOKYO HORITSU JIMUSHO, AN AFFILIATE OF GREENBERG TRAURIG, P.A. AND GREENBERG TRAURIG, LLP; WARSAW: OPERATES AS GREENBERG TRAURIG GRZESIAK SP.K.
STRATEGIC ALLIANCE WITH AN INDEPENDENT LAW FIRM
MILAN · ROME