# EXHIBIT HH

AMERICAN ARBITRATION ASSOCIATION

```
-----------------------------------------------------------x
                                                           :
SUNLINK CORPORATION,                                       :
                                                           :
                              Claimant,                    :
                                                           :        Case No. 01-14-0001-7516
          -and-                                            :
                                                           :
                                                           :
AMERICAN CAPITAL ENERGY, INC.,                             :
                                                           :
                              Respondent.                  :
-----------------------------------------------------------x
```

## DISPOSITION OF APPLICATION FOR MODIFICATION OR CLARIFICATION OF AWARD

I, the undersigned Arbitrator, having been designated in accordance with the arbitration

agreements entered into by the above-named parties dated October 15, 2014, and having been

duly sworn, and having heard the proofs and allegations of the parties, and having previously

rendered a Partial Final Award dated August 18, 2015, and Respondent American Capital

Energy, Inc.'s having filed a "Motion for Clarification and Reconsideration" on August 31,

2015, and Claimant having responded by email dated September 1, 2015, do hereby DECIDE as

follows:

Treating the Motion as a request for modification or clarification of award under AAA

Commercial Arbitration Rule R-50, I deny the Motion as failing to satisfy any of the criteria for

modification or clarification of the Partial Final Award.


Dated:  September 2, 2015                              David L. Evans, Arbitrator

# EXHIBIT II

AMERICAN ARBITRATION ASSOCIATION

|  |  |  |
|---|---|---|
| SUNLINK CORPORATION, | ) | |
| Claimant, | ) ) ) | AAA No. 01-14-0001-7516 |
| v. | ) ) | |
| AMERICAN CAPITAL ENERGY, INC. | ) ) | |
| Respondent. | ) ) | |

## CLAIMANT SUNLINK CORPORATION'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS, AND SUPPORTING MEMORANDUM OF LAW

Pursuant to the Partial Final Award issued by the American Arbitration Association (David L. Evans, Arbitrator) dated August 18, 2015 (the "Award"), and pursuant to G.L. c. 93A, § 11, Claimant SunLink Corporation ("SunLink") hereby seeks an award of its reasonable attorneys' fees in the amount of $1,155,846.50, and reasonable costs in the amount of $186,470.10, for a total of award of fees and costs against Respondent American Capital Energy, Inc. ("ACE") of $1,342,316.60.

In support of this Application, SunLink refers to and relies upon the Affidavit of Paul J. Murphy ("Murphy Aff.") submitted herewith, and the following statement of reasons as to why this Application should be granted:

1.     On or about October 20, 2014, SunLink filed a Demand for Arbitration against ACE, asserting claims for breach of contract (Count I), quantum meruit (Count II), intentional misrepresentation (Count III), negligent misrepresentation (Count IV), and violation of G.L. c. 93A, §§ 2 and 11 (Count V), all arising from "ACE's failure to pay for solar and mounting systems installed on sites on Cape Cod and Martha's Vineyard." *See* Award at p. 1. In its Demand,

SunLink alleged damages of approximately $8.1M (later revised), and sought multiple damages, attorneys' fees and costs under C. 93A.

2.      ACE alleged SunLink to have delivered its supply of products "late" on the seven solar Projects at issue (the "Projects"), in alleged breach of the sales contracts entered into between the parties. ACE alleged that SunLink's breaches of contract, in turn, delayed the completion of the overall Projects, exposing ACE to substantial liquidated damages asserted by the Project owners, the potential loss of various energy tax credits, and other consequential losses, in the amount of at least approximately $7M, plus generalized assertions of unexpected damages totaling as much as *$80M*.

3.      After seven days of arbitration hearings, the testimony of ten witnesses, the introduction of approximately 280 exhibits, the generation of a nearly 1,600-page transcript, and significant post-hearing briefing, the Arbitrator (i) awarded SunLink 100% of the amounts due and owing under the sales contracts, together with interest to the date of the Award, in the total amount of approximately $8.3M; (ii) awarded SunLink an additional approximately $1M in punitive damages, based on the Arbitrator's finding that ACE had engaged in one or more willful or knowing "unfair or deceptive" business practices in violation of G.L. c. 93A, §§ 2 and 11; (iii) awarded SunLink its reasonable attorneys' fees and costs, also pursuant to G.L. c. 93A; and (iv) denied all of ACE's affirmative defenses/counterclaims against SunLink for so-called "offsets" and any and all other alleged consequential and/or other damages.

4.      In determining a reasonable award of attorneys' fees, the Arbitrator is to consider: (i) the nature of the case and the issues; (ii) the required time spent; (iii) the amount of damages; (iv) the result; (v) the attorneys' experience, reputation and ability; (vi) the usual price charged for similar services by other attorneys of the same area; and (vii) the amount of awards in similar

2

cases. *Incase, Inc. v. Timex Corporation,* 421 F. Supp. 2d, 226, 242-243 (D. Mass. 2006); *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.,* 445 Mass. 411, 429-430 (2005); *Linthicum v. Archambault,* 379 Mass. 381 (1979). No one factor is determinative and, although helpful, a factor by factor analysis is not required. *Berman v. Linnane,* 434 Mass. 301, 303 (2001).

5.     It is well established in Massachusetts that fees and costs for non-Chapter 93A claims are recoverable provided those claims and the Chapter 93A claims arise from a "single chain of events" and are otherwise sufficiently "interconnected." *Haddad Motor Group, Inc. v. Karp, Ackerman, Skabowski & Hogan,* 603 F. 3rd 110 (1st Cir. 2010); *DiMarzo v. Am. Mut. Ins. Co.,* 389 Mass. 85, 106 (1983); *See also Schaumberg v. Freedmann,* 72 Mass. App. Ct. 52, 58-59 (2008). In the words of the Appeals Court,:

> If the same primary conduct or chain of events create both the Chapter 93A claim and the separate claims, and if apportionment of the legal work is not feasible, the judge may treat the entire work as an individual contribution to the Chapter 93A accomplishment.

*Castricone v. Mical,* 74 Mass. App. Ct. 591, 604 (2009) citing *Columbia Chiropractic Group, Inc. v. Trust Ins. Co.,* 430 Mass. 63-64 (1999); *Hanover Ins. Co. v. Sutton,* 43 Mass. App. Ct. 153, 177 (1999); *Clamp-All Corp. v. Foresta,* 53 Mass. App. Ct. 795, 813 (2002). Generally speaking, if a claimant is successful in both the Chapter 93A and non-Chapter 93A claims, and the claims are intertwined factually, no apportionment is necessary. *See Wasserman v. Agnastopoulos,* 22 Mass. App. Ct. 672, 682 (1986); *Simon v. Solomon,* 385 Mass. 91, 111-12 (1982) (no apportionment when damages arises from a single chain of events); *Accord Arthur D. Little Int'l, Inc. v. Dooyan Corp.,* 995 F. Supp. 217, 222 (D. Mass 1998); *Delmarzo v. Am. Mut. Ins. Co.,* 389 Mass. 85, 106 (1983); *Hanover Ins. v. Sutton,* 46 Mass. App. Ct. 153, 177 (1999).

6.     The facts supporting SunLink's successful recovery of its contract balances on the seven solar Projects at issue, are *inexorably* intertwined with the facts supporting SunLink's

successful Chapter 93A claim. The Arbitrator found in support of the Chapter 93A claim, in pertinent part, that,

> By [mid-February 2014], ACE knew that its EPC agreement milestones were in jeopardy and it executed multiple change orders to expedite delivery under what it now characterizes as "duress." (citation omitted). The anxiety associated with insuring supply under the change orders spawned a program of deception that relegated SunLink to a position of an involuntary and unsuspecting financier of ACE's accounts receivable. ACE signed the change orders recklessly, without reasonable confidence in having resources to pay them, and solely as a means to temporize and to encourage SunLink to expedite performance and continue the supply of critical products. ACE confirmed to SunLink's lender on three separate occasions that it had no offsets or defenses to SunLink's invoices, ... I find that ACE's conduct in duping SunLink into accelerating deliveries and supplying additional products under the change orders falls comfortably within a common law, statutory, or other established concept of unfairness, and is immoral, unethical, oppressive, or unscrupulous.

*See* Award at p. 30.

7.      In order to prevail on its Chapter 93A claim, however, SunLink had to first demonstrate, *inter alia*, that (i) it furnished goods that were conforming, fully accepted and incorporated into the Projects by ACE; (ii) there was no "delivery schedule" contained within any of the sales contracts at issue, and that SunLink performed in a "reasonable" manner given the nature, purpose, and circumstances of the Projects; (iii) SunLink did not assume any heightened duties as a "fiduciary" as regards ACE; (iv) there was no contractual novation between the parties involving any so-called "pre-panelization" agreement; (v) ACE did not execute change orders for the work under "duress" as it alleged; and (vi) ACE was in no way "fraudulently induced" to execute the sales contracts, something which ACE also alleged. All of the foregoing facts and elements had to be proven by SunLink in order to recover under both its non-Chapter 93A and Chapter 93A causes of action. SunLink's claims for essentially "goods sold, delivered and accepted" (*see* Award at p. 24) are clearly intertwined with the unfair and deceptive practices

4

carried out by ACE beginning as early as <u>mid-February 2014</u> in continuing to ensure uninterrupted supply to ACE of products. *See* Murphy Aff., ¶ 6.

8.      An itemization of the time spent by SunLink's attorneys including the date, person, time spent, billing rates and a description of activities is submitted herewith. *See* Murphy Aff., ¶ 4, 5. For the most part, SunLink was represented by attorneys Paul J. Murphy and David G. Thomas of Greenberg Traurig, LLP ("Greenberg Traurig"). Messrs. Murphy and Thomas, both shareholders in Greenberg Traurig's Boston office, account for nearly 80% of the fees incurred in the prosecution of the case (approximately 1,400 of the approximately 1,750 in total hours). *See* Murphy Aff., ¶ 4, 5. SunLink's inability to recover payment under the sales contracts from ACE severely stressed SunLink's finances, making a speedy arbitration process absolutely critical to SunLink's survival. *See* Murphy Aff., ¶ 4. The resulting compressed schedule, coupled with the overall breadth of the case more generally, required the staffing and the efficiency of two shareholder-level attorneys. Instead of conducting activities in a more sequential basis (which would have permitted greater associate staffing), discovery, document reviews and productions (40,000-50,000 documents), witness and trial preparations, etc., were caused to proceed on multiple tracks, with the oversight and execution of two shareholders being necessitated. *Id.*

9.      Mr. Murphy has been trying construction and other civil litigation matters in the state and federal courts of the Commonwealth of Massachusetts, and in other jurisdictions, for the last thirty-three years. Since his admission to the bar in 1982, Mr. Murphy has practiced at Boston firms including Morrison, Mahoney LLP, Gadsby Hannah, LLP, and Menard, Murphy & Walsh, LLP, the latter being a firm founded by Mr. Murphy and two of his colleagues at the time in 1994. In 2007, after thirteen years running his own firm, Mr. Murphy joined Greenberg Traurig as a shareholder in the Boston office, where he has continued his trial practice for the last eight years.

In 2014, Mr. Murphy's standard hourly rate was $680.00/hr.  As of January 1, 2015, Mr. Murphy's standard hourly rate was increased to $720.00/hr.  *See* Murphy Aff., ¶ 2.

10.     Mr. Thomas has been in continuous trial practice for the past seventeen years, having become a member of the bar in 1998.  Following admission to the bar, Mr. Thomas practiced for a year with Nutter, McClennan & Fish, LLP, and then joined Greenberg Traurig's Boston office in 1999.  In 2009, Mr. Thomas was elevated to a shareholder at Greenberg Traurig, continuing his practice at the firm's Boston office.  Mr. Thomas's standard hourly rate at Greenberg Traurig is also $720.00 per hour.  *See* Murphy Aff., ¶ 3.

11.     SunLink also separately incurred costs in this matter in the total amount of $186,470.10.  SunLink's costs are comprised of two separate components, the first being normal vendor costs associated with the prosecution of a case of this magnitude, including printing and exhibit production costs, e-discovery vendor costs, court reporting and UPS delivery charges, all of which are itemized in a separate document attached as Exhibit B to Mr. Murphy's Affidavit.  *See* Murphy Aff., ¶ 5.  The second, more significant component of the costs sought by SunLink here are attributable to SunLink's engagement of Steven Collins of Navigant Consulting, SunLink's expert witness retained in the case.  Mr. Collins's testimony was necessary, among other things, in demonstrating the commercially reasonable nature of SunLink's performance under the seven sales contracts at issue.  Attached as Exhibit C to Mr. Murphy's Affidavit are complete copies of the invoices furnished by Navigant to Greenberg Traurig in this matter, totaling $106,837.50.  *See* Murphy Aff., ¶ 5.

12.     The fees and costs being requested are more than reasonable considering the amount of work required to prepare, try, and prevail in this litigation.  *See* Murphy Aff., ¶ 5.  SunLink was awarded approximately $9.3M altogether, as of August 18, 2015, excluding

attorneys' fees and costs.  The attorneys' fees being requested represent less than *12%* of the amount awarded.  Furthermore, most, if not all of these fees, could have been avoided if ACE had not unfairly and deceptively withheld monies from SunLink, despite SunLink's numerous and specific demands for the same, as well as ACE's continuing acknowledgement of the debt owed, up through and including the trial in this matter.

WHEREFORE, for all the foregoing reasons, SunLink respectfully requests that its Application for attorneys' fees and costs incurred in this matter be allowed, and that the Arbitrator find that SunLink is entitled to reasonable attorneys' fees and costs in the total amount of $1,342,316.60.

Respectfully submitted,

SUNLINK CORPORATION,

By its attorneys,

Paul J. Murphy
David G. Thomas
Greenberg Traurig LLP
1 International Place
Boston, MA 02110
617-310-6000
murphyp@gtlaw.com
thomasda@gtlaw.com

Dated:  August 31, 2015

CERTIFICATE OF SERVICE
I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD
FOR EACH OTHER PARTY BY MAIL overnight mail
(BY HAND) ON    8|31|15

7

# EXHIBIT JJ

AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| **SUNLINK CORPORATION**<br>Claimant | : | AAA No.01-14-0001-7516 |
| | : | |
| | : | |
| v. | : | **ACE RESPONSE TO** |
| | : | **SUNLINK FEE REQUEST** |
| **AMERICAN CAPITAL ENERGY, INC.**<br>Respondent | : | |
| | : | |

Respondent American Capital Energy, Inc. (ACE) submits the following in response to the Fee Request Submitted by attorneys for Sunlink Corporation (Sunlink)

**Procedural Facts**

On October 4, 2014 Sunlink filed its demand for Arbitration against ACE and after discovery, six days of hearings were held. Post hearing briefs were filed by both parties.

Sunlink sought payment for goods sold, delivered and accepted by ACE under seven identical contracts with few avenues for any kind of challenge to the contracts except the omissions and misrepresentations concerning the Chinese manufacturing of product. The contract had no explicit delivery requirements.

The Arbitrator found on August 18, 2015, a violation of 93A arising out of ACE's acts prompting Sunlink to accelerate delivery and supply of additional products under change orders, entitling Sunlink to reasonable attorney's fees. The damage associated with the acts of ACE found to be unfair is "the amount of unpaid change orders". The change orders resulted from a pre-panelization new agreement for early delivery of A-mounts and ballasts to coordinate with agreed delivery of rails. The rails were not delivered timely rendering the early delivery of ballasts and A-mounts worthless.

Attorneys for Sunlink seek to recover attorney's fees for 1,750 hours or lawyer's work, beginning on July 29, 2014 until the present 80% of which was charged by partners at either $680/ hour or $720/hour for an attorney's fee request totaling $1,155,846.50.

**Evidence of ACE's Fees Establish Sunlink's as Unreasonable**

Outside general counsel for ACE Robert K. Dowd whose affidavit is attached as Exhibit A , and incorporated by reference discloses ACE's legal fees and opines as to the absurdity of the amounts sought by counsel for Sunlink.

The undersigned Dowd, a Harvard Graduate, class of 1970, Boston College Law J.D 1973 and Boston College LLM (Master of Laws in Tax) 1975, sets forth his qualifications, his background and experience to establish his knowledge in his Affidavit Exhibit A:

> I am an attorney, duly licensed to practice law in the State of Texas ... and the State of Massachusetts... I am also licensed to practice in the United States Supreme Court, the Fifth Circuit Court of Appeals, the First Circuit Court of Appeals and the federal courts in a number of states, including the Northern District of Texas. ... I have practiced law for over forty years, including positions as Senior Trial Attorney for the IRS, assisting the Department of Justice in the Spiro Agnew Case, Governor Mandel Case, the Korean Central Intelligence Agency and the Tongsun Park "Koreagate" Case. I have handled hundreds of construction cases, many of which have been in the solar industry. (Affidavit at 1)

Attorney Dowd's affidavit describes the terms under which ACE engaged a major experienced Boston firm Riemer and Braunstein to address the Sunlink matter.

> The Reimer Firm was hired at a negotiated rate for Kevin Hern and Dennis McKenna to represent ACE in the dispute with Sunlink, the dispute with CF Civic Owner One, LLC and Redwood Solar Development, LLC at an hourly rate of $410 per hour. The Reimer Firm handled the litigation involving Sunlink from July through mediation conducted by Mediator McDonough and thorough the above entitled arbitration process until April 15, 2015. The Reimer Firm expended 184.5 hours with a legal fee cost of $75,624.40 and expenses of $5,000 for services rendered concerning Sunlink totaling $80,624.50. (Affidavit at 3)

Due to a conflict of interest the Reimer Firm had to be replaced from the Redwood Litigation, the CF Civic Owner One, LLC Litigation and Sunlink Litigation. Attorney Dowd entered appearances in the above litigation and provided legal counsel to ACE in the Sunlink Arbitration. When Attorney Dowd took over, the Reimer Firm "had conducted no discovery, no production of documents and no review of the documents provided by the Claimant". (Affidavit at 5)

> During the review of the documentation provided by both parties, it was found that the vast majority of the documents were chain e-mails, which resulted in thousands of copies of the same e-mails in the chain. In addition it was also found that there were multiple recipients of the same e-mail, included in the document production. For the proceeding before the Arbitrator, Mr. Evans, only a very small percentage of the documents were relevant and used or presented as exhibits. (Affidavit at 7)

Attorney Dowd's affidavit reveals ACE's reasonable expenditures for handling the Sunlink arbitration.

> The total time spent on the arbitration process for myself at my hourly rate of $300 per hour and for my paralegal an hourly rate of $75 per hour for a total payment of $60,000 including expenses. In addition to this I hired another attorney to do legal research and draft certain documents for a fee of $12,500 for a total cost of $72,500 for my law firm and $80,624.50 for time and expenses of the Reimer Firm or a grand total of $153,124.50 to handle the case from July 2014 through mediation in July through the arbitration hearings and subsequent arbitrator briefing and motions which was paid. This amount, in my opinion, is the reasonable costs to handing this case." (Affidavit at 8)

Reasonable fees of ACE are distinguished in Attorney Dowd's affidavit from those set out in Sunlink's request.

> I have reviewed the legal fees of the Greenberg Traurig, LLP and find them absurd both as to hours spent by two partners totaling over 1700 hours almost a full years work load and at a billing rate of $680 to $720 an hour to deal with a construction case concerning delivery of ballasts, A-frame mounts, rails, bolts and nuts. (Affidavit at 10)

**Recoverable Efforts Devoted to 93A Violations are
Completely Distinct from Work on Base Contract Claims**

3

There were two unrelated parts of the arbitrated case, proof of breach of signed, integrated contract and proof of the impact of proposed, negotiated change orders. The legal work to address these separate deals was distinct. The pre-panelization change order evidence presented a whole new deal with new parameters for assembly and delivery which was breached by Sunlink. The only basis for the 93A finding was the change order part of the case. Recoverable fees should be limited to that particular work.

The Arbitrator found ACE violated 93A in recklessly signing change orders (Award at 30) and in motivating Sunlink's "accelerating deliveries and supplying additional products under the change orders" (Award at 30). The Arbitrator pointedly did not find ACE entered into the base contracts with Sunlink intending to deceive anyone. (Award at 29) Unpaid change orders provided the measure of damages used by the Arbitrator in assessing 93A damages. (Award at 31). Sunlink's recoverable attorney's fees should be restricted to reasonable expenses in pursuit of the change order claims and not to the entirety of the efforts by Sunlink's lawyers for all causes and reasons. The change order work was distinct and is clearly distinguishable from work on the base contract claim.

A statutory fee award should not cover effort expended on independent claims that happen to be joined with statutory claims in a single proceeding. See _Hanner_ v. _Classic Auto Body, Inc._, 10 Mass. App. Ct. 121, 124 (1980). For this five day arbitration hearing Sunlink claims fees for going to Cape Cod and working on Superior Court cases against bonding companies. (10/10/14, 2/5/15) The legal effort to establish the 93A claims relates only to change orders. The Arbitrator did not find all acts of ACE were bad faith, only after the contacts were established did ACE's conduct become violative of the statute. Sunlink's proving its right to recover for goods sold and delivered under strict contract terms and the prepanelization change order claims did not constitute a "single chain of events," _DiMarzo v. Am. Mut. Ins. Co._, 389 Mass. 85, 449 N.E.2d 1189, 1202 (1983) (quoting _Simon v. Solomon_, 385 Mass. 91, 431 N.E.2d 556, 570 (1982)); see also _Schaumberg v. Friedmann_, 72 Mass.App.Ct. 52, 888 N.E.2d 963, 968-69 (2008).

Sunlink seeks unreasonable compensation for time and expenses spent on the claims for base contract payments. The amount of time spent by partner level attorneys - 1400 hours (80% of 1,750) on a straightforward contract claim for goods sold and delivered was unreasonable in light of the tight contracts under which recovery was sought.

More specifically ACE proffered considerable evidence about the change order issues – asserting that the parties had reached an agreement to expedite delivery so that components could be assembled on site while awaiting shipments of the last to arrive components. This pre-panelization agreement claim and defense of ACE related directly to the change orders that the Arbitrator found constituted a violation of 93A.

The entirety of the rest of the case, dealing with the seven signed contracts constituted an independent chain of events – having nothing to do with the elements or quantum of proof for the change order claims. The separate counts did not represent damage arising from "a single chain of events". *Simon v. Solomon, 385 Mass. 91, 112 (1982)* The change order proof and evidence were different in type and sort from the immutable base contract claims – the separate work was simply not a single chain. *Simon v. Solomon, 385 Mass. 91, 112 (1982)* Work performed in proving entitlement to recover under the breach of contract should not be recoverable under c. 93A.

## Massachusetts Law on Attorney's Fees

"The Supreme Judicial Court has indicated that the 'basic measure' of a reasonable **statutory** attorney's fee award is the lodestar method, which involves 'multiplying the number of hours reasonably spent on the case [by] a reasonable hourly rate.'" *Siegel v. Berkshire Life Ins. Co.,* 64 Mass. App. Ct. 698, 706 (2005) *(quoting Fontaine v. Ebtec Corp.,* 415 Mass. 309, 324 (1993)) (emphasis added). While originally a federal method of calculating statutory fee awards, Massachusetts has adopted the basic lodestar method, as well as its expanding list of factors over the years. See, Fontaine, 415 Mass. at 324-26

5

(citing Massachusetts' multiple expansions of fee award factors to match Federal courts' standards at the time).

Mirroring the standards utilized by Federal courts, under the lodestar method, the party seeking an award for attorney's fees bears the burden of establishing and documenting the hours expended and the hourly rates charged. Torres-Rivera v. O'Neill-Cancel, 524 F. 3d. 331, 340 (1st Cir. 2008). The First Circuit Court of Appeals recently reiterated the familiar standard:

> In fashioning the lodestar, the first step is to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are 'excessive, redundant, or otherwise necessary.' Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983). The second step entails a determination of a reasonable hourly rate or rates-a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence. See Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001). The product of the hours reasonably worked times the reasonable hourly rate(s) comprises the lodestar.

Central Pension Fund of the Inter. Union v. Ray Haluch Gravel Co. (Haluch II ,--F.3d ---, 2014 WL 930829, at *2 (1st Cir. March 11, f 014). Once the fee-setting court determines the lodestar figure, the lodestar may be further adjusted based on other considerations. See Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997). Such adjustments to the lodestar include instances where "the relief: however significant, is limited in comparison to the scope of the litigation as a whole.... [W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S. Ct 1933, 76 L.Ed.2d 40 (1983); see also City of Riverside v. Rivera, 477 U.S." 561, 574, 106 S. Ct. 2686, 91 L.Ed.2d 466 (1986) ("[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded."); De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009) (a reasonable fee award "takes into account the quality of the results that the plaintiff

6

obtained").

Here, after determining the hourly rate and reasonably necessary number of hours, the Arbitrator should further adjust the lodestar figure to account for the disparity between the damages alleged and those awarded. See Haluch II, 2014 WL 930829, at *4 (affirming fee reduction that factored the disparity between the damages sought and the amount of damages actually recovered into the fee award); Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 n. 3 (1st Cir. 1997) (After calculating the lodestar, the court may then adjust the award further for any of several reasons, including the quantum of success achieved in the litigation).

**Sunlink's Attorney Fee Requests is Unreasonable in Amount**

General Laws c. 93A, § 11, provides that "reasonable attorneys' fees and costs" shall be awarded if a judge finds that a defendant has violated the statute". Linthicum v. Archambault, 379 Mass. 381 (1979) enumerates the considerations in determining the reasonableness of attorney's fees.

The nature of the case and the issues presented should govern the time and labor expended. Sunlink's case arose from seven identical signed contracts whose provisions strongly favored Sunlink and went a considerable distance to eclipse any ability of ACE to raise challenges to them. The amount of time devoted at partner rates to enforcement of the plain terms of these rigid pacts deserves scrutiny for reasonableness. The fee petition of Sunlink reflects the opposite of a desire to achieve efficiencies. Sunlink's use of multiple partner level attorneys shows this clearly. In examining the reasonableness of work done enforcing contracts with such disparately favorable provisions, it is worth examining if partners freely charged time to the matter unreasonably, far more than they would have otherwise, acting under the expectation that ACE, not the client would end up paying.

7

**Hourly rate charge is unreasonable**

Recent courts to consider reasonable hourly rates with Massachusetts have held that rates ranging from $194 to $260 per hour for legal counsel are reasonable. See Central Pension Fund of the Inter. Union v. Ray Haluch Gravel Co. (Haluch I), 792 F. Supp. 2d 139, 140 (D. Mass. 2011). For paralegal work, rates range from $60 to a maximum of $100. See e.g. In re Neurontin Prods. Liability Litig., No. 04-cv-10981-PBS, 2011 WL 1326407, at *7 (D. Mass. Apr. 5, 2011) (capping paralegal rate at $100 per hour). Here, rates for Attorneys Murphy and Thomas exceed the typical range of reasonableness in this jurisdiction. Accordingly, the Arbitrator has reason to reject the Lodestar method which is not contractually supported.

The usual price charged for similar services by other attorneys in the same area is another touchstone for determining reasonableness of attorney's fee requests and again the Sunlink petition is demonstrably askew. The claim by Sunlink's attorneys is almost ten times greater than the entire legal expenditure by ACE in covering the matter Arbitrated. (Dowd Affidavit at 9). More particularly the established law firm Reimer and Braunstein who worked for ACE on the Sunlink matter from July 2014 through April 2015 performed its work with highly capable attorneys working at $410/ hour and expended only 184.5 hours in performing their legal work for ACE. (Dowd Affidavit at 3). Not only were the hours spent by Sunlink counsel unreasonable, they did so at unreasonably steep rates.

An area where Sunlink's time charges stand out is in the pretrial discovery phase of the case. As highlighted by the Dowd Affidavit at 8, the vast majority of documents were chain emails with multiple duplicate copies. Sunlink expenses show thousands of dollars paid to outside vendor Empire Discovery LLC and the bills reflect Sunlink's use of modern Relativity Coding Panel for winnowing and sorting such electronic discovery. Attorney Thomas is distinguished by his expertise as a "certified discovery specialist". Yet Sunlink's discovery-related expenses are so far beyond those of ACE as to call into question their reasonableness.

Respectfully submitted,

Attorney for
American Capital Energy, Inc.

ROBERT K. DOWD, P.C.

Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
360 Merrimack Street
Building 9, Entrance K, Suite 202
Lawrence Massachusetts 01843

(978) 221-2000
robtdowd@sbcglobal.net

9-15-2015
Dated

9

## CERTIFICATE OF SERVICE

I, Robert K. Dowd, attorney for American Capital Energy, Inc., hereby certify that on this date I served the foregoing

### ACE RESPONSE TO SUNLINK FEE REQUEST

By first-class mail, postage prepaid to all counsel who have entered an appearance in this case.

Paul J. Murphy, BBO #363490
David G Thomas BBO #640854
GREENBERG TRAURIG, LLP
One International Place
Boston MA 02110

(617) 310-6063
murphyp@gtlaw.com
thomasda@gtlaw.com

Signed under the pains and penalties of perjury this 15th day of September, 2015.

American Capital Energy, Inc.

By Its Attorney

Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
360 Merrimack Street
Building 9, Entrance K, Suite 202
Lawrence Massachusetts 01843

(978) 221-2000
robtdowd@sbcglobal.net

10

# EXHIBIT KK

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| SUNLINK CORPORATION,<br><br>    Claimant,<br><br>v.<br><br>AMERICAN CAPITAL ENERGY, INC.,<br><br>    Respondent. | **AAA NO. 01-14-0001-7516**<br><br>**SUNLINK CORPORATION'S REPLY TO AMERICAN CAPITAL ENERGY, INC.'S RESPONSE TO SUNLINK FEE REQUEST** |

SunLink Corporation ("**SunLink**") hereby replies to American Capital Energy, Inc.'s ("**ACE**") Response to SunLink Fee Request ("**ACE Opp.**").

### UNDIVIDED NATURE OF THE PARTIES' DISPUTE

Remarkably, ACE attempts to bifurcate the nature of the parties' dispute as (i) "a *straightforward* contract claim for goods sold and delivered" on one hand, and (ii) an agreement to pre-panelize solar panels, on the other hand. ACE Opp., pp. 1, 4, and 5 (emphasis added). ACE's attempt is not supported by the well-developed record. First, the manner in which ACE defended these proceedings – from beginning to end as detailed in SunLink's counsels' time entries – made SunLink's contract claims anything but straightforward. Ultimately, the parties conducted 7 days of hearings, dealt with 10 witnesses and generated over 1,570 "mini-script" pages of hearing testimony (with approximately 280 exhibits), as well as submitted extensive post-hearing submissions (in addition to SunLink successfully staving off ACE's repeated attempts to delay the outcome of these proceedings along the way). All matters were strenuously challenged, even down to the meaning of the very contract terms at issue.

Second, there was no separate agreement to pre-panelize any products, despite ACE's continued argument to the contrary. The "change orders" at issue relate directly to SunLink's delivery of its products under the contracts – not to any *separate* agreement between the parties.

Concomitantly, with respect to SunLink's Chapter 93A claim, the Arbitrator concluded:

> ACE failed to ensure that the overall CVEC Project Schedule and the milestones under its EPC agreement were coordinated with firm contractual deadlines in its Agreements with SunLink. This became apparent by January 2014, shortly after the notices to proceed, yet ACE deferred efforts to accelerate the delivery schedule and mitigate its exposure until mid-February 2014. By then, ACE knew that its EPC Agreement milestones were in jeopardy and it executed multiple changes orders to expedite delivery under what it now characterizes as "duress." The anxiety associated with ensuring supply under the change orders spawned a program of deception that relegated SunLink to the position of an involuntary and unsuspecting financier of ACE's accounts receivable. ACE signed the changes orders recklessly, without reasonable confidence in having the resources to pay them, and solely as a means to temporize and to encourage SunLink to expedite performance and continue the supply of critical product. ACE confirmed to SunLink's lender on three separate occasion that it had no offsets or defenses to SunLink's invoices, and it admitted at the hearings that it owes SunLink over three million dollars. The defense that the 'owner won't let us pay' is no defense at all under the terms of the Agreements. I find that ACE's conduct in duping SunLink into accelerating deliveries and supplying additional products under the change orders falls comfortably within a common law, statutory, or other established concept of unfairness, and is immoral, unethical, oppressive, or unscrupulous. It is, therefore, an unfair act in violation of Chapter 93A.   *See* Partial Final Award, p. 30.

Clearly, SunLink had to defeat ACE's various challenges to the parties' contracts and assertions that SunLink breached those contracts, as well as had to prove that SunLink's delivery of its products was reasonable and that ACE had engaged in immoral, unethical, oppressive, or unscrupulous conduct to obtain this finding under Chapter 93A. There simply is no way to "unscramble the egg" and apportion time as ACE argues – particularly considering how ACE defended SunLink's claims and how ACE presented its defenses and "offset" claims.

### REASONABLENESS OF SUNLINK'S FEE REQUEST

ACE's primary challenges to the reasonableness of SunLink's fees – a comparison to (i) ACE's *own* fees and (ii) the specific amount of "Chapter 93A damages" awarded to SunLink – are unpersuasive and do not warrant any reduction to the fees SunLink requests. First, comparing what an *opposing* party allegedly expended on its own attorneys has absolutely no relevance to what award would be reasonable for a prevailing party. *See, e.g., Montgomery v. Kraft Foods Global, Inc.*, No. 1:12-cv-00149, 2015 U.S. Dist. LEXIS 24533, *10 (W.D. Mich. Mar. 2, 2015) *Johnson v.*

2

*University College of University of Alabama in Birmingham,* 706 F. 2d 1205, 1208 (11th Cir. 1983) ("The amount of hours that is needed by one side to prepare adequately may differ substantially from that for opposing counsel, since the nature of the work may vary dramatically."). Put simply, comparing what ACE's counsel allegedly charged ACE *not to prevail* on the merits of ACE's defenses and offset claims with SunLink's reasonable fees *to prevail* on SunLink's claims makes little sense.

Second, as set forth in SunLink's fee application, the requested fees ($1,115,846.50) represent *less than 12% of the amount awarded to SunLink.* Even if the benchmark for assessing the reasonableness of a fee award was the Chapter 93A damages alone ($1,041,407.94) – which it is not as the fees are indivisible[1] – a $1,115,846.50 award is well within the range of reasonableness in relation to damages under Massachusetts law. *See Twin Fires Inv., LLC. V. Morgan Stanley Dean Witter & Co.,* 445 Mass. 411, 430-31 (2005) (awarding $1,000,000 in fees where Chapter 93A damages were only $118,000). Nor are ACE's out-of-state counsel's alleged hourly rates or in-state counsel's "negotiated rates" the proper benchmark for determining reasonable hourly rates charged by lawyers in large law firms located in Boston.

Finally, ACE mischaracterizes the *Central Pension* decision and ACE's reliance on that decision is misplaced. There, the District Court merely concluded that rates of $194 to $250 per hour were "not problematic" for rates charged by counsel in the State of Connecticut, where plaintiff's counsel's firm was based. 792 F. Supp. 139, 140 (D. Mass. 2011).

---

[1] *See Rini v. United Van Lines, Inc.,* 903 F. Supp. 234, 238 (D. Mass. 1995) (93A award applies to the entire recovery where claims "are all inextricably intertwined, legally and factually ... [because] Plaintiff would have had to expend precisely the same amount for her lawyers on the claims she has prevailed on, if the others had never been filed."); *Arthur D. Little Intern., Inc. v. Dooyang Corp.,* 995 F. Supp 217, 223 (D. Mass. 1998) (same).

3

SUNLINK CORPORATION,
Claimant,

By its attorneys,

Paul J. Murphy (BBO # 363490)
David G. Thomas (BBO # 640854)
Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Tel: 617-310-6000
Fax:  617-310-6001

Dated:  September 23, 2015

4

# EXHIBIT LL

AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| SUNLINK CORPORATION | : | AAA No.01-14-0001-7516 |
| Claimant | : | |
| | : | |
| v. | : | ACE'S FINAL RESPONSE |
| | : | TO SUNLINK'S FEE REQUEST |
| AMERICAN CAPITAL ENERGY, INC. | : | |
| Respondent | : | |
| | : | |

Respondent American Capital Energy, Inc. (ACE) submits the following in response to the Fee Requests Submitted by attorneys for Sunlink Corporation (Sunlink).


## SUNLINK'S BURDEN TO ESTABLISH REASONABLENESS

Sunlink disagrees with ACE – the dispute breaks into distinct parts and the fee claim should be tailored to allow recovery for fees aimed at the change order aspect only. ACE should not be asked to reimburse the work beyond that necessary to prevail on the discrete change claims.

The burden of proving the reasonableness of the requested fees to be awarded falls upon the applicant. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). The passage from the Arbitrator's decision, quoted by Sunlink, reveals that the absence of firm contractual deadlines made much of the attorney's efforts unnecessary.


## APPLY STANDARD REVIEW TO TIME AND RATE CLAIMS

The standard for attorney's fees is reasonableness of time spent and of rates charged. The time spent by Sunlink's counsel to establish a right to payment for goods admittedly sold and received under a contract with no firm contractual deadlines was overkill. The breach of contract part of the case presented no "difficult novel issues of fact and law." See Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 629 (1978). Appropriate deductions include duplication of effort, time spent by attorneys in correspondence with one another, overstaffing, "business" lunches, and excess hours in drafting simple motions. Haddad v. Wal-Mart Stores, Inc., 455 Mass. 1024, 1027 (2010).

An auditing application known as Benford's Law holds that numbers consistently fall in to a pattern with low digits occurring more frequently in the first positon than larger digits. This



SUNLINK CORPORATION vs AMERICAN CAPITAL ENERGY, INC.
AAA Cause No AAA No.01-14-0001-7516
Benford Analysis

| Leading Digit | Count | Sample Rate | Benford Rate |
|---|---|---|---|
| 1 | 246 | 24.31% | 30.10% |
| 2 | 145 | 14.33% | 17.61% |
| 3 | 154 | 15.22% | 12.49% |
| 4 | 102 | 10.08% | 9.69% |
| 5 | 163 | 16.11% | 7.93% |
| 6 | 73 | 7.21% | 6.69% |
| 7 | 60 | 5.93% | 5.80% |
| 8 | 40 | 3.95% | 5.12% |
| 9 | 29 | 2.87% | 4.59% |
| Grand Count | 1012 | 100.00% | |



auditing tool reveals peculiarities in the expected distribution of entries. The Benford analysis on the time entries Sunlink presented reveals an occurrence of a ".5" time entry appearing more than twice the expected norm.

The fee applicant bears the burden to establish "'the prevailing hourly rate in the community for the performance of similar legal services by comparably credentialed [sic] counsel.'" Moffat v. U.S. Dept. of Justice, 716 F.3d 244, 256 (1st Cir. 2013) (quoting Hutchinson ex rel. Julien v. Patrick, 636 F.3d at 16, McDermott v. Marcus, Errico, Emmer & Brooks, Pc, Dist. Court, D. Massachusetts (2014) Sunlink's request is supported only by its attorney's statements – this is what I charge. It does not say all clients, or some, or any, besides Sunlink are charged this steep rate. A Federal Court found unreasonable the rates of $525 per hour, charged by attorneys at Burns & Levinson, where convincing evidence showed the prevailing rate in discrimination cases in the Boston area was significantly lower than the rates charged. Joyce v. Town of Dennis Dist. Court, D. Massachusetts (2014), Fryer v. A.S.A.P. Fire & Safety Corp., Inc., 750 F. Supp. 2d 331, 338-40 (D. Mass. 2010) (finding hourly rates of $325 and $350 reasonable for attorneys with comparable experience and credentials).

A more customary and prevailing rate applied to Sunlink's request would result in a reasonable fee. A lodestar calculation multiplies the number of hours reasonably expended by the service provider by an appropriate prevailing hourly rate in order to determine a "base fee". The lodestar calculation shown below is based on a reasonable attorney's hourly rate of $410 per hour and reasonable paralegal work at $75 per hour. A reasonable fee should not exceed $604,836 as evidenced by the loadstar table below.

2

SUNLINK CORPORATION vs AMERICAN CAPITAL ENERGY, INC.
AAA Cause No AAA No.01-14-0001-7516
Lodestar Computation

| Service Provider | Hours | | | Hourly Rate | | | Dollar Amounts | | |
|---|---|---|---|---|---|---|---|---|---|
| | Claimed | Expended (A) | Difference | Charged | Market Rate (B) | Difference | Charged | Lodestar (A*B) | Difference |
| DT | 565.20 | 565.20 | - | 720.00 | $ 410 | (310.00) | $ 406,944 | $ 231,732 | (175,212) |
| JC | 64.10 | 64.10 | - | 295.00 | 75 | (220.00) | 18,910 | 4,808 | (14,102) |
| JJ | 17.10 | 17.10 | - | 750.00 | 410 | (340.00) | 12,825 | 7,011 | (5,814) |
| JJ | 35.40 | 35.40 | - | 810.00 | 410 | (400.00) | 28,674 | 14,514 | (14,160) |
| JT | 4.40 | 4.40 | - | 305.00 | 305 | - | 1,342 | 1,342 | - |
| JT | 6.70 | 6.70 | - | 335.00 | 305 | (30.00) | 2,245 | 2,044 | (201) |
| HA | 25.60 | 25.60 | - | 185.00 | 75 | (110.00) | 4,736 | 1,920 | (2,816) |
| NP | 202.70 | 201.30 | (1.40) | 485.00 | 410 | (75.00) | 98,310 | 82,533 | (15,777) |
| PM | 179.10 | 148.10 | (31.00) | 680.00 | 328 | (352.00) | 121,788 | 48,577 | (73,241) |
| PM | 636.70 | 636.30 | (0.40) | 720.00 | 328 | (392.00) | 458,424 | 208,706 | (249,718) |
| RB | 7.50 | 7.50 | - | 220.00 | 220 | - | 1,650 | 1,650 | - |
| | 1,744.50 | 1,711.70 | (32.80) | | | | $ 1,155,847 | $ 604,836 | (551,010) |

## NOTICE OF SETTLMENT BY SUNLINK OF FEWER THAN ALL PROJECT CLAIMS

The Arbitrator's August 18, 2015 Partial Award did not allocate the award among the nine projects and offered no basis upon which to do so. Since the Partial Award, Sunlink has entered into a Settlement Agreement and Release of NGS Sub, Inc. and Berkley Insurance Company for $4,516,517.67. The Agreement is attached. As with the previously noticed Settlement with Old Castle Precast Inc., ACE reiterates its objection to the form of the award as it is not capable of specific determination of the amounts due on the nine projects and corresponding offsets.

Respectfully submitted,

Attorney for
American Capital Energy, Inc.

ROBERT K. DOWD, P.C.

Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
360 Merrimack Street
Building 9, Entrance K, Suite 202
Lawrence Massachusetts 01843

(978) 221-2000
robtdowd@sbcglobal.net

9-25-2015
Dated

3

## CERTIFICATE OF SERVICE

I, Robert K. Dowd, attorney for American Capital Energy, Inc., hereby certify that on this date I served the foregoing

### ACE'S FINAL RESPONSE TO SUNLINK'S FEE REQUEST

By first-class mail, postage prepaid to all counsel who have entered an appearance in this case.

Paul J. Murphy, BBO #363490
David G Thomas BBO #640854
GREENBERG TRAURIG, LLP
One International Place
Boston MA 02110

(617) 310-6063
murphyp@gtlaw.com
thomasda@gtlaw.com

Signed under the pains and penalties of perjury this 25th day of September, 2015.

American Capital Energy, Inc.

By Its Attorney

Robert K. Dowd
BBO # 132 800
Robert K. Dowd P.C.
360 Merrimack Street
Building 9, Entrance K, Suite 202
Lawrence Massachusetts 01843

(978) 221-2000
robtdowd@sbcglobal.net

4

## SETTLEMENT AGREEMENT AND RELEASE

In consideration of payment of $4,516,517.67 (FOUR MILLION, FIVE HUNDRED AND SIXTEEN THOUSAND FIVE HUNDRED AND SEVENTEEN DOLLARS AND SIXTY-SEVEN CENTS) by Berkley Regional Insurance Company, and other good and valuable consideration, receipt and sufficiency of which hereby is acknowledged, Berkley, SunLink and NGS (each as defined below) agree as set forth herein.

WHEREAS, American Capital Energy, Inc. contracted with certain project owners to build solar panel electricity generation facilities at certain locations in Massachusetts;

WHEREAS, NGS entered into electrical subcontracts with American Capital Energy, Inc. with respect to four such projects located in Barnstable, Brewster, Chatham and Dennis, Massachusetts;

WHEREAS, Berkley, as surety on behalf of American Capital Energy, Inc. as principal, issued performance and payment bonds in favor of the project owners with respect to the Barnstable, Brewster, Chatham and Dennis solar projects;

WHEREAS, Berkley, as surety on behalf of American Capital Energy, Inc. as principal, issued release of lien bonds in favor of SunLink with respect to the Barnstable, Brewster, Chatham and Dennis Solar Projects;

WHEREAS, NGS entered into a General Agreement of Indemnity agreeing to defend, indemnify and hold harmless Berkley with respect to all loss, cost and expense arising out of such bonds;

WHEREAS, SunLink supplied certain materials to American Capital Energy, Inc. with respect to certain solar projects, including the Barnstable, Brewster, Chatham and Dennis solar projects for which American Capital Energy, Inc. did not pay SunLink;

WHEREAS, SunLink commenced litigation against American Capital Energy, Inc., Berkley and others to recover amounts alleged due for such materials;

WHEREAS, SunLink has (1) obtained an arbitration award (the "Award") against American Capital Energy, Inc. for the amounts due SunLink for labor and materials supplied on the solar projects at issue, interest due under the agreements, and actual and multiple damages, attorneys' fees, interest and costs for violation of G.L. c. 93A, §§ 2 and 11; and (2) made demand on Berkley to pay that portion of the Award relating to materials supplied at the Barnstable, Brewster, Chatham and Dennis solar projects;

WHEREAS, Berkley has received a credit from SunLink for amounts otherwise due under the solar projects and the Berkley surety bonds at issue, for payments which Berkley represents were made by American Capital Energy, Inc., acting as Berkley's principal under the Berkley surety bonds, to a supplier/subcontractor of SunLink on the projects at issue, Oldcastle Concrete Co., Inc. ("Oldcastle");

WHEREAS, the payments which Berkley represents were made by its principal, American Capital Energy, Inc., to Oldcastle are further represented by Berkley to have been in full and complete satisfaction of any/all amounts owed by SunLink to Oldcastle on the Berkley projects at issue; and

WHEREAS, SunLink, Berkley and NGS wish to resolve all such claims asserted by SunLink against Berkley on the Berkley surety bonds at issue.

Now THEREFORE, Berkley, NGS and SunLink agree as follows:

A.    **Definitions**

1.    "SunLink" shall mean SunLink Corporation, a California corporation with a principal place of business in San Rafael, California, and its parent, subsidiary, predecessor,

2

successor and affiliated corporations and their respective officers, directors, shareholders, employees, agents, attorneys and other representatives.

2.      "American Capital" shall mean American Capital Energy, Inc., a New Jersey corporation with its principal place of business in Lawrence, Massachusetts and its parent, subsidiary, predecessor, and affiliated corporations and their respective officers, directors, shareholders, employees, agents, attorneys and other representatives.

3.      "Berkley" shall mean Berkley Regional Insurance Company, Berkley Insurance Company, their parent, subsidiary, predecessor, successor and affiliated corporations and insurance companies and their respective offers, directors, shareholders, employees, agents, attorneys and other representatives.

4.      "NGS" shall mean NGS Sub, Inc., a Connecticut corporation with its principal place of business in Westbrook, Maine and its parent, subsidiary, predecessor, successor and their affiliated corporations and their respective officers, directors, shareholders, employees, agents, attorneys and other representatives.

5.      "The Solar Projects" shall mean the following four Solar Projects:

(a)      The solar project owned by CF CVEC located at 45 Flint Street, Marston Mills, Barnstable, Massachusetts;

(b)      The solar project owned by CF CVEC located at 201 Run Hill Road in Brewster, Massachusetts;

(c)      The solar project owned by CF CVEC located at 97 Sam Ryder Road, in Chatham, Massachusetts; and

(d)      The solar project owned by the Town of Dennis located at Theophilus F. Smith Road in Dennis, Massachusetts.

3

6.      The term "Bonds" shall mean all Bonds issued by Berkley as a surety on behalf of American Capital Energy, Inc. as principal relating to the Solar Projects including, without limitation, the following:

|  |  |
|---|---|
| Bond No. | 0177516 |
| Bond No. | 0180059 |
| Bond No. | 0180060 |
| Bond No. | 0180061 |
| Bond No. | 0184042 |
| Bond No. | 0184043 |
| Bond No. | 0184044 |
| Bond No. | 0184045 |
| Bond No. | 0184046 |
| Bond No. | 0187601 |

7.      The "Arbitration" is the arbitration proceeding conducted by the American Arbitration Association between SunLink and American Capital known as *SunLink Corp. v. American Capital Energy*, AAA Case No. 01-14-0001-7516.

8.      The "Parties" shall mean SunLink, Berkley and NGS collectively.

**B.      Releases, Representation as to Certain Subcontractors/Suppliers and Indemnity**

1.      In exchange for the payment referenced above, SunLink hereby releases, acquits and forever discharges Berkley and NGS from and against all past, present and future debts, demands, claims, suits, damages and liabilities of any name or nature whatsoever whether known or unknown, knowable or unknowable, asserted or unasserted, direct or derivative, contingent or non-contingent, whether now existing or hereafter accruing, whether liquidated or unliquidated arising out of or in any way connected with the Bonds or the Solar Projects. This release includes, without limitation, (1) all claims that were or could have been asserted by SunLink against Berkley or NGS in *SunLink Corp. v. American Capital Energy, Inc.*, Barnstable County Superior Court, C.A. No. 1472 CV 00511, (2) all claims that were or could have been asserted

4

by SunLink against Berkley or NGS in the Arbitration, and (3) all claims arising out of the manner in which Berkley addressed or handled SunLink's claims under the Bonds, including, without limitation, claims under G.L. c. 93A. Excluded from this release are any claims for breach of this Agreement and/or of the representations made by Berkley contained herein.

2.      In exchange for the payment referenced above, SunLink hereby releases, acquits and forever discharges American Capital from and against any and all debts, demands, claims, suits, damages and liabilities of any name or nature whatsoever for amounts, including all late fees and/or interest charges, due to SunLink for the materials supplied by SunLink to American Capital under the sales contracts on the Solar Projects, as found in the Award. This release does not include or extend to, and SunLink expressly reserves, all other claims of SunLink against American Capital, including, without limitation, claims for amounts awarded (and yet to be awarded) SunLink pursuant to the Award, including actual and multiple damages awarded SunLink for violations of G.L. c. 93A, interest as awarded by the arbitrator, statutory interest, attorneys' fees and costs. It is understood and agreed that this release relates exclusively to the Solar Projects as defined herein.

3.      Sunlink affirmatively warrants and represents to Berkley and NGS that it has paid all individuals and entities other than Oldcastle that provided materials or labor to the Solar Projects at SunLink's request or for SunLink's scope of work. Sunlink hereby indemnifies and agrees to hold Berkley and NGS harmless from and against any and all claims for any alleged failure of payment (except for claims asserted by Oldcastle), including but not limited to mechanic's lien or bond claims (and including in all instances attorney's fees and costs associated with any such claims), asserted against Berkley, NGS, American Capital or the Owners of the Solar Projects for any alleged failure of payment in regard to any material or labor

provided to the Solar Projects by such person or entity at the request of Sunlink or within Sunlink's scope of work on the Project.

C.   **Other Terms**

1.   Construction of Agreement

It is understood and agreed that this settlement is a compromise of disputed claims and that neither the payments or concessions made by Berkley or NGS nor the terms of this Agreement are to be construed as an admission of liability on the part of any of the Parties, all of whom expressly deny liability.

This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions.  Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or persons outside the scope of this Agreement.  This Agreement will be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.  Nothing in this Settlement Agreement is intended, nor will it be construed, to confer any benefit whatsoever on any persons other than the Parties to this Agreement.

This Agreement is the jointly drafted product of arms-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it will be so construed. As such, neither Party will claim that any ambiguity in this Agreement should be construed against the other Party.

2.   No Modification

No change or modification of this Agreement will be valid unless it is made in writing and signed by the Parties.

3.   Execution

6

The Effective Date of this Agreement is the date it is last signed by any of the Parties. This Agreement may be executed in counterparts, each of which will be deemed original and such counterparts together will constitute one instrument.  Facsimiles or scanned versions of signatures by the Parties will be treated as originals.

4.     Governing Law

This Agreement will be governed by and construed in accordance with the laws of The Commonwealth of Massachusetts without giving effect to the conflict of law provisions thereof.

5.     Notices

Unless another person is designated, in writing, for receipt of notices hereunder, notices to the respective Parties will be sent to the following person or such other address or person as that Party may designate in writing from time to time.

SunLink:                              Mark Ginalski, Esq.
                                      General Counsel
                                      SunLink Corporation
                                      1010 B Street, #400
                                      San Rafael, CA 94901

                                      And

                                      Paul J. Murphy, Esq.
                                      Greenberg Traurig, LLP
                                      One International Place
                                      Boston, MA 02110


Berkley:                              Bruce Kahn
                                      Vice President
                                      Berkley Surety Group
                                      412 Mt. Kemble Avenue, Suite 310N
                                      Morristown, NJ 07960

                                      And

7

Kevin J. O'Connor, Esq.
Hermes, Netburn, O'Connor & Spearing, P.C.
265 Franklin Street, 7th Floor
Boston, MA 02110

NGS:

Honor S. Heath, Esq.
Senior Counsel
Eversource Energy
107 Selden Street
Berlin, CT 06037

And

Timothy Norton, Esq
Kelly, Remmel & Zimmerman
53 Exchange Street
PO Box 597
Portland, ME 04112-0597

6.      Representation and Warranties

The Parties represent and warrant that they have not sold, assigned, transferred or

otherwise disposed of any of the rights or obligations granted or imposed pursuant to this

Agreement with respect to the Policies and that they are authorized to provide the releases set

forth herein.

7.      Integration

This Agreement constitutes the entire understanding and agreement among the Parties

with respect to the matters contemplated hereby and supersedes all prior discussions, agreements

and understandings, both written and oral, among the Parties with respect thereto.

8.      Authorization

Each of the Parties to this Agreement warrants that they have discussed the Agreement

with their counsel, that the person who executes the Agreement on their behalf is duly authorized

to do so, and that this Agreement is valid, binding and enforceable in accordance with its terms upon the Parties and their successors and assigns.

9.    Reservation of Rights/Defenses; Warrantees

This Agreement is without prejudice to any warranty claims, rights or liabilities under the terms of any warranty, express or implied, alleged to be stated in, provided for or imposed by Appendix C to the Sunlink Sales Contracts with respect to the Solar Projects, the Uniform Commercial Code (M.G.L. c. 106, *et seq.*) or other applicable law.  The Parties specifically reserve and do not waive any rights, claims and defenses with respect to the existence of any such warranties or the merits of any such claims.

10.    Payment

Payment to SunLink under this Agreement in the amount of $4,516,517.67 (FOUR MILLION, FIVE HUNDRED AND SIXTEEN THOUSAND FIVE HUNDRED AND SEVENTEEN DOLLARS AND SIXTY-SEVEN CENTS) shall be made within two business days of execution of this Agreement by SunLink by wire transfer to the following account:

| | |
|---|---|
| Bank: | Silicon Valley Bank |
| Address: | 3003 Tasman Drive |
| | Santa Clara, CA 95054 |
| ABA No.: | 121140399 |
| Account Name: | SunLink Corporation |
| Account No.: | 3301323908 |

[intentionally left blank]

**Berkley Regional Insurance Company and**
**Berkley Insurance Company**

_____
Signature

_____
Printed Name

_____
Date

**SunLink Corporation**

_____
Signature

_Mark Gnmoski,  Corporate Secretary_
Printed Name

_September 18, 2015_
Date

**NGS Sub, Inc.**

_____
Signature

Camilo Serna, President
Printed Name

Sept. 21/2015
Date

10

# EXHIBIT MM

AMERICAN ARBITRATION ASSOCIATION

```
------------------------------------------------------------x
                                            :
SUNLINK CORPORATION,                        :
                                            :
                    Claimant,               :
                                            :        Case No. 01-14-0001-7516
        -and-                               :
                                            :
                                            :
AMERICAN CAPITAL ENERGY, INC.,              :
                                            :
                    Respondent.             :
------------------------------------------------------------x
```

## FINAL AWARD

I, the undersigned Arbitrator, having been designated in accordance with the arbitration agreements entered into by the above-named parties dated October 15, 2013, and having been duly sworn, and having heard the proofs and allegations of the parties, and having entered a Partial Final Award in this proceeding on August 18, 2015, do hereby issue this FINAL AWARD as follows:

The Partial Final Award fully and finally determined the claims of the parties, with the exception of the amount of attorneys' fees and costs to be awarded to SunLink[1] pursuant to G.L. c. 93A, §§ 2, 11, and the assessment of the fees, compensation and expenses of the arbitration under AAA Commercial Rule R-47(c). In the Partial Final Award, I ordered SunLink to file and serve an application in support of its request for attorneys' fees and costs, including: (a) an itemization of its attorneys' fees, including the date, person, time spent, billing rates, and description of the activities (redacted, as necessary, for privileged material); (b) an itemization of allowable costs, with supporting documentation, as necessary; and (c) an affidavit of counsel verifying the foregoing information as true and accurate and within the scope of a G.L. c. 93A, §§ 2, 11 award.

---

[1] Defined terms and abbreviations are those used in the Partial Final Award.

On August 31, 2015, SunLink filed an Application for an Award of Attorneys' Fees and Costs ("Application"), comprising a memorandum of law, and an Affidavit of its counsel (Paul J. Murphy, Esq.) verifying 53 pages of time records and 40 pages of expense items (including expert witness invoices).

On September 15, 2015, ACE filed an Opposition to SunLink's Application, including an Affidavit of its trial counsel.

On September 23, 2015, SunLink filed a Reply, and, on September 25, 2015, ACE filed a Final Response.[2]

I have carefully reviewed the submissions of the parties on the issue of the reasonable attorneys' fees and costs incurred by SunLink, and set forth below the amount to be awarded based on those filings and the claims and conduct described in the Partial Final Award.

### RULINGS ON CHAPTER 93A ATTORNEYS' FEES AND COSTS

G.L. c. 93A, § 11 (¶ 6) provides:

> If there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action.

Attorneys' fees under Chapter 93A are determined through the "lodestar" method, by multiplying the number of hours reasonably spent litigating the case by a reasonable hourly rate for similar cases in the local market. *See Fontaine v. Ebtec Corp.,* 415 Mass. 309, 325 (1992); *Siegel v. Berkshire Life Ins. Co.,* 64 Mass. App. Ct. 698, 704-6 (2005); *Ross v. Cont'l Res., Inc.,* 73 Mass. App. Ct. 497, 515 (2009).

---

[2] I will not address the various documents and arguments submitted by ACE after the close of hearings and unrelated to the two issues for which I reserved jurisdiction in the Partial Final Award.

In awarding attorneys' fees under Chapter 93A, it is appropriate to consider a number of factors, including: "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." *Linthicum v. Archambault*, 379 Mass. 381, 388-9 (1979). "No one factor is determinative and a factor-by-factor analysis ... is not required." *Berman v. Linnane*, 434 Mass. 301, 303 (2001). Ultimately, the fees to be awarded to the prevailing party should reflect what the "services were objectively worth," *Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 16 (1st Cir. 1996), and the amount is largely within the Court's (Arbitrator's) discretion. *NASCO, Inc. v. Public Storage, Inc.*, 127 F.3d 148, 154 (1st Cir. 1997).

Where "a single chain of events gives rise to both a common law and a Chapter 93A claim, apportionment of legal effort between the two claims is not necessary." *Hanover Ins. Co. v. Sutton*, 46 Mass. App. Ct. 153, 177 (1999). *See Haddad Motor Group, Inc. v. Karp, Ackerman, Skabowski & Hogan*, 603 F.3d 110 (1st Cir. 2010); *DiMarzo v. Am. Mut. Ins. Co.*, 389 Mass. 85, 106 (1983); *Columbia Chiropractic Group, Inc. v. Trust Ins. Co.*, 430 Mass. 63-4 (1999); *Castricone v. Mical*, 74 Mass. App. Ct. 591, 604 (2009).

Here, ACE argues for a reduction in attorneys' fees on the grounds that SunLink's claims for the contract balances on the CVEC Projects were "unrelated to" and "clearly distinguishable from" the conduct of ACE deemed to be unfair and deceptive under Chapter 93A in the Partial Final Award – namely, ACE's interactions with SunLink concerning the change orders. In response, SunLink maintains that all of the claims were necessarily interwoven because, in order to prevail on its Chapter 93A claim, SunLink also had to demonstrate, *inter alia*, that: (i) it supplied

3

goods that were conforming, accepted and incorporated into the CVEC Projects; (ii) because there was no shipment or delivery schedule in the Agreements, SunLink performed within a "reasonable time" under the UCC given the nature, purpose, and circumstances of the nine CVEC Projects; (iii) there was no contractual novation, or nullification of the Agreements, in recognition of the alleged "pre-panelization" agreement identified at the hearings; (iv) ACE did not execute the change orders under economic duress; (v) ACE was not fraudulently induced to execute the Agreements through misrepresentations by SunLink as to delivery expectations or the sourcing of A-frames in China; and (vi) ACE breached the Agreements (and SunLink did not), thereby entitling SunLink to full payment and negating any right of offset.

As found in the Partial Final Award, the pertinent change orders were amendments to the Agreements insofar as they altered the payment terms and established delivery parameters for designated portions of SunLink's products (a percentage of the A-frames and ballasts).[3] Throughout this proceeding, SunLink had the burden of proving that it satisfied its obligations under the Agreements and change orders and rebutting ACE's myriad defenses to payment. While ACE's Opposition to the Application characterizes the undertaking as a "straightforward contract claim for goods sold and delivered," this ignores the complexity and breadth of proof necessary to establish, amongst other elements, a "reasonable" course of performance across nine discrete PV projects totaling more than 22 MW. It is also inconsistent with ACE's obdurate position that SunLink breached the Agreements by flouting performance, sourcing or delivery requirements, the grand

---

[3] The change orders were not, however, a separate legally binding contract for "pre-panelization" or a commitment by SunLink to deliver other, non-change order components (rails) under a definitive schedule. *See* ACE Opp. at p. 4 ("pre-panelization change order evidence presented a whole new deal with new parameters for assembly and delivery which was breached by SunLink").

4

finale of which was the "pre-panelization" argument. All of SunLink's claims in this case were plainly interrelated and arose from a single collection of activities concerning the supply of an enormous quantity of balance of system products to the CVEC Projects.

As proof of its legal work, SunLink submitted a verified itemization of the time spent by its attorneys and the fees incurred, totaling $1,155,846.50.[4] For the most part, SunLink was represented by attorneys Paul J. Murphy and David G. Thomas, shareholders in Greenberg Traurig, LLP's Boston office. Messrs. Murphy and Thomas's time accounts for nearly 80% of the legal fees incurred (approximately 1,400/1,750). Due to the fairly compressed schedule (stipulated to by the parties), the thousands of paper and electronic documents and the overall scope of the case, Greenberg Traurig reasonably assigned two experienced attorneys to conduct the arbitration so the case could be prosecuted on multiple simultaneous tracks.

According to his Affidavit, Mr. Murphy has been trying construction and other civil litigation matters in the state and federal courts of the Commonwealth of Massachusetts, and in other jurisdictions, for the past thirty-three years. Following his admission to the bar in 1982, Mr. Murphy practiced at various Boston firms until he joined Greenberg Traurig as a shareholder eight years ago. In 2014, Mr. Murphy's standard hourly rate was $680. As of January 1, 2015, Mr. Murphy's standard hourly rate was increased to $720.

Mr. Thomas has maintained a trial practice for the past seventeen years, and is a certified e-Discovery Specialist. Mr. Thomas joined Greenberg Traurig's Boston office in 1999. In 2009, Mr.

---

[4] SunLink's Application includes hundreds of detailed "contemporaneous time entries" by its law firm. ACE's Opposition cited two specific entries, focusing instead on the hourly rate, the gross volume of hours ("overkill") and the statistical anomaly of an entry for ".5" appearing more frequently than an auditing tool might expect.

Thomas was promoted to a shareholder at Greenberg Traurig. Mr. Thomas's standard hourly rate is $720.

Most critically, based on my observations during the case, from initiation of the claim through (often disputed) discovery, seven days of hearings, and, finally, post-hearing briefings, I find that SunLink's counsel, principally (but not exclusively) Messrs. Murphy and Thomas, were professional, effective and zealous advocates.[5] Their hourly rates are attested to be consistent with the Boston marketplace for large law firms in matters such as this arbitration. Greenberg Traurig was required to process this document intensive arbitration on an expedited basis given SunLink's anemic financial condition (caused or exacerbated by ACE's non-payment on the CVEC Projects). The legal fees incurred by SunLink, while substantial, would ordinarily be spread over a period of years (in court), not months, and represent approximately 12% of the amount awarded. Accordingly, I reject ACE's argument that Greenberg Traurig was disproportionately exuberant in this engagement,[6] and conclude that the time spent was reasonable given the stakes, issues and outcome, with one exception. My examination of the time records revealed a number of entries

---

[5] This "firsthand knowledge" provides a basis for me to assess the objective value of the legal services rendered. *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 630-1 (1978); *Fontaine*, 415 Mass. at 324; *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 431 (2005); *Berman*, 434 Mass. at 302-3. Furthermore, having served in over 350 cases as an arbitrator, many of which have involved claims for attorneys' fees, I am quite familiar with law firm billing practices and rates.

[6] I reject as without foundation, or commonsense, ACE's argument that SunLink's counsel might have "freely charged time to the matter unreasonably … acting under the expectation that ACE, not [SunLink], would end up paying." No sensible company would countenance a law firm deliberately running up a bill on the gambit that it might eventually prevail and collect on a punitive damages/fee shifting claim. I also do not accept the proposition that the substantially lesser amount ACE paid its able counsel proves that SunLink's attorneys' fees are inherently unreasonable. There are always disparities in workloads, relationships and overhead at law firms which might enable a client to negotiate a lower rate structure at a particular firm. Moreover, SunLink had the burden of proof across a broad spectrum of issues, so it is to be expected that more legal work would be required of its counsel.

respecting SunLink's prosecution of two Superior Court cases against ACE and its sureties to preserve and perfect claims under the payment bonds. While I understand the rationale for filing the cases (which were stayed pending arbitration), I do not believe the activity is proximately related to the Chapter 93A claim, or, more generally, the arbitration. *See Drywall Sys., Inc. v. ZVI Const. Co.*, 435 Mass. 664, 673 (2002) (Chapter 93A authorizes the award of attorneys' fees incurred in connection with the G.L. c. 93A action, "but not for other actions"). My computation (unaided by ACE) of the professional time spent on those cases is $54,687, which amount shall be deducted from the Application.

SunLink also alleges that it incurred costs in the amount of $186,470.10. SunLink's costs are comprised of two separate components. The first category are typical out-of-pocket costs associated with a case of this magnitude, including printing and exhibit production costs, e-discovery vendor processing costs, and court reporting and delivery charges, all of which have been itemized and verified by Mr. Murphy. The second, larger component of costs is for SunLink's engagement of Steven Collins, an expert witness on construction projects. As discussed in the Partial Final Award, Mr. Collins's testimony was helpful in distilling the various delivery schedules, summarizing voluminous shipment data and demonstrating the commercially reasonable nature of SunLink's performance, as required by the UCC (and vigorously contested by ACE). Mr. Collins's invoices total $106,837.50. I find that the costs incurred by SunLink are reasonable, and, in any event, they have not been directly challenged by ACE.

## FINAL AWARD

Based on the foregoing, and in respect of the two issues for which I reserved jurisdiction in the Partial Final Award, I hereby FIND and AWARD as follows:

7

1. I find in favor of SunLink on its claim for attorneys' fees and costs under G.L. c. 93A, §§ 2, 11, and award it the sum of $1,287,629.60, without interest until the entry of any judgment confirming this Final Award, at which point the statutory interest rate applicable to judgments in the Commonwealth of Massachusetts shall apply.

2. The administrative fees of the American Arbitration Association, totaling $15,700, and the compensation and expenses of the Arbitrator, totaling $82,755, shall be borne equally by the parties. Therefore, ACE shall pay SunLink $7,850, representing that portion of the administrative fee previously advanced by SunLink.

3. This Final Award is in full settlement and satisfaction of the two issues for which I reserved jurisdiction in the Partial Final Award dated August 18, 2015.

Dated:  October 6, 2015

David L. Evans, Arbitrator

I, David L. Evans, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

Dated:  October 6, 2015

David L. Evans, Arbitrator

8

# EXHIBIT NN

AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| SUNLINK CORPORATION,<br>Claimant, | §<br>§<br>§ | AAA NO. 01-14-0001-7516<br><br>AMERICAN CAPITAL ENERGY, |
| v. | §<br>§<br>§ | INC.'S WITNESS LIST |
| AMERICAN CAPITAL ENERGY, INC.,<br>Respondent. | §<br>§<br>§ | |

Respondent, American Capital Energy Inc. hereby provides its Witness List, as follows:

1.   John Eastwood, Sunlink Corporation, expected length of testimony 2 hours.

2.   Thomas Hunton, President American Capital Energy, Inc., expected length of testimony 1 hour.

3.   Eric Mclean,  Operations, American Capital Energy, Inc. expected length of testimony 3 hours.

4.   Art Hennessey, Chief Financial Officer, American Capital Energy, Inc. expected length of testimony 1 hour.

5.   Eli Florence, Florence Electric, expected length of testimony 1 hour.

6.   Bill Guinasso, Project Manager, American Capital Energy, Inc. expected length of testimony 1 hour.

7.   Representative of OldCastle Precast-New England, expected length of testimony 1 hour.

8.   Representative of Scituate Concrete Products Corporation expected length of testimony 1 hour.

9.    Representative of MBO Precast, Inc., expected length of testimony 1 hour.

10.    Zac Osgood, Project Manager American Capital Energy, Inc. expected length of testimony 2 hours.

11.    Michael Maulick, Chief Executive Office,  Sunlink Corporation, expected length of testimony 1 hour.

12.    Stanley Chin, expected length of testimony 1 hour.

13.    Sam Wu, expected length of testimony 1 hour.

14.    American Capital Energy Inc. reserves the right to call Claimant's witnesses and other rebuttal witnesses, if necessary.

15.    American Capital Energy Inc. also reserves the right to add to this list as necessary and with the requisite notice to the Claimant.


Respectfully submitted,

ROBERT K. DOWD, P.C.
4814 Bengal Street, Unit #1,
Dallas, Texas 75235
(214) 922-9330
(214) 922-9372 FAX


BY:_____
ROBERT K. DOWD
TX State Bar No. 06070800
MA BBO 132800

ATTORNEY FOR RESPONDENTS


Dated: April 30, 2015