UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUNLINK CORPORATION, | * |
| | * |
| Plaintiff, | *   Civil Action No. 15-13606-ADB |
| | * |
| v. | * |
| | * |
| AMERICAN CAPITAL ENERGY, INC., | * |
| | * |
| Defendant. | * |

**MEMORANDUM AND ORDER**

December 8, 2016

BURROUGHS, D.J.

On October 20, 2015, Sunlink Corporation ("Sunlink) petitioned the Court to confirm an arbitration award against American Capital Energy, Inc. ("ACE"). [ECF No. 1]. Presently pending before the Court are ACE's Motion for "Finding that Application to Vacate Filed and Served is Responsive to Petition to Confirm Arbitration Award as Defined in 9 U.S.C. § 12" [ECF No. 21], Sunlink's Petition [ECF No. 1], two motions by Sunlink for a case management conference [ECF Nos. 25, 26], and Sunlink's Motion to Strike [ECF No. 28] ACE's Supplemental Answer and Counterclaim [ECF No. 27]. For the reasons stated below, ACE's Motion [ECF No. 21] is <u>DENIED</u>, and Sunlink's Petition [ECF No. 1] is <u>GRANTED</u>. Sunlink's motions for a case management conference [ECF Nos. 25, 26] are <u>DENIED</u> as moot. Sunlink's Motion to Strike [ECF No. 28] is <u>GRANTED</u>.

**I.      BACKGROUND**

In 2013 and 2014, Sunlink provided ACE with materials in connection with ACE's construction of nine solar projects in Massachusetts. <u>See</u> Verified Petition to Confirm Arbitration

Award ("Petition") [ECF No. 1 at ¶ 4]. Sunlink and ACE entered into a sales contract ("Sales Contract") for each project that had identical terms and conditions of performance. See id. at ¶ 5; see also Sales Contract [ECF No. 24, Ex. 1].

The Sales Contract included an arbitration provision where the parties agreed that "[a]ll disputes, disagreements, controversies, questions or claims arising out of or relating to this Sales Contract or in respect to any legal relationship associated with or arising from this Sales Contract . . . shall be determined by arbitration." Sales Contract ¶ 20. Furthermore, the Sales Contract provided that "any award or determination of the arbitral award shall be final and binding on the parties." Sales Contract ¶ 20d. The Sales Contract also included a choice-of-law provision: "[t]his Sales Contract . . . shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to its conflict of laws provisions." Sales Contract ¶ 23.

On October 20, 2014, Sunlink filed a Demand for Arbitration against ACE with the American Arbitration Association, asserting various counts arising out of ACE's alleged failure to pay for solar panel mounting systems that Sunlink supplied and that ACE installed in each of the nine projects. Petition ¶ 6. Between May 13, 2015 and May 20, 2015, the parties engaged in arbitration in Boston, Massachusetts before Arbitrator David L. Evans (the "Arbitrator"), who was appointed by the American Arbitration Association. Id. ¶ 7. On August 18, 2015, the Arbitrator issued a "Partial Final Award," finding in favor of Sunlink and awarding it $7,856,649.60, Id. ¶ 8, and an additional $1,041,407.94 for the chapter 93A violation, Petition ¶ 9. On October 6, 2015, the Arbitrator issued a "Final Award,"[1] which added $1,287,629.60 in

---

[1] This Memorandum and Order refers to the "Partial Final Award" and the "Final Award" collectively as the "Arbitration Award."

attorneys' fees and costs and $7,850.00 in administrative fees. Id. ¶ 10. Thus, the total amount of the Arbitration Award was $10,193,537.10.

On October 20, 2015, Sunlink filed the instant petition to confirm the arbitration award in this Court.[2] [ECF No. 1]. In its Petition, Sunlink requested a judgment "in the amount of the Award, less appropriate credits for post-award settlements." Petition at 5. On November 13, 2015, ACE filed a Motion to Dismiss Sunlink's Petition in this Court, arguing that the same action was pending in state court. [ECF Nos. 7, 8, 10 (hereinafter, the "November 13, 2015 Motion to Dismiss")]. In its motion, ACE explained that it had filed an application to vacate the arbitration award in state court, a copy of which was attached as Exhibit 1. [ECF No. 8 & Ex. 1]. ACE argued that this Court should abstain from confirming the arbitration award because the case belonged in state court where, among other things, "that Court has accepted ACE's Application to Vacate the Award." [ECF No. 8 at 5]. Sunlink opposed the motion. [ECF Nos. 11, 12].

In fact, ACE's Application to Vacate the Arbitration Award had been filed in state court on November 5, 2015, after Sunlink had filed its petition in federal court. [ECF No. 8, Ex. 1]. Sunlink moved to strike it on November 12, 2015. [ECF No. 24, Ex. 8]. On February 18, 2016, clarified on March 3, 2016, the state court granted Sunlink's motion to strike ACE's Application to Vacate the Arbitration Award, holding that "ACE's efforts to Vacate the Arbitration Award belong in [Federal] Court where Sunlink has already sought to confirm the award." [ECF No. 24, Exs. 12, 15]. On March 3, 2016, this Court held a hearing on ACE's motion to dismiss [ECF No.

---

[2] Prior to the issuance of the Final Award, Sunlink brought actions in state court, in Barnstable Superior Court and Dukes Superior Court, against Berkley Insurance Company and Arch Insurance Company, related to construction surety bonds on the projects. Petition ¶ 11; [ECF No. 24, Ex. 5]. Although these concurrent actions might impact the outstanding balance on the Arbitration Award, they do not divest this Court of jurisdiction over Sunlink's instant petition.

7] and denied it as moot, but granted ACE leave to file a motion to request leave to file a motion to vacate or modify the arbitration award by March 18, 2016. [ECF Nos. 19, 20].

On March 18, 2016, ACE filed a "motion for finding that application to vacate filed and served is responsive to petition to confirm arbitration award as defined in 9 U.S.C. § 12," [ECF No. 21 (hereinafter, the "March 18, 2016 Motion")], and a supporting memorandum of law, [ECF No. 22]. Sunlink opposed the motion, [ECF No. 23], and filed a declaration attaching numerous exhibits in support, including some of the parties' state court filings, [ECF No. 24]. ACE argued that the Court should recognize that it timely filed the Application to Vacate on November 13, 2015 pursuant to the Federal Arbitration Act, 9 U.S.C. § 12, when it filed the Application as Exhibit 1 to its motion to dismiss. See [ECF No. 21, 22]. ACE asserted that "[p]leadings are determined not by their headings but by their substance and content and the notice of claims they provide." [ECF No. 21]. Notably, ACE's March 18, 2016 Motion did not argue that the deadline to file a motion to vacate should be tolled or that its filing in state court on November 5, 2015 operated as placeholder for timing purposes. Moreover, ACE did not request leave to file the motion to vacate, despite the Court's earlier order. In its opposition, Sunlink argued that an exhibit to ACE's motion to dismiss cannot be construed as a motion to vacate, and that, even if it was considered a properly filed motion to vacate, it would be time-barred under the Massachusetts Arbitration Act. [ECF No. 23].

On November 21, 2016, ACE filed a Supplemental Answer and Counterclaim, arguing that the Arbitration Award should be subject to equitable adjustments based, in part, on events that took place prior to the issuance of the Final Arbitration Award on October 6, 2015. [ECF No. 27]. Sunlink moved to strike the Supplemental Answer and Counterclaim, arguing that it

was a belated attempt to modify the Arbitration Award. [ECF Nos. 27, 28]. ACE opposed the motion. [ECF No. 30].

Thus, the issues presently before this Court are (1) whether ACE timely moved to challenge the Arbitration Award, and (2) whether judgment should be entered confirming the Arbitration Award.

## II.   DISCUSSION

### a. Application of the Massachusetts Arbitration Act and the Federal Arbitration Act

Both Massachusetts and Federal law provide for the enforcement of arbitration agreements. Under the Federal Arbitration Act ("FAA"), "a written provision in a contract 'to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting 9 U.S.C. § 2) (omission in original). The FAA was enacted primarily to "overcome judicial hostility to arbitration agreements." See Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 272 (1995). The provisions of the Act "embod[y] the national policy favoring arbitration and place[] arbitration agreements on equal footing with all other contracts.'" Soto-Fonalledas, 640 F.3d at 474 (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)).

Similarly, under the Massachusetts Arbitration Act ("MAA"), "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Mass. Gen. Laws ch. 251 § 1. Further, "[t]he provisions of the MAA governing

judicial review of an arbitration award are substantively (and often linguistically) identical to the analogous provisions in the FAA." Katz, Nannis & Solomon, P.C. v. Levine, 46 N.E.3d 541, 547 (Mass. 2016). Both the FAA, see 9 U.S.C. §§ 9, 10, 11, and MAA, see Mass. Gen. Laws ch. 251 §§ 11, 12, 13, include provisions defining the Court's role in confirming arbitration awards.

There is some dispute as to whether the FAA or MAA governs this proceeding. Sunlink's petition to confirm the arbitration award is brought pursuant to the FAA "and/or" the MAA. [ECF No. 1 at 1]. The parties specifically disagree over whether the FAA or MAA provides the limitation period for filing a motion to vacate the arbitration award. The FAA applies to contracts affecting interstate commerce. 9 U.S.C. § 2 ("a contract evidencing a transaction involving commerce"); see also Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989). The contract in this case clearly affects interstate commerce as Sunlink was a California corporation, [ECF No. 1 ¶ 1], the projects took place in Massachusetts, and the contract included terms that directly implicated interstate commerce, such as "[a]ll Seller products are furnished F.O.B. San Leandro, California, Allen, Texas or Carrolton, Texas," [ECF No. 24, Ex. 1 at 6, ¶ 10]. See Allied-Bruce, 513 U.S. at 268 (holding that 9 U.S.C. § 2 should be interpreted broadly).

Provided that there are no preemption issues, however, parties may contract out of FAA rules and into state arbitration rules. "The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." Volt, 489 U.S. at 477. The Supreme Court has held that the FAA does not preempt state arbitration law "in a case where the parties have agreed that their arbitration agreement will be governed by" state law. Id. at 470. Thus, "the FAA preempts state laws that prevent parties from arbitrating disputes to the full scope of their agreements." New England Utilities v. Hydro-Quebec, 10 F. Supp. 2d 53, 59

(D. Mass. 1998); see also Nationwide Mut. Ins. Co. v. Liberty Mut. Ins. Co., 57 F. Supp. 3d 112, 117 (D. Mass. 2014); Weston Sec. Corp. v. Aykanian, 703 N.E.2d 1185, 1188–89 (Mass. App. Ct. 1998) (state arbitration rules "are preempted by the FAA if the effect of the State rule 'would undermine the goals and policies of the FAA'" (quoting Volt, 489 U.S. at 477–78)).

The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."[3] Volt, 489 U.S. at 478. Here, the parties clearly intended, as evidenced by the choice-of-law provision, that the Sales Contract be "governed by and construed in accordance with" the laws of Massachusetts "without regard to its conflict of law provisions." [ECF No. 24, Ex. 1 ¶ 23]. Indeed, ACE admits that Massachusetts law applies to the Sales Contract. [ECF No. 22 at 6] ("The parties' agreement dictated that Massachusetts substantive law would govern."). "In Massachusetts, a contract's choice of law provision is generally honored, provided that it does not conflict with public policy." NPS, LLC v. Ambac Assur. Corp., 706 F. Supp. 2d 162, 168 (D. Mass. 2010). The Sales Contract in this case, however, is wholly silent as to which *arbitration* rules would apply.[4] Following the Supreme Court's decisions in Volt, Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52 (1995), and Preston v. Ferrer, 552 U.S. 346 (2008), there is some confusion about how to

---

[3] Similar to the Sales Contract at issue here, the parties in Volt agreed to a contract that (1) included an arbitration requirement for all disputes between the parties "arising out of or relating to this contract or breach thereof," and (2) included "a choice-of-law clause providing that '[t]he Contract shall be governed by the law of the place where the Project was located.'" Volt, 489 U.S. at 470 (quoting the record). The project in Volt was located in California, and the California Court of Appeal "held that by specifying that their contract would be governed by 'the law of the place where the project is located,' the parties had incorporated the California rules of arbitration." Id. at 473. The Volt Court refused to review the state court's interpretation of the contract because "the interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review." Volt, 489 U.S. at 474.

[4] The Sales Contract did provide for the application of the American Arbitration Association's rules and procedures for appointing a sole arbitrator in the event the parties could not agree on one. See Sales Contract ¶ 20.

determine which arbitration rules apply in a given case and the issue can be complex. . See, e.g., Protostorm, LLC v. Antonelli, No. 08-931, 2010 WL 2195679, at *4 (E.D.N.Y. May 28, 2010).

In this case, however, as discussed below, regardless of whether the FAA or the MAA applies, any attempt by ACE to vacate the Arbitration Award would is too late. Given that the result is the same under the FAA and the MAA, the Court need not resolve the choice of law issue regarding which arbitration rules to apply.

### b. ACE's Failure to Properly Move to Vacate or Modify the Arbitration Award Under the Massachusetts Arbitration Act and the Federal Arbitration Act

The FAA, 9 U.S.C. § 9, and the MAA, Mass. Gen. Laws ch. 251 § 1, provide for the enforcement of arbitration agreements. Furthermore, "[u]pon application of a party, the court *shall* confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections twelve and thirteen." Mass. Gen. Laws ch. 251 § 11 (emphasis added). Thus, absent motions under § 12 or § 13 "within the time limits," the Court is required to confirm an arbitration award applied for by a party under the MAA.[5] See Katz, 46 N.E.3d at 546–47 ("the directive of G.L. c. 251, § 11, is that a court 'shall confirm' an award unless grounds for vacating it pursuant to §§ 12 and 13 are shown; this statutory language 'carries no hint of flexibility'" (quoting Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 587 (2008)). Similarly, under the FAA, the Court "*must* grant such an order [to confirm the award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9 (emphasis added).

---

[5] Because "applications" under the MAA, Mass. Gen. laws ch. 251 § 15, and the FAA, 9 U.S.C. § 6, are generally brought as "motions," this Memorandum and Order uses "application" to vacate or modify an arbitration award interchangeably with "motion" to vacate or modify an arbitration award.

Sections 12 and 13 of the MAA require parties to move to vacate or modify an arbitration award within 30 days of its issuance. See Mass. Gen. Laws ch. 251 §§ 12(b) (motion to vacate), 13(a) (motion to modify).[6] The FAA provides a three month limitations period. 9 U.S.C.A. § 12.

In this case, the Final Award was issued on October 6, 2015; thus, an application to vacate the Arbitration Award was due by November 5, 2015 under the MAA. Instead of filing a motion to vacate in this Court by that date, ACE filed the November 13, 2015 Motion to Dismiss to which it attached a copy of its state court motion to vacate as an exhibit, and ACE now seeks to have the Court treat this exhibit as a motion to vacate. Even if the Court construed ACE's exhibit to its motion to dismiss as a motion to vacate, which it will not, it was still too late under the MAA. See Kimball Associates, P.A. v. Bosse, No. 03-10239-RWZ, 2004 WL 213208, at *1 (D. Mass. Jan. 30, 2004) (confirming arbitration award under MAA where party failed to seek "to vacate the award in a timely fashion"); see also Bernstein v. Gramercy Mills, Inc., 452 N.E.2d 231 (Mass. App. Ct. 1983) ("[t]he arbitration statute aims to flush out objections to awards with dispatch"); Local 589, Amalgamated Transit Union v. MBTA., 491 N.E.2d 1053, 1056 (Mass. 1986) (noting that, while discussing provision nearly identical to chapter 251 § 12, "[p]arties are allowed only a short period of time to move courts to vacate an award in order to accord the arbitration award finality with reasonable promptness.")

Similarly, if the FAA's longer limitations period (three months) applied, see 9 U.S.C. § 12, ACE's efforts to vacate would also still be time-barred because, given that ACE's November 13, 2015 Motion to Dismiss was not a motion to vacate, ACE has still not properly moved to vacate the Arbitration Award in this Court. If the FAA applied, a motion to vacate would have

---

[6] Because the motion to vacate or modify was not timely filed, the Court does not reach whether any of the grounds to vacate or modify an arbitration award under the MAA or the FAA exist in this case.

been due three months after October 6, 2015, or January 6, 2016. Following the state court's allowance of Sunlink's motion to strike ACE's application, this Court denied ACE's November 13, 2015 Motion to Dismiss as moot, but granted ACE leave to file a motion for leave to file a proper motion to vacate. [ECF No. 20 ("Defendant, however, may file a Motion for Leave to File a motion to vacate or modify the arbitration award, no later than 3/18/2016.")]. Rather than requesting leave to file a motion to vacate, ACE asked the Court to treat its November 13, 2015 exhibit as a motion to vacate.

Under these circumstances, the Court will not treat an exhibit to a motion to dismiss as a motion to vacate. For all the reasons Sunlink enumerated in its brief, see [ECF No. 23], it is clear that ACE did not intend for the November 13, 2015 Motion to Dismiss to operate as an application to vacate the Arbitration Award. In its motion to dismiss, ACE asked this Court to dismiss the federal case in favor of the state case so that the state court could rule on the application to vacate. It now argues that this very same filing was in fact a motion to vacate upon which *this* Court should now rule. An exhibit to a motion to dismiss—requesting that the Court decline jurisdiction—cannot be reformulated as a request for relief from the same Court as a way around the MAA's or FAA's limitations periods. In short, ACE did not file a motion to vacate on November 13, 2015. Even if the Court were to construe ACE's March 18, 2016 Motion itself as a motion to vacate—although it does not purport to be one—ACE would have nevertheless missed the filing deadline, under either the FAA (three months) or MAA (30 days).[7] Because the only relief ACE requests in its March 18, 2016 Motion is to treat the November 13, 2015 exhibit as a timely filed motion to vacate, ACE's motion [ECF No. 21] is denied.

---

[7] Even assuming that a court could theoretically toll the statute of limitations period under certain circumstances, ACE has failed to make this argument.

Therefore, ACE has failed to contest the Arbitration Award within the requisite time periods provided by the MAA or the FAA. Accordingly, the Court must confirm the award. See Katz, 46 N.E.3d at 546–47 (Mass. 2016) ("the directive of G.L. c. 251, § 11, is that a court 'shall confirm' an award unless grounds for vacating it pursuant to §§ 12 and 13 are shown; this statutory language 'carries no hint of flexibility.'" (quoting Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 587 (2008) (noting that Section 9 of the FAA "carries no hint of flexibility")).

### c. ACE's Supplemental Answer and Counterclaim

ACE's recently filed Supplemental Answer and Counterclaim [ECF No. 27] challenges the Arbitration Award based largely on events that preceded the issuance of the Final Arbitration Award, but it provides no explanation as to why the issues are being raised at such a belated stage. As discussed above, both the Massachusetts Arbitration Act, see Mass. Gen. Laws ch. 251 §§ 11, 12, 13, and the Federal Arbitration Act, see 9 U.S.C. §§ 9, 10, 11, establish procedures for challenging arbitration awards. If a party fails to challenge an award properly under the established procedures within the permitted time period, then, under both the MAA and the FAA, a Court is required to confirm the award. As ACE has failed to properly challenge the Arbitration Award in this case under either the MAA or the FAA, the Court will not now consider ACE's belated challenges. Accordingly, Sunlink's motion is granted, and ACE's Supplemental Answer and Counterclaim are stricken.

### d. Attorneys' Fees for Post-Arbitration Litigation.

Sunlink also argues that it is entitled to attorneys' fees for post-arbitration litigation pursuant to Mass. Gen. Laws ch. 93A. Chapter 93A, § 11 provides, in relevant part: "[i]f there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees

and costs incurred in said action." The Arbitration Award includes a 93A violation. [ECF No. 24, Ex. 6]. The Massachusetts Supreme Judicial Court has held that "[w]here a statute provides for the payment of reasonable attorney's fees, an award of attorney's fees on appeal is within the discretion of an appellate court." Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 837 N.E.2d 1121, 1140 (Mass. 2005) (discussing case involving chapter 93A, § 11). The First Circuit "believe[s] that an award of fees to a party that successfully fends off a petition to vacate a chapter 93A arbitration award would be the usual practice, absent some affirmative reason not to make such an award." Janney Montgomery Scott LLC v. Tobin, 571 F.3d 162, 166 (1st Cir. 2009). ACE has failed to address the issue of why attorneys' fees and costs for post-arbitration litigation should not be awarded in this case. Accordingly, Sunlink is entitled to attorneys' fees under chapter 93A with respect to that portion of the petition related to the 93A claim. See Fed. Ins. Co. v. HPSC, Inc., 480 F.3d 26, 37 (1st Cir. 2007) ("With regard to the calculation on appeal, however, we award only those attorneys' fees incurred in defending the chapter 93A claim.").

### III. CONCLUSION

For the foregoing reasons, ACE's Motion [ECF No. 21] is DENIED. Sunlink's Verified Petition to Confirm the Arbitration Award [ECF No. 1] is GRANTED. Sunlink's motions for a case management conference [ECF Nos. 25, 26] are DENIED as moot. Sunlink's Motion to Strike [ECF No. 28] is GRANTED. Sunlink shall submit a proposed draft order, showing the outstanding balance on the Arbitration Award, including interest, and a judgment confirming the Award will follow. Further, Sunlink shall file an application on its post-arbitration attorneys' fees and costs within seven days of this Order.

**SO ORDERED.**

Dated: December 8, 2016

/s/ Allison D. Burroughs  
ALLISON D. BURROUGHS  
U.S. DISTRICT JUDGE
